## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OMEGA, S.A.,

               Plaintiff,

       v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND
OMEGA PRESS, INC.,

             Defendants.

OMEGA ENGINEERING, INC.,

             Counterclaim-Plaintiff,

       v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

             Counterclaim-Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.:
3:01 CV 2104 (MRK)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON THE GROUNDS THAT THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS RELATING TO FOREIGN TRADEMARK FILINGS AND THAT SUCH CLAIMS FAIL TO STATE A CLAIM FOR RELIEF; AND FOR AN ORDER OF PRECLUSION WITH RESPECT TO EVIDENCE <u>RELATING TO ANY SUCH FOREIGN TRADEMARK FILINGS</u>

Of counsel:

Michelle R. Tepper

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

*Attorneys for Defendants*

30862156.DOC

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND FACTS ............................................................................................... 4

    A.    OSA's Allegations Concerning Foreign Trademark Applications and
        Registrations ..................................................................................................... 5

    B.    Defendants' Motion to Dismiss ....................................................................... 6

    C.    Defendants' Efforts to Obtain Discovery With Respect to OSA's Claims Relating
        to Foreign Trademark Filings .......................................................................... 7

        1.    Defendants' Initial Document Requests and Interrogatories ..................... 7

        2.    OSA's First Responses to OEI's Discovery Requests ............................... 9

        3.    The February 27, 2004 Telephonic Conference and the Court's
            First Order that OSA Produce Documents Relating to Foreign
            Trademark Filings .................................................................................. 10

        4.    OSA's Belated Identification of 26 OEI Foreign Trademark
            Applications and Registrations That it Contends Were Filed in Bad
            Faith ...................................................................................................... 11

        5.    The March 12, 2004 Telephonic Conference and the Court's
            Second Order that OSA Produce Documents Relating to Foreign
            Trademark Filings .................................................................................. 13

        6.    OSA's Production of a Handful of Additional Documents Midway
            Through the Deposition of Ms. Sauser Rupp ......................................... 13

        7.    The Relevance of Foreign Trademark Proceedings and of the
            Missing Foreign Documents to OSA's Claims ...................................... 14

        8.    Ms. Sauser Rupp's Deposition Testimony and the Numerous
            Foreign Applications and Registrations Relevant to OSA's Claims ........ 16

ARGUMENT ................................................................................................................ 22

    I.    THE COURT SHOULD GRANT DEFENDANTS' MOTION FOR JUDGMENT
        ON THE PLEADINGS FOR LACK OF SUBJECT MATTER JURISDICTION
        AND FOR FAILURE TO STATE A CLAIM FOR RELIEF. ............................ 22

A.    The Court Lacks Subject Matter Jurisdiction to Hear OSA's Allegations Relating to Foreign Trademark Filings, Which Would Require the Court to Determine the Validity of Foreign Trademark Applications and Registrations Currently Pending Before Foreign Trademark Tribunals, in Violation of Settled Principles of Comity.................................................. 23

B.    Counts Three and Four of the Complaint Fail to State a Claim for Relief to the Extent that they Rely on Alleged Bad Faith Foreign Trademark Applications Because the Statutes at Issue Do Not Extend to Trademark Filings. ................................................................................................... 27

1.    Under its plain language, CUTPA does not extend to the filing of foreign trademark applications. ..................................................... 27

2.    The filing of foreign trademark applications is not "commercial advertising or promotion" under Lanham Act § 43(a).................. 30

C.    The "Law of the Case" Doctrine Does Not Prevent the Court From Dismissing OSA's Allegations Regarding Foreign Trademark Filings. .. 32

II.    OSA SHOULD BE PRECLUDED FROM RELYING ON EVIDENCE RELATING TO FOREIGN TRADEMARK FILINGS BECAUSE OF ITS ABUSE OF THE DISCOVERY PROCESS AND ITS DISREGARD OF THE COURT'S DISCOVERY ORDERS.................................................................. 34

A.    OSA's Document Production and Discovery Responses Were Incomplete, Inadequate and Affirmatively Misleading ................................................ 36

B.    OSA's Inadequate Production and Misleading Interrogatory Responses Have Substantially Prejudiced Defendants, Warranting Preclusion of OSA's Evidence Relating to Foreign Filings............................................ 38

III.    IN THE EVENT THAT OSA'S EVIDENCE RELATING TO FOREIGN FILINGS IS NOT PRECLUDED, THE COURT SHOULD REQUIRE OSA TO PRODUCE MS. SAUSER RUPP IN THE UNITED STATES FOR RESUMPTION OF HER DEPOSITION. .......................................................... 39

CONCLUSION.................................................................................................................40

## TABLE OF AUTHORITIES

*American White Cross Labs. v. H.M. Cote, Inc.*,
  556 F. Supp. 753 (S.D.N.Y. 1983) ...................................................................25

*Antares Aircraft, L.P. v. Federal Rep. of Nigeria*,
  948 F.2d 90 (2d Cir. 1991)...........................................................................4

*Arawana Mills Co. v. United Technologies Corp.*,
  795 F. Supp. 1238 (D. Conn. 1992)................................................................29

*Baba v. Japan Travel Bureau Int'l, Inc.*,
  111 F.3d 2 (2d Cir. 1997)............................................................................35

*Baghdady v. Baghdady*,
  2003 U.S. App. LEXIS 1439 (2d Cir. Jan. 28, 2003) ........................................27, 30

*Bernbach v. Timex Corp.*,
  989 F. Supp. 403 (D. Conn. 1996).................................................................29

*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*,
  955 F. Supp. 203 (S.D.N.Y. 1997) ................................................................32

