IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A.,<br><br>            Plaintiff,<br><br>v.<br><br>OMEGA ENGINEERING, INC.,<br>OMEGA SCIENTIFIC, INC., and<br>OMEGA PRESS, INC.,<br><br>            Defendants.<br><br>OMEGA ENGINEERING, INC.,<br><br>            Counterclaim-Plaintiff,<br><br>v.<br><br>OMEGA, S.A. and<br>THE SWATCH GROUP LTD.,<br><br>            Counterclaim-Defendants. | Civil Action No.:<br>3:01 CV 2104 (MRK) |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR AN ORDER OF PRECLUSION OF EVIDENCE

Plaintiff, Omega, S.A., ("OSA"), by and through its undersigned counsel, hereby submits this Opposition to Defendants' motion for judgment on the pleadings and for an order of preclusion of evidence with respect to any foreign trademark filings.

I.  **SUMMARY OF ARGUMENT**

Defendants, for the second time, are requesting dismissal of Plaintiff's claims as a matter of law on the allegation of lack of subject matter jurisdiction and failure to state a claim for relief. This Court, exactly one year ago, denied Defendants' motion for dismissal on these same grounds. *See April 22, 2003 Transcript at 36-37, attached hereto as Exhibit A.* Despite Judge Underhill's prior ruling, Defendants are now asking the Court to revisit these same issues.[1] In this second motion to dismiss, Defendants rely on the same body of case law, including the 1956 decision of *Vanity Fair* that already was rejected by Judge Underhill. *Exhibit A, at 32, 33, 35 and 39, and Def. Motion at 1, 24, 25, and 27.* This case does not fall within any of the limited exceptions that allow a court to disregard the "law of the case" and Defendants' motion must, therefore, be denied. The fact that this case has subsequently been reassigned from Judge Underhill does not give Defendants the right to reargue the same issues of law that have already been adjudicated by the Court.

In support of their motion Defendants, for a second time, mischaracterize the nature of Plaintiff's claims for unfair competition under the Lanham Act and the Connecticut Unfair Trade Practices Act ("CUTPA"). For example, Defendants insist that Plaintiff's complaint requires the Court to determine the validity of foreign trademark applications and registrations. As Judge Underhill already ruled, nowhere in Plaintiff's complaint does Plaintiff request this remedy, nor has Plaintiff otherwise represented that it would seek such relief. *Exhibit A, at 34-35.* Judge Underhill dismissed the same arguments Defendants are now making in this motion. Judge Underhill has ruled:

---

[1] Defendants never sought reconsideration of Judge Underhill's April 22, 2003 Order.

- ❖ I think certainly the [CUTPA] count can be read as saying that there was a misuse in commerce of the registration process to preclude Omega S.A. from doing what it legitimately ought to be able to do in commerce, and this is an unfair trade practice in the sense that this is a course of conduct that your client has adopted and engaged in that unfairly precludes Omega from competing in the market place. *Exhibit A, at 28-29.*

- ❖ The way I read this [Lanham Act 43(a) Unfair Competition] count is that the central allegation is that the defendant's activities and the way that they file for trademark registration is that they shouldn't have filed for it, and in an effort to block the plaintiff from pursing its business constitutes unfair competition. I don't understand the cases cited by the defense to preclude that claim. *Exhibit A, at 39.*

- ❖ Well I didn't understand that again to be asking the court to invalidate a foreign trademark. I think what they are suggesting is that the activities in registering foreign trademarks are being undertaken for similar unfair purposes as those in the domestic trademark registration arena; that is, to preclude fair competition. *Exhibit A, at 31.*

- ❖ How, in other words, does the fact of the issuance of [a] foreign trademark insulate otherwise false or deceptive activity from the purview, for example, of CUTPA? *Exhibit A, at 33.*

Responding to Omega Engineering's characterization of Omega SA's arguments the first time Omega Engineering moved to dismiss, Judge Underhill also stated to Omega Engineering's counsel:

- ❖ I understand that's what *you* think they are doing. It's not what I think they are doing. [emphasis added] *Exhibit A, at 35.*

Plaintiff's allegations that Defendants' foreign trademark filing practices support a finding of bad faith is also supported by a prior ruling between the parties. Judge Janet Bond Arterton, upon

considering facts and arguments from both sides in a motion for Summary Judgment, in a previous dispute between the parties, held that:

> The substance and timing of [Defendants' Benelux] registrations is suspicious. *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112, 134 (D. Conn. 2002).

