IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br><br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA, S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS REQUEST TO EXTEND TIME TO FILE AN EXPERT REPORT**

Although Dr. Drucker, has voluntarily attended two full days of deposition testimony of one of Plaintiff's witnesses, and was recently observed voluntarily attending a court hearing in Europe[1], Defendants still maintain that he is not available for deposition.[2] The date for Dr. Drucker's testimony has now been extended well past the

---

[1] See letter from P. Llewellyn to J. Hastings dated April 28, 2004, attached to Plaintiff's opening brief.
[2] Plaintiff recognizes and is sympathetic to the fact that under certain circumstances, a witnesses' health may affect the scheduling of discovery deadlines. Plaintiff has obviously not conducted its own investigation of Dr. Drucker's health, but clearly he is neither bed ridden nor in a position where he cannot

fact discovery deadline, and Defendants now argue that Plaintiff should not be allowed an extension to identify an expert who can properly address Dr. Drucker's testimony. Noticeably absent from Defendants' entire Response is any argument as to how Defendant would be prejudiced by the extension requested by Plaintiff. This argument is absent because no prejudice exists. Only the Plaintiff stands to be prejudiced, because if this motion is denied Plaintiff will not be given the same opportunity afforded to Defendant, namely the right to identify its expert witnesses after conducting all of its essential noticed depositions. As fully developed below, and with particular attention to pages 4 to 7, in which Plaintiff recites three pages of answers in which OEI points to Dr. Drucker's clear role in the transactions and events that form the foundation of this lawsuit, Plaintiff's Motion should be granted.

### A. THIS LIMITED EXTENSION IS THE NATURAL RESULT OF THE EXTENSION ALREADY GRANTED TO DEFENDANTS

Defendant argues the Plaintiff has not shown good cause to modify the discovery schedule. The extension of expert disclosures directly related to Dr. Drucker's testimony is only the natural and just result of the postponement of Dr. Drucker's deposition, arising from the Court's ruling during a telephone conference with the parties.

### B. PLAINTIFF HAS DILIGENTLY COMMUNICATED WITH THE DEFENDANT AND THE COURT REGARDING DR. DRUCKER'S DEPOSITION

Plaintiff has diligently sought Dr. Drucker's appearance at deposition by corresponding with opposing counsel through written letters, emails, telephone calls, and

---

attend to his professional legal affairs. It should not go unnoticed that no evidence has been submitted by Defendants to the contrary.

on more than one occasion, raising this very issue with the Court. The extension request, now sought by Plaintiff, is directly related to Dr. Drucker's appearance at deposition. Thus, Defendant's allegations that this issue has not been discussed with opposing counsel and the Court is baseless.

Similarly, Defendants' argument that Plaintiff improperly waited until May 7th to request this extension is also without merit, since Defendants, as late as the filing of its Response on May 14th and through letters dated April 28th and 29th, were reporting on the still "unpredictable" condition of Dr. Drucker. [*See Def.'s Response at 5 ftn. 1; April 28 and 29 letters from Paul Llewellyn attached to Plaintiff's Reponse*]. Dr. Drucker's actual condition, to this day, remains, undocumented, and Plaintiff was certainly not in a position to accurately determine whether the requested extension would be needed. With regard to the scheduling of Dr. Drucker's deposition, Defendants still "hold all of the cards" and Plaintiff is left only guessing as to when this deposition may occur.

C.  ONLY PLAINTIFF STANDS TO BE PREJUDICED BY THIS MOTION

There is no just reason why Plaintiff should be prejudiced when it has diligently pursued taking Dr. Drucker's deposition within the prescribed fact discovery period, and has been unable to take such deposition solely because Defendants have expressed that although he is healthy enough to attend a two-day deposition of Ms. Rupp and appear at, at least one court conference, he is not in a position to sit for his own one-day deposition.

Defendants, unlike Plaintiff, had the opportunity to consider the testimony of all of their deponents. Judicial fairness requires that Plaintiff be afforded this same

opportunity.[3] Plaintiff is simply moving the Court to permit Plaintiff to have the benefit of Dr. Drucker's testimony before submitting its expert report(s).

