IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------x
OMEGA, S.A.,                           :
                                       :
                Plaintiff,             :
                                       :
        v.                             :
                                       :
OMEGA ENGINEERING, INC.                :
OMEGA SCIENTIFIC, INC., AND            :
OMEGA PRESS, INC.,                     :
                                       :
                Defendants.            :
                                       :
OMEGA ENGINEERING, INC.,               :   Civil Action No.:
                                       :   3:01 CV 2104 (MRK)
                Counterclaim-Plaintiff,:
                                       :
        v.                             :
                                       :
OMEGA, S.A. and                        :
THE SWATCH GROUP LTD.                  :
                                       :
                Counterclaim-Defendants.:
---------------------------------------x

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS ON THE GROUNDS THAT THE
COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS
RELATING TO FOREIGN TRADEMARK FILINGS AND THAT SUCH
CLAIMS FAIL TO STATE A CLAIM FOR RELIEF; AND FOR AN
ORDER OF PRECLUSION WITH RESPECT TO EVIDENCE
<u>RELATING TO ANY SUCH FOREIGN TRADEMARK FILINGS</u>**

|                      | Thomas A. Smart (CT 21462)       |
|                      | Paul C. Llewellyn (CT 25417)     |
|                      | KAYE SCHOLER LLP                 |
| Of counsel:          | 425 Park Avenue                  |
|                      | New York, NY 10022               |
| Michelle R. Tepper   | (212) 836-8000                   |

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT 06840
(203) 966-6916

*Attorneys for Defendants*

30925555.DOC

At oral argument, the Court requested Omega S.A. ("OSA") to provide authority for its new theory of liability, that Omega Engineering, Inc.'s ("OEI") filing of *legitimate* foreign trademark applications could constitute unfair competition under American law. OSA has utterly failed to provide such authority, and, thus, ignores the Court's well-placed concern that claims relating to applications filed with trademark authorities run afoul of (1) the rule of *Vanity Fair Mills, Inc. v. The T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956), that American courts should not decide the validity or scope of foreign trademarks; (2) the *Noerr-Pennington* doctrine; and (3) the act of state doctrine. Instead, OSA belatedly attempts to re-argue *Vanity Fair*, addressing for the first time *Vanity Fair*'s three-factor test that was briefed in detail in defendants' opening brief. (*See* Def. Mem. at 24-27). These new arguments provide no support for OSA's claims. None of the cases cited by OSA challenged the very filing of foreign trademark applications, as this case does. Rather, OSA's cases are distinguishable because, unlike the claims here, they (1) involved challenges to the *use* of infringing marks that clearly caused a substantial effect on United States commerce and (2) did not require United States courts to second-guess the judgments of foreign tribunals regarding the legitimacy of trademark rights in foreign countries.

The Court clearly believed at oral argument that it could not adjudicate the legitimacy of foreign trademark filings, but wondered whether it could dismiss these claims on a motion on the pleadings rather than at summary judgment. The answer to this question is certainly "yes." Under Second Circuit authority, the Court is empowered to dismiss these claims *on the pleadings* on this motion, both for lack of subject matter jurisdiction and on grounds of international comity. Even with respect to the CUTPA claim pending under the Court's diversity jurisdiction, *Vanity Fair* requires the Court to refuse jurisdiction in light of the issues of foreign trademark rights and international comity that are presented by the claim, and Second Circuit authority holds that this Court *can* dismiss, on the pleadings, on international comity grounds. Thus, the first ground for relief set forth in defendants' Motion is that "the Court lacks subject matter

jurisdiction to, *and under principles of international comity should not*, adjudicate the validity or good faith of filings made with foreign trademark authorities" (emphasis added). Moreover, the Court has the power to dismiss these claims *sua sponte* on the ground of *forum non conveniens*.

Lastly, as set forth below, OSA still has failed to produce documents relating to the parties' foreign trademark filings that defendants requested last year and the Court ordered OSA to produce months ago, including documents relating to the applications and registrations challenged by OSA, to OSA's claim that it has been "blocked" by OEI's foreign trademark filings, and to successful challenges to OSA's own foreign applications and registrations.

