IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| ) | 3:01 CV 2104 (MRK) |
| v. ) | |
| ) | |
| OMEGA ENGINEERING, INC., ) | |
| OMEGA SCIENTIFIC, INC., and ) | |
| OMEGA PRESS, INC., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Omega, S.A. ("Plaintiff" or "OSA") files this supplemental brief at the direction of the Court following a hearing on July 20, 2004, on Defendants' Motion to Dismiss Counts three and four of Plaintiff's Third Amended Complaint (to the extent they are based on Defendants' foreign trademark filing activity). This brief will address the Court's request from Plaintiff's counsel regarding authority on two key legal issues: 1) whether the Court's discretionary exercise of subject matter jurisdiction over the Defendants' acts outside the United States would necessarily entail a review and analysis of foreign trademark law in each such jurisdiction; and 2) whether this Court can enjoin Defendants' future trademark filing activities in all foreign jurisdictions, irrespective of Defendants' ability to claim valid trademark rights under the laws of any single foreign jurisdiction.

The answers to these questions are now clear. Defendants' reliance on *Vanity Fair* is misplaced, as analyzed below, and as Judge Underhill clearly ruled, and this decision should remain the law of this case and govern the Court's determination of the renewed motion now

1

before it. Furthermore, United States District Courts, in their discretion, may apply the Lanham Act extraterritorially after analysis under the three part test announced by the United States Supreme Court in *Bulova*, a test is clearly satisfied in this case. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 282 (1952). The regulation of that conduct by this Court does not involve analysis of foreign trademark law and does not impugn such foreign jurisprudence. The Court may assume that the Defendants' isolated or discrete acts and conduct abroad is lawful – and the Court may do so even if Defendants can prove that they have some rights under foreign law. As explained by the Supreme Court: "[w]e do not deem material that petitioner affixed the mark 'Bulova' in [abroad] rather than here, or that his purchases in the United States when viewed in isolation do not violate any of our laws. They were essential steps in the course of business consummated abroad; **acts in themselves legal, lose that character when they become part of an unlawful scheme.**" *Id* at 287 (citations omitted)(emphasis added).

A. <u>Foreign Filings that Support Counts Three and Four of the Third Amended Complaint</u>

As a preliminary matter, OSA clarifies that its unfair competition and CUTPA claims are based on the foreign trademark activities contained in both the Chart produced to Defendants, attached as Exhibit A, which summarizes the foreign filings opposed by OSA, and the two Benelux registrations which were identified in OSA's interrogatory responses.[1] The Chart, which was formally produced to Defendants at least a week before the deposition of Christiane Sauser Rupp[2], and well before the deposition of any of OEI's witnesses, or the production of any

---

[1] OSA confirms reliance on its Opposition to OEI's application for OMEGAWATCH and OMEGATIME, pending before the Benelux tribunal, and identified in OSA's Interrogatory response, in support of its unfair competition and CUTPA claims. OSA also confirms that the UK decision mentioned by Defense counsel at the hearing is not so listed and OSA does not rely on this decision, which is on appeal, in support of its unfair competition claims.
[2] This chart was also informally provided to Defendants and their counsel during a day-long settlement meeting in the fall of 2003.

documents by OEI,[3] clearly outlines exactly which opposition proceedings on which OSA relies in pleading its unfair competition claims, and, even further, provides defendants with a clear map of the goods opposed by OSA in the applications. It is unreasonable and not credible for OEI to maintain that it still does not understand the conduct that supports OSA's allegations pertaining to bad-faith foreign filings. The Chart demonstrates OEI's pattern and practice of seeking registration of OMEGA marks in connection with, among other things, clocks and timing devices. Moreover, the Chart clearly identifies the pattern of goods at issue.

There is no dispute between the parties that OSA's core business is time. As the Chart attached as Exhibit A demonstrates, OSA has initiated over 20 Opposition proceedings against OEI's registration of OMEGA marks, and has repeatedly been forced to object to essentially the same list of goods, i.e. clocks and timing devices. OEI's numerous applications for the OMEGA mark in connection with clocks and timing devices unequivocally shows acts by OEI to unfairly compete with OSA's core business and to block OSA from registering and using its mark in connection with clocks and timing devices in many countries around the world.

B.  This Court Has Subject Matter Jurisdiction to Regulate Unfair Trade Practices by its Citizens in Foreign Countries

"Congress in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 282 (1952). The Lanham Act "confers broad jurisdictional powers upon the courts of the United States." *Id* at 283. "The statute's express intent is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce." *Id.* "Congress has the power to prevent unfair trade practices in foreign

---
[3] Plaintiff's had only received Bates nos. 00001-00002 (two OEI product brochures).

