IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

OMEGA, S.A.,

        Plaintiff,

v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND
OMEGA PRESS, INC.,

        Defendants.

OMEGA ENGINEERING, INC.,

        Counterclaim-Plaintiff,

v.

OMEGA, S.A. and
THE SWATCH GROUP7 LTD.

        Counterclaim-Defendants.

Civil Action No.:
3:01 CV 2104 (MRK)

---

**MEMORANDUM OF LAW IN SUPPORT OF OMEGA
ENGINEERING'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ITS COUNTERCLAIM FOR CANCELLATION**

Counterclaim-plaintiff Omega Engineering, Inc. ("OEI") submits this memorandum in support of its Rule 56 motion for summary judgment on its counterclaim for cancellation, pursuant to 15 U.S.C. § 1064, of counterclaim-defendant Omega, S.A.'s ("OSA") federal trademark registrations Nos. 708,731 and 1,290,661 for the mark OMEGA and design. The undisputed facts show that OSA's federal trademark registrations were obtained as a result of false and fraudulent statements made by it to the United States Patent and Trademark Office ("PTO") and that OSA has abandoned through non-use the mark at issue on the goods covered by the registrations, and, as such, the registrations are invalid and should be cancelled.

30946053.DOC

## STATEMENT OF FACTS[1]

United States Trademark Registration No. 708,731 was issued to OSA on December 20, 1960 for a mark consisting of the word OMEGA and the symbol Ω for use with "electronic time recorders for automatic precision timing in science and industry." (Smart Dec. Ex. M). Registration No. 1,290,661 was issued to OSA on August 21, 1984 for the same mark for use with, among other products, "computer apparatus for checking and controlling the measurement of time and distance for . . . scientific investigation, and industrial application, including the acquisition, transmission, and management of information intended for transportation, publicity, and financial use." (Smart Dec. Ex. L).

OSA renewed both registrations and, in doing so, claimed it was using the subject mark in the United States on all of the goods listed in each registration. (Smart Dec. Exs. N, O; Rentsch Tr. 126-30, 134-38). Thus, on December 20, 2000, OSA filed a trademark renewal application for Registration No. 708,731, including a Combined Section 8 and 9 Declaration in accordance with Sections 8 and 9 of the Lanham Act which was signed by Hanspeter Rentsch, Senior Vice President and General Counsel for The Swatch Group Ltd., OSA's parent company. The Combined Section 8 and 9 Declaration stated, in pertinent part, "[t]hat registrant owns Registration No. 708,731, that the mark shown therein is in use in commerce *on each of the goods recited in the registration*, with the attached specimen showing the mark as currently used." (Smart Dec. Ex. N) (emphasis added). OSA thus represented to the PTO that the

---

[1] The facts necessary to resolve this motion, which are set forth more fully in the accompanying Local Civil Rule 56(a) Statement of Undisputed Facts submitted in support of this motion and defendants' motion for summary judgment dismissing OSA's claims, are undisputed and may be found in the pleadings and in the deposition testimony of Omega S.A.'s witnesses in this matter and exhibits thereto, pertinent excerpts of which are attached to the declaration of Thomas A. Smart dated September 14, 2004 ("Smart Dec.").

OMEGA mark was in use in commerce on "electronic time recorders for automatic precision timing in science and industry" – that is, the goods covered by Registration No. 708,731. (*See* Smart Dec. Ex. M).

On August 14, 1990, OSA also filed a trademark renewal application for Registration No. 1,290,661. In the Combined Section 8 and 9 Declaration that was submitted in connection with that renewal application, which also was signed by OSA's authorized representative, OSA represented that the subject mark "has been in continuous use in commerce within the United States for five consecutive years from the date of the registration to the present, *on or in connection with all of the goods* of Classes 9 and 14 . . . recited in the registration." (Smart Dec. Ex. O) (emphasis added). The class 9 goods in Registration No. 1,290,661 included "computer apparatus for controlling the measurement of time and distance for . . . scientific investigation, and industrial application." (*See* Smart Dec. Ex. L).

