

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., OMEGA SCIENTIFIC, INC., and OMEGA PRESS, INC., <br><br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA, S.A. and THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) |

## OMEGA S.A.'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1.  Plaintiff, Omega, S.A. ("OSA" or "Plaintiff") is the manufacturer, seller and distributor of the world-renowned OMEGA brand of watches, horological products, and other specialized devices. [Ex. 2, OSA's website at www.omega.ch]

2.  OSA has been manufacturing watches and other timepieces since 1848, and has been using OMEGA and the Greek letter Ω in conjunction with its products since 1894. [Ex. 1, Registration No. 25,036]

3.  Consistently, throughout its long existence, Omega has been recognized as a maker of precision timepieces of the highest quality. [Ex. 2, www.omega.ch]

The Omega Speedmaster was worn by Edward White on the American astronaut's first walk in space and is the only watch ever to be worn on the moon. [Ex. 4, printout from www.omega.ch., visited September 14, 2004] The Speedmaster has accompanied every American astronaut on every space mission since that time and remains an integral part of the astronauts' standard equipment as it has been certified by NASA for the next 100 Space Shuttle flights. [*Id.*]

4.  With the advent of new technology, Omega continued to be a pioneer. An important part of Omega's pursuit of excellence in precision timing is its long involvement in the timing of sporting events. [*Id.*] Omega's pioneering efforts in this area began with the Gordon Bennett balloon race of 1909 in Zurich. In 1932, Omega was the official timekeeper of the Olympic Games. [*Id.*] Its efforts in this area have produced a number of timing innovations: the Omega Time Recorder, an electronic quartz-driven chronograph for timing to the 1/1000 of a second; the first infrared photoelectric cell in 1945; the first Photofinish camera in 1949, and the Scan 'O' Vision computerized imaging device in 1990. [*Id.*] Omega also developed giant matrix scoreboards in 1974, now equipping numerous stadiums, and the first timing electronic data processing center and display in 1978. [Ex. 3, Dep. Tr. Gibbons at 18.] Most recently, Omega's timing devices were used in the 2004 summer Olympic games held in Greece and broadcast nationally in the United States. [Ex. 4, Press Releases from www.omegaelectronicsus.com; Ex. 3, Dep. Tr. of Gibbons, at 18.

5.  OSA has all right, title and interest in and to the following United States trademark registrations for the mark OMEGA:

| MARK | REG. NO. | GOODS | REG. DATE |
|---|---|---|---|
| OMEGA (& Design) [Exhibit 1] | 25,036 | Watch movement and watchcases | 07/24/1894 |
| OMEGA [Exhibit 5] | 566,370 | Watches and parts thereof and Horological instruments | 11/04/1952 |
| OMEGA (& Design) [Exhibit 6] | 578,041 | Watches | 07/28/1953 |
| OMEGA (& Design) [Exhibit 7] | 577,415 | Wrist watch bracelets, bands, and straps | 07/14/1953 |
| OMEGA (& Design) [Exhibit 8] | 660,541 | Automatic recording machines and apparatus for use in determining the results of sporting events | 04/15/1958 |
| OMEGA (& Design) [Exhibit 9] | 708,731 | Electronic time recorders for automatic precision timing in science and industry | 12/20/1960 |
| OMEGA (& Design) [Exhibit 10] | 1,290,661 | Lubricating oils for watches and clocks | 08/21/1984 |

6.  Omega Engineering, Inc. ("OEI" or "Defendant(s)") OEI is a Stamford, Connecticut based company formed in 1962 specializing in products used for process measurement and control in industrial and scientific settings. [Ex. Dr. Hollander Decl., 2/22/04 at 2.] Specifically, these products are for the control or measurement of temperature, humidity, pressure, strain, force, flow, level, pH and conductivity. [*Id.*]

3

7.  Omega Press, Inc. ("OPI") is in the business of printing and publishing books on engineering and science. [*Id.* at 3.]

8.  Omega Scientific, Inc. ("OSI") is in the business of distributing scientific instruments. [*Id.*] OEI, OPI and OSI are collectively referred to as Defendants.

