# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

OMEGA S.A.,

    Plaintiff,

v.

OMEGA ENGINEERING, INC.,
OMEGA SCIENTIFIC, INC., and
OMEGA PRESS, INC.,

    Defendants.

OMEGA ENGINEERING, INC.,

    Counterclaim-Plaintiff,

v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.,

    Counterclaim-Defendants.

Civil Action No.:
3:01 CV 2104 (MRK)

## OMEGA S.A.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| OMEGA S.A., | ) |
| Plaintiff, | ) |
| v. | ) |
| OMEGA ENGINEERING, INC., | ) |
| OMEGA SCIENTIFIC, INC., and | ) |
| OMEGA PRESS, INC., | ) |
| Defendants. | ) Civil Action No.: |
| | ) 3:01 CV 2104 (MRK) |
| OMEGA ENGINEERING, INC., | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| OMEGA, S.A. and | ) |
| THE SWATCH GROUP LTD., | ) |
| Counterclaim-Defendants. | ) |

## TABLE OF CONTENTS

**OMEGA S.A.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.  STATEMENT OF FACTS..................................................................2

   A. Omega S.A..........................................................................2

   B. Omega Engineering, Inc (and it affiliates)....................................4

   C. History of Dispute between Parties............................................5

   D. The Current Dispute- and OEI's Activities...................................6

II. DISCUSSION..........................................................................15

A. Standard of Review..................................................................................15

B. OEI's Conduct Constitutes Unfair Competition under
   both CUTPA and the Lanham Act

   1. *OEI's Conduct with respect to trademark
      and domain name applications and registrations
      offends public policy and violates the law*......................................16

   2. *OEI's Advertising and Marketing Practices
      Create a Likelihood of Confusion in the Marketplace
      and Violate CUTPA and the Lanham Act*........................................2

C. OSA Properly owns rights to the OMEGA.US Domain Name-
   Defendants' First Counterclaim should be Dismissed

   1. *The .US Registration Process*......................................................34

   2. *Registration Requirement for the .US Domain*.............................34

   3. *OSA Clearly Met the Requirements for Registration of Omega.us*...........35

   4. *There is No Evidence of Bad Faith*...............................................36

   5. *OEI's Claim to be the "US OMEGA"
      or "OMEGAUS" is Baseless and Borders on Absurdity*.....................38

IV. **CONCLUSION**.......................................................................................39

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Celeotex v. Catrett,*
477 U.S. 317 (1986)..........................................................................................2

*Anderson v. Liberty Lobby,*
477 U.S. 242
1986)..............................................................................................................2

*Nationwide Life Ins. v. Bankers Leasing Assoc., Inc.,*
182 F.3d 157 (2nd Cir.
1999)..............................................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)........................................................................................2

*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655
(1963).....................................................................................................2

*U.S. Structures, Incorporated v. J.P. Structures, Incorporated*,
130 F.3d 1185 (6th Cir.
1997).....................................................................................................2

*Kunz v. United Food & Commercial Workers, Local 876*,
F.3d 1006 (6th Cir.
1993).....................................................................................................2

*Sporty's Farm LLC v. Sportsman's Market Inc.*,
202 F.3d 489 (2nd Cir.
2000).............................................................................................6, 20,

*Societe Des Hotels Meridien v. LaSalle Hotel*,
2004 WL 1826031 (2nd Cir.
2004)...................................................................................................10

*New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*,
312 F.Supp.2d 195 (D.Conn.
2004)...................................................................................................10

*Omega S.A. v. Omega Engineering, Inc.*,
228 F.Supp.2d 112 (D.Conn. 2002)..................................12-13, 17, 20, 30-32

*1-800 Contacts, Inc. v. WhenU.com*,
309 F.Supp. 2d 467, 491 (S.D.N.Y.
2003)...................................................................................................19

*Clinique Laboratories, Inc.*,
945 F.Supp. at 558 (S.D.N.Y.
1996)...................................................................................................19

*Newport Electronics, Inc. v. Newport Corp.*,
157 F.Supp.2d. 202 (D. Conn.
2001).........................................................................................20, 30-33

*Forschner Group, Inc. v. Arrow Trading Co. Inc.*,
30 F.3d 348 (2nd Cir.
1994)...................................................................................................21

*Scotch Whisky Ass'n v. Majestic Distilling Co.*,
958 F.2d 594 (4th Cir.
1992)...................................................................................................21

*Lucent Information Management, Inc. v. Lucent Technologies, Inc.,*
186 F.3d 311 (3rd Cir.
1999)..................................................................................................22