*Brandewiede v. Emery Worldwide*,
  890 F. Supp. 79 (D. Conn. 1994)..................................................................29

*Carloni v. Palumbo*,
  1992 Conn. Super. LEXIS 2236 (July 1, 1992) ..................................................29

*Casey v. United States*,
  161 F. Supp. 2d 86 (D. Conn. 2001)........................................................32, 33, 34

*Conway v. Dunbar*,
  121 F.R.D. 211 (S.D.N.Y. 1988) ..............................................................35, 39

*Cornerstone Realty, Inc .v. Dresser-Rand Co.*,
  993 F. Supp. 107 (D. Conn. 1997)................................................................28

*Daval Steel Prods. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991).................................................................2, 35

*DiLaura v. Power Auth. of New York*,
  982 F.2d 73 (2d Cir. 1992).................................................................32, 33, 34

*Forum Ins. Co. v. Keller*,
  1992 U.S. Dist. LEXIS 15231 (S.D.N.Y. Oct. 8, 1992 .........................................35

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha,*
    754 F.2d 591 (5th Cir. 1985) ................................................................................26

*Galerie Gmurzynska v. Hutton,*
    355 F.3d 206 (2d Cir. 2004)..................................................................................31

*Goldberg v. Cordis Corp.,*
    1976 U.S. Dist. LEXIS 11895 (N.D. Ill. Dec. 30, 1976)..............................25, 26

*H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.,*
    2003 U.S. Dist. LEXIS 17931 (D. Conn. Aug. 10, 2003) .......................................38

*Harris v. Key Bank Nat'l Ass'n.,*
    193 F. Supp. 2d 707 (W.D.N.Y. 2002) .............................................................32, 33

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,*
    495 F.2d 1265 (2d Cir. 1974)................................................................................31

*Levene v. City of New York,*
    1999 U.S. Dist. LEXIS 9031 (S.D.N.Y. June 15, 1999), *aff'd,* 2000 U.S. App. LEXIS
    12483 (2d Cir. 2000)..............................................................................................35

*Mantie v. The Inn at Manchester, Inc.,*
    1997 Conn. Super. LEXIS 98 (Jan. 9, 1997) .........................................................29

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,*
    825 F. Supp. 73 (D. Del. 1993)..............................................................................25

*Miller v. Waseca Med. Ctr.,*
    205 F.R.D. 537 (D. Minn. 2002).............................................................................40

*National Hockey League v. Metropolitan Hockey Club, Inc.,*
    427 U.S. 639 (1976)..........................................................................................36, 39

*Nike, Inc. v. Top Brand Co.,*
    216 F.R.D. 259 (S.D.N.Y. 2003) ............................................................................35

*Packard Instrument Co., Inc. v. Beckman Instruments, Inc.,*
    346 F. Supp. 408 (N.D. Ill. 1972)..........................................................................25

*Pineiro v. Pension Benefit Guar. Corp.,*
    1999 U.S. Dist. LEXIS 4691 (S.D.N.Y. April 7, 1999) ....................................32, 33

*Proctor & Gamble Co. v. Colgate Palmolive Co.,*
    1998 U.S. Dist. LEXIS 17773 (S.D.N.Y. Nov. 9, 1998)....................................25, 27

*Sealy Connecticut, Inc. v. Litton Indus., Inc.,*
    989 F. Supp. 120 (D. Conn. 1997)..........................................................................29

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
769 F.2d 1393 (9th Cir. 1985) ...................................................................25, 26, 27

*Stein Assocs., Inc. v. Heat & Control, Inc.*,
748 F.2d 653 (Fed. Cir. 1984)..........................................................................25, 26

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
33 F. Supp. 2d 122 (D. Conn. 1998)..........................................................................20

*Valentine v. Museum of Modern Art*,
29 F.3d 47 (2d Cir. 1994)..........................................................................................35

*Vanity Fair Mills, Inc. v. The T. Eaton Co.*,
234 F.2d 633 (2d Cir. 1956).........................................................................1, 24, 25,
27

## STATUTES

Conn. Gen. Stat. § 42-110a..............................................................................1, 5, 28

Conn. Gen. Stat. § 42-110b...................................................................................28

Fed. R. Civ. P. 30(d)(2)........................................................................................40

Fed. R. Civ. P. 37.................................................................................................34

15 U.S.C. § 1120...................................................................................................31

15 U.S.C. § 1125(a) ..................................................................................1, 30, 31

## PRELIMINARY STATEMENT

Defendants Omega Engineering, Inc. ("OEI"), Omega Scientific, Inc. ("OSI") and

Omega Press, Inc. ("OPI") submit this memorandum of law in support of their motion, (1)

pursuant to Rules 12(c) and 12(h)(3), Fed. R. Civ. P., for judgment on the pleadings on the

grounds that the Court lacks subject matter jurisdiction to adjudicate claims relating to foreign

trademark filings and that such claims fail to state a claim for relief; and (2) for an order pursuant

to Rule 37, Fed. R. Civ. P., precluding plaintiff from relying on evidence of any such foreign

filings due to abuse of the discovery process and disregard of the Court's discovery orders.