Finally, Defendants' allegations of discovery abuse are simply wrong, and do not warrant sanctions of any manner. Defendants seek to preclude certain evidence because of an allegation that certain documents were not timely provided by Plaintiffs to Defendants that are relevant to Defendants' own foreign trademark application filings  The facts are that Plaintiff timely identified the entire universe of relevant bad-faith foreign filings, and has since produced all non-privileged relevant documents that are otherwise not available to Defendants[2].

Nevertheless, Defendants' discovery allegations are completely premature because at the time Defendants filed this motion there were two weeks left in the scheduled discovery period, the parties had only completed one of about ten scheduled depositions, and Defendants themselves continued to produce documents and written discovery responses as late as April 19, 2004. Thus, even after the Court specifically instructed the Parties to resolve discovery disputes themselves, Defendants once again prematurely race to the Court with unwarranted discovery complaints, while they themselves have not complied with all of their discovery responsibilities and before efforts to resolve disputes are complete. Time and again, Defendants have forced unnecessary and/or premature court intervention to consider disputes which do not exist in fact. In the form of this motion, Defendants

---

[2] Defendants concede that these documents are already in their possession and the possession of their own foreign agents. Def's Mot. at 12.

now raise again issues already decided by this Court, disregarding both the underlying facts and prior court rulings.

## II.     LEGAL STANDARD

The standard for granting a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for granting a motion to dismiss under Rule 12(b)(6). *Burnetter v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cadle Co. v. Drubner*, 303 F.Supp.2d 143, 146 (D. Conn. 2004). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cadle*, 303, F.Supp.2d at 146. *See also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D. Conn.1999) (*quoting, Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)); *Cadle,* 303, F.Supp.2d at 146.

"The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (*citing, Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683); *Cadle,* 303, F.Supp.2d at 146.

III. **DISCUSSION**

A. <u>Plaintiff's Claims Have Been Properly Pled, and, as Judge Underhill Has Already Ruled, This Court Has Jurisdiction</u>

Defendants have elected to bring this Motion under Rule 12, as a motion on the pleadings. As such, the court need only consider the legal feasibility of Plaintiff's claims. As already decided by Judge Stephan Underhill, Plaintiffs claims by themselves are sufficient to support the legal cause of action asserted in the Complaint, including both Plaintiff's claims for unfair competition and under CUTPA. Defendants' attempts, in the middle of discovery, to assert new facts to support their motion are simply not relevant to the underlying legal basis for Plaintiff's claims. Moreover, these same arguments have already been made in this case, and Judge Underhill has already concluded that this Court has jurisdiction to hear these claims. The Defendants have produced no new intervening case law that would warrant reversing Judge Underhill's ruling. Defendants' reliance on factual references outside the pleadings are not appropriate for a Rule 12 motion.

B. <u>The Law of the Case Doctrine Precludes Defendants From Relitigating The Same Grounds for Dismissal</u>

On January 31, 2003, Defendants filed a motion to dismiss, arguing *"this Court lacks jurisdiction to adjudicate any claims challenging defendants' action with respect to the application to register or the registration of OMEGA marks in foreign trademark offices."* Defendants' Motion to Dismiss at 2-3. With unmistakable similarity, Defendants now repeatedly argue the same point once again, namely *"the Court lacks subject matter jurisdiction to . . . adjudicate the validity or good faith of filings made with foreign trademark authorities."* Def. Brief at 1.

This issue of law has already been decided by this Court in this case. Judge Underhill recognized that Defendants have mischaracterized Plaintiff's claims. As Judge Underhill ruled in this matter on April 22, 2003. Plaintiff is not "asking the court to invalidate a foreign trademark. I think what they are suggesting is that the activities in registering foreign trademarks are being undertaken for similar unfair purposes as those in the domestic trademark registration arena; that is, to preclude fair competition." *Exhibit A, at 31*.

During the hearing before Judge Underhill, Defense counsel readily admits that tortious conduct that occurs, for example, in France, and harms the Plaintiff in Connecticut, may be sufficient to support a CUTPA claim. *Exhibit A, at 34-35*. In other words, Plaintiff has sufficiently plead a sufficient cause of action to defeat a Rule 12 motion. This court is not being asked at this time to rule whether the Defendants have actually violated the provisions of CUTPA, which is a factual question that should not be determined by the Court, especially not on a simple motion to dismiss. Thus, in denying Defendants' earlier motion to dismiss on these same grounds, Judge Underhill clearly recognized that based on the pleadings: "I can't assume that there is no impact in Connecticut sufficient to permit that activity to be part of a CUTPA claim." *Exhibit A, at 37*.