Defendants' witnesses, have identified Dr. Drucker, in numerous instances, as the only individual with answers to the questions posed by Plaintiff:[4]

    a.    **See Exhibit A, Milton Hollander, 30(b)(6) witness for Omega Engineering, Inc., deposition, April 13-14, 2004**

    Q:    Did you provide Dr. Drucker with the list of these goods and services which are identified on page 1 of 3 in the document [file wrapper for trademark application no. 76/242,073] before you? . . .
    A:    I told him what I wanted and I don't know – I know I didn't personally write this down. I told him what I wanted on this page. And I don't know where these particular products came from because I'm not familiar with some of them, so I know I would not have given it to him.
    Q:    Do you know if anybody else at Omega Engineering, Inc. would have provided Dr. Drucker with this list of goods?
    A:    I don't believe anybody would. [p.361-62].

    Q:    Do you know if Omega Engineering, Inc. had an intention to use the Omega Euro symbol design mark in connection with typewriters as of the date it filed this trademark application.
    A:    No, and I don't know.
    Q:    What do mean by "No and I don't know"?
    A:    No, I'm saying I don't know who gave this instruction, and no, I don't believe so. I was the one that instructed Dr. Drucker. I don't know if anyone else spoke to Dr. Drucker. [p. 363-64]

    Q:    Do you know if Dr. Drucker was involved in the registration of the Benelux trademark registration for the trademark Omegatime.com?
    A:    I believe he would be involved in the trademark registration, but I don't know whether he would do it personally or through patent attorneys in the Benelux.

---

[3] Defendants' arbitrary statement that it would make Dr. Drucker available for only two <u>hours</u> in London, is simply absurd, especially in light of the fact that Defendants have recently argued that the two full <u>days</u> of deposition of OSA's legal counsel, Christiane Sauser-Rupp, was insufficient, and instead they have requested that the Court Order Ms. Rupp to reappear for "<u>several more days</u> of deposition." Def.'s Motion on Pleadings at 40.
[4] The relevance of Defendants' improper trademark filings has been extensively briefed; see, Plaintiff's Opposition to Defendants' (first and second) Motion on the Pleadings.

Q:      Do you know if Dr. Drucker was involved in the registration of the trademark in Benelux Omegawatch.com?
A:      Trademark he would be involved with. [p. 196].


Q:      Do you recall the extent of Dr. Drucker's involvement in the registration of the trademark in Benelux Omegawatch.com?
A:      He would do whatever is legally required. [p.196-97].


b.      **See Exhibit B, Mrs. Hollander, President of OEI, deposition April 19, 2004**

Q:      Do you know if Omega Engineering had objected to this particular registration which has been marked as B. Hollander Exhibit 9, at any point between 1970 and 2000?
A:      I have no idea. That would be Dr. Drucker that would know. [p. 142]


Q:      Is Dr. Drucker involved in the monitoring of trademarks on behalf of Omega Engineering, Inc.?
A:      He would be involved I believe . . . [p.146]


Q:      And reading along on the first page of B. Hollander exhibit 4, do you see it says "Original Applicant" Omega Engineering, Inc.?"
A:      Yes.
Q:      And at the bottom, "Original correspondent, William A. Drucker?"
A:      I see that.
Q:      Do you know if Omega Engineering, Inc. applied to register for the Greek letter Omega alone with the United States Patent and Trademark Office on or about November 2001?
A:      I see this paper. I didn't know it before this.
Q:      You had no personal knowledge of that?
A:      If I did, I don't remember it. I might have seen it earlier and I don't remember it now. [p. 68-69]


Q:      Do you know if Dr. Hollander has input into the goods which are incorporated into trademark applications filed on behalf of Omega Engineering, Inc.?
A:      He could be in conversation with Dr. Drucker, I don't know. [p. 71].