## BACKGROUND

OSA continues to perpetuate the misconception that the parties are competitors and that by filing the applications at issue, OEI is attempting to "unfairly compete with OSA's core business." (*See, e.g.*, OSA Supp. Mem. at 3). However, the only purported "competition" that OSA has pointed to is the claim that an OSA subsidiary sells swim meet timing equipment to university athletic departments, while OEI sells scientific and engineering equipment, some of which might include timing functions, to university engineering departments. (7/20/2004 Tr. at 13). The undisputed facts and uniform testimony of *all* witnesses are that OSA and its subsidiary sell wristwatches to consumers and sports timing devices to sports groups, and defendants sell scientific and industrial process and control devices, including some devices with timing functions, for use in science and industry. OSA does not sell any timing devices for scientific or industrial uses, and defendants do not compete, "unfairly" or otherwise, with OSA. (*See* Def. Mem. at 4). Thus, the foreign applications about which OSA complains are not for simple "clocks and timing devices," as OSA contends. (OSA Supp. Mem. at 3). To the contrary, as the underlying documents attached to Smart Decl. Ex. H show, the applications at issue include qualifiers that the goods covered are "all for science and/or industry," "used for industrial and/or scientific purposes," "all exclusively intended for science or industry" or "intended for science

and industry" – and, thus, are goods that OEI indisputably sells and OSA does not. (*See, e.g.,* Smart Dec. Ex. H. at OSA 2, 6, 9, 14, 63, 100).

In addition, we cannot help but note that OSA has *never* disputed our assertion that it failed to identify any foreign filings in its complaint and misleadingly identified in interrogatory responses only two Benelux registrations as the foreign filings at issue in this case, then provided defendants with a last-minute list of foreign filings that did not include the Benelux registrations. At the July 20 hearing, OSA represented to this Court that the Benelux registrations were *not* at issue in this case – only to reverse course once again and claim, in their supplemental brief, that both the last-minute list of 25 filings, *plus* the Benelux filings, still are at issue. Unable to cite any case law to support its claims, OSA instead changes the contours of its case on a daily basis, apparently making up its claims as the case proceeds beyond discovery. OSA's disregard for the rules of pleading, the rules of discovery, and the fair conduct of litigation is manifest.

I.  **OSA'S NEW-FOUND THEORY THAT DEFENDANTS CAN BE HELD LIABLE EVEN FOR CONCEDEDLY VALID FOREIGN TRADEMARK FILINGS IS UNSUPPORTED BY THE CASE LAW.**

Not surprisingly, OSA has not cited a single case holding that one can be liable, under any theory of federal or state law, for filing trademark applications (whether valid or not) in foreign jurisdictions, and has failed to show how its claims could be tried without determination of the parties' foreign trademark rights. OSA's belated analysis of the *Vanity Fair* factors does not show that defendants can be held liable for valid foreign trademark filings. Unlike here, in none of the cases cited by OSA did the plaintiff challenge the very filing of foreign trademark applications or registrations. Rather, OSA's cases involved challenges to infringing *uses* of marks in connection with goods or services that clearly had an effect on United States commerce.

Thus, in virtually all of OSA's cases, the court applied the Lanham Act after finding defendants' infringing *use* of a mark caused a substantial impact on United States commerce because infringing goods found their way into the United States or otherwise confused American

consumers.[1] The claims at issue here involve no such allegations or evidence. Rather, as defendants have shown twice without contradiction by OSA, the only evidence in the record regarding an alleged impact on U.S. commerce relating to defendants' foreign filings is Ms. Sauser Rupp's testimony that OSA incurred attorneys' fees *in this lawsuit* as a result of defendants' alleged conduct, and OSA has provided us with *no* interrogatory responses or documents evidencing any impact.[2] (*See* Def. Mem. at 27; Def. Reply at 5; Sauser Rupp Tr. 402-03). This is not surprising, because the claims here concern *filings*, not *use*, in foreign countries, which by definition could not have a "substantial effect" in the United States. The Court of Appeals has "never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce," *Atlantic Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 192 n.4 (2d Cir. 1998), and the Court should not do so here.[3]