3

commerce by citizens of the United States, although some of the acts are done outside the territorial limits of the Untied States." *Id* at 286. Congress intended the Lanham Act "to be used as a shield against foreign uses that have significant trademark-impairing effects upon American commerce." *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 746 (2d Cir. 1994).

In the landmark *Bulova* case, the defendant, a United States citizen and resident of Texas, attempted to escape the jurisdiction of the U.S. judicial system by affixing the mark of plaintiff, also a United States citizen, to its own goods in Mexico. Finding subject matter jurisdiction to resolve the dispute, the Supreme Court held, "[w]e do not deem material that petitioner affixed the mark 'Bulova' in Mexico City rather than here, or that his purchases in the United States when viewed in isolation do not violate any of our laws. They were essential steps in the course of business consummated abroad; **acts in themselves legal, lose that character when they become part of an unlawful scheme**." *Id* at 287 (citations omitted)(emphasis added).

C.  Application of The *Bulova* Three-Part Test Supports the Extraterritorial Application of the Lanham Act

In deciding whether to apply the Lanham Act extraterritorially, courts in this and other Circuits rely on the three-part test set forth in *Bulova*, namely: "(1) whether the defendant is a citizen of the United States; (2) whether the defendant's conduct has a substantial effect[4] on United States Commerce; and (3) whether there exists a conflict between defendant's trademark rights established under foreign law, and plaintiff's trademark rights established under domestic law." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 126 F.Supp.2d. 328, 336 (S.D.N.Y. 2001); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 745 (2d Cir. 1994). "None of these three criteria is dispositive of the analysis concerning the Lanham Act's extraterritorial effect, and a court must

---

[4] There is a split in the Circuits as to whether there must be a "substantial effect" on commerce or simply "some effect" on commerce. *See e.g., American Rice, Inc. v. Arkansas Rice Growers Coop. Assoc.*, 701 F.2d 408, 414, ftn. 8 (5th Cir. 1983) (requiring only "some effect").

4

employ a balancing test of all three factors to determine whether the statute is properly implicated. *A.V. by Versace, Inc.*, 126 F.Supp.2d. at 337.

1.   This Court Has Subject Matter Jurisdiction Over the Foreign Activities of the U.S. Defendants

The first factor, whether Defendants are United States citizens, supports the extraterritorial application of the Lanham Act in this case. There is no dispute that the Defendants are incorporated, reside and conduct business in the United States. It is widely held that "the citizenship of defendant is the most significant factor in determining whether to apply the Lanham Act extraterritorially to a defendant's foreign activities." *Aerogroup Int'l., Inc. v. Marlboro Footworks, Ltd.*, 955 F.Supp. 220, 227 (S.D.N.Y 1997); *Ramirez & Feraud Chili Co. v. Las Plamas Food Co.*, 146 F.Supp. 594, 602 (S.D. Cal. 1956) (affirmed, 245 F.2d 874 (9th Cir. 1957)). This factor alone strongly supports Plaintiff's position that this Court has subject matter jurisdiction to consider the foreign activities of the U.S. Defendants.

2.   Defendants' Conduct Has a Substantial Effect on U.S. Commerce

The Lanham Act seeks both "to protect American customers from confusion and to protect holders of American trademarks against misappropriation of their marks." *Versace*, 126 F.Supp.2d at 339. The Second Circuit, and other courts, have held that "the combination of infringing defendant's domestic activity coupled with consumer confusion or harm to the protected plaintiff's reputation and goodwill establishes a substantial effect on U.S. commerce." *Id* at 340; *citing*, *Atlantic Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 193 (2d Cir. 1998). Thus, "where the likelihood of consumer confusion or harm to a protected plaintiff's reputation is great, the substantial effect test has been satisfied." *Versace* at 340; *see also*, *Marlboro*, 955 F.Supp. 220 at 229 ("a substantial effect on commerce may be found where the foreign activities create confusion among United States customers as to the source of products

5

sold in the United States"); *Les Ballets Trockadero de Monte v. Trevino*, 945 F.Supp. 563, 567 (S.D.N.Y. 1996) ("as a result of defendants' infringing activities, the effects on United States commerce include dilution and damage to the plaintiff's U.S. registered marks and reputation, as well as damage to [its] prospective business and licensing negotiations").

Defendants are attempting to improperly misappropriate or unfairly obstruct Plaintiff's ability to register its OMEGA trademark, as used in connection with clocks and timing devices, by deliberately and systematically filing applications for trademarks throughout the world. As Plaintiff's reputation and goodwill associated with Plaintiffs OMEGA mark rests largely on their ability to maintain consumer recognition that timing devices bearing the OMEGA mark designate Plaintiffs as the source of such goods, Defendants' activities which are intended to interfere with such exclusive right, both domestically and abroad, supports the extraterritorial application of the Lanham Act.