The undisputed evidence in the record, however, is that *no* goods intended for use in "science or industry," or "scientific investigation and industrial application," as those terms are used in Registration Nos. 708,731 and 1,290,661, were sold in the United States under OSA's OMEGA marks at the time that OSA's renewals were filed, or are sold in the United States under OSA's OMEGA marks today. To the contrary, OSA's own witnesses, including its Rule 30(b)(6) witnesses, have admitted that neither OSA nor its licensees or affiliates sold any OMEGA-branded goods for "science and industry" or for "scientific investigation and industrial application" in the United States at the time Section 8 and 9 Declarations for Registration Nos. 708,731 and 1,290,661 were submitted to the PTO, and do not do so today.

Thus, OSA's Mr. Rentsch, who signed the renewal application for Registration 708,731, admitted that he knew of *no* sales in the United States of "electronic time recorders for automatic

precision timing in science and industry," the very goods covered by the registration, or of any goods sold by OSA in the United States for "scientific investigation" or "industrial application" as recited in Registration No. 1,290,661. (Rentsch Tr. 120-21, 124, 129, 131, 134-35, 138). OSA's Rule 30(b)(6) witness on the issue of OSA's use of the OMEGA marks in the United States, Mr. Robert Emmons, had no knowledge of OSA's sale of apparatus for scientific investigation and industrial application. (Emmons Tr. 10-12). Its Rule 30(b)(6) witness on the issue of use of OMEGA by OSA's licensee Omega Electronics, Mr. Hamid Kayal, similarly could not identify *any* goods sold by Omega Electronics in the United States for scientific or industrial use. (Kayal Tr. 244-45). Nor did Mr. Gibbons of Omega Electronics' exclusive United States licensee, GDG, Inc., know of any sales under OMEGA marks of goods for science or industry. (Gibbons Tr. 142-45, 153). Ms. Sauser Rupp, OSA's other Rule 30(b)(6) witness, conceded that she did not know of any United States sales by OSA or Omega Electronics of any "computer apparatus for checking and controlling the measurement of time and distance for scientific investigation or industrial application," or of any "electronic time recorders for automatic precision timing" other than for sports timing. (Sauser Rupp Tr. 252, 270-71).

In addition, OSA concedes that with respect to both renewals, the only specimen of use that OSA submitted for the goods at issue were apparatus for the timing of athletic competitions such as swim meets. (*See* Smart Dec. Exs. N, O; Kayal Tr. 252; Rentsch Tr. 130-31; Sauser Rupp Tr. 288-89, 292-93). Lastly, it is undisputed that there are no current plans to offer goods for scientific or industrial use in the United States under OSA's OMEGA marks. (Sauser Rupp Tr. 168-69).

## ARGUMENT

I. **SUMMARY JUDGMENT IS APPROPRIATE UNDER THE APPLICABLE LEGAL STANDARDS OF RULE 56.**

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A responding party may not rest upon mere conclusory allegations; rather, "(i)n response, the non-moving party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).

As shown herein, it is undisputed that OSA's two federal trademark registrations Nos. 708,731 and 1,290,661 for its OMEGA & design mark were procured as a result of false and fraudulent statements made by OSA's authorized representative to the PTO, and that OSA has abandoned the mark in connection with the goods covered by the registrations. Thus, the registrations are invalid and OEI is entitled to summary judgment on its counterclaim for cancellation.

II. **OEI IS ENTITLED TO SUMMARY JUDGMENT BECAUSE OSA'S FEDERAL TRADEMARK REGISTRATIONS WERE PROCURED THROUGH FRAUD ON THE PTO.**

Fraud in securing the registration or renewal of a federal trademark constitutes a ground for the cancellation of that registration. *See* 15 U.S.C. § 1064(3); *Orient Express Trading Company, Ltd., Hunting World Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (affirming judgment granting counterclaim for cancellation of plaintiff's trademark registrations based on fraudulent

renewal affidavits); *Medinol Ltd. v. Neuro Vasx, Inc.*, Cancellation No. 92040535, 2003 TTAB LEXIS 227, at *11-12 (TTAB May 13, 2003); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990); *T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 1978 U.S. Dist. LEXIS 19572, *18 (C.D. Cal. 1978).