9.  Although OPI and OSI are separate and distinct corporate entities, OEI refers to them as "trade vehicles" and neither OSI or OPI has any employees of its own. [*Id.*; Ex. 12, 2003/2004 Corporate filings for OSI and OPI; Ex. 13, Deposition of Riggs at 15-17, 152-53; Ex. 14, Dep. Tr. of Dr. Hollander at 57-64, 68.]

10. All of OPI's and OSI's activities are carried out by OEI employees. [Ex.14, Dep. Tr. of Dr. Hollander at 57-64, 68.]

11. Betty Ruth Hollander ("Mrs. Hollander") is the President of OEI and her husband Dr. Milton Hollander ("Dr. Hollander') is the Director of OEI and its affiliates, including Newport Electronics ("Newport"). [Ex.13, Dep. Tr. of Riggs at 22.]

12. Christine Riggs ("Riggs") is in-house counsel for OEI, responsible in part for maintaining its trademark portfolio. [Ex. 11, Dep. Tr. of Riggs at 7-8.]

13. Dr. William Drucker has served as outside trademark counsel for OEI and has managed its trademark portfolio since the company's inception in 1962. [Ex. 14, Dep. Tr. of Dr. Hollander at 355-56.]

14. Newport electronics is a corporate affiliate of OEI and under common ownership and control with OEI. [Ex. 13 Dep. Tr. of Riggs at 73.]

15. When OEI first formed in 1962, it manufactured only one product, the bare wire thermocouple. [Ex. 15, Dep. Tr. Mrs. Hollander at 12-13.]

4

16.    Since that time, OEI has greatly expanded the scope of its goods and services, now claiming to offer more than 68,000 products. [*Id.*].

17.    While in its early years, OEI and OSA amicably coexisted, the expansion of OEI's use of the Omega marks quickly closed the gap between OSA's established rights in the Omega marks, and OEI's original use of the marks in connection with the bare wire thermocouple.

18.    This inevitable head-on collision reached a critical stage in 1994, over 100 years after OSA first established its right to the Omega mark in connection with timing devices, when the term timers and timing devices began frequently appearing in OEI's trademark applications. [Ex. 16, Reg. No. 2,022,762; Ex. 17, Ser. No. 75/747.885; Ex. 18, Ser. No. 76/242,073.]

19.    By the year 2000, OEI had further expanded its trademark application regimen concerning the Omega marks in connection with timing devices, filing, for example, a trademark application with a description of goods that contained: (a) two references to the term time; (b) two references to timing; and (c) six references to timers. Ex. 19, Ser. No. 76/052,828.

20.    OSA has, therefore, been forced to police OEI and its marks around the globe in a constant expensive effort to fight back the encroachment by OEI on its rights; often times this encroachment is explained by OEI as a simple mistake, and the offending goods are deleted [see for example, Ex.20]; frequently OSA must fight and win in tribunals around the world. [Ex. 21 *In Re Registration No.* 1557184, July 15, 2004]

21.    It is now possible for any consumer with access to the Internet to purchase from OEI a timing device that measures periods of time, the time of day, and bears the Omega

5

trademark. Ex. 22, printout from OEI website, www.omega.com, as visited on September 14, 2004.

22. This is the third dispute in this Court between the Parties regarding rights to the Parties respective rights to the Omega marks. As noted by the Court in *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp. 112, 114-115 (D. Conn. 2002) ("*Omega II*"):

> Throughout the 1980s, [OEI] and OSA had a history of disputing the scope of their respective trademark rights. During that period, the two parties signed several agreements limited to certain countries and trademark registrations. In an effort to end such disputes once and for all, in 1992, [OEI] entered into a worldwide agreement with OSA. In 1994, the agreement was replaced by a new worldwide agreement, which was executed for and on behalf of OSA on May 3, 1994, and [OEI] on August 2, 1994 ("1994 Agreement"). *Id.*, at 115, n. 12.
>
> The 1994 Agreement states, in part, that both parties hereto are desirous of coming to an arrangement for the avoidance of future interference Worldwide between their respective fields of commercial operation under their Rights in respect of Trademarks consisting of or including the word OMEGA and/or the Greek letter $\Omega$ or containing elements colourably resembling either of thos[e] two elements. *Id.*

23. In May of 2003, in an effort to resolve the Parties' dispute in *Omega Engineering, Inc. v. Omega, S.A.*, Civ. No. 3:98CV2468 (AVC) ("Omega I"), the Parties entered into settlement discussions.