## STATE CASES

*Web Press Services Corp. v. New London Motors, Inc.*
203 Conn 342, 255, 525 A.2d 57, 65
(1987)............................................................................................10, 22

*Jacobs v. Healey Ford-Subaru, Inc.,*
231 Conn. 707, 652 A.2d 496
(1995)..................................................................................................10

## OTHER AUTHORITIES

TRADEMARK AND UNFAIR COMPETITION LAW, GINSBURG, LITMAN,
KEVLIN, FOUNDATION PRESS 2001........................................................31

## STATUTES and RULES

15 U.S.C. § 1125................................................................6 7, 10, 11, 20

15 U.S.C. §1051...................................................................................22

15 U.S.C. § 1127..................................................................................22

15 U.S.C. § 1051.......................................................................22, 23, 28

TMEP § 1102 .........................................................................................2

Conn. Gen.Stat. § 42-110b(a) (LEXIS 2004)...........................................10

FED. R.CIV. P 56 (C)................................................................................1

FED. R.CIV. 56(e)....................................................................................2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br><br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA, S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) |

### OMEGA S.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff/Counterclaim Defendant, Omega S.A., ("Plaintiff" or "OSA"), by and through its undersigned counsel, hereby submits this Memorandum of law in Support of its Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 (c), on its claims for violations by Defendants, Omega Engineering, Inc. ("OEI"), Omega Scientific, Inc. ("OSI") and Omega Press, Inc. ("OPI") (collectively referred to as "OEI" or "Defendants") of the Lanham Act, 15 U.S.C. §§ 1125(b), Connecticut Unfair Trade Practice's Act, Conn. Gen.Stat. § 42-

110b(a) ("CUTPA") Plaintiff also moves for summary judgment on Defendants' first counterclaim for cybersquatting relative to omega.us.

## I.     STATEMENT OF FACTS

### A.    OMEGA S.A.

Plaintiff is the manufacturer, seller and distributor of the world-renowned OMEGA brand of watches, horological products, and other specialized devices. OSA has been manufacturing watches and other timepieces since 1848, and has been using OMEGA and the Greek letter Ω in conjunction with its products since 1894. [Ex. 1, Registration No. 25,036] <u>Consistently</u>, throughout its long existence, Omega has been recognized as a maker of precision timepieces of the highest quality.

The Omega Speedmaster was worn by Edward White on the American astronaut's first walk in space and is the only watch ever to be worn on the moon. [Ex. 2, printout from www.omega.ch., visited September 14, 2004] The Speedmaster has accompanied every American astronaut on every space mission since that time and remains an integral part of the astronauts' standard equipment as it has been certified by NASA for the next 100 Space Shuttle flights. [*Id.*]

With the advent of new technology, Omega continued to be a pioneer. An important part of Omega's pursuit of excellence in precision timing is its long involvement in the timing of sporting events. [*Id.*] Omega's pioneering efforts in this area began with the Gordon Bennett balloon race of 1909 in Zurich. In 1932, Omega was the official timekeeper of the Olympic Games. [*Id.*] Its efforts in this area have produced a number of timing innovations: the Omega Time Recorder, an electronic quartz-driven chronograph for timing to the 1/1000 of a second; the first infrared photoelectric cell in 1945; the first Photofinish camera in 1949, and the Scan 'O'

2

Vision computerized imaging device in 1990. [*Id.*] Omega also developed giant matrix scoreboards in 1974, now equipping numerous stadiums, and the first timing electronic data processing center and display in 1978. [Ex. 3, Dep. Tr. Gibbons at 18.] Most recently, Omega's timing devices were used in the 2004 summer Olympic games held in Greece and broadcast nationally in the United States. [Ex. 4, Press Releases from www.omegaelectronicsus.com; Ex. 3, Dep. Tr. of Gibbons, at 18.]