Plaintiff's allegations in Counts Three and Four of the Third Amended Complaint

("TAC") regarding alleged fraudulent or bad faith filings made by defendants with foreign

trademark authorities fail to state a claim for relief under the Connecticut Unfair Trade Practices

Act, Conn. Gen. Stat. § 42-110(a) ("CUTPA") and Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a), for at least two independent reasons. First, the Court lacks subject matter jurisdiction

to, and under principles of international comity should not, adjudicate the validity or good faith

of filings made with foreign trademark authorities. *See Vanity Fair Mills, Inc. v. The T. Eaton

Co.,* 234 F.2d 633, 647 (2d Cir. 1956). This is particularly so where – as OSA has now made

clear – this Court would be required to determine or second guess the validity of trademark

registrations and applications that OEI has filed abroad, which have been preliminarily approved

by foreign authorities and which are subject to ongoing litigation in those foreign countries, and

where the matters are in most instances *sub judice.* Second, plaintiff's allegations that

defendants have filed trademark applications for the OMEGA mark in foreign countries in bad

faith fails to state a claim for relief. That is because the plain language of CUTPA and of

Section 43(a) of the Lanham Act does not cover the filing of foreign trademark applications in

foreign countries. Not surprisingly, then, no case has ever held that an American court has

jurisdiction to determine the validity of foreign trademark applications and registrations, let alone decide that they have been filed in bad faith.

Moreover, even if OSA could bring such bad faith filing claims under CUTPA and the Lanham Act, OSA should be precluded under Rule 37, Fed. R. Civ. P., from introducing any evidence of such filings in this action as a result of its abuse of the discovery process and its failure to comply with this Court's orders, to defendants' substantial prejudice. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). As explained in more detail below, OSA initially and misleadingly identified only two foreign trademark registrations of defendants in response to interrogatories and document requests directed at OSA's claims relating to foreign trademark filings. Thereafter, OEI was forced on two separate occasions to obtain discovery rulings from this Court, on February 28 and then again on March 12, directing OSA to provide OEI with documents and information regarding the foreign trademark applications or registrations of OEI that OSA claims have been made in bad faith. It was not until March 8, however – one week before the 30(b)(6) deposition of the witness designated as knowledgeable on this subject, Ms. Sauser Rupp – that OEI received a list of *25* foreign trademark applications and one foreign registration that OSA claimed constitute bad faith filings. And even then, OSA refused to produce the documents that OEI has been seeking since November, 2003 relating to those filings, or to answer interrogatories regarding them.

After the Court's second order of March 12, OSA produced on March 16, toward the very end of the first day of Ms. Sauser Rupp's deposition, the notices of opposition relating to 14 of the 25 foreign trademark applications that it had identified on March 8. This belated production was totally inadequate, and to this day OSA has not produced the vast majority of the critical documents relating to its claim of bad faith, most of which are located with OSA's

trademark agent in London and which OSA apparently never even bothered to try to obtain.
Hence, OEI was not able to depose Ms. Sauser Rupp on the second day of her deposition
regarding OSA's claims of bad faith filings other than with respect to one foreign application, a
European Community trademark ("CTM") application. Ms. Sauser Rupp's testimony on that
one CTM application demonstrates the necessity of having the complete files relating to each
opposition and the prejudice to OEI in not being informed of the scope of OSA's claims until the
last minute and in not having the documents relating to them in hand.

In addition, Ms. Sauser Rupp's testimony demonstrates that, because the trademark
oppositions in the European Community ("EC") are based on prior trademark applications and
registrations in both the EC and its member states that are themselves the subject of ongoing
litigation between OSA and OEI, the files relating to those proceedings are also pertinent to any
claim of bad faith. Hence, the bad faith inquiry is extremely complicated, requiring the Court to
inquire into the validity of scores of trademark applications and registrations in many foreign
countries under foreign law, and involving hundreds of boxes of documents located overseas (the
overwhelming majority of which have not been produced, in flagrant violation of this Court's
orders). It is simply impossible to conduct that inquiry without the documents and many days of
deposition time, because each foreign opposition proceeding constitutes its own litigation which
must be examined in detail to determine whether OEI had a good faith basis for its position.

As a result of OSA's violations of the Court's discovery orders, defendants have been
substantially prejudiced in their defense of OSA's claims. As also shown below, the complexity
of the inquiry required to determine the good faith of OEI's foreign filings also demonstrates the
wisdom of the uniform case law holding that a United States District Court lacks subject matter
jurisdiction to determine the validity of a foreign trademark application or registration.

### BACKGROUND FACTS[1]

This is one of three trademark-related federal actions that have been filed between OEI

and OSA, a circumstance that results from the undisputed fact that both OEI and OSA have used

the trademark OMEGA and related design marks for many years, and both have numerous valid,

subsisting trademark registrations for the OMEGA marks both in the U.S. and abroad.  OSA has

sold and sells to retail consumers, through jewelry stores and upscale department stores,

wristwatches and related watch bands and the like under its OMEGA mark.  (Sauser Rupp.

Tr. 65-66, 89-90).  Through a subsidiary, OSA has also marketed and sold in the United States

principally sports timing devices, which are used to time, for example, swim meets at colleges

and similar athletic competitions.  (*Id.* 163-64).  In contrast, OEI has sold and continues to sell

over 100,000 state-of-the-art products used in scientific and industrial settings for measurement

and control of temperature, humidity, pressure, strain, force, flow, level, pH and conductivity,

including period timers which are used to measure and control other variables.  (Smart Decl. ¶ 2

& Ex.A).  In short, OSA and OEI do not compete, and sell entirely different products to different

customers through different channels of trade.  However, OSA appears to contend that its rights

in the OMEGA mark for timing devices extend to science and industry, even though OSA has

never made sales of timers to science and industry, and OEI has for many years.

---

[1]    The facts pertinent to this motion are set forth in the Declaration of Thomas A. Smart, Esq., dated March 31, 2004; the Declaration of B. Christine Riggs, Esq., dated March 31, 2004; the deposition of Christianne Sauser Rupp dated March 16-17, 2004, relevant portions of which are attached to the Smart Declaration; the exhibits thereto; and the record of prior proceedings in this case.  Although defendants' motion for judgment on the pleadings can be resolved without reference to evidence beyond the pleadings, the Court can consider evidentiary submissions in deciding whether it has subject matter jurisdiction and in deciding discovery issues.  *See, e.g., Antares Aircraft, L.P. v. Federal Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991) (in determining subject matter jurisdiction, the Court can refer to evidence outside the pleadings).