The fact that this case has subsequently been transferred from Judge Underhill to Judge Kravitz, does not give Defendants the right to reargue the same issues of law that have already been adjudicated by Judge Underhill. In this second motion to dismiss Defendants rely on the same body of case law, including the 1956 decision of *Vanity Fair* that was originally argued before Judge Underhill. *Exhibit A, at 32,33, 35 and Def. Motion at 1,24,25,27*. Judge Underhill has already considered this body of law and his ruling expressly finds "I don't understand the cases cited by the defense to preclude [Plaintiff's CUTPA] claim." *Exhibit A, at 39*.

"Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir.1982); *Delta Traffic Service, Inc., v. Oneida Motor Freight, Inc.* 1989 WL 122401 (D. Conn., 1989) *1.

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Company, Durkee Famous Foods Division*, 327 F.2d 944, 953 (2d Cir., *cert. denied*, 377 U.S. 934 (1964); *Delta Traffic Service, Inc.*, 1989 WL 122401 at *1. Departing from this general rule would only be justified in cases such as where "the evidence on a subsequent trial was substantially different, [the] controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967); *Delta Traffic Service, Inc.,* 1989 WL 122401 at *1.

As Defendants have presented no new law, and any alleged new facts are irrelevant because Defendants have requested dismissal solely on the pleadings, Defendants' motion should be dismissed based on the "Law of the Case" doctrine.

Even if this Court chooses to disregard the precedent set by Judge Underhill and Judge Arterton, Plaintiff's claims should not be dismissed for failure to state a cause of action. The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Conn. Gen Stat.*, § 42-110b(a). The statute is broadly worded, and equitable in nature, and encompasses a wide variety of activities. The question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of a particular case. *Jacobs v.*

*Healey Ford-Subaru, Inc.,* 231 Conn. 707, 726, 652 A.2d 496 (1995). As the Second Circuit has summarized, the elements of CUTPA include:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].

*Sporty's Farm v. Sportsman's Mkt., Inc.*, 202 F.3d 489, *501, (2d Cir. 2000) (internal quotations and citations omitted), *cert. denied* 530 U.S. 1262 (2000).

Defendants argue at length that Omega S.A.'s CUTPA claim should be dismissed because "by the plain terms of the statute, it simply does not apply to the application for a trademark registration at the PTO or at a foreign trademark office." *(Defs'. Memo.,* at 17*)*. Defendants' assertions are logically defective on several grounds.

First, Defendants are located in this District and offer for sale goods in this state that bear the complained of OMEGA marks which are the subject of Omega Engineering's applications and registrations alleged to infringe Plaintiff's rights. What is relevant to the statute is that Defendants' engage in complained of commercial activities in this state. *Conn. Gen. Stat.,* § 42-110a(4). Obviously, Defendants do not distribute or sell trademark applications or registrations in this District. They do, however, distribute goods and services under the OMEGA mark that are the basis of the complained of OMEGA trademark applications and registrations.

Second, Defendants' invocation of "black letter law" as it relates to this Court's lack of jurisdiction over foreign trademark registrations, as well as its discussion regarding issues of comity, is both insightful and correct --- although it has absolutely nothing to do with Omega S.A.'s CUTPA

count or the CUTPA violations alleged therein. In fact, Omega S.A.'s CUTPA claims aver a wide variety of unscrupulous practices undertaken by Omega Engineering and its affiliates, Omega Scientific, and Omega Press. Plaintiff's CUTPA claim, on its face, is not limited to Defendants' unscrupulous acts in Connecticut that have had an impact overseas.

CUTPA extends to acts that take place in this state or are directed from Connecticut to other locations, either nationally or internationally. Defendants' unethical, oppressive, and unscrupulous acts, which caused substantial injury to consumers and competitors, took place in, and originated from, Connecticut. While the final geographical destination where these acts are directed is relevant, a violation of CUTPA need not necessarily occur in Connecticut, but instead, the violation must "be tied to a form of trade or commerce intimately associated with Connecticut." *H&D Wireless Ltd. Partnership v. Sunspot,* Civil No. H-86-1026 (D. Conn. 1987).