Q:      Has Dr. Drucker ever brought up to you any trademark issues between the parties in foreign countries? . . .
A:      Yes. [p.76]

c.  **See Exhibit C, Christine Riggs, In-house Counsel, Omega Engineering, Inc., April 5, 2004**

Q: Do you see Exhibit 7, page 10 [file wrapper for trademark application no. 76/337.374], who signed the application on behalf of the applicant?
A: William A. Drucker.
Q: Do you know if that signature is under oath?
A: Yes.
Q: And do you know if Dr. Drucker is representing in this application that he has personal knowledge as to Omega Engineering's claim that it has a bona fide intention to use the Greek letter .com in commerce in connection with the goods reflected in Riggs Exhibit 7?
A: Yes.
Q: Did Dr. Drucker speak to you at all with regard to this application prior to it filing?
Q: I don't recall having any conversation with Dr. Drucker about this application. [p. 202-03].


Q: Do you know what type of work or services Dr. Drucker provides on behalf of Omega Engineering, Inc.?
A: He provides services relating to Omega's intellectual property.
Q: Which includes what?
A: Patents and trademarks.
Q: What types of legal services does Dr. Drucker provide with regard to trademarks? . . .
A: He files trademark applications on behalf of Omega.
Q: Does he prepare the applications?
A: As far as I know, yes.
Q: Does he sign the application on behalf of Omega Engineering?
A: He may, yes.
Q: Do you know if he signs in a legal capacity on behalf of Omega Engineering?
A: As opposed to?
Q: Factual capacity.
A: I don't know what capacity he would sign. [p. 64-65].


Q: Do you know who was involved in any aspect of the preparation of this application [file wrapper for application no. 76/337,450]?
A: William Drucker was.
Q: Do you know from whom he received instructions to file this application?

> A: I don't know definitively, no.
> Q: Was it you.
> A: No, it was not. [p.181].

> Q: Do you know who was responsible for the determination of what goods to include in the identification of goods in Riggs Exhibit 12?
> A: No, I don't.
> Q: Again, will the people who would have knowledge, factual knowledge of that be either Dr. Hollander or Dr. Drucker?
> A: Well, I would certainly say that you should ask Dr. Drucker. Since he filed this application, I would think he would know who came up with the list of goods since his name is on this as the attorney of record. You could certainly ask Dr. Hollander as well, he may know, I don't. [p. 232-233].

> A: ... But as far as you're asking me why the number of times the [words] time or timing are included in this, I don't know, I didn't draft this list of goods, I did not review this application before it was filed. Since William Drucker is the attorney of record, I would suggest that you ask him. [p. 242-43].

D.  CONCLUSION

Defendants have left Plaintiff with no options. On the one hand, Defendants continue to deny Plaintiff the opportunity to depose Dr. Drucker, and on the other they essentially argue that because Plaintiff has not deposed Dr. Drucker prior to the deadline for disclosing experts, Plaintiff should not be granted an extension to identify an expert who can specifically submit an opinion as to matters raised by Dr. Drucker. For the foregoing reasons, Plaintiff's Motion should be granted and Plaintiff should be afforded a reasonable amount of time, following Dr. Drucker's deposition, to disclose an expert who will provide an opinion as to matters addressed in Dr. Drucker's deposition.

Respectfully Submitted,

By: _____
Jess M. Collen
COLLEN *IP*
THE HOLYOKE-MANHATTAN BUILDING
80 South Highland Avenue
Ossining, NY 10562
(914) 941-5668 Tel.
(914) 941-6091 Fax

*Attorneys for Plaintiff*

Dated: May 28, 2004

## CERTIFICATE OF SERVICE

I, Jason Friedman, hereby certify that Plaintiff, Omega S.A.'s, <u>Reply Memorandum in Support of Its Request to Extend Time to File an Expert Report</u> was forwarded to the following attorneys of record via overnight FedEx:

Thomas Smart, Esq.
Kaye Scholer, LLP
425 Park Avenue
New York, New York 10022-3598
Fax: (212) 836-7154

Said service having taken place this 28th day of May 2004.

_____