---

[1] *See, e.g., Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952) (defendant's infringing goods repeatedly "filtered through the Mexican border into this country"); *Sterling Drug Inc. v. Bayer AG*, 14 F.3d 733, 746 (2d Cir. 1994) (applying Lanham Act only insofar as infringing use was "likely to make [its] way to American consumers"); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 126 F. Supp.2d 328, 340 (S.D.N.Y. 2001) (marketing of infringing goods in, and importation into, United States); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd*, 955 F. Supp. 220, 229-30 (S.D.N.Y. 1997) (defendant had engaged in same infringing use of marks in United States and Canada without regard to where the sales ultimately occurred, and caused diversion of profits from U.S. plaintiff). In *Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*, 945 F. Supp. 563, 567 (S.D.N.Y. 1996), infringing use of a mark in Japan was found to injure the plaintiff, a New York company, in its business dealings in New York. As for *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414-15 (5th Cir. 1983), that case found a "more than insignificant effect" on U.S. commerce – a lower standard than the "substantial effect" required in this Circuit – based on the infringing marking and packaging of goods in the United States for sale abroad. *See Totalplan Corp. v. Colborne*, 14 F.3d 824, 830 (2d Cir. 1994) ("*American Rice* "is in conflict with *Vanity Fair*, because it specifically rejected the 'substantial effect' requirement in favor of a more lenient 'some effect' standard.").

[2] OSA has cited and defendants are aware of no case in which the attorneys' fees incurred in the very case at issue (or in any other case) were held to constitute a "substantial effect" on United States commerce under *Vanity Fair*. In all events, the attorneys' fees incurred by OSA have their effect in Switzerland, where OSA is located, and not in the United States.

[3] For this reason, OSA's assertion that the defendant's citizenship is the most significant factor (OSA Supp. Mem. at 5) is incorrect and misleading. Extraterritorial application of America trademark law has been rejected even when all parties were U.S. citizens, *see, e.g.*,

(continued...)

As for the assertion that there is no risk of conflict with foreign trademark rights, in none of OSA's cases was the plaintiff challenging the actual *filing* of foreign trademark applications, as OSA is here. Thus, the cases are clearly inapposite.[4] Here, it cannot be disputed that OEI has certain rights to the OMEGA marks in the foreign jurisdictions at issue, including existing foreign registrations applications – a fact made clear by the successful challenges that OEI has brought against OSA's trademark filings abroad, including against foreign registrations on which OSA relies in its pending foreign proceedings. (*See* Riggs Decl. Exs. A, B, C; Def. Mem. at 19). Indeed, recently, the United Kingdom trademark authority issued the three decisions attached hereto as Exhibit 1 which revoke in part certain OSA registrations for OMEGA marks, including another registration (No. 770,899) on which OSA relies to oppose OEI's CTM applications. (*See* Smart Decl. Ex. J at 2174). Moreover, twenty of OEI's applications have been preliminarily *approved* by foreign authorities. (*See* Smart Decl. ¶ 10). Under the act of state doctrine, these various decisions by foreign trademark authorities with respect to OEI's registrations and applications must be presumed valid. *See, e.g., Vanity Fair*, 234 F.2d 633, 646 ("it is well-established that the courts of one state will not determine the validity of the acts of a foreign sovereign done within its borders").

---

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395-96 (9th Cir. 1985), while in *Atlantic Richfield* – a case cited by OSA – the Court of Appeals rejected the extraterritorial application of the Lanham Act to a New York company making decisions in New York regarding foreign activities, holding that the lack of a substantial impact on United States commerce was determinative. 150 F.3d at 191, 193.