### 3. A Finding of Unfair Competition, as Alleged in the Complaint is Not in Conflict with Foreign Law.

The final prong of the *Bulova* three-part test relates to any potential conflict between the relief sought by this Court and law established by a foreign tribunal. Plaintiff is asking the Court to determine, under U.S. law, whether Defendants have engaged in a pattern and practice of unfair competition by systematically applying for trademark registrations in foreign nations for use of the OMEGA mark in connection with timing devices. Plaintiff's claims seek only redress for violation of their U.S. trademarks under U.S. law (the Lanham Act and CUTPA), by a U.S corporation. Nowhere does Plaintiff seek a determination that any act of a foreign sovereign is invalid, nor does Plaintiff ask this court to negate something that has already been determined in adversary proceedings between the parties at bar in a foreign forum. *Ramirez & Feraud Chili*

*Co. v. Las Plamas Food Co.,* 146 F.Supp. 594, 602 (S.D. Cal. 1956) (affirmed, 245 F.2d 874 (9th Cir. 1957)).

As suggested by Plaintiff at the hearing before the Court on July 20, the Court need not determine the validity of any foreign trademark, or second-guess a decision made by a foreign trademark board. *Ramirez & Feraud Chili Co.,* 146 F.Supp. 594. Assuming Defendant's foreign conduct is lawful and valid does not "necessarily mean however that exercise of this court's jurisdiction to grant the relief plaintiff seeks would impugn foreign law or be an interference with the sovereignty of another nation." *Id.*

In finding that equity jurisdiction of the court is properly invoked in *Ramirez* under the Lanham Act, the court held that, "at most defendants' [foreign] registration of plaintiff's mark can have no greater effect than to confer upon defendants a license or permission to use the mark in [a foreign country] . . . there can be no affront to [foreign] sovereignty or [foreign] law, if as between the parties, this court should declare that defendants may not so use their license under [foreign] law as to injure plaintiff's foreign commerce conducted from the United States." *Id.* Thus, "[w]here as here, there can be no interference with the sovereignty of another nation, the district court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *Id* at 604.

This Court is the proper forum to address the pattern and practice by a U.S. corporation of engaging in actions in direct violation of a U.S. trademark holder's rights under U.S. law, by filing applications for trademarks in foreign countries for improper purposes. Without this Court's exercise of its injunctive powers, there can be no remedy, absent a continual, never-ending practice of chasing Defendants from country to country to police the filing of applications, followed by Plaintiff filing opposition papers. *Ramirez* 146 F.Supp. at 602.

The *Ramirez* decision has been adopted by other courts, including the Fifth Circuit, which held that: "absent a determination by a [foreign] court that [defendant] has a legal right to use its marks, and that those marks do not infringe [plaintiff's mark], we are unable to conclude that it would an affront to [foreign] sovereignty or law of we affirm the district court's injunction prohibiting the defendant from injuring the plaintiff's [foreign] commerce from the United States." *American Rice, Inc. v. Arkansas Rice Growers Coop. Assoc.*, 701 F.2d 408 (5th Cir. 1983); *see also, Reebok Int'l., Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552, 556 (9th Cir. 1992) ("at the time the district court granted the preliminary injunction, the [foreign] litigation presented no conflict with the district court's order because the litigation in [the foreign country] had not yet been concluded).

The mere filing of a trademark application, or the existence of a foreign opposition proceeding related to such filing, is insufficient to create a conflict of law under the *Bulova* three-part test. *Trevino*, 945 F.Supp. at 568. Plaintiff here has opposed more than 20 of the Defendants' foreign applications. Plaintiff has already succeeded in at least one of the pending actions. Attached hereto as Exhibit B is the recent decision from the United Kingdom granting Plaintiff's application for a declaration of invalidity of Defendants' OMEGA Registration No. 1557184 on July 15, 2004.

In finding Defendants' registration invalid, the tribunal stated: Plaintiff has "a reputation in relation to both watches and sophisticated timing apparatus for sporting activities. The reputation . . . will accrue to any timing equipment and period timers are timing equipment." (Ex. B at 31). Further, the tribunal had "no hesitation in finding that there is a likelihood of confusion [between OSA and OEI's application, such that] registration of the trade mark for period timers (all for industrial and/or scientific purposes) is contrary to…the Act.… No doubt [Plaintiff] feels more than a frisson of concern that one of its rivals could purchase this trademark

. . . for period timers for scientific and/or industrial purposes. The measurement of time and recording of time is the very core of the business of [Omega SA]." *Id* at 38.