Thus, courts routinely cancel trademark registrations where, contrary to the affidavit of use submitted in support of registration or renewal, an applicant does not use the mark on all of the goods or services set forth in the affidavit. In *Orient Express*, for example, the Second Circuit affirmed the cancellation of 19 of plaintiff's trademark registrations upon defendants' counterclaim pursuant to 15 U.S.C. § 1064(3), where the plaintiff's Section 8 & 15 affidavits had "exaggerated" the scope of its use of the marks at issue, and plaintiff's use of the marks had been "sporadic, at best." 842 F.2d at 653. *See also, e.g., General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car*, 1990 U.S. Dist. LEXIS 12749, at *7-8 (S.D. Fla. 1990); *Torres v. Torresella*, 808 F.2d 46, 49 (Fed. Cir. 1986); *see also Medinol*, 2003 TTAB LEXIS 227, at *11-13, *16-18; *First Int'l Servs. Corp. v. Chuckles, Inc.*, 1987 TTAB LEXIS 5, at *29-32, 5 U.S.P.Q.2D (BNA) 1628 (TTAB Dec. 11, 1987).[2]

---

[2]   In addition, where a registration covers goods and services that are not offered under registrant's mark, the proper remedy is to void the entire registration, even if the mark exists on some items accurately identified in the statement of use. *Medinol*, 2003 TTAB LEXIS 227, at *10-12 (canceling registration where Statement of Use asserted use on "medical devices, namely, neurological stents and catheters" but mark had never been used on stents; "[i]f fraud can be shown in the procurement of a registration, the entire resulting registration is void."); *General Car*, 1990 U.S. Dist. LEXIS 12749, at *2-3 (affirming summary judgment canceling plaintiff's registration where mark was not used in connection with aircraft and boat leasing as claimed in Statement of Use, but only with automobile, truck, tractor, trailer and agricultural, industrial and commercial equipment leasing); *Torres*, 808 F.2d at 49 (affirming summary judgment canceling plaintiff's registration where plaintiff claimed use on wine, vermouth, and champagne but mark was in use only on wine). "[D]eletion of the goods upon which the mark has not yet been
(continued...)

Moreover, "[a] trademark applicant commits fraud . . . when it makes material representations of fact in its declaration which it *knows or should know* to be false or misleading." *Medinol*, 2003 TTAB LEXIS 227, at *12-13, 15-17 (where the statement of use was not "lengthy, highly technical, or otherwise confusing, and the President/CEO who signed the document was clearly in a position to know (or to inquire) as to the truth of the statements therein," fraudulent intent was found) (emphasis added); *see also Torres*, 808 F.2d at 48; *First Int'l Servs. Corp.*, 1987 TTAB LEXIS 5, at *30. "[P]roof of specific intent to commit fraud is not required, rather, fraud occurs when an applicant or registrant makes a false material misrepresentation that the applicant or registrant knew or should have known was false." *General Car*, 1990 U.S. Dist. LEXIS 12749, at *6.

It is clear that OEI is entitled to summary judgment on its counterclaim to cancel OSA's registrations for Nos. 708,731 and 1,290,661 because OSA's statements in obtaining renewal of those registrations constituted fraud on the PTO. As set forth above, Mr. Rentsch – who signed one of the renewal affidavits – concedes that he is unaware of any use by OSA of its OMEGA marks in the United States in connection with scientific or industrial apparatus, and there is no evidence that OSA ever used its OMEGA marks in connection with such goods in the United States. (Rentsch Tr. 120-21, 124, 129, 131, 134-35, 138). Similarly, Mr. Kayal, the Rule 30(b)(6) designee with respect to Omega Electronics' products, could not identify a single customer who had purchased any OMEGA goods for use in scientific or industrial applications, and conceded that Omega Electronics' products had not been advertised for such uses. (Kayal Tr. 244-45). OSA's other witnesses also could not identify any uses for goods in science or