24. Although the Omega I agreement remains disputed by OSA, Judge Covello recently ordered that the agreement should be enforced. [Ex. 23, Order and Judgment dated 8/12/04].

25. A Notice of Appeal has been filed by OSA challenging the enforcement of this agreement. [Ex. 24, OSA's Notice of Appeal.]

26. On or about November 4, 2002, the Parties settled, *Omega S.A. v. Omega Engineering, Inc.*, Civ. No. 300CV1848 (JBA) ("Omega II"), when OEI transferred the marks OMEGAWATCH.COM and OMEGATIME.COM to OSA. [Ex. 25, Docket History of Case printed from PACER (9/14/04).]

27. The core of OSA's business is time and timing devices. [Ex. 21, *In re Reg. No. 1557184* at 31 and 38.]

28. OSA also has exclusive rights to the Omega marks in connection with sports timing, data logging and display apparatus. [Ex. 13, Dep. Tr. Riggs at 105; Ex. 1, Registration No. 25,036; Ex. 5, Reg. No. 566,370; Ex. 8, Reg. No. 650,541].

29. The core of OEI's business is the manufacture and sale of process measurement and control devices for science and industry. [Ex. 11, Dr. Hollander Decl. 2/22/02 at 2].

30. OSA and OEI both sell their goods to similar customers including universities, engineers, and NASA. [Ex.14, Dep. Tr. of Dr. Hollander, at 233-36, 258-59; Ex. 3 Dep. Tr. of Gibbons at 138; Ex. 4, printout from OSA's website at www.omega.ch, visited September 14, 2004].

31. OEI's goods are available for purchase by any individual or company with access to the world wide web. [Ex.22, printout from OEI's website at www.omega.com, visited September 14, 2004.]

32. OSA and OEI both sell timing devices. Ex. 2, printout from OSA's website www.omega.ch, visited on September 14, 2004; Ex. 22, OEI's website at www.omega.com, visited on September 14, 2004.].

33. More than a century before OEI was even formed, OSA had been using the Omega mark in connection with timing devices worldwide and first used the mark in the

7

United States more than 68 years prior to OEI's existence. [Ex. 1, Reg. No. 25,036; Ex. 5, Reg. No. 566,370].

34.  OEI has filed numerous trademark applications in the United States and abroad (including, for example, Ex. 26, Ser. No. 76/337,450; Ex. 27, Ser. No. 76/337,374; Ex. 18, Ser. No. 76/242,073; Ex. 28, Ser. No. 002180834 (CTM)) for use of the Omega marks in connection with goods that are the same or confusingly similar to OSA's core business, such as the following:

- Timers;
- Period timers;
- Precious metals;
- Jewelry;
- Horological and chronometric instruments;
- Precious stones;
- Apparatus for timing variable chemical and physical parameters such as timing;
- Dataloggers;
- Data storing, registering and recording apparatus;
- Industrial and scientific clocks; and
- Apparatus for display timing.

35.  OEI has also filed numerous trademark applications in the United States and abroad (including, for example, Ex. 26, Ser. No. 76/337,450; Ex. 27, Ser. No. 76/337,374; Ex. 18, Ser. No. 76/242,073; Ex. 28, Ser. No. 002180834 (CTM)) for use of the Omega marks in connection with goods and services clearly unconnected with OEI's business and for which, in some instances, it has admitted no intent to use (Ex. 14, Dep. Tr. of Dr. Hollander at 362-365):

- Typewriters;
- Fire extinguishing apparatus;
- Cardboard;
- Artists' materials;
- Playing cards;
- Advertising services;
- Photographs;

- Stationary;
- Business administration;
- Office functions; and
- Paper.