OSA has all right, title and interest in and to the following United States trademark registrations for the mark OMEGA:

| MARK | REG. NO. | GOODS | REG. DATE |
| --- | --- | --- | --- |
| OMEGA (& Design) [Exhibit 1] | 25,036 | Watch movement and watchcases | 07/24/1894 |
| OMEGA [Exhibit 5] | 566,370 | Watches and parts thereof and Horological instruments | 11/04/1952 |
| OMEGA (& Design) [Exhibit 6] | 578,041 | Watches | 07/28/1953 |
| OMEGA (& Design) [Exhibit 7] | 577,415 | Wrist watch bracelets, bands, and straps | 07/14/1953 |
| OMEGA (& Design) [Exhibit 8] | 660,541 | Automatic recording machines and apparatus for use in determining the results of sporting events | 04/15/1958 |
| OMEGA (& Design) [Exhibit 9] | 708,731 | Electronic time recorders for automatic precision timing in science and industry | 12/20/1960 |
| OMEGA (& Design) [Exhibit 10] | 1,290,661 | Lubricating oils for watches and clocks | 08/21/1984 |

3

### B. OMEGA ENGINEERING INC. (AND ITS AFFILIATES)

OEI is a Stamford, Connecticut based company formed in 1962 specializing in products used for process measurement and control in industrial and scientific settings. [Ex. 11, Hollander Decl., 2/22/04 at 2.] Specifically, these products are for the control or measurement of temperature, humidity, pressure, strain, force, flow, level, pH and conductivity. [*Id.*]

OPI also prints and publishes books on engineering and science. [*Id.* at 3.] OSI distributes scientific instruments. [*Id.*] Although OPI and OSI are separate and distinct corporate entities, they do not have any distinct corporate identities to distinguish them from OEI. OEI refers to them as "trade vehicles" and neither OSI or OPI has any employees of its own. [*Id.*; Ex. 12, 2003/2004 Corporate filings for OSI and OPI; Ex. 13, Deposition of Riggs at 15-17, 152-53; Ex. 14, Dep. Tr. of Dr. Hollander at 57-64, 68.] All of OPI's and OSI's activities are carried out by OEI employees. [Ex., Dep. Tr. of Dr. Hollander at 57-64, 68.] Betty Ruth Hollander ("Mrs. Hollander") is the President of OEI and her husband Dr. Milton Hollander ("Dr. Hollander") is the Director of OEI and its affiliates, including Newport Electronics ("Newport"). [Ex. 13, Dep. Tr. of Riggs at 22.] Christine Riggs ("Riggs") is in-house counsel for OEI, responsible in part for maintaining its trademark portfolio. [Ex. _, Dep. Tr. of Riggs at 7-8.] Dr. William Drucker has served as outside trademark counsel for OEI and has managed its trademark portfolio since the company's inception in 1962. [Ex. 14, Dep. Tr. of Dr. Hollander at 355-56.] Newport electronics is a corporate affiliate of OEI and under common ownership and control with OEI. [Ex. 13 Dep. Tr. of Riggs at 73.]

When OEI first formed in 1962, it manufactured only one product, the bare wire thermocouple. [Ex. 15, Dep. Tr. Mrs. Hollander at 12-13.] Since that time, OEI has greatly

4

expanded the scope of its goods and services, now claiming to offer more than 68,000 products. [*Id.*]. While in its early years, OEI and OSA amicably coexisted, the expansion of OEI's use of the Omega marks eventually closed the gap between OSA's established rights in the Omega marks and OEI's original use of the marks in connection with the bare wire thermocouple.

Conflict between the Parties' marks reached a critical stage in 1994, over 100 years after OSA first established its right to the Omega mark in connection with timing devices, when the terms timers and timing devices began frequently appearing in OEI's trademark applications. [Ex. 16, Reg. No. 2,022,762; Ex. 17, Ser. No. 75/747.885; Ex. 18, Ser. No. 76/242,073.] By the year 2000, OEI had further expanded its trademark application regimen concerning the Omega marks in connection with timing devices, filing, for example, a trademark application with a description of goods that contained: (a) two references to the term time; (b) two references to timing; and (c) six references to timers. Ex. 19, Ser. No. 76/052,828.

OSA has, therefore, been forced to police OEI and its marks around the globe in a constant expensive effort to fight continues infringement by OEI on its rights; often times this encroachment is explained by OEI as a simple mistake, and the offending goods are deleted. [see for example, Ex. 20]; frequently OSA must fight and win in tribunals around the world. [Ex. 21, *In Re Registration No.* 1557184, July 15, 2004] Astonishingly, it is now possible for any consumer with access to the Internet to purchase directly from OEI a timing device that measures periods of time, the time of day, and bears the Omega trademark. This is confusing to consumers and plainly encroaches OSA's rights. These are the bases of OSA's present action. [Ex. 22, printout from OEI website, www.omega.com, as visited on September 14, 2004.]