In this case, which has been pending since November 9, 2001, OSA asserts a variety of claims from trademark infringement, and, of greatest significance to this motion, for violations of CUTPA and Section 43(a) of the Lanham Act, arising from, *inter alia,* foreign trademark filings by defendants that OSA alleges were made in bad faith. Pursuant to the Court's October 8, 2003 Scheduling Order, fact discovery is set to close on April 15, 2004 – more than 29 months after the lawsuit was filed – and the Court has stated that this discovery deadline will not be extended.

## A.    OSA's Allegations Concerning Foreign Trademark Applications and Registrations

Counts Three and Four of OSA's Third Amended Complaint both are premised in large part on alleged bad faith conduct by defendants applying for and registering OMEGA trademarks in foreign countries. Count Three asserts, in Paragraphs 53-56, that defendants have violated the Connecticut Unfair Trade Practices Act, Conn. General Statute Section 42-110(a), by, *inter alia,* "embark[ing] upon a systematic process of applying to gain registration of the OMEGA trademark not only with the United States Patent & Trademark Office [("PTO")], but also with the European Community Trademark Office and . . . other national trademark offices, with the intended purpose of, *inter alia,* precluding [OSA] from gaining registration of the mark OMEGA for its legitimate and bona fide business purpose," and (2) making fraudulent statements to the PTO and foreign trademark offices that defendants "intend[ed] to use the OMEGA trademark upon goods for which they had no such intention, and/or on goods that are confusingly similar" to those of plaintiff. (*See* TAC ¶¶ 53-56). However, the complaint does not specify the particular applications or registrations of defendants, or the goods or services covered by those applications or registrations, to which these allegations of bad faith and fraud relate, or any particular statements by defendants that allegedly were false. Nor does it identify any applications or registrations of OSA that have been blocked by defendants' alleged conduct.

Count Four asserts a claim that defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by "deliberately fil[ing] trademark applications under oath with the express purpose of blocking OSA's rights all the while lacking the statutorily mandated good faith intention to use the mark with respect to at least some of the goods and services recited in their trademark applications," and that defendants have acted "in bad faith" in filing such applications. (TAC ¶¶ 59, 60). Count Four also does not identify any specific trademark applications, let alone the goods or services covered by such applications or particular statements by defendants, to which the claims of bad faith relate, or any applications or registrations of OSA that have been blocked by defendants' alleged conduct.

In their Answer to the Third Amended Complaint, defendants asserted a contingent counterclaim against OSA under CUTPA. In particular, defendants asserted that this Court lacks subject matter jurisdiction to adjudicate the validity of foreign trademark registrations and applications. Defendants further asserted, however, that should the Court disagree, then OSA has engaged in the same pattern and practice of filing foreign trademark applications and registrations in foreign countries for the sole purpose of blocking OEI's rights, and, thus, is also engaging in unfair competition and deceptive acts under CUTPA. (Answer to Third Amended Complaint, Counterclaims ¶¶ 96-101).

## B.    Defendants' Motion to Dismiss

In January 2003, OEI moved to dismiss OSA's Second Amended Complaint, which included counts similar to Counts Three and Four of the Third Amended Complaint alleging bad faith foreign trademark filings. OEI argued that these claims should be dismissed because (1) the alleged activity did not fall within the definition of either § 43(a) of the Lanham Act or CUTPA and (2) because the Court lacked jurisdiction to adjudicate the validity or rights of foreign trademarks. (*See* OEI 1/31/03 Mem. at 16-21). In OSA's opposition, OSA conceded that OEI

was correct as to "this Court's lack of jurisdiction over foreign trademark registrations," but asserted that such registrations have "absolutely nothing to do with" OSA's claim. (OSA 2/24/03 Opp. Mem. at 9).

Oral argument was heard on April 22, 2003 by Judge Underhill, who denied the motion to dismiss as to the Counts relating to foreign trademark filings. However, nowhere in his ruling did Judge Underhill explain how a document filed in a foreign trademark office is "trade or commerce" within the meaning of CUTPA or how such a filing amounts to "use in commercial advertising or promotion" under Section 43(a) of the Lanham Act. Furthermore, Judge Underhill stated, in denying OEI's motion to dismiss, that he did not understand the counts at issue to be asking the Court to determine foreign trademark rights. (4/22/03 Tr. at 33, 35, 36). Discovery has now confirmed that in fact the counts would require this Court, contrary to uniform precedent, to adjudicate and second guess the validity of foreign trademark applications and registrations and to determine foreign trademark rights, including the rights at issue in pending foreign applications and opposition proceedings.