In *Uniroyal Chem. Co, v. Drexel Chem. Co.,* this Court considered, among other things, whether actions taken to "obtain registration from the U.K.'s Pesticide Safety Directorate ("PSD") [for] a pesticide registration for their MH product" falls within the purview of CUTPA. *Uniroyal Chem. Co, v. Drexel Chem. Co.,* 931 F.Supp. 132, 140 (D. Conn. 1996). Identifying the "broad and sweeping language of CUTPA" the Court recognized that "CUTPA does not necessarily require that a violation occur within Connecticut as long as it is tied to a form of trade or commerce intimately associated with Connecticut." *Id.* The parallel between the foreign registration in *Uniroyal* and the foreign filings at issue in this case clearly support Plaintiff's CUTPA claims.

Thus, until discovery is complete Plaintiff should not be compelled to identify the factual support for its claims. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Miller v. Wolpoff &*

*Abramson, L.L.P.,* 321 F.3d 292, 303- 04 (2d Cir.2003) (*citing Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000)); *see also Applera Corporation v. M.J. Research, Inc.* 2004 WL 316492 (D. Conn. 2004) ("a non-moving party is entitled to adequate discovery before it can be forced to make a showing sufficient to establish the existence of an element essential to its case").

Plaintiffs have alleged that Defendants systematically placed a stranglehold on the OMEGA marks throughout the world in a bad faith attempt to frustrate and hinder Plaintiff's trademark rights. The Court must treat these allegations as true in evaluating this Rule 12 motion. The Court may not rely on factual references submitted by Defendants[3]

For all the above reasons, dismissal of Plaintiff's Unfair Competition claims is unwarranted and Defendants' motion should be denied.

C.     **Preclusion of Evidence Under Rule 37 is not Appropriate**

Federal Rule of Civil Procedure 37 grants the Court the power to preclude evidence when a party has failed to obey an order to provide discovery, resulting in prejudice to the opposing party. Fed. R. Civ. P. 37 (*see also, March 12, 2004 Tr. at 21,* "before you make that motion, you better look at the Second Circuit case law on this because, you know, you really would have to make a demonstration of prejudice"). This Rule is completely inapplicable to the facts of this case because

---

3 Defendants have elected to proceed under Rule 12, rather than Fed. R. Civ. P. 56. It would be duplicative and wasteful to convert at this point, because such conversion would require further briefing; the parties would then have to demonstrate with affidavits, and other supporting evidence that a genuine issue of material fact exists regarding Defendants' unfair trade practices. *Russo v. Glasser,* 279 F.2d 136, 146 (D. Conn. 2003) (If motion to dismiss is converted to summary judgment motion, court must allow the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56). In fact, for medical reasons, Defendants have requested a temporary postponement of the deposition of the witness who arguably has the most knowledge of the issue at hand in this motion, i.e. foreign filings, Dr. William Drucker.

Plaintiff has not failed to obey any discovery order, nor have the Defendants proven any prejudice. During the telephone hearing of March 12, 2004 the Court ordered Plaintiff to: (1) identify "each of the proceedings in which the bad faith is alleged so that they know what the universe is"; and (2) provide those non-publicly filed documents and other documents to which OEI would not have access Tr. at 11. Plaintiff has complied with both of these instructions: (1) they have identified the 25 filings that represent the universe of bad faith foreign filings; and (2) have produced all, non-privileged documents that Defendants wouldn't have access to. In fact, Plaintiff went a step further, and provided a collection of materials that is a representative sample of documents related to the bad-faith filings, despite the fact that such documents were already within Defendants' control.

The preclusion of evidence and striking portions of the pleadings, like a dismissal, are harsh sanctions that should be reserved for extreme cases. *Almonte v. Coca-Cola Bottling Co.*, 169 F.R.D. 246, 249 (D. Conn. 1996) *citing Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1067 (2nd Cir. 1979); *Update Art. Inc. v. Modiin Pub.*, Ltd., 843 F.2d 67, 71 (2nd Cir. 1988) ("the harshest sanctions available are the preclusion of evidence and dismissal of the action"); *Outley v. City of New York*, 837 F.2d 587, 590 (2nd Cir. 1988) (preclusion of testimony is "an extreme sanction in any case . . .").