[4] Moreover, in most of the cases there was no evidence that defendant possessed some recognized foreign rights in the mark at issue. *See, e.g., Bulova*, 344 U.S. at 326 (defendant's Mexican registration had been cancelled); *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 555 (9th Cir. 1992) (no evidence or assertion that defendant had any trademark applications or registrations in Mexico); *American Rice*, 701 F.2d at 415 (no evidence that defendant itself had trademark rights in Saudi Arabia); *Les Ballets*, 945 F. Supp. at 568 (uncontradicted evidence indicated that defendant had no trademark rights in Japan). The only exception is *Ramirez & Feraud Chili Co. v. Las Palmas Food Co.*, 146 F. Supp. 594 (S.D. Cal. 1956), a 1956 decision outside the Circuit that is squarely contrary to *Vanity Fair*.

II. **OSA'S CLAIMS RELATING TO FOREIGN TRADEMARK FILINGS WOULD REQUIRE THE COURT IMPERMISSIBLY TO CONSIDER THE VALIDITY AND SCOPE OF THE PARTIES' FOREIGN TRADEMARK RIGHTS.**

Notwithstanding OSA's efforts to muddy the waters with its belated and misleading analysis of the *Vanity Fair* factors, the claims at issue here plainly would require this Court to determine the scope of the parties' foreign trademark rights and the validity of defendants' foreign filings, in violation of *Vanity Fair* and international comity:

First, OSA ignores the Court's direct question as to how OSA could avoid inquiry into the parties' foreign trademark rights in light of the *Noerr-Pennington* doctrine and the requirement under *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993), that plaintiffs prove that the governmental filings at issue were "objectively baseless." (*See* 7/20/04 Tr. at 74-75) ("But then you would have to address this whole *Noerr-Pennington* aspect . . ."). The cases cited by OSA, which do *not* involve challenges to the filing of trademark applications, are inapposite because they do not implicate or address the concerns underlying the *Noerr-Pennington* doctrine. Here, as OSA conceded at oral argument (7/20/04 Tr. at 51), defendants would be entitled to defend these claims by submitting evidence that the foreign filings at issue were objectively reasonable in light of foreign trademark law and the parties' respective rights to OMEGA marks in the relevant jurisdictions, thus requiring the Court to examine the merits of the filings at issue and the parties' respective foreign rights.

Second, under the act of state doctrine, the Court must presume the validity of the decisions of foreign trademark authorities and cannot adjudicate claims that would require it to determine that such acts are invalid. *See, e.g., Vanity Fair*, 234 F.2d 633, 646 ("it is well-established that the courts of one state will not determine the validity of the acts of a foreign sovereign done within its borders"); *Rein v. Rein*, 1996 U.S. Dist. LEXIS 6967, at *14 (S.D.N.Y. May 23, 1996) (dismissing claims that would require the Court to second-guess the decisions of foreign courts). Here, almost all of the filings at issue involve pending applications, including

30925555.DOC 6

many that have been preliminarily *approved* by the foreign authorities, and most involve pending opposition proceedings. Moreover, OEI premises its rights in these foreign jurisdictions, in part, on registrations it already has been *granted* by foreign governments. Determination of the validity of OEI's filings and the parties' respective foreign rights therefore would risk an adjudication inconsistent with pending proceedings and prior foreign government decisions.

Third, putting aside *Noerr-Pennington* and the act of state doctrines, neither the Lanham Act nor CUTPA is violated by valid foreign trademark filings. Tellingly, plaintiffs cite *no* case holding that a lawful filing with a government agency, or a "pattern" of such filings, can violate either the Lanham Act or CUTPA. Such valid filings cannot be considered an "unfair method[] of competition" or "unfair or deceptive act[] or practice[]" within the meaning of CUTPA. Conn. Gen. Stat. § 42-110b(a). Indeed, CUTPA expressly excludes "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." Conn. Gen. Stat. § 42-110c(a). This "safe harbor" provision does not on its face refer to *foreign* governments, but this is obviously because it was not contemplated that CUTPA would be applied to conduct before foreign governments. There is no rational basis to exclude foreign authorities from this provision. If CUTPA is extended to apply to conduct abroad, Section 42-110c(a) should be similarly be extended.