D.  Court May Apply Lanham Act Extraterritorially Even if Conflict is Found with One Jurisdiction

Even if the Court finds that applying the Lanham Act extraterritorially may conflict with a decision rendered by a foreign tribunal, this Court may still find that Defendants' other filings support a pattern and practice sufficient to exercise jurisdiction over Plaintiff's Fourth Cause of Action as it pertains to foreign filings. In *Versace*, the court held that it had jurisdiction to apply the Lanham Act extraterritorially. The defendants in that case, similar to this case, argued that such application is improper because it may conflict with foreign trademark rights afforded by a foreign country. In maintaining its ruling that the Act may be applied extraterritorially, the court stated that "[I]f [the defendant] subsequently proves that he possesses valid trademark rights in a foreign country, the court would likely find that the preliminary injunction does not apply in that country." *Versace*, 126 F.Supp.2d at 339 ftn. 5. Thus, even if Defendants can demonstrate that they have been afforded certain rights in certain countries under foreign law, such a finding does not preclude this court from exercising jurisdiction over Plaintiff's claims. Rather, the court, at a later time, may simply tailor the scope of its injunction so as to not conflict with only those specific foreign rights that defendants have established they have acquired.

E.  Defendant's Reliance on *Vanity Fair* is Misplaced

Defendants' reliance on *Vanity Fair* is misplaced. In *Vanity Fair*, the Defendant was a Canadian corporation, and the crucial issue in that case was the validity of the Canadian corporation's Canadian trademark under Canadian trademark law. *Vanity Fair Mills, Inc. v. The T. Eaton Co. Ltd.*, 234 F.2d 633 (2d Cir. 1956); *American Rice*, 701 F.2d at 416. In sharp contrast, Plaintiff in this case seeks a determination that the U.S. Defendants' practices of filing

9

trademark applications for wrongful purposes violate Plaintiff's U.S. trademarks under U.S. law. As noted above, "the citizenship of the defendant is the most significant factor in determining whether to apply the Lanham Act extraterritorially to a defendant's foreign activities." *Marlboro*, 955 F.Supp. at 227.

Even if this Court were to consider the *Vanity Fair* analysis, the Second Circuit, in *Sterling Drug*, has cautioned that an "unrefined application of that case might mean that we fail to preserve the Lanham Act's goals of protecting American consumers against confusion, and protecting holder's of American trademarks against misappropriation of their marks." *Sterling Drug*, 14 F.3d at 746.

F.   <u>Law of the Case Doctrine Requires that Defendants' Motion be Denied</u>

Under the law of the case doctrine, once an issue is decided it will not be relitigated in the same case, except in unusual circumstances." *Delta Traffic Service, Inc. v. Oneida Motor Freight, Inc.* 1989 WL 122401 at *1 (D. Conn. 1989). Departing from this rule is only justified in cases where the evidence on a subsequent hearing or motion was substantially different, the controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice. *Id.* In this case Judge Underhill carefully considered all of the arguments now before this Court, including the application of *Vanity Fair*, and concluded that Plaintiffs' pleadings are sufficiently pled to survive a motion to dismiss for lack of subject matter jurisdiction. Defendants cite manifest injustice without basis. Judge Underhill's decision must stand.

As Judge Underhill properly held: "[t]he way I read this [Lanham Act 43(a) Unfair Competition] count is that the central allegation is that the defendant's activities and the way that they file for trademark registration is that they shouldn't have filed for it, and in an effort to

10

block the plaintiff from pursuing its business constitutes unfair competition. I don't understand the cases cited by the defense to preclude that claim." *Underhill Tr. at 39.*

                        Respectfully Submitted,

By: _____
Jess M. Collen
Matthew C. Wagner
Philip Miolene
COLLEN *IP*
THE HOLYOKE-MANHATTAN BUILDING
80 South Highland Avenue
Ossining, NY 10562
(914) 941-5668 Tel.
(914) 941-6091 Fax

*Attorneys for Plaintiff*

Dated: July 27, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br> v. <br><br> OMEGA, S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) |

## CERTIFICATE OF SERVICE

I, Laurie P. Leitner, hereby certify that I caused a true copy of the foregoing "Plaintiff's Supplemental Brief in Support of its Opposition to Defendants Motion for Judgment on the Pleadings" to be served upon the following, in the following manner and addressed in the following form on July 27, 2004:

        Fax w/o exhibits
        FedEx with exhibits

        Paul C. Llewellyn
        Thomas Smart, Esq.
        Kaye Scholer LLP
        245 Park Avenue
        New York, New York 10022

                                Laurie P. Leitner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA, S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) |

## CERTIFICATE OF SERVICE

I, Laurie P. Leitner, hereby certify that I caused a true copy of the foregoing "Plaintiff's Supplemental Brief in Support of its Opposition to Defendants Motion for Judgment on the Pleadings" to be served upon the following, in the following manner and addressed in the following form on July 27, 2004:

> Fax w/o exhibits
> FedEx with exhibits
>
> Paul C. Llewellyn
> Thomas Smart, Esq.
> Kaye Scholer LLP
> 245 Park Avenue
> New York, New York  10022

Laurie P. Leitner