---

used does not remedy an alleged fraud upon the Office." *Medinol*, 2003 TTAB LEXIS 227, at *12.

industry. The false statements in OSA's affidavits that the mark was in use in connection with such goods led the PTO to renew OSA's registrations, because a failure to file the affidavits with respect to the goods at issue would have resulted in cancellation of the registrations as to those goods. *See* 15 U.S.C. § 1058; Trademark Manual of Examining Procedure § 1604.09(c); *see also Medinol*, 2003 TTAB LEXIS 227, at *11.

Furthermore, the requisite fraudulent intent is present because there can be no doubt that OSA "kn[ew] or should [have] know[n]" that the mark was not being used in connection with the covered goods. *Medinol*, 2003 TTAB LEXIS 227, at *13. As shown above, Mr. Rentsch admits that OSA did not offer industrial or scientific goods in the United States, yet he signed a renewal affidavit squarely to the contrary. The readily apparent misrepresentations in OSA's PTO submissions warrant cancellation of OSA's trademark registrations.

### III. OEI IS ENTITLED TO SUMMARY JUDGMENT BECAUSE OSA HAS ABANDONED THE MARKS AT ISSUE WITH RESPECT TO THE GOODS AT ISSUE.

Registration Nos. 708,731 and 1,290,661 should be cancelled for the separate and independent reason that, by OSA's own admission, it does not use its OMEGA marks in the United States on goods for scientific or industrial application, and has no intent to do so.

Where a mark has been abandoned with respect to the goods covered by a federal registration, that registration is not valid and is subject to cancellation. *See* 15 U.S.C. § 1064(3); *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (1989) (reversing bench trial finding of no abandonment and remanding for cancellation of trademark registration); *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1579, 1581 (1990). Under 15 U.S.C. § 1127, non-use of a mark for three years constitutes *prima facie* evidence of abandonment, shifting the burden to the registrant to demonstrate "reasonable grounds for the suspension and plans to resume use in the reasonably

foreseeable future when the conditions requiring suspension abate." *Silverman*, 870 F.2d at 47; *Citigroup Inc. v. City Holding Co.*, 2003 U.S. Dist. LEXIS 1845, at *44-45 (S.D.N.Y. Feb. 7, 2003); *accord, Imperial Tobacco*, 899 F.2d at 1579, 1581. "A bare assertion of possible future use is not enough" to prove an intent to resume use. *Silverman*, 870 F.2d at 47.

Here, as set forth above, there is no evidence that OSA or its licensees have *ever* used OSA's OMEGA & design mark in the United States in connection with "electronic time recorders for automatic precision timing in science and industry," or on "computer apparatus for checking and controlling the measurement of time and distance for . . . scientific investigation, and industrial application, including the acquisition, transmission, and management of information intended for transportation, publicity, and financial use." To the contrary, OSA concedes that it does not offer such goods in the United States, and has no intention to do so. As one court has stated in the face of such evidence, "no proof could be more persuasive than appellant's admission of nonuse." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1031 (C.C.P.A. 1982) (affirming grant of petition to cancel registration). On these undisputed facts, it is clear that, even if OSA had ever used the mark in connection with such goods in the United States, it has now abandoned the mark with respect to such goods, and its Registrations Nos. 708,731 and 1,290,661 should be cancelled.

## CONCLUSION

For the foregoing reasons, OEI's motion for summary judgment on its counterclaim for cancellation should be granted.

Dated: September 15, 2004
New York, NY

Of counsel:

Respectfully submitted,

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP

Victoria Haje
Michelle R. Tepper

425 Park Avenue
New York, NY 10022
(212) 836-8000

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

*Attorneys for Defendants and for Counterclaim-Plaintiff*