36. Although it has admitted that that many of the goods listed in certain registrations [see e.g. Ex. 16, Reg. No. 2,022,762] were not even invented in 1962, OEI maintains a first use date of 1962 in these registrations for such goods including, for example:

- Period timers;
- Dateloggers;
- Computer software;
- Digital controllers; and
- All goods listed with a microprocessor.

[Ex. 14, Dep. Tr. of Dr. Hollander at 280-89].

37. Anticipating the unavoidable consequences of applying for registration of the Omega mark in connection with timing devices, OEI unsuccessfully attempts to cure this encroachment by including the following incoherent statement at the end of a long list[1] of goods in International Class 9 in many of its Omega applications:

- The foregoing products are used for industrial and/or scientific purposes, but not including temperature measuring instruments and apparatus incorporating a time of day display, unless intended for science or industry and not including computer controlled measuring timing and display apparatus unless intended for use in science or industry; all the foregoing being for science and industry. [Ex. 26, Application No. 76/337,450].

38. Available for purchase through OEI's website are timing devices. [Ex. 29, printout from OEI's website at www.omega.com, visited on April 15, 2004.]

39. Timing devices sold on OEI's website are marketed as day clocks, stop watches and timers.

---

[1] In some instances the list in this class alone in OEI's applications includes hundreds of goods. *See, e.g.*, Ex. __, Serial No. 76/377,450.

40. Some of the timing devices available through OEI's website are advertised and depicted along with a wrist watch, in one instance, and a stop watch in another. [Ex. 29, printout from search engine results from www.omega.com, visited on April 15, 2004.]

41. Dr. Hollander testified that these timing devices are displayed with a wristwatch so that a customer can determine the size of the timing device, stating:

> o "Since the wristwatch tells time, this tells time. But looking at the picture you have no idea how big the product is, so it would make a lot more sense to use a wristwatch or a pocket watch than to use a cup or a saucer." [Ex. 14, Dep. Tr. of Dr. Hollander at 328-29].

42. OEI also offers for sale through its website, goods that it describes as watch batteries.

43. The watch batteries sole on OEI's website are sold in connection with the Omega marks. [Ex. 30, printout from search results from www.omega.com, visited on 31; Report of Brad Cole].

44. Thus, not only is OEI selling timing devices in connection with the Omega marks, it is also selling parts for watches with the Omega mark.

45. OEI applied for registration of the trademarks OMEGAWATCH.COM, OMEGATIME.COM and OMEGATIME.NET. [Ex. 33, 32].

46. OEI's expansion of its use of the Omega mark in connection with timing devices, has prompted European judicial tribunals to find:

> o OSA has "a reputation in relation to both watches and sophisticated timing apparatus for sporting activities. The reputation is not for timing apparatus for industrial or scientific purposes but is a reputation which, in my view, will accrue to any timing equipment; and period timers are timing equipment." Ex. 21, *In re Registration No. 1557184*, July 15, 2004 at 31.
> o "No doubt [OSA] feels more than a frission of concern that one of its rivals could purchase this trade mark or part of it, through division, and have rights in the word OMEGA for period timers for scientific and/or

10

>industrial purposes. The measurement and recording of time is the very core of the business of [OSA]." *Id.* at 38.

47. From its early beginnings as solely a manufacturer of thermocouples, OEI's trademark filing practices have expanded greatly to the point where now applications are drafted using the very broad "Niece" classifications, and anything that is not rejected by the examiner remains as part of OEI's application. [Ex. 34, Dep. Tr. of Dr. Drucker at 15-20, 38-41.]

48. Dr. Drucker has described this pattern and practice of OEI as a "lottery." [*Id.* at 113].

49. Individuals drafting and signing applications on behalf OEI do not even conduct an independent investigation as to OEI's use or bona fide intent to use the mark in connection for the goods and services specified in the applications filed with the trademark office. [Ex. 34, Dep. Tr. of Dr. Drucker at 25-31].