### C. HISTORY OF DISPUTE BETWEEN PARTIES

This is the third dispute in this Court between the Parties regarding the Parties' respective

5

rights to the Omega marks. The history is well told by the Court in *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp. 112, 114-115 (D. Conn. 2002) ("*Omega II*"):

> Throughout the 1980s, [OEI] and OSA had a history of disputing the scope of their respective trademark rights. During that period, the two parties signed several agreements limited to certain countries and trademark registrations. In an effort to end such disputes once and for all, in 1992, [OEI] entered into a worldwide agreement with OSA. In 1994, the agreement was replaced by a new worldwide agreement, which was executed for and on behalf of OSA on May 3, 1994, and [OEI] on August 2, 1994 ("1994 Agreement"). *Id.*, at 115, n. 12.
>
> The 1994 Agreement states, in part, that both parties hereto are desirous of coming to an arrangement for the avoidance of future interference Worldwide between their respective fields of commercial operation under their Rights in respect of Trademarks consisting of or including the word OMEGA and/or the Greek letter Ω or containing elements colourably resembling either of thos[e] two elements. *Id.*

In May of 2003, in an effort to resolve the Parties' dispute in *Omega Engineering, Inc. v. Omega, S.A.*, Civ. No. 3:98CV2468 (AVC) ("Omega I"), the Parties entered into settlement discussions, and appeared to reach a tentative agreement, but for ambiguous wording in one paragraph. Although disputed by OSA, Judge Covello recently ordered that an enforceable agreement existed in Omega I. [Ex. 23, Order and Judgment dated 8/12/04]. OSA has appealed. [Ex. 24, OSA's Notice of Appeal.] On or about November 4, 2002, *Omega S.A. v. Omega Engineering, Inc.*, Civ. No. 300CV1848 (JBA) ("Omega II"), was dismissed when OEI transferred the marks OMEGAWATCH.COM and OMEGATIME.COM to OSA. [Ex. 25, Docket History of Case printed from PACER (9/14/04).]

### D. THE CURRENT DISPUTE – AND OEI'S ACTIVITIES

The core of OSA's business is time and timing devices. [Ex. 21, *In re Reg. No. 1557184* at 31 and 38.] OSA also has exclusive rights to the Omega marks in connection with sports timing, data logging and display apparatus. [Ex. 13, Dep. Tr. of Riggs at 105; Ex. 1, Registration No. 25,036; Ex. 5, Reg. No. 566,370; Ex. 8, Reg. No. 650,541]. The core of OEI's business is

the manufacture and sale of process measurement and control devices for science and industry. [Ex. 11, Dr. Hollander Decl. 2/22/02 at 2].

OSA and OEI have both been known to sell their goods to similar customers including universities, engineers, and NASA. [Ex. 14, Dep. Tr. of Dr. Hollander, at 233-36, 258-59; Ex. 3, Dep. Tr. of Gibbons at 138; Ex. 2, printout from OSA's website at www.omega.ch, visited September 14, 2004]. OEI's goods are available for purchase by any individual or company with access to the world wide web and a credit card. [Ex. 22, printout from OEI's website at www.omega.com, visited November 14, 2004.]

OSA and OEI both sell timing devices. [Ex. 2, printout from OSA's website www.omega.ch, visited on September 14, 2004; Ex. 22, OEI's website at www.omega.com, visited on September 14, 2004.]. More than a century before OEI was even formed, OSA had been using the Omega mark in connection with timing devices worldwide and first used the mark in the United States more than 68 years prior to OEI's existence. [Ex. 1, Reg. No. 25,036; Ex. 5, Reg. No. 566,370].

OEI has filed numerous trademark applications in the United States and abroad (including, for example, Ex. 26, Ser. No. 76/337,450; Ex. 27, Ser. No. 76/337,374; Ex. 18, Ser. No. 76/242,073; Ex. 28, Ser. No. 002180834 (CTM)) for use of the Omega marks in connection with goods that are the same or confusingly similar to OSA's core business, such as the following:

- Timers;
- Period timers;
- Precious metals;
- Jewelry;
- Horological and chronometric instruments;
- Precious stones;
- Apparatus for timing variable chemical and physical parameters such as timing;
- Dataloggers;

7

- Data storing, registering and recording apparatus;
- Industrial and scientific clocks; and
- Apparatus for display timing.

OEI has also filed numerous trademark applications in the United States and abroad (including, for example, Ex. 26, Ser. No. 76/337,450; Ex. 27, Ser. No. 76/337,374; Ex. 18, Ser. No. 76/242,073; Ex. 28, Ser. No. 002180834 (CTM)) for use of the Omega marks in connection with goods and services clearly unconnected with OEI's business and for which, in some instances, it has admitted no interest in using (Ex. 14, Dep. Tr. of Dr. Hollander at 362-365):

- Typewriters;
- Fire extinguishing apparatus;
- Cardboard;
- Artists' materials;
- Playing cards;
- Advertising services;
- Photographs;
- Stationary;
- Business administration;
- Office functions; and
- Paper.