C.    **Defendants' Efforts to Obtain Discovery With Respect to OSA's Claims Relating to Foreign Trademark Filings**

1.    **Defendants' Initial Document Requests and Interrogatories**

Because of their obvious relevance to key issues in this case, including the basis for OSA's claims of bad faith trademark filings, and whether and to what extent (if at all) any OSA applications or registrations have been blocked or cancelled as a result of OEI registrations and applications filed in foreign countries, defendants propounded document requests and interrogatories relating to the bad faith filings alleged by OSA. Thus, in Defendants' First Set of Requests for Production of Documents (*see* Smart Decl., Ex.B), defendants requested:

- "All documents (of any date) concerning your allegations in paragraphs 59 and 60 of the Third Amended Complaint that defendants 'have deliberately filed trademark

applications under oath with the express purpose of blocking OSA's rights all the while lacking the statutorily mandated good faith intention to use the mark with respect to at least some of the goods and services recited in their trademark applications, and done so in bad faith' and have 'falsely identified goods . . . in its trademark applications . . . only for the improper purpose of blocking OSA's ability to register such marks.'" (Request No. 18);

- "All documents (of any date) referring or relating to decisions of the United States Patent & Trademark Office, or any foreign trademark registration authority, refusing to register or declining to register an OMEGA mark based on any registration for an OMEGA mark that you allege defendants 'have deliberately filed . . . under oath with the express purpose of blocking OSA's rights all the while lacking the statutorily mandated good faith intention to use the mark with respect to at least some of the goods and services recited in their trademark application, and done so in bad faith.' (Request No. 19);

- "All documents concerning any impact upon commerce in the United States or in Connecticut, if any, of any foreign trademark applications or foreign trademark registrations for the OMEGA marks owned by defendants or any licensee or sublicensee thereof." (Request No. 21);

- "All documents concerning any injury or damages suffered by you, if any, resulting from defendants' filing, ownership or maintenance of trademark applications or registrations with the United States Patent & Trademark Office or any other trademark authority." (Request No. 23);

- "All documents concerning any injury or damages suffered by you, if any, resulting from defendants' filing, ownership or maintenance of trademark applications or registrations with any foreign trademark authority." (Request No. 24); and

- "All documents concerning any foreign trademark applications or foreign trademark registrations owned by you (or any licensee or sublicensee) for the OMEGA marks that have been cancelled, suspended, reduced in scope, or subjected to cancellation, revocation or opposition proceedings." (Request No. 27).

Defendants' First Set of Interrogatories (*see* Smart Decl. Ex. C) requested that OSA:

- "Identify by country and application or registration number each specific trademark application or registration of defendants anywhere in the world that you refer to in Paragraphs 59 and 60 of the Third Amended Complaint" [which allege that defendants "have deliberately filed trademark applications under oath with the express purpose of blocking OSA's rights all the while lacking the statutorily mandated good faith intention to use the mark with respect to at least some of the goods and services recited in their trademark applications, and done so in bad faith" and have "falsely identified goods . . . in its trademark applications . . . only for the improper purpose of blocking OSA's ability to register such marks"] (Interrogatory No. 12);

- "Identify and describe all injuries and damages suffered by you, if any, resulting from defendants' filing of trademark applications or ownership of trademark registrations with the United States Patent & Trademark Office or any foreign trademark authority." (Interrogatory No. 13); and

- "Identify each document on which you rely to support the factual allegations of the Third Amended Complaint." (Interrogatory No. 15).

Defendants thus sought both identification of the foreign trademark filings that OSA alleged were made in bad faith or otherwise purportedly in violation of law, and the documents relating to those filings and OSA's claims of injury therefrom.

### 2.    OSA's First Responses to OEI's Discovery Requests

At OSA's request, OEI provided OSA an extension to January 16, 2004 to respond to the discovery requests served on OSA in November, 2003. Nonetheless, in its initial response to defendants' document requests, dated January 16, 2004 and received by counsel for OEI on January 22, 2004, OSA provided *no* documents relating to its allegations of bad faith foreign trademark filings.[2] Instead – notwithstanding that it had placed foreign trademark filings at issue in this case – OSA objected to OEI's requests on the ground that the requests sought information "extraterritorial" to the United States. (*See* Smart Decl. ¶ 6; OSA Response to Document Requests 18, 19, 21, 23, 24 (Smart Decl. Ex. D)). OSA's interrogatory responses were similarly non-responsive. Thus, the responses to Interrogatories 13 and 15 asserted various objections and provided no substantive responses at all. (OSA Response to Interrogatories 13, 15 (Smart Decl. Ex. E)). In response to Interrogatory 12, which specifically asked OSA to identify the foreign trademark filings that it alleged were made by defendants in bad faith, OSA responded only with

---

[2]    OSA appears to have abused even the extension provided by defendants. Although the certificate of service for its discovery responses was dated Friday, January 16, the envelope containing the responses was not postmarked by the Postal Service until Tuesday, January 20, and OSA did not actually receive the responses until Thursday, January 22. (Smart Decl. ¶ 5 and Ex. D).

"registrations include, but are not limited to" two trademark registration in the Benelux. (OSA Response to Interrogatory 12 (Smart Decl. Ex. E)). Even with respect to these two foreign registrations, OSA provided no documents.

After further discussions by the parties, OSA served supplemental document and interrogatory responses in which it maintained its objections to the production of documents relating to its allegations of foreign trademark filings, and failed to provide any additional information regarding such filings by way of interrogatory response. (*See* Smart Decl. ¶ 7; OSA Supplemental Responses to Document Requests ¶ 18, 19, 21, 23 (Smart Decl. Ex. F); OSA Supplemental Responses to Interrogatories ¶ 12, 13, 15 (Smart Decl. Ex. G)). After still further discussions between the parties, OSA continued to refuse to produce any documents relating to its allegations regarding foreign trademark filings, any alleged impact on commerce in the United States or Connecticut, or OSA's alleged injury resulting from such filings, or to identify the foreign filings that OSA contended were made in bad faith. (Smart Decl. ¶ 8).

### 3.  The February 27, 2004 Telephonic Conference and the Court's First Order that OSA Produce Documents Relating to Foreign Trademark Filings

On February 27, 2004, defendants sought an order directing OSA to produce documents and other discovery regarding those foreign applications that OSA alleged were blocked by OEI's actions and those applications or registrations of OEI that OSA contended were filed in bad faith or with fraudulent intent. Defendants emphasized in their request the upcoming Rule 30(b)(6) deposition of OSA's witness Ms. Sauser Rupp, scheduled for March 16-17, and the need for production of the foreign documents before that deposition. (Smart Decl. ¶ 9).