In the Third Amended Complaint, Plaintiff alleges that Defendants are responsible for unfair trade practices as a result of filing for foreign trademark registrations in a bad faith and unfair effort to thwart Plaintiff's own trademark maintenance and registration efforts. In response to Defendants' discovery requests, and prior to the deposition of Plaintiff's 30(b)(6) witness, Plaintiff identified all 25 of Defendants' foreign filings that represents the full universe of foreign filings that Plaintiff may rely on in proving its case. The Defendants readily concede that Plaintiff provided this list and

provided documents evidencing the filing details of these applications. Def. Mot. at 36. Thus, well in advance of the 30(b)(6) deposition, Defendants had full knowledge of every foreign application on which Plaintiff intends to rely in proving this cause of action.

Defendants argue that they have somehow been prejudiced by Plaintiff's failure to produce additional documents related to these filings. The documents now sought by Defendants, however, are papers that were filed by the Defendants when they applied for these foreign registrations. These are documents that were generated by the Defendants, not the Plaintiffs. Trademark applications each comprise a generally closed universe of documents, and by identifying any particular application by means of its filing date, serial number/application number, and country, any trademark owner will know with full certainty the papers it has presented to and received from any national trademark office concerning a given application procedure. It is simply impossible for Defendants to demonstrate that they have been prejudiced, when Plaintiff has identified every relevant foreign application, a representative sample of the same, and all of these applications were filed and are in the possession of Defendants. The only responsive documents not produced by Plaintiff are either privileged, or documents that are already in the possession of Defendants.

Defendants in this very case, have recognized and in fact employed the same obvious and common sense approach for which they now seek relief from the Court. Defendants advised Plaintiff, in response to each and every one of Plaintiff's request for documents, that responsive documents have already been produced in Omega-I and II. *See, Exhibit B, Defendant OEI's Response to Plaintiff's First Request for Documents.* Relying on the fact that certain documents were already within the possession of Plaintiff, Defendants recognized that it need not produce materials having to do with disputes exclusively between these same two parties which were clearly

identified and of equal burden to either side to produce; as a result, OEI never produced such materials in this action. In contrast, Plaintiff has gone beyond merely identifying the bad-faith foreign filings, and have also produced a representative sample of documents that Defendants already possess. As all relevant filings have already been identified, and whatever additional documents Defendants seek are either privileged or already within Defendants' possession, they simply cannot demonstrate that they have been prejudiced in this matter, let alone that Plaintiff has violated the Court's Order. Thus, preclusion of any of these issues must be denied.

### D.    Mrs. Sauser Rupp Should not be Compelled to Reappear for Deposition

As discussed above Defendants' claims that they have somehow been prejudiced by Plaintiff's document production in this matter is completely baseless. Defendants had notice well in advance of Mrs. Rupp's deposition as to what foreign filings formed the basis of Plaintiff's complaint. In addition to relevant documents produced by Plaintiff, the Defendants already possessed the entire universe of documents related to these filings because they were the party who filed them. Defendants have already conducted four full days of depositions of Plaintiff's Rule 30(b)(6) representatives, including three witnesses whom Plaintiff has specifically brought over from Switzerland for this purpose.

## III. **CONCLUSION**

For the foregoing reasons, Plaintiff, Omega S.A. respectfully requests that Defendants' motion for Judgment on the Pleadings and for an Order of Preclusion, and for reappearance of Mrs. Sauser Rupp for deposition, be denied in its entirety.

Respectfully submitted
for Plaintiff/Counter Defendants,

By: _____
James R. Hastings (CT 23521)
Jess M. Collen (CT 20918)
COLLEN *IP*
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941 5668
(914) 941-6091 (facsimile)
***Attorneys for Plaintiff***

Date: April 22, 2004

Of counsel:

Paul Fattibene, Esq.
Fattibene and Fattibene
2480 Post Road
Southport, Connecticut 06490
(203) 255-4400
(203) 259-0033 (facsimile)

## CERTIFICATE OF SERVICE

I, Brendan Reilly, hereby certify that Plaintiff/Counterclaim Defendant's, Omega S.A., Opposition To Defendants' Motion for Judgment on the Pleadings was forwarded to the following attorneys of record via overnight FedEx, as well as via facsimile:

Thomas Smart, Esq.
Kaye Scholer, LLP
425 Park Avenue
New York, New York 10022-3598
Fax: (212) 836-7154

Said service having taken place this 22nd day of April 2004.

_____
Brendan Reilly