Fourth, the Court cannot award relief with respect to trademark filings that are lawful in the jurisdictions where they are made. As *Vanity Fair* explains, a court cannot "enjoin the initiation of acts in the United States which constitute no wrong to the plaintiff in the country where they are to be consummated" or impose damages for foreign conduct with respect to a trademark in which the defendant has rights under foreign law. 234 F.2d at 647. Although OSA argues that the Court can simply adjust its injunction at a later date if OEI proves it has rights in a foreign country (OSA Supp. Mem. at 9), that approach is directly contrary to *Vanity Fair* and

ignores that OEI would be entitled, *in this action*, to prove to the finder of fact that it has such foreign rights. It also is circular in the context of OSA's claims: How can OEI prove rights in a foreign country if it is barred from even filing applications to protect those rights?

Fifth, the relief sought by OSA would as a practical matter determine, and require the Court to adjudicate, the parties' respective foreign trademark rights. Thus, the injunctive relief sought by OSA would by necessity require the Court to determine and describe the contours of permissible foreign trademark filings, including the marks and the goods and services for which defendants could seek registration. Similarly, the damages sought by OSA would as a practical matter determine the foreign filings that defendants could make without risking further liabilities. Such results are squarely at odds with the comity concerns expressed in *Vanity Fair*.

### III. DISMISSAL ON THIS MOTION IS CLEARLY WARRANTED.

Because, as shown above, the claims at issue would require the Court to consider the validity of pending foreign trademark applications and existing foreign registrations, and determine the scope of the parties' respective trademark rights, *Vanity Fair* mandates dismissal for lack of subject matter jurisdiction. Moreover, it is clear that the Court can grant such relief on this motion (as was done in *Vanity Fair*) and that it also has the power, in a motion on the pleadings, to decline jurisdiction on international comity grounds.

First, with respect to the Lanham Act, *Vanity Fair* squarely affirmed a dismissal on the pleadings for lack of subject matter jurisdiction because, as we have shown here, the Lanham Act does not extend to claims that require the Court to determine foreign trademark rights, particularly when the challenged conduct has no substantial impact on United States commerce. 234 F.2d at 641-42. As for CUTPA, a close reading of *Vanity Fair* shows that the Court of Appeals did *not* rely solely on *forum non conveniens* to affirm dismissal on the pleadings. Rather, after considering *forum non conveniens*, the Court went on to hold, "we do not think a United States district court should take jurisdiction over that portion of this action turning on the

validity or invalidity of defendant's Canadian trade-mark," and held that jurisdiction was correctly declined despite the presence of diversity jurisdiction. 234 F.2d at 638, 646.

Second, *Vanity Fair* is consistent with other decisions of the Court of Appeals holding that even when a district court "admittedly has" jurisdiction, it is sometimes appropriate for the court to refuse jurisdiction and grant a motion to dismiss *on the pleadings* where, as here, principles of international comity so require. *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d. Cir. 2000). Thus, in *Bigio*, the Second Circuit remanded to the district court for consideration of whether to grant a motion to dismiss for lack of subject matter jurisdiction on grounds of international comity, and noted that dismissal could well be appropriate because, as here, the claims at issue implicated the parties' rights under foreign law and the lawsuit's only connection to the United States was the fact that defendants were United States corporations. *Id.* at 454-55. Similarly, in *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999), the Court of Appeals affirmed dismissal of an action on the pleadings on the ground of international comity, despite that subject matter jurisdiction existed.[5] Dismissal was appropriate because, as here, the claims implicated rights under foreign law that were already being determined in pending foreign proceedings. *Id. Accord, Zeidenberg v. Polly Peck Int'l PLC*, 1992 WL 178626 at *3-4 (S.D.N.Y. July 16, 1992) (granting motion to dismiss diversity action in light of pending foreign proceedings). This comity ground is precisely one of the grounds on which defendants' motion was based. (*See* pp. 1-2, *supra*).