50. OEI readily admits selling jewelry, but alleges that such jewelry is only for science and industry. [Ex. 34, Dep. Tr. of Dr. Drucker at 81-83]. When asked how jewelry can be manufactured and sold only to science and industry, Dr. Hollander explained that:

> o OEI sells "precious metal wire in strips or lengths which are suitable, for example, to form a piece of jewelry that if the owner barely twists it around his finger it becomes a ring or a larger length might become a necklace. There is nothing you need to do about it. It is jewelry. It's just an expanded form. It's like a kit." [*Id.*]

51. The above-captioned matter does not represent the first time that this Court has been asked to address OEI's infringing activities. This Court, on more than one occasion, has already found OEI and its affiliates guilty of bad faith and cybersquatting:

- *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 497-98 (2d Cir.2000) (OEI's found to have acted in bad faith in violation of APCA);
- *Newport Electronics, Inc. v. Newport Corp.*, 157 F.Supp.2d. 202, 214 (D.Conn.2001) (Acts of Dr. Hollander's company and OEI affiliate to found to most likely be in bad faith.); and
- *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112 (D.Conn. 2002.) (OEI's acts are found suspect and indicative of bad faith use and registration of OMEGAWATCH.com and OMEGATIME.com).

52. OEI and its Chief Financial Officer were found guilty of violating the Export Control Act, Title 50 of the United States Code, § 2410 for their sale of potentially sensitive nuclear secrets to Pakistan.

53. Such goods were sold in connection with the Omega mark that is at the core of the dispute in this action and thereby negatively impacts and tarnishes the goodwill and associations made with the Omega mark. [Ex. 35, Hearing Tr. dated 9/23/03 in *United States v. Omega Engineering, Inc.*, Civ. No. 3:03CR116 (DJS); Ex. 36, Hearing Tr. dated April 29, 2003 in *United States v. Michel*, Civ. No. 3:03CR116 (DJS).

54. Listed below, and incorporated into this Undisputed Statement of Facts is a representative sample of trademark applications filed by OEI and its affiliates in the Unites States and abroad:

| Mark Date Filed Application Number Trademark Office | GOODS (Application Number) |
|---|---|
| OMEGA 1/4/1996 Community Trademark | Apparatus and instruments for measuring time; apparatus and instruments for metering in so far as they relate to time/timing; scientific and industrial research service and /or making models and designs in the field of equipment for measuring, controlling and/or regulating time. (000.174.458) |
| OMEGA 3/21/2001 Community Trademark | Clocking devices; apparatus for checking and measuring time and distance; computer controlled apparatus for checking and controlling the measurement of time and distance. (001.567.684) |
| OMEGA 4/17/2001 Community Trademark | All goods claimed, namely precious metals and their alloys and goods in precious metals or coated therewith, not included in other classes jewellery, precious stones horological and chronometric instruments; timers; period timers; all of the foregoing for use in science and industry. (002.180.834) |
| Ω 5/21/2001 Community Trademark | Measuring, signaling, apparatus and instruments insofar and they relate to timing; horological and chronometric instruments; timers; period timers; all of the foregoing for use in science and industry. (002.229.169) |
| OMEGA ΩE 6/30/1997 Canada | Clocks, timers (849.631) |
| ΩE 6/30/1997 Canada | Clocks, timers (849.629) |
| OMEGA 6/30/1997 Canada | Clocks, timers. (849.630) |
| OMEGAMETER 8/10/1998 United Kingdom | Period timers. (2.179.158) |
| OMEGA ΩE 6/5/2002 United Kingdom | Period timers. (1.517.303) |
| OMEGA 12/16/1993 United Kingdom | Period timers. (1.557.184) |
| OMEGA 4/18/2001 USPTO | Paper goods, cardboard, paintbrushes, typewriters. (76-242,073) |
| Ω.COM 11/14/2001 USPTO | Fire extinguishing apparatus; apparatus and instruments for metering ... timing. (76-337,374) |
| Ω 11/14/2004 USPTO | Apparatus and instruments for metering ... timing. (76-337,450) |

By:

Respectfully submitted
for Plaintiff,

Jess M. Collen (JC-2875)
Matthew C. Wagner (MW-0204)
COLLEN *IP*
THE HOLYOKE-MANHATAN BUILDING
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
(914) 941-6091 (facsimile)
jcollen@collenlaw.com (email)

Dated: September 15, 2004

15