While admitting that many of the listed goods in certain registrations [see e.g. Ex. 16, Reg. No. 2,022,762] were not even invented in 1962, OEI maintains a first use date of 1962 in these registrations for such goods including, for example:

- Period timers;
- Dateloggers;
- Computer software;
- Digital controllers; and
- All goods listed with a microprocessor.

[Ex. 14, Dep. Tr. of Dr. Hollander at 280-89].

Anticipating the unavoidable consequences of applying for registration of the Omega mark in connection with timing devices, OEI unsuccessfully attempts to cure this encroachment

8

by including the following incoherent statement at the end of a long list[1] of goods in International Class 9 in many of its Omega applications:

> o The foregoing products are used for industrial and/or scientific purposes, but not including temperature measuring instruments and apparatus incorporating a time of day display, unless intended for science or industry and not including computer controlled measuring timing and display apparatus unless intended for use in science or industry; all the foregoing being for science and industry. [Ex. __, Application No. 76/337,450].

The timing devices available on the OEI web site are marketed as day clocks, stop watches and timers. Some of the timing devices available through OEI's website are intentionally advertised and depicted along with a wrist watch, in one instance, and a stop watch in another. [Ex. 14, Dep. Tr. of Dr. Hollander at 328-29; Ex. 29, printout from search engine results from www.omega.com, visited on April 15, 2004.]

Dr. Hollander testified that these timing devices are displayed with a wristwatch so that a customer can determine the size of the timing device, stating:

> o "Since the wristwatch tells time, this tells time. But looking at the picture you have no idea how big the product is, so it would make a lot more sense to use a wristwatch or a pocket watch than to use a cup or a saucer." [Ex. 14, Dep. Tr. of Dr. Hollander at 328-29].

OEI also offers for sale through its website, goods that it describes as watch batteries. These watch batteries are sold in connection with the Omega marks. [Ex. 30, printout from search results from www.omega.com, visited on April 15, 2004; Ex. 31 Investigative Report of Brad Cole.]

Moreover, OEI applied for registration of the trademarks OMEGAWATCH.COM, and OMEGATIME.COM. [Ex. 32 and 33].

---

[1] In some instances the list in this class alone in OEI's applications includes hundreds of goods. *See, e.g.,* Ex. __, Serial No. 76/377,450.

9

OEI's expansion of its use of the Omega mark in connection with timing devices, has prompted European judicial tribunals to find:

- OSA has "a reputation in relation to both watches and sophisticated timing apparatus for sporting activities. The reputation is not for timing apparatus for industrial or scientific purposes but is a reputation which, in my view, will accrue to any timing equipment; and period timers are timing equipment." Ex. 21, *In re Registration No. 1557184*, July 15, 2004 at 31.
- "No doubt [OSA] feels more than a frission of concern that one of its rivals could purchase this trade mark or part of it, through division, and have rights in the word OMEGA for period timers for scientific and/or industrial purposes. The measurement and recording of time is the very core of the business of [OSA]." *Id.* at 38.

From its early beginnings as solely seeking to protect thermocouples, OEI's trademark filing practices have expanded to the point where now, applications are drafted using the very broad "Nice Treaty" classifications, and anything that is not rejected by the examiner remains as part of OEI's application. [Ex. 34, Dep. Tr. of Dr. Drucker at 15-20, 38-41.] Dr. Drucker has described their approach to determining legally acceptable goods description as merely a "lottery." [*Id.* at 113].

In fact, individuals drafting and signing applications on behalf OEI do not even conduct an independent investigation as to OEI's use or bona fide intent to use the mark in connection for the goods and services specified in the applications filed with the trademark office. [Ex. 34, Dep. Tr. of Dr. Drucker at 25-31].

In one of OEI's encroachments into OSA's rights to the Omega marks, OEI readily admits selling jewelry, but alleges that such jewelry is only for science and industry. [Ex. 34, Dep. Tr. of Dr. Drucker at 81-83]. When asked how jewelry can be manufactured and sold only to science and industry, Dr. Hollander explained that:

- OEI sells "precious metal wire in strips or lengths which are suitable, for example, to form a piece of jewelry that if the owner barely twists it around his finger it becomes a ring or a larger length might become a necklace. There is