The Court ordered that OSA initially had to provide defendants with at least a list of foreign filings that OSA contended were at issue in this case. The Court expressly ruled that if OSA chose to pursue these "serious" allegations based on worldwide trademark activity, it would

be required to provide "fullsome discovery" regarding foreign filings and OSA's rights in the countries at issue. Accordingly, the Court ruled that OSA was obligated, after production of the list of foreign filings, to produce upon defendants' request documents relating to those foreign filings and OSA's alleged injuries relating to those filings. (Smart Decl. ¶ 9).

**4.    OSA's Belated Identification of 26 OEI Foreign Trademark Applications and Registrations That it Contends Were Filed in Bad Faith**

On March 8, 2004, a week before Ms. Sauser Rupp's deposition – and months after defendants' November 2003 discovery requests – OSA finally identified additional foreign filings of OEI that OSA apparently contends were made in violation of CUTPA and Section 43(a) of the Lanham Act. Thus, on March 8 defendants received a list of 25 additional pending OEI trademark applications in the EC, Israel, Canada, the U.K., as well as one United Kingdom registration owned by OEI. (Smart Decl. ¶ 10 and Ex. H).[3] Twenty of the 25 foreign trademark applications identified by OSA have been *approved* by the applicable foreign trademark authorities and are subject to opposition proceedings brought by OSA, while the other five are pending approval before the respective authorities. (Smart Decl. ¶ 10 and Ex. H). The one trademark registration identified by OSA is the subject of a pending invalidation proceeding filed by OSA. (Smart Decl. ¶ 10 and Ex. H).[4] Those opposition and invalidation proceedings are currently under consideration by the respective authorities in the foreign countries where the applications have been approved and are pending. (*Id.* ¶ 10).

---

[3]    Although the list received on March 8 amounted to 143 pages, most of that consisted of basic filing information (mark applied for, goods and services applied for, application date, etc.) translated into various European Community languages.

[4]    It is unclear whether OSA still contends that the OEI trademark registrations in Benelux, identified in OSA's interrogatory responses, were filed in bad faith; those registrations were not on OSA's March 8 list, and, as set forth below, OSA has not produced any documents relating to those registrations.

After reviewing this information, defendants' counsel promptly advised OSA that they had very few documents relating to the applications (and related oppositions) identified by OSA, and had no ability in a matter of days to obtain the necessary files from OEI's foreign trademark prosecution counsel, and had no access to OSA's own documents relating to such applications and oppositions. (Smart Decl. ¶ 11). Although OEI is the applicant with respect to the applications identified by OSA, OEI itself has few files relating to these applications and the related oppositions, because its foreign trademark prosecution work is handled by a variety of foreign trademark agents located abroad. (Riggs Decl. ¶ 8). Indeed, OEI could only guess at what OSA is alleging was done in bad faith with respect to OEI's foreign trademark filings, which involve not only trademark applications but also affidavits and evidentiary submissions. OEI had no way of knowing, and OSA did not identify, which of these submissions OSA alleges were made in bad faith. Thus, it is no answer to assert, as OSA has, that OEI could simply get the files itself. First, it was simply impossible for it to obtain any significant portion of the underlying documents in the one week between OSA's belated list of foreign proceedings and Ms. Sauser Rupp's deposition. (Smart Decl. ¶ 11). As Sauser Rupp herself explained, OSA did not even have all of the files relating to the CTM opposition in its offices; they were at the offices of OSA's London trademark counsel. Moreover, OEI's counsel is advised that the documents relating to the pending foreign applications and oppositions amounted to hundreds of boxes of documents, including, as Sauser Rupp testified, not only OEI's applications and OSA's notices of opposition, but also pleadings and evidence filed by the parties in each opposition proceeding – none of which was produced by OSA. (Smart Decl. ¶ 11; Sauser Rupp. Tr. 494-97). And, even if the documents could be obtained in time, OEI would not know which of the numerous documents to focus on and examine Ms. Sauser Rupp on because of OSA's failure to

identify specific filings that it contends were made in bad faith. As the Court recognized in its conference calls with the parties, defendants should not be required to guess the filings that OSA contends show bad faith, and, to the contrary, were entitled to discovery responses identifying those filings and providing all the documents relating thereto. And, of course, defendants have received no documents that pertain to any alleged impact on United States or Connecticut commerce purportedly resulting from foreign trademark filings.

5.    **The March 12, 2004 Telephonic Conference and the Court's Second Order that OSA Produce Documents Relating to Foreign Trademark Filings**

When OSA refused defendants' requests that it produce documents relating to the foreign proceedings that it had belatedly identified, defendants again sought the Court's assistance in securing these highly relevant documents. (Smart Decl. ¶ 12). In a conference call with the parties on March 12, the Friday before the commencement of Ms. Sauser Rupp's deposition on March 16, the Court ruled that OSA was required to provide defendants with all documents in its control relating to the foreign trademark filings it contends were made in bad faith. In particular, the Court held that "it seems to me it is appropriate for them [*i.e.* defendants] to put the onus on you [*i.e.* OSA] to identify which were the sham filings in those cases and why and then also, it seems to me, you are going to have to turn over your documents with respect to those cases, including the non-publicly filed documents . . . ." (3/12/04 Tr. at 11; Smart Decl. ¶ 12).