The Court also has the inherent authority to dismiss *sua sponte* on the ground of *forum non conveniens*. *See, e.g., Reingruber v. Dennison Int'l Co.*, 1998 WL 760229 at *3 (S.D.N.Y. Oct. 30, 1998) (dismissing, *sua sponte*, claims raising issues of foreign law, where legitimacy of foreign legal proceedings was at issue and where foreign forum was available to hear dispute)

---

[5]    Although the defendant in *Finanz AG Zurich* also had moved to dismiss for *forum non conveniens*, neither the district court nor the Court of Appeals reached that issue. *Id.* at 244.

(citing *Chambers v. Nasco*, 501 U.S. 32, 44 (1991) and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The parties' respective rights under foreign law go to the heart of the claims at issue, and proceedings brought by OSA on the very same applications at issue here already are pending in foreign jurisdictions before the appropriate foreign authorities. And, as in *Vanity Fair*, the evidence relating to the parties' foreign trademark uses and rights clearly is more readily available in the relevant foreign jurisdictions than here. See *Vanity Fair*, 234 F.2d at 646 n.18.

## IV.  OSA HAS FAILED TO COMPLY WITH THE COURT'S DISCOVERY ORDERS.

Although OSA's counsel assured the Court that it had produced "every shred of document that we would rely on in this case" and that "we have produced everything, every piece of paper that we have to produce" (7/20/2004 Tr. pp. 47-48, 80), OSA's belated supplemental production remains deficient in many ways, as set forth in the accompanying Declaration of Paul C. Llewellyn dated August 2, 2004. Thus, a review of OSA's production indicates that OSA's complete files relating to the pending foreign trademark applications and oppositions identified by OSA still have not been produced. Moreover, OSA has produced no documents relating to the cancellation, revocation or rejection of foreign trademark applications or registrations owned by OSA, documents relevant to the scope of OSA's claimed foreign trademark rights, any injury allegedly incurred as a result of defendants' filings, defendants' unclean hands defense and OEI's contingent counterclaim that OSA has engaged in bad faith filings in foreign countries. (*See* Llewellyn Decl. ¶¶ 3-7).

OSA has willfully disregarded this Court's discovery orders as well as its repeated orders that discovery would not be extended. Under these circumstances, the only meaningful remedy – in the event that OSA's claims relating to foreign trademark filings are not dismissed – is preclusion of OSA's evidence relating to foreign trademark applications and registrations.

Dated: August 3, 2004  
New York, NY

Of counsel:

Michelle R. Tepper

Respectfully submitted,

*[signature: Paul C. Llewellyn]*
_____
Thomas A. Smart (CT 21462)  
Paul C. Llewellyn (CT 25417)  
KAYE SCHOLER LLP  
425 Park Avenue  
New York, NY 10022  
(212) 836-8000

Thomas E. Minogue (CT 06845)  
MINOGUE BIRNBAUM LLP  
237 Elm Street  
New Canaan, CT  06840  
(203) 966-6916

*Attorneys for Defendants*

**EXHIBIT 1**





INVESTOR IN PEOPLE

The Patent Office
Trade Marks Registry

Cardiff Road
Newport
South Wales
NP10 8QQ

Switchboard: 01633 814000
Direct Line: 01633 811187
Fax: 01633 811175
Minicom: 0645 222250
Website: www.patent.gov.uk

Bromhead Johnson
Kingsbourne House
229-231 High Holborn
LONDON
WC1V 7DP

RECEIVED

3 0 JUN 2004

**Our Ref**     REV 81327 JF/LS/LAW
**Your Ref**    DJC/AM-Rev 81327
**Date**        30 June 2004

*Please quote our complete reference on all correspondence*

*The Casework Examiner for this case is Jayne Francis - 01633 814103*

Dear Sir

**Trade Mark Registration No 1456850**      **Registered Proprietor: Omega SA (Omega AG) (Omega Ltd)**

**Application for Revocation No 81327**     **Applicant: Omega Engineering Inc.**

Further to the Registered Proprietors letter of 09 June 2004 the registration is to be partially revoked. A copy of the formal decision in the above matter is enclosed.