6.    **OSA's Production of a Handful of Additional Documents Midway Through the Deposition of Ms. Sauser Rupp**

Defendants commenced the deposition of Ms. Sauser Rupp, the 30(b)(6) designee for most of the issues relating to OSA's claims, on March 16, 2004, without the benefit of any documents from OSA relating to its foreign filings claims other than the list of some 25 foreign trademark applications and one registration that OSA had provided the week before. (Smart Decl. ¶ 13). Late in the day on March 16th, near the end of the first day of Ms. Sauser Rupp's

deposition (which went until 6:00 p.m.), OSA produced the notices of opposition that relate to 14

of the 25 applications that OSA first identified on March 8. (Smart Decl. ¶ 13).

However, as Ms. Sauser Rupp admitted in her deposition and as discussed more fully

below, these documents consisted exclusively of some opposition notices filed by OSA, and did

not include a single document filed by OEI. (Sauser Rupp Tr. 497-502). OSA failed to produce,

for example, OEI's trademark applications, the publication for opposition of such applications

(indicating their approval by the European trademark examiners), the pleadings of OEI

answering OSA's notices of opposition, the evidentiary submissions of both sides, which are

voluminous (consisting of in some cases of five or more boxes of evidence) or any subsequent

filings by way of reply or sur-reply. (Sauser Rupp Tr. 497-502; Smart Decl. ¶ 13). Nor did OSA

produce any documents, as defendants had repeatedly requested, relating to cancellation of any

foreign applications or registrations on which OSA has relied, relating to any alleged injury to

OSA as a result of OEI's applications, or relating to any purported effect on United States or

Connecticut commerce. Moreover, OSA provided *no* documents, not even its opening pleadings,

with respect to a number of foreign applications that OSA claims are at issue, including any of

the OEI trademark applications in the United Kingdom, Israel and Canada. (Smart Decl. ¶ 13).

### 7.    The Relevance of Foreign Trademark Proceedings and of the Missing Foreign Documents to OSA's Claims

OSA's foreign filings claims ask the Court to hold that trademark applications filed by

defendants abroad were made in bad faith or without a legitimate basis, so as to block OSA's

own applications and injure OSA. In order to understand what this Court is being asked to do, it

is necessary to review briefly the trademark application process in, to take as an example one

foreign jurisdiction at issue here, the European Community ("EC"). OSA has identified as bad

faith filings 16 CTM applications that OEI has filed since 1996 with the EC's Office for

Harmonization in the Interior Market ("OHIM"), the EC equivalent of the Patent & Trademark Office. OHIM is located in Alicante, Spain and grants CTM registrations that provide certain trademark rights in approximately 15 EC member states. Thus, it is possible to use one filing at OHIM to obtain certain trademark registration rights in all EC member states. A CTM application can be made without any prior use of the mark and without asserting a good faith intent to use the mark. (Sauser Rupp Tr. 482-83, 486). Once the application is filed, an OHIM examiner reviews it and compares it to existing registrations and applications on file with OHIM and national trademark offices of the various member states. If the examiner determines that the mark is not confusingly similar to any previously registered mark or previously filed pending application for similar goods or services, the examiner approves the mark for publication.

Unless another individual or company opposes the application after publication, the application will be granted and OHIM will issue a CTM registration. If another individual or company believes that a mark that is published for opposition is confusingly similar to one of its CTM marks, or to a mark that it has registered in the national trademark registry of any member state, it can oppose registration of the mark and rely on CTM and member state registrations for its opposition. (Sauser Rupp Tr. 484-85). It can also oppose an application on the ground that it was filed in bad faith under EC law, and, as shown in Exhibits D, E and F to the Riggs Declaration, the standard for determining bad faith is an evolving issue under EC law. Tellingly, however, Ms. Sauser Rupp admitted that, prior to filing its complaint which alleges that defendants engaged in bad faith foreign trademark filings, OSA did not consult with anyone authorized to practice before OHIM to determine whether OSA's allegations of bad faith filings had a reasonable basis. (Sauser Rupp. Tr. 482).

The OHIM then conducts an opposition proceeding in which the opposer files a notice of

opposition listing the prior CTM and member state registrations and applications on which it relies, as well as argument and evidence in support of its opposition. The applicant, whose mark has been preliminarily approved, files arguments and its own evidence in response. The examiner can also permit additional filings by both sides.

Thus, as we illustrate below with respect to just one of OSA's CTM oppositions that was discussed in Sauser Rupp's deposition, adjudication of OSA's claims regarding foreign filings would require this Court to determine, *inter alia*, the parties' respective rights to the OMEGA marks in foreign countries, the validity of OEI's *currently pending* trademark applications in those countries (including whether they satisfied the applicable foreign requirements for trademark applications), the merits of OSA's *currently pending* oppositions to many of those OEI applications, including the validity of the underlying foreign trademark registrations on which OSA's oppositions are based (some of which are themselves in litigation), and whether the goods and services covered in OEI's applications are sufficiently similar to goods in which OSA has rights so that OSA might be "blocked" or injured by defendants' applications. Moreover, if it decides that OSA is right in these foreign proceedings, the Court then must decide if OEI's position was so objectively baseless so as to constitute bad faith. Central to these determinations are the numerous documents concerning the parties' foreign trademark applications, registrations and related proceedings, virtually none of which OSA produced.

### 8.    Ms. Sauser Rupp's Deposition Testimony and the Numerous Foreign Applications and Registrations Relevant to OSA's Claims

Despite lacking most of the relevant documents relating to OSA's claims of bad faith foreign trademark filings, defendants' counsel attempted to examine Ms. Sauser Rupp with respect to the documents that OSA had produced the night before. That examination demonstrates (1) the total inadequacy of the production of documents by OSA in this case and

(2) why this Court, consistent with the case law, should not attempt to adjudicate the validity of foreign trademark registrations and applications.