A period of 28 days from the date of the decision, that is **28 July 2004,** is allowed for filing an appeal to the Appointed Person or to the High Court in England and Wales.

You may also appeal to the High Court in Northern Ireland or to the Court of Session in Scotland. However, you should note that different appeal periods may apply in these courts. You should seek guidance from those courts, or their court rules, for further information.

If no appeal is lodged, action will be taken to implement this decision.

A similar letter has been sent to Mewburn Ellis.

Yours faithfully

*Lindsey Smith*

Lindsey Smith
**LAW SECTION ASSISTANT CASEWORK EXAMINER**

An Executive Agency of the Department of Trade and Industry

TRADE MARKS ACT 1994

IN THE MATTER OF the application

(Revocation No 81327) by Omega SA (Omega AG)(Omega Ltd)

For revocation of Registration

No. 1456850

## DECISION

The trade mark OMEGA has been registered since 22 July 1994 under number 1456850, in respect of:-

Class 42:
Design, development and programming of display panels, boards and screens, score boards, nautical, surveying, weighing, measuring, signalling, checking and life saving equipment and apparatus; all being electronic; design, development, programming and operation of horological and chronometric instruments; consultancy and advisory services, all relating to the recordal, measurement and display of time; information services relating to the aforesaid services; all included in Class 42; but not including any such services relating to goods for use in science and industry.

and stands in the name of Omega SA (Omega AG)(Omega Ltd).

By an application filed on 18 July 2003, Omega Engineering Inc applied for partial revocation of this registration under the provisions of Section 46(1)(a) and 46(1)(b) of the Trade Marks Act 1994.

A copy of this application was sent to the registered proprietor at his address for service on 23 July 2003.

The registered proprietor did not file a counter-statement within the time period prescribed by the Registrar in the decision of 21 June 2004, and therefore no reasons have been advanced as to why partial revocation should not follow.

Accordingly, the mark is partially revoked with effect from 22 July 1999. The specification now reads 'Design, development and programming, all relating to wristwatches and parts and fittings therefor, sports measuring apparatus and public concourse display apparatus; information services relating to the aforesaid services; but not including any such services relating to goods for use in science and industry'.

Dated this 30 day of June 2004.

Keven Bader
For the Registrar
the Comptroller General

  

**The Patent Office**
Trade Marks Registry

Cardiff Road
Newport
South Wales
NP10 8QQ

Switchboard: 01633 814000
Direct Line: 01633 811187
Fax: 01633 811175
Minicom: 0645 222250
Website: www.patent.gov.uk

Bromhead Johnson
Kingsbourne House
229-231 High Holborn
LONDON
WC1V 7DP

RECEIVED
3 0 JUN 2004

Our Ref    REV 81324 JF/LS/LAW
Your Ref    DJC/AM-Rev 81324
Date    30 June 2004

*Please quote our complete reference on all correspondence*

*The Casework Examiner for this case is Jayne Francis - 01633 814103*

Dear Sir

**Trade Mark Registration No 770899**    Registered Proprietor: **Omega SA (Omega AG) (Omega Ltd)**

**Application for Revocation No 81324**    Applicant: **Omega Engineering Inc.**

Further to the Registered Proprietors letter of 09 June 2004 the registration is to be partially revoked. A copy of the formal decision in the above matter is enclosed.

A period of 28 days from the date of the decision, that is **28 July 2004**, is allowed for filing an appeal to the Appointed Person or to the High Court in England and Wales.

You may also appeal to the High Court in Northern Ireland or to the Court of Session in Scotland. However, you should note that different appeal periods may apply in these courts. You should seek guidance from those courts, or their court rules, for further information.

If no appeal is lodged, action will be taken to implement this decision.

A similar letter has been sent to Mewburn Ellis.

Yours faithfully

*Lindsey Smith*

Lindsey Smith
**LAW SECTION ASSISTANT CASEWORK EXAMINER**

An Executive Agency of the Department of Trade and Industry

TRADE MARKS ACT 1994

IN THE MATTER OF the application

(Revocation No 81324) by Omega SA (Omega AG)(Omega Ltd)

For revocation of Registration

No. 770899

DECISION

The trade mark OMEGA FLIGHMASTER has been registered since 15 July 1958 under number 770899, in respect of:-

Class 14:
All goods included in Class 14.

and stands in the name of Omega SA (Omega AG)(Omega Ltd).