Thus, during the second day of Ms. Sauser Rupp's deposition, defendants marked as Defendants' Exhibit 101 one of the 14 CTM notices of opposition that OSA had produced at the end of the first deposition day. (*See* Smart Decl. Ex. J). Exhibit 101, which consists of some 80 pages, is the notice of opposition filed by OSA to CTM Application No. 174458 filed by OEI on April 1, 1996 for the mark OMEGA for goods and services in International Classes 7, 9, 11, 16, 35, 41 and 42. (Smart Decl. Ex. H at 12, 41). As Ms. Sauser Rupp admitted in her deposition, Exhibit 101 only contains OSA's notice of opposition; it does not contain the notice of allowance of the mark by the CTM, any evidentiary submissions, briefs or other statements made by OSA in support of the opposition, or any of the filings that OEI made in connection with the opposition (which include OEI's own CTM and member state applications and registrations which, it contends, grant it superior rights to certain goods and services). (Sauser Rupp Tr. 495-498). Indeed, it does not even contain a copy of OEI's application as it is not necessary to include a copy of the application that is being challenged when filing the notice of opposition. (*Id.* at 501). Thus, the documents that OSA produced relating to this opposition do not include a *single statement* made by OEI in connection with the opposition proceeding. (*Id.* at 498).

Ms. Sauser Rupp further testified that Exhibit 101 is by no means the entire file relating to this particular opposition, that she does not have the entire file in her offices in Switzerland and that the complete file is in London in the custody of her U.K. trademark agents who are handling this particular CTM opposition. (*Id.* at 494-97). Moreover, she could not recall what arguments OEI had made in opposition to OSA's filings, and acknowledged that OEI probably has filed CTM or member state trademarks of its own which OEI contends grant it superior

rights to OSA in the EC. (*Id.* at 511-12). However, OSA produced no materials concerning the prior applications and registrations on which OEI relied in opposition to OSA's filings, or any other documents concerning related foreign disputes between the parties. This is significant because, for example, in another CTM proceeding, OEI defeated OSA's attempt to obtain a CTM registration for the mark OMEGA ELECTRONICS covering, *inter alia*, goods for the measurement of time and distance in science and industry, because of OEI's prior application to register the mark OMEGA for similar goods. (*See* Riggs Decl. ¶ 6 and Ex. B).

Ms. Sauser Rupp further testified that the opposition in Exhibit 101 was based on *20* trademark applications and registrations of OSA for OMEGA marks in the CTM and in EC member states. (Sauser Rupp Tr. 508). The 20 trademark applications and registrations include CTM applications, trademarks in Denmark, Finland, the United Kingdom and Ireland, and international trademarks registered under the Madrid Protocol covering Germany, Spain, France, Italy, Austria, Portugal, and Benelux, and a Swedish trademark. (*Id.* at 508-11).

The notice of opposition indicates that OSA is opposing OEI's CTM Application No. 174458 to the extent that the application seeks to cover various devices for measuring time. (Smart Decl. Ex. J at 2191). The notice of opposition, however, fails to acknowledge that OEI's recitation of goods in CTM Application No. 174458 is limited in class 9 to use in "science and industry." (Sauser Rupp. Tr. 503-04; Smart Decl. Ex. J at 2191). This is highly significant because OEI has long sold engineering products to scientific and industrial customers, including period timers which are used to measure and control temperature, humidity, pressure, strain, force, flow, level, etc. (Smart Decl. ¶ 2 & Ex. A). OSA, in contrast, has sold watches to consumers, and sports timing devices for use in sporting events, but has not sold timers for use in science and industry. (Sauser Rupp Tr. 65-66, 163-64, 167-69). OSA appears to contend that its

trademark rights for the OMEGA mark for timing devices extend to science and industry, even though OSA has never made sales of timers to science and industry and OEI has for many years.

Hence, the entire issue of whether OEI has a right to seek trademark protection for timers that it has long sold under the OMEGA mark, as it seeks to do in CTM Application No. 174458, is a hotly disputed one, with many litigations between the parties currently pending around the world on this very issue. (Riggs Decl. ¶ 4). Indeed, as Ms. Sauser Rupp acknowledged, there are existing trademark oppositions and cancellations ongoing with respect to many of the 20 applications and registrations on which OSA itself relies for the one opposition in Exhibit 101. (Sauser Rupp Tr. 513-16, 519, 539-40, 564). However, as Ms. Sauser Rupp also acknowledged, OSA does *not* own any CTM registrations covering goods for "checking, measuring time and distance" for use in either the fields of sports or science and industry! (Sauser Rupp. Tr. 514). Given this lack of prior CTM registration rights by OSA, it is not surprising that the first two CTM applications on which this particular OSA opposition (*i.e.* Ex. 101) is based are themselves subject to two other opposition proceedings brought by OEI against OSA.  (*Id.* at 516).

Moreover, significantly, OEI has successfully obtained a partial *cancellation* of one of the U.K. OMEGA marks on which OSA relies in this opposition on grounds of non-use. (Riggs Decl. ¶ 5 & Ex. A).  Thus, OSA relied in this opposition on its U.K. Registration No. 669057 for the OMEGA mark for "measuring and signalling instruments and apparatus." (Sauser Rupp. Tr. 530-33; Ex. 101 at 2129).  However, in proceedings in the United Kingdom last year, the High Court of Justice, Chancery Division, affirmed a decision partially *revoking* OSA's U. K. Registration No. 669057 and limiting the goods in that registration to "measuring and signalling apparatus and instruments, *all for use in sport*." (Riggs Decl. ¶ 5 & Ex. A) (emphasis added). This limitation of the covered goods to "use in sport" clearly undermines OSA's CTM trademark