By an application filed on 18 July 2003, Omega Engineering Inc applied for partial revocation of this registration under the provisions of Section 46(1)(a) and 46(1)(b) of the Trade Marks Act 1994.

A copy of this application was sent to the registered proprietor at his address for service on 23 July 2003.

The registered proprietor did not file a counter-statement within the time period prescribed by the Registrar in the decision of 21 June 2004, and therefore no reasons have been advanced as to why partial revocation should not follow.

Accordingly, the mark is partially revoked with effect from 08 September 1969. The specification now reads 'Wristwatches and parts and fittings therefor'.

Dated this 30 day of June 2004.

Keven Bader
For the Registrar
the Comptroller General

  

INVESTOR IN PEOPLE

The Patent Office
Trade Marks Registry

Cardiff Road
Newport
South Wales
NP10 8QQ

Bromhead Johnson
Kingsbourne House
229-231 High Holborn
LONDON
WC1V 7DP

RECEIVED
3 0 JUN 2004

Switchboard: 01633 814000
Direct Line: 01633 811187
Fax: 01633 811175
Minicom: 0645 222250
Website: www.patent.gov.uk

**Our Ref**   REV 81326 JF/LS/LAW
**Your Ref**  DJC/AM-Rev 81326
**Date**      30 June 2004

*Please quote our complete reference on all correspondence*

*The Casework Examiner for this case is Jayne Francis - 01633 814103*

Dear Sir

**Trade Mark Registration No 1456849**    Registered Proprietor: Omega SA (Omega AG) (Omega Ltd)

**Application for Revocation No 81326**   Applicant: Omega Engineering Inc.

Further to the Registered Proprietors letter of 09 June 2004 the registration is to be partially revoked. A copy of the formal decision in the above matter is enclosed.

A period of 28 days from the date of the decision, that is **28 July 2004**, is allowed for filing an appeal to the Appointed Person or to the High Court in England and Wales.

You may also appeal to the High Court in Northern Ireland or to the Court of Session in Scotland. However, you should note that different appeal periods may apply in these courts. You should seek guidance from those courts, or their court rules, for further information.

If no appeal is lodged, action will be taken to implement this decision.

A similar letter has been sent to Mewburn Ellis.

Yours faithfully

*Lindsey Smith*

Lindsey Smith
**LAW SECTION ASSISTANT CASEWORK EXAMINER**

An Executive Agency of the Department of Trade and Industry

TRADE MARKS ACT 1994

IN THE MATTER OF the application

(Revocation No 81326) by Omega SA (Omega AG)(Omega Ltd)

For revocation of Registration

No. 1456849

DECISION

The trade mark OMEGA has been registered since 04 November 1994 under number 1456849, in respect of:-

Class 41:
Educational and instructional services all relating to the recordal, measurement and display of data; information services relating to all the aforesaid; all included in Class 41.

and stands in the name of Omega SA (Omega AG)(Omega Ltd).

By an application filed on 18 July 2003, Omega Engineering Inc applied for partial revocation of this registration under the provisions of Section 46(1)(a) and 46(1)(b) of the Trade Marks Act 1994.

A copy of this application was sent to the registered proprietor at his address for service on 23 July 2003.

The registered proprietor did not file a counter-statement within the time period prescribed by the Registrar in the decision of 21 June 2004 and therefore no reasons have been advanced as to why partial revocation should not follow.

Accordingly, the mark is partially revoked with effect from 04 November 1999. The specification now reads 'Educational and instructional services all relating to the recordal, measurement and display of data, namely wristwatches and parts and fittings therefor, sports measuring apparatus and public concourse display apparatus; information services relating to all the aforesaid'.

Dated this 30 day of June 2004.

Keven Bader
For the Registrar
the Comptroller General