IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

OMEGA, S.A.,

                 Plaintiff,

        v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND              Civil Action No.:
OMEGA PRESS, INC.,                       3:01 CV 2104 (MRK)

                Defendants.

OMEGA ENGINEERING, INC.,

                Counterclaim-Plaintiff,

        v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

                Counterclaim-Defendants.

_____

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

                                    **ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 4

A.   Defendants Are Entitled to Summary Judgment on OSA's Claims of Bad Faith
     Trademark Filings. ......................................................................................... 5

B.   Defendants Are Entitled to Summary Judgment on OSA's Claims of Trademark
     Infringement and Unfair Competition. .............................................................. 8

C.   OSA's Motion for Summary Judgment on OEI's Counterclaim for Cybersquatting
     Should Be Denied. ........................................................................................ 8

ARGUMENT ..................................................................................................... 9

I.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS
     TRADEMARK "BLOCKING" CLAIMS. .......................................................... 9

     A.   CUTPA and Lanham Act § 43(a) Do Not Extend to the Filing of
          Trademark Applications. ....................................................................... 12

     B.   OSA Cannot Establish That it Has Been Injured as a Result of Any
          Trademark Filings by Defendants. .......................................................... 13

          1.   OSA Concedes That it Has Not Been Blocked or Injured by Any
               United States Trademark Filings by Defendants. ................................ 13

          2.   OSA Has Failed to Demonstrate Any Injury As a Result of Foreign
               Trademark Filings by Defendants. ................................................... 15

     C.   OSA Cannot Prove That Defendants' Trademark Filings, Which
          Constitute Petitioning Activity Protected by the First-Amendment, Are
          Subjectively and Objectively Baseless, and the Undisputed Evidence is to
          the Contrary. ....................................................................................... 16

     D.   OSA is Not Entitled to Summary Judgment on Its Blocking Claims With
          Respect to Foreign Trademark Filings for Additional, Independent
          Reasons. ............................................................................................. 18

          1.   This Court Does Not Have Jurisdiction Over, and Should Decline
               to Exercise Jurisdiction Over, OSA's Claims With Respect to
               Defendants' Foreign Trademark Filings. ........................................... 18

Page

2.    OSA Has Failed to Provide Evidence of its Claimed Foreign Trademark Rights Sufficient to Entitle it to Summary Judgment on its Claims with Respect to Defendants' Foreign Trademark Filings........ 19

E.    OSA's Blocking Claims Are Barred By the 1994 Agreement and the *Omega I* Settlement to the Extent They Relate to Applications to Register OMEGA Marks for OEI's Scientific and Industrial Timing Devices. ................. 20

F.    OSA Claims With Respect to Each United States Filing At Issue Fail for a Variety of Reasons. ........................................................................................ 21

1.    OEI's U.S. Registrations Nos. 2,022,762 and 2,034,705.......................... 22

2.    OEI's U.S. Application Serial No.76/242,073........................................... 22

3.    OEI's U.S. Application Serial No. 76/337,374.......................................... 23

4.    OEI's U.S. Application Serial No. 76/337,450.......................................... 23

5.    OEI's U.S. Application Serial No.76/052,828........................................... 24

G.    OSA's Claims With Respect to Defendants' Benelux Registrations Are Barred by the Judgment in *Omega II*. .................................................................. 25

II.    THE UNDISPUTED FACTS REQUIRE SUMMARY JUDGMENT *DISMISSING* OSA's COUNTS 1 AND 5. ......................................................... 25

A.    Defendants' Trademark Applications and Registrations Do Not Give Rise to Any Likelihood of Confusion.................................................................... 26

B.    The Undisputed Facts Show That There Is No Likelihood of Confusion. ........... 27

1.    The Parties Offer Different Goods to Different Customers....................... 27

2.    OSA Has Submitted Absolutely No Evidence that it Will "Bridge the Gap," and the Undisputed Evidence is to the Contrary. .................... 32

3.    OSA's Own Evidentiary Submissions Confirm the Weakness of its OMEGA Mark Outside of OSA's Specific Product Areas...................... 32

4.    OSA's Arguments Regarding Intent Are Utterly False, and Unsupported, and There is No Evidence That OEI Adopted its Mark With an Intent to Trade on OSA's Mark......................................... 33

5.    The Parties Do Not Use the Identical Marks ............................................ 35

Page

6.    The Undisputed Evidence Shows that the Remaining Polaroid Factors Favor Defendant.............................................................. 35

III.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO OEI'S COUNTERCLAIM FOR CYBERSQUATTING. ........................ 36

A.    There Are Triable Issues of Fact as to Whether the Registration of OMEGA.US Constitutes Bad Faith. ..................................................... 37

B.    OEI Has Superior Rights to Swatch Group in the Names "Omega US" or "US Omega." ................................................................................... 38

CONCLUSION ....................................................................................................... 40

## TABLE OF AUTHORITIES

__CASES__                                                                __PAGES__

*1-800 Contacts, Inc. v. WhenU.com*,
    309 F. Supp. 2d 467 (S.D.N.Y. 2003)......................................................     29

*American Town Center v. Hall*,
    912 F.2d 104 (6th Cir. 1990) ...................................................................     22

*Arrow Fastener Co. v. Stanley Works*,
    59 F.3d 384 (2d Cir. 1995)........................................................................     33

*Clinique Labs., Inc. v. Dep Corp.*,
    945 F.Supp. 547 (S.D.N.Y. 1996)............................................................     29

*Cognotec Servs. Ltd. v. Morgan Guar. Trust Co.*,
    862 F. Supp. 45 (S.D.N.Y. 1994)............................................................     22, 23, 24

*Domain Name Clearing Co. v. F.C.F. Inc.*,
    2001 U.S. App. LEXIS 15619 (4th Cir. July 12, 2001)..........................     38

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*,
    495 F.2d 1265 (2d Cir. 1974). .................................................................     13

*Lever Bros. Co. v. American Bakeries Co.*,
    693 F.2d 251 (2d Cir. 1982)......................................................................     36

*MM Global Servs., Inc. v. Dow Chemical Co.*,
    283 F. Supp. 2d 689 (D. Conn. 2003)......................................................     19

*Merriam-Webster, Inc. v. Random House*,
    35 F.3d 65 (2d Cir. 1994) ........................................................................     36

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*,
    182 F.3d 157 (2d Cir. 1999)......................................................................     36

*Newport Electronics, Inc. v. Newport Corp.*,
    157 F. Supp. 2d 202 (D. Conn. 2001) -....................................................     34

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
    269 F.3d 114 (2d Cir. 2001)......................................................................     26, 32

*Omega S.A. v. Omega Engineering, Inc.*,
    228 F. Supp. 2d 112 (D. Conn. 2002)......................................................     34

*Polaroid Corp. v. Polarad Elec. Corp.*,
    287 F.2d 492 (2d Cir. 1961)......................................................................     26, 35

iv

**CASES** **PAGES**

*Professional Real Estate Investors, Inc. v Columbia Pictures Indus.*,
        508 U.S. 49 (1993)................................................................ 7, 16, 17

*Resource Developers Inc. v. Statue of Liberty-Ellis Island Foundation Inc.*,
        926 F.2d 134 (2d Cir. 1991)................................................ 18

*Shumway Co. v. United Parcel Serv.*,
        118 F.3d 60 (2d Cir. 1997)................................................... 2

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*,
        202 F. 3d 489 (2d Cir. 2000)............................................... 35

*Szymanski v. County of Cook*,
        2002 U.S. Dist. LEXIS 21802 (N.D. Ill. May 8, 2002) ........... 25

*The J. Paul Getty Trust v. Domain 4 Sale & Company*,
        Nat. Arb. Forum, No. 95262 (2001) ..................................... 38

*Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*,
        402 F. Supp. 838 (E.D.N.Y. 1975), *aff'd*, 538 F.2d 314 (2d Cir. 1976).. 22, 23, 24

*USGI, Inc. v. Michele Ltd. Partnership*,
        1990 U.S. Dist. LEXIS 19067 (D. Conn. Jan. 26, 1990)......... 19

*Vanity Fair Mills, Inc. v. The T. Eaton Co.*,
        234 F.2d 633 (2d Cir. 1956)................................................. 6

*W.W.W. Pharmaceutical Co. v. Gillette Co.*,
        984 F.2d 567 (2d Cir. 1993)................................................. 33

*Waldman v. Village of Kiryas Joel*,
        207 F.3d 105 (2d Cir. 2000)................................................ 25

**STATUTES**

15 U.S.C. §1114(1)..................................................................... 4

15 U.S.C. §1125(a) .................................................................... 4, 12, 13

Conn. Gen. Stat. § 42-110g(a) ................................................... 13

15 U.S.C. § 1120........................................................................ 13

Defendants Omega Engineering, Inc. ("OEI"), Omega Scientific, Inc. and Omega Press, Inc. submit this memorandum of law in opposition to plaintiff Omega S.A.'s ("OSA") motion for partial summary judgment.

## PRELIMINARY STATEMENT

As explained in defendants' brief in support of their motion for summary judgment ("Def. 9/15/04 SJ Mem."), the undisputed facts show that it is defendants, not OSA, that are entitled to summary judgment in this matter.  Thus, although defendants take issue with a number of factual assertions in OSA's brief and Local Rule 56(a)1 Statement, this does not mean that there is a triable issue of fact barring summary judgment for defendants.  To the contrary, although OSA's submissions are long on rhetoric, they are astonishingly deficient in evidentiary support, and replete with misleading and inaccurate statements of fact.[1]  In short, defendants dispute OSA's factual statements because they are not supported by admissible evidence, and not because there is any conflict of evidence requiring a trial.

To take but a few examples, although OSA has the burden of proof, it has presented virtually no admissible evidence regarding the scope or extent of its use of OMEGA marks, relying on the statements on its own website, which are clearly hearsay.  Although one of its main contentions is that defendants have blocked its trademark rights in the United States and

---

[1]     This is perhaps not surprising in light of OSA's similar conduct in the related *Omega I* litigation, in which, in his report recommending that the Court enforce the parties' settlement in that case, Magistrate Judge Smith found:

"OSA's representations concerning the facts and circumstances surrounding the settlement are false and distorting *at best*.  Moreover, the court is convinced, as no other conclusion makes sense, that OSA assumed that the court would not actually read the cases to which it cited:  virtually none of the cases cited stand for that which OSA avers.  OSA's briefs and objections are riddled with distortions, material omissions, misstatements of fact, misstatements of law, and unwarranted and irrelevant conclusions."  (*See* Riggs 9/14/04 Dec. Ex. M at 22) (emphasis in original).

abroad, OSA has presented no evidence regarding the scope or extent of its claimed trademark rights in foreign countries; no evidence regarding the foreign law that governs the parties' respective foreign trademark rights and filings; and no evidence of any injury or loss suffered by OSA either in the United States or abroad as a result of defendants' alleged bad faith filings, relying instead on unsupported rhetoric, unauthenticated documents, and hearsay.[2]

Even worse, numerous factual statements by OSA are wholly false.  For example, OSA repeatedly argues that OEI sells clocks on its website pictured next to watches, asserting in its brief that in OEI advertisements that "include images of watches," "the word OMEGA was present in several locations on the webpages in question," and that on the web page in question, "beside the image of an OEI timer is a wristwatch."  (OSA SJ Mem. at 27, 30).  These statements are blatantly false.  Thus, the evidence cited by OSA shows that the product in question is a NEWPORT-branded period timer that is sold for use in science and industry; not a clock, that it is clearly labeled NEWPORT, *not* OMEGA; and that it is sold on the website of OEI's affiliate Newport Electronics ("Newport"), and that Newport's website is merely linked to OEI's website. Contrary to OSA's false statements, the NEWPORT webpages that contain the image of a watch do *not* contain the word OMEGA, do not advertise "OEI timers," and do *not* have "the word

---

[2]      It is fundamental that evidence on a motion for summary judgment must be "admissible evidence."  *Shumway Co. v. United Parcel Serv.*, 118 F.3d 60, 65 (2d Cir. 1997); *see also* Fed. R. Civ. P. 56(e) (requiring summary judgment motions to be premised on "such facts as would be admissible in evidence" and "[s]worn or certified copies of all papers" relied upon); Local Rule 56(a)3 (requiring each fact asserted in support of or opposition to summary judgment to be supported by "a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial").  Indeed, Local Rule 56(a)3 expressly provides that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment."  OSA's failure to cite to admissible evidence in its Rule 56(a)1 Statement, or even to authenticate the majority of its exhibits, is alone sufficient grounds to deny OSA's motion for summary judgment, and defendants object to OSA's evidentiary submissions on these grounds as set forth more fully in their Rule 56(a)2 Statement.

OMEGA . . . as the second level domain for the webpages." (OSA SJ Mem. at 27, 30). (*See* OSA Ex. 29 at 30-35).

To take another example of OSA's false assertions, OSA claims that this Court "found OEI and its affiliates guilty of bad faith and cybersquatting" in three prior cases (OSA SJ Mem. at 11). Apart from being wholly irrelevant and inadmissible under Fed. R. Evid. 404(b), this claim is blatantly false. In two of the cited cases, the district court merely found a triable dispute of fact and denied summary judgment on the issue of bad faith. One case later settled, and in the other, a jury found OEI's affiliate Newport *not liable* for cybersquatting. In the third case, the district court found OEI was not liable for cybersquatting, and the decision was affirmed by the Second Circuit. (*See* p. 34, *infra*). Even OSA's irrelevant smears are not supported by the evidence.

Moreover, it is now apparent that the grounds for OSA's claims shift over time, with OSA routinely adopting new arguments and complaints as OEI refutes the old ones. Thus, OSA now asserts – for the first time, at the summary judgment stage – that OEI's sale of batteries to power an OEI industrial flow meter that measures the flow of water sewers constitutes trademark infringement because, OSA complains, OEI's web site allegedly identifies the batteries as "watch batteries." To begin with, this reference (for *one* of the over 68,000 products sold by OEI) to "watch batteries," a phrase sometimes used to describe the small batteries of the type at issue, could create *no* likelihood of confusion: The batteries at issue are not labeled with the OMEGA mark, and are sold to OEI's scientific and industrial customers for use in OEI's flow meter. There is no evidence that anyone ever bought one of these batteries for use in a watch, or that any consumer ever saw this web page. Moreover, the phrase does not even appear on the current version of the web page at issue; it was removed months ago for reasons having nothing

to do with this case, well before OSA even brought the page to OEI's attention.  (*See* p. 30, *infra*).  Even more telling, however, is the fact that the previously-denoted "watch batteries" complained of by OSA – one of the *two products* sold by OEI (the other being period timers) that OSA identifies as infringing in its discussion of likelihood of confusion – was *never* brought to OEI's attention until last month, when OSA marked the web page issue at Dr. William Drucker's deposition.  Similarly, OSA has now flip-flopped at least three times on the issue of whether it is asserting claims in this case regarding two Benelux trademark registrations, most recently by stating in Court on July 20, 2004 that the registrations were *not* in the case, only to submit a summary judgment brief that spends three full pages on those registrations.

## SUMMARY OF ARGUMENT

As defendants show in their motion for summary judgment, the undisputed facts demonstrate that summary judgment should be entered for defendants both on (1) OSA's "blocking" claims, asserted in Counts 3 and 4 of the Third Amended Complaint ("Complaint"), which allege bad-faith trademark filings purportedly in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Lanham Act; and (2) OSA's trademark infringement and false designation of origin claims, asserted in Counts 1 and 5 of the Complaint, which allege that defendants' use of OMEGA marks violates Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a).[3]  (As also explained in defendants' motion for summary judgment, defendants also are entitled to summary judgment on OSA's one other claim, in Count 2, for dilution under the Lanham Act).

---

[3]    It is unclear on which Counts OSA has moved for summary judgment:  its Motion does not specify any particular Counts, and the Conclusion of OSA's brief only asks for summary judgment on Counts 3 and 4 (*i.e.* the "blocking" claims).  Its brief, however, also appears to argue with respect to OSA's trademark infringement and false designation of origin claims (*i.e.* Counts 1 and 4).  Accordingly, defendants address each of these Counts – which also are addressed in defendants' summary judgment motion – herein.

**A.**    **Defendants Are Entitled to Summary Judgment on OSA's Claims of Bad Faith Trademark Filings.**

OSA's claims in Counts 3 and 4 allege that defendants have engaged in bad faith filing of trademark applications in the United States and abroad so as to "block" OSA's claimed trademark rights.  These "blocking" claims fail for a number of separate and independent reasons.  First, for the reasons set forth in defendants' summary judgment motion and the submissions in support of defendants' Motion for Judgment on the Pleadings and for an Order of Preclusion With Respect To Evidence Relating To Foreign Trademark Filings filed on April 1, 2004 (which, pursuant to the Court's August 19, 2004 order, defendants hereby incorporate by reference)[4] with respect to OSA's claims relating to OEI's foreign filings, it is clear that the statutes at issue – CUTPA and Section 43(a) of the Lanham Act – do not extend to filings with trademark authorities, whether in the United States or abroad.  OSA asks this Court to do what, as far as defendants are aware, no court has ever done – enjoin or punish the mere filing of trademark applications in the United States and abroad on the ground that they were filed in "bad faith."  OSA does not cite a single case under CUTPA or the Lanham Act in which a court has allowed trial of, or even credited, such a claim of bad faith trademark filings.  For these reasons, all of OSA's "blocking" claims should be dismissed.  (*See* pp. 12-13, *infra*).

Second, to the extent that OSA complains of United States filings, it is undisputed that the filings identified in the Complaint (apart from two OEI trademark registrations that, as discussed below, were released in the *Omega I* Settlement Agreement) are intent to use

---

[4]    Defendants' submissions in support of their April 1, 2004 Motion for Judgment on the Pleadings include their Motion [Docket # 69], Memorandum of Law ("Mem.") dated April 1, 2004 [Docket # 70], Reply Mem. of Law dated May 5, 2004 [Docket # 79], Supplemental Mem. of Law dated August 3, 2004 [Docket # 92], Declaration ("Dec.") of Thomas A. Smart, Esq. dated March 31, 2004 [Docket # 72], Dec. of B. Christine Riggs, Esq. filed April 1, 2004 [Docket # 71], and Dec. of Paul C. Llewellyn, Esq. dated August 3, 2004 [Docket # 93], and exhibits thereto.

applications for new marks – not OMEGA or Ω – that have *not yet been used in commerce*, and, for that reason, the Court does not even have jurisdiction with respect to such applications.  (*See* pp. 13, 22-24, *infra*).

Third, OSA cannot show that it has suffered any cognizable injury or loss as a result of defendants' alleged bad faith filings.  OSA has *conceded* that it has *not* been "blocked" or otherwise injured as a result of any U.S. filings by OEI.  Nor could it, since the U.S. applications of which OSA complains, which are intent to use applications, do not cover any of the goods or services with respect to which OSA claims rights in the OMEGA mark, but are for a variety of goods and services wholly unrelated to OSA's business.  Moreover, OSA has not provided any evidence of injury or ascertainable loss as a result of OEI's foreign trademark filings, the vast majority of which are expressly limited to goods for science and industry and are the subject of pending proceedings in which the parties respective foreign rights have yet to be determined.  For this reason, all of OSA's "blocking" claims should be dismissed.  (*See* pp. 13-16, *infra*).

Fourth, for the reasons set forth in support of defendants' Motion for Judgment on the Pleadings filed April 1, 2004 [Docket # 69], determination of OSA's claims relating to OEI's foreign filings would require the Court to make determinations as to the validity of those filings under foreign law, which the Court does not have jurisdiction to do and under principles of international comity should not do.  *See Vanity Fair Mills, Inc. v. The T. Eaton Co.,* 234 F.2d 633 (2d Cir. 1956).  The foreign filings identified by OSA constitute most of the filings at issue – only six of the 22 filings identified in OSA's 56(a)1 Statement are United States filings – and it is undisputed that almost every one of those foreign filings is the subject of a pending proceeding before foreign trademark authorities.  For this reason, OSA's claims with respect to foreign filings should be dismissed.  (*See* pp. 18-19, *infra*).

Fifth, there is no basis for a factfinder to conclude that defendants engaged in bad-faith trademark filings (either in the U.S. or abroad) with the intent to injure OSA, or that OEI's trademark applications are objectively baseless, as required by the *Noerr-Pennington* doctrine and the First Amendment.  *See Professional Real Estate Investors, Inc. v Columbia Pictures Indus.,* 508 U.S. 49, 60 (1993).  This is particularly true given OEI's long history of use of and rights in OMEGA marks, and the parties' express agreements permitting OEI to register and use OMEGA marks in its areas of trade.  For this reason, all of OSA's "blocking" claims should be dismissed.  (*See* pp. 16-18, *infra*).

Sixth, to the extent that OSA's "blocking" claims relate to measuring and timing apparatus for use in science and industry, to apparatus for the measurement of variable parameters in science and industry, and to period timers and scientific and industrial clocks – and most of OSA's claims relate to such goods – the claims are barred by the parties' prior 1994 Agreement and the Settlement Agreement in *Omega I*, which expressly permit OEI to register and use OMEGA marks with respect to such goods and pursuant to which OSA expressly released and agreed to drop such claims from this lawsuit.  (*See* pp. 20-21, *infra*).

Seventh, to the extent that OSA's claims relate to defendants' registrations of omegatime.com and omegawatch.com as trademarks in the Benelux nations, those claims are barred under *res judicata* by the judgment in *Omega II*, which concerned domain names identical to those marks and in which defendants' rights to the Benelux registrations was at issue. Moreover, OSA has conceded that the registrations in the Benelux were perfectly lawful under Benelux law, and that OSA has never used those marks in any country.  Finally, claims with respect to these registrations are barred because they were not included in the list of foreign

filings that OSA produced during discovery, and, indeed, OSA told to the Court at a July 20

hearing that those registrations were not in the case.  (*See* p. 25, *infra*).

**B.     Defendants Are Entitled to Summary Judgment on OSA's Claims of Trademark
        Infringement and Unfair Competition.**

As for OSA's trademark infringement and false designation of origin claims, Counts 1

and 5, the undisputed evidence also requires that OSA's motion be denied and that defendants be

awarded summary judgment on those claims.  OSA's principle argument for alleged confusion is

defendants' sale of period timers for the measurement and control of variable parameters in

science and industry, which OEI has sold since 1987; yet, OSA wholly ignores the parties' 1994

Agreement and their *Omega I* Settlement Agreement, in which OSA consented to OEI's

registration and use of OMEGA marks in connection with such goods, and expressly *released*

such claims in this case.  Recognizing the weakness of its position, OSA is forced to distort and

mischaracterize evidence with respect to goods sold under non-OMEGA marks by OEI's affiliate

Newport Electronics, to inflate out of all proportion a single reference on OEI's web site, long

discontinued, to "watch batteries" for watch-type batteries sold as a power source for an OEI

industrial flow meter (conduct that was not alleged, until now, to constitute trademark

infringement), and otherwise to distort the undisputed evidence that the parties sell different

products to different customers in different channels of trade.  Moreover, OSA has presented no

survey evidence on confusion and no evidence of actual confusion, and its own evidentiary

submissions confirm that there are numerous OMEGA marks in use that weaken its marks and

further reduce the potential for confusion.  (*See* pp. 25-36, *infra*).

**C.     OSA's Motion for Summary Judgment on OEI's Counterclaim for Cybersquatting
        Should Be Denied.**

Lastly, OSA's motion for summary judgment on OEI's counterclaim for cybersquatting

(a counterclaim which is not even asserted against OSA, but against the non-moving

counterclaim defendant The Swatch Group Ltd. ("Swatch Group")) should be denied.  There

clearly is a triable issue of fact as to whether Swatch Group, which admittedly does not use or

own any registrations for the mark OMEGA, engaged in a bad faith domain name registration

when it registered the domain name OMEGA.US, particularly when Swatch Group concededly

has "warehoused" and never used the domain name.  Similarly, there is a triable issue of fact as

to whether OEI, which regularly advertises itself as the U.S. OMEGA and as a seller of products

made in the United States, has established trademark rights in OMEGA US and/or US OMEGA

that are superior to those of OSA or Swatch Group, where there is no evidence that either OSA

or Swatch Group has any reputation as a U.S. entity, and where OSA admittedly promotes its

products as *Swiss*-made.  (*See* pp. 36-40, *infra*).

## ARGUMENT[5]

### I.     PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS TRADEMARK "BLOCKING" CLAIMS.

In order to prevail on summary judgment on its claims relating to defendants' alleged bad

faith trademark filings, OSA bears the burden to come forward with undisputed, admissible

evidence demonstrating that a jury could *not* find for defendants with respect to the claims.  *See*

Fed. R. Civ. P. 56(c) (summary judgment is appropriate only when the evidence "show[s] that

---

[5]     The facts necessary to resolve this motion are set forth more fully in defendants' accompanying Local Civil Rule 56(a)2 Statement and in defendants' previously filed Local Civil Rule 56(a)1 Statement dated September 15, 2004 [Docket # 108], and are based on the pleadings; the deposition testimony submitted in this matter; the Declaration ("Dec.") of Thomas Smart dated October 5, 2004 and exhibits thereto; the Dec. of Hilda Burke dated October 1, 2004 and exhibits thereto; the Dec. of B. Christine Riggs dated October 4, 2004 and exhibits thereto; the following previously filed declarations and exhibits thereto:  Dec. of Thomas A. Smart dated September 14, 2004 [Docket #  110] (which, with the Smart 10/5/04 Dec., includes relevant deposition testimony and exhibits), Dec. of Michelle Tepper dated September 14, 2004 [Docket # 111], Dec. of Dr. Milton Hollander dated September 14, 2004 [Docket # 112], and Dec. of B. Christine Riggs dated September 14, 2004 [Docket #  109]; and the declarations identified in note 4, *supra*, and exhibits thereto.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law").  When one cuts through OSA's misleading and unsupported assertions of fact relating to its "blocking" claims, however, the following undisputed facts emerge, warranting summary judgment for *defendants* on these claims:

●    Most of defendants' trademark filings at issue are foreign applications and registrations, almost all of which are the subject of pending foreign proceedings.  (*See* Def. 56(a)2 Statement ¶ 54).

●    Although OSA asks this Court to find defendants liable for "blocking" OSA's foreign trademark rights, it has provided no evidence whatsoever of the scope or extent of its claimed foreign trademark rights.  (*Id.* ¶¶ 20, 34, 35).

●    Most foreign applications and registrations to which OSA objects are for period timers and industrial and scientific clocks for use in science and industry.  (*See* OSA 56(a)1 Statement ¶ 54; Def. 56(a)2 Statement ¶ 54).  It is undisputed that OEI has sold such goods under its OMEGA marks since at least 1987.  (M. Hollander 9/14/04 Dec. ¶¶ 6, 7).  Moreover, OEI is permitted under the parties' 1994 Agreement and the *Omega I* Settlement Agreement to register and use OMEGA marks in connection with such goods.  (M. Hollander 9/14/04 Dec. ¶¶ 32-34 & Ex. T; Riggs 9/14/04 Dec. Ex. L).  The undisputed evidence also confirms that OSA has *never* sold period timers (or any other goods) for use in science and industry.  (*See* Def. 56(a)2 Statement ¶¶ 17, 27, 32).

●    Although a few foreign applications (but *no* U.S. applications) mistakenly referred to jewelry and precious stones, OSA concedes that OEI has voluntarily amended those applications to delete those goods.  (OSA 56(a)1 Statement ¶ 20; Def. 56(a)2 Statement ¶ 34).

●   OSA lists six[6] objected-to U.S. registrations and applications of defendants in its

Statement of Facts.  (*See* OSA 56(a)1 Statement ¶ 54).  Two of these are registrations, Reg. Nos.

2,022,762 and 2,034,705, and were the subject of *Omega I*.  In the *Omega I* Settlement

Agreement, OSA expressly released all claims relating to these two registrations, specifically

including the claims in this case, and agreed to *delete* them from the complaint in this action.

(Riggs 9/14/04 Dec. ¶¶ 13, 15 & Ex. L; *see* Def. 9/15/04 SJ Mem. [Docket # 121] at 22-23).

●   As for the four U.S. applications in OSA's chart (Serial Nos. 76/242,073,

76/337,450, 76/337,374 and 76/052,828; *see* OSA 56(a)1 Statement ¶ 54), three are intent-to-use

applications that have been suspended by the PTO and that are for new marks which, it is

undisputed, defendants have not yet used.  (Def. 56(a)2 Statement ¶ 54, rows 11, 12, 13).  The

fourth, Serial No. 76/052,828 for the mark OMEGA, was not identified in OSA's Complaint or

identified during discovery as an application at issue in this case (and for that reason should not

even be considered by the Court), and also has been suspended by the PTO.  (*Id.*, row 16).

●   The goods at issue in each of the four U.S. applications all are expressly limited to

"science and industry."  (Def. 56(a)2 Statement ¶ 54, rows 11, 12, 13, 16).  In the applications as

amended during the PTO examination process, the goods of which OSA complains in its chart

(OSA 56(a)1 Statement ¶ 54) have been limited, as are most of the objected-to goods in

defendants' foreign applications and registrations, to computer apparatus, period timers and other

timing devices for use in science and industry.  (Def. 56(a)2 Statement ¶ 54, rows 11, 12, 13, 16).

●   None of defendants' U.S. trademark applications or registrations identified by

OSA *ever* contained among their listed goods many of the goods to which OSA objects.  In

---

6      Although OSA's list appears to include seven U.S. filings, one listed application (Serial
No. 74/480,756 for the mark OMEGA) is the same as Registration No. 2,022,762, which appears
separately in the list.  (*See* OSA 56(a)1 Statement ¶ 54; Def. 56(a)2 Statement ¶ 54, rows 17, 24).

particular, *none* ever included jewelry, precious stones or precious metals.  (Def. 56(a)2

Statement ¶ 54, rows 11, 12, 13, 16, 17, 24, 25).  Although some of the U.S. applications at issue

initially contained certain other goods and services to which OSA also objects (such as fire

extinguishing apparatus and typewriters) there is no evidence that OSA offers such goods, and,

in all events, such goods were deleted by defendants during the PTO examination process.  (Def.

56(a)2 Statement ¶¶ 34, 35, 54, rows 11, 12, 13, 16).

●      OSA's Rule 30(b)(6) witness conceded that she could not identify a single OSA

trademark application or registration that has been blocked in any way by any application or

registration of defendants in the United States.  Nor could she identify any injury at all that OSA

has suffered in the United States as a result of defendants' filing trademark applications, apart

from OSA's attorneys' fees *in this case*.  She also conceded that she was not aware of a single

consumer or OSA customer who was even aware that any of defendants' objected-to trademark

filings even existed.  (Sauser Rupp Dep. Tr. 313, 363-64, 367, 388-89, 291-92, 416-17).

Given these undisputed facts, it is clear, as set forth more fully below, that defendants are

entitled to summary judgment dismissing OSA's Counts 3 and 4.

### A.      CUTPA and Lanham Act § 43(a) Do Not Extend to the Filing of Trademark Applications.

Even before considering the undisputed facts, OSA's claims fail as a matter of law.  OSA

asks this Court to do what, as far as defendants can determine, no court has ever done – hold a

defendant liable under a state statute or Section 43(a) of the Lanham Act for the mere filing of

trademark applications with government authorities (whether federal or foreign) with the alleged

intent to "block" plaintiff's trademark rights.  Plaintiff does not even cite a single case applying

CUTPA or Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) – the statutes upon which OSA

relies – to the filing of trademark applications or maintenance of trademark registrations.  As

defendants have previously shown, neither CUTPA nor Lanham Act §43(a) extends to such

conduct.  (*See* Def. 4/1/04 Mem. [Docket # 70] at 27-32; Def. 5/5/04 Mem. [Docket #79] at 5-6).

CUTPA is limited to the actual "conduct of trade or commerce," and does not extend to conduct

ancillary or incidental to the conduct of trade or commerce, such as, in this instance, filing

trademark applications.  Similarly, Lanham Act §43(a) is limited to statements made "in

commerce," and numerous decisions hold that the mere filing of a trademark application does

not constitute activity in commerce sufficient to give rise to Lanham Act jurisdiction.  Moreover,

the Second Circuit has stated that the proper statute to seek damages for a "false or fraudulent

registration" at the U.S. PTO is Section 38 of the Lanham Act, 15 U.S.C. § 1120, a provision that

OSA has not asserted in its Complaint and does not seek to apply here.  *La Societe Anonyme des*

*Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270-71 (2d Cir. 1974).  (*See* Def. 4/1/04

Mem. [Docket # 70] at 31; Def. 9/15/04 SJ Mem. at 37).  For these reasons, OSA's blocking

claims should be dismissed.

**B.    OSA Cannot Establish That it Has Been Injured as a Result of Any Trademark Filings by Defendants.**

Proof of injury is an essential prerequisite to OSA's "blocking" claims.  *See*

Conn. Gen. Stat. § 42-110g(a) (CUTPA requires proof of "ascertainable loss" as a result of

alleged unlawful conduct); 15 U.S.C. §1125(a) (Lanham Act requires actual or likely purchaser

confusion or deception).  As shown below and as we have previously shown (Def. 9/15/04 SJ

Mem. at 39), however, the undisputed evidence shows that OSA has suffered *no* such injury as a

result of defendants' trademark filings.

**1.    OSA Concedes That it Has Not Been Blocked or Injured by Any United States Trademark Filings by Defendants.**

First, the undisputed evidence shows, and OSA's Rule 30(b)(6) witness concedes, that *no*

OSA trademark application or registration has been suspended, delayed or in any other way

obstructed as a result of any trademark filing by defendants in the United States. (Sauser Rupp Tr. 363-64, 389, 416). Ms. Sauser Rupp also could not point to any evidence that OSA has suffered any injury to its business or reputation as a result of defendants' trademark filings or use of OMEGA marks, or identify any actual or potential OSA customers who even are aware of the existence of the trademark filings about which OSA complains. (Sauser Rupp Tr. 313, 363-64, 367, 388-89, 391-92, 402-03, 416-17; *see also* Gibbons Tr. 195).

As for OSA's assertion that it has been forced to commence two lawsuits in the United States to protect its claimed rights (OSA SJ Mem. at 19), those lawsuits – presumably, *Omega II* and this case – do not constitute cognizable injury. It is circular, to say the least, for OSA to rely on this lawsuit – in which, obviously, it has not prevailed – to prove that it has suffered the ascertainable loss or injury required in order for it to state a claim in this action. As for *Omega II*, that case is settled and judgment has been entered in it, as OSA concedes, and the case is *res judicata*. (OSA 56(1) Statement ¶ 26). That case, in which there was no finding of liability as to any party, cannot give rise to yet another lawsuit by OSA.

OSA also claims, again without evidentiary support, that defendants' alleged practice of filing applications with "expansive list[s] of goods" has "unfairly shifted the burden to OSA (or other competitors) to complain about the overbroad list." (OSA SJ Mem. at 24). OSA does not identify a single trademark opposition that it has even filed in the United States – much less one in which it *prevailed* – as a result of such alleged conduct by OEI. Moreover, the undisputed evidence is that most of the goods about which OSA objects in OEI's U.S. applications were removed during the PTO examination process (not as a result of any opposition by OSA), and the goods that remain are limited to science and industry. (Def. 56(a)2 Statement ¶ 54).

2.    OSA Has Failed to Demonstrate Any Injury As a Result of Foreign
Trademark Filings by Defendants.

As for foreign trademark filings, OSA asserts that it has been "forced to commence" over

a dozen opposition and cancellation proceedings against OEI around the world.  (OSA SJ Mem.

at 19, 25).  It is undisputed, however, that these opposition proceedings about which OSA

complains are still pending, and it is further undisputed that OEI has prevailed against OSA in a

number of foreign trademark disputes.  (Smart 3/31/04 Dec. ¶ 10 & Ex. H at 12-17; Riggs 4/1/04

Dec. ¶¶ 5-7 & Exs. A-C; Riggs 9/14/04 Dec. ¶ 18 & Ex. P; Riggs 10/4/04 Dec. ¶ 6 & Ex. S).

The resolutions by foreign trademark agencies will determine whether defendants' filings will in

any way obstruct OSA's applications or trademark rights.  (*See* Riggs 1/04 Dec. ¶ 18 & Ex. P).

The mere fact that OSA has commenced proceedings is not proof that OSA has suffered any

actionable injury or loss as a result of unfair conduct by defendants.  Rather, whether the

expenses of such proceedings constitute actionable injury or loss depends, at a minimum, on

whether OSA prevails in those proceedings, and, in addition, whether OEI's conduct with respect

to those proceedings constitutes bad faith under the applicable foreign law.  Given the pendency

of those proceedings, OSA's claim that they constitute injury to it is, at best, premature.  The

cover sheets and filing receipts for notices of opposition in OSA Exhibit D that plaintiffs cite on

p. 25 of their brief do not establish any actionable injury and, moreover, defendants object to this

exhibit on the grounds that it is unauthenticated and constitutes hearsay.

OSA also claims that its "potential bona fide uses of the OMEGA mark are severely

encroached due to OEI's Benelux registrations for OMEGAWATCH.COM and

OMEGATIME.COM," which, according to OSA's lawyers, "interfere with OSA and are

designed to prevent it from exercising its undisputed right to use these marks in connection with

these products in Holland, Belgium or Luxemburg."  (OSA SJ Mem. at 19).  However, OSA

cites no evidence for this, and there is no basis for OSA's claim to the "undisputed right" to use any marks in the Benelux nations.  To the contrary, OSA *concedes* that the Benelux registrations at issue (claims as to which, as set forth below, are barred by *res judicata*) were *perfectly lawful* under Benelux law.  (OSA SJ Mem. at 19).  OSA's Rule 30(b)(6) witness also conceded that OSA does not even use the domain names that correspond to those marks, although it does own them, and has never used or tried to register the marks at issue in the Benelux or anywhere else in the world, or suffered any injury as a result of defendants' registrations in the Benelux. (Sauser Rupp Tr. 457-59, 463-65; Smart 10/5/04 Dec. ¶¶ 19-20 and Exs. NN, OO, VV, WW). Nor is there any evidence that OSA sells any of the goods listed in the Benelux registrations, which – assuming the accuracy of OSA's unauthenticated translations -- do not include watches or timers of any kind.  (*See* OSA Exs. 32, 33).  (Moreover, as set forth below, p. 25, the Benelux registrations cannot be considered because OSA took them out of this case long ago.)  OSA's rhetorical claims to injury as a result of OEI's other foreign filings (*see* OSA SJ Mem. at 20, 24-25) are similarly without citation to evidence or any support in the record.

### C.    OSA Cannot Prove That Defendants' Trademark Filings, Which Constitute Petitioning Activity Protected by the First-Amendment, Are Subjectively and Objectively Baseless, and the Undisputed Evidence is to the Contrary.

OSA's motion for summary judgment with respect to its "blocking" claims also should be denied, and those claims dismissed, because OSA has failed to establish that the complained-of trademark filings were subjectively and objectively baseless, and the undisputed evidence is to the contrary.  As defendants have previously argued in connection with their motion relating to foreign filings – and as OSA ignores in its moving brief – under *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993), OSA must prove that the governmental filings of defendant that OSA challenges were undertaken in subjective bad faith, *and* were "objectively baseless."  (*See* Def. 8/3/04 Mem. at 6).

OSA has utterly failed to establish, however, that the challenged filings by defendants were made in bad faith and were "objectively baseless," and the undisputed evidence is to the contrary.  First, OSA has not attempted to show the standards for bad faith filings in the applicable foreign jurisdictions.  And, even assuming that the American standards of *Professional Real Estate* rather than foreign standards apply, OSA has failed to establish the scope of the parties' respective foreign rights, or the applicable foreign law.

As for defendants' United States filings, the majority of goods about which OSA complains (as is also the case with respect to foreign filings) are period timers, timing apparatus and computer controlled measuring, timing and display apparatus, all for science and industry.[7] (*See* Def. 56(a)2 Statement ¶ 54) (Indeed, in every one of defendants' United States filings challenged by OSA, the goods and services challenged by OSA are expressly limited to those intended for use in science and industry.  (*See* Def. 56(a)2 Statement ¶¶ 34, 35, 36, 54, rows 11, 12, 13, 16, 17, 24, 25).  Thus, to prevail as to these goods, OSA would have to establish that it was objectively baseless for OEI to file trademark applications for various timing and measuring apparatus in science and industry.  It is undisputed, however, that OSA does not sell timers for science and industry (Def. 56(a)2 Statement ¶¶ 17, 27, 32), that OEI has sold such goods since at least 1987 (*see* Hollander 9/14/04 Dec. ¶¶ 6, 7), and that, as set forth more fully below and in defendants' moving brief (Def. 9/15/04 SJ Mem. at 24-25) the parties' 1994 Agreement expressly permitted OEI to register and use OMEGA marks for such goods.

Nor has OSA submitted sufficient evidence to reach a jury on the issue of subjective bad

---

[7]     Although OSA has complained about a handful of other goods (for example, typewriters) in the four United States applications identified by OSA, those goods are not offered by OSA and, as set forth more fully below (pp. 22-25, *infra*), were dropped during the PTO examination process and cannot have injured OSA in any conceivable way.  Moreover, as also explained below (pp. 22-25, *infra*), analysis of the four United States trademark applications identified by OSA shows that most of the goods objected to were never even in those applications.

faith.  The rhetoric on which OSA relies in this regard is insufficient, as a matter of law, to raise

a triable issue of fact.  *See, e.g., Resource Developers Inc. v. Statue of Liberty-Ellis Island*

*Foundation Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) ("plaintiff's creative attempt to link events

and acts in order to ascribe to [defendant] a bad motive rests only upon speculation and

conjecture. . . .  The fact that the defendant's state of mind is in issue does not alter the result

where only speculative allegations are offered to demonstrate the existence of state of mind after

ample opportunity to engage in relevant discovery.").

> **D.      OSA is Not Entitled to Summary Judgment on Its Blocking Claims With
> Respect to Foreign Trademark Filings for Additional, Independent Reasons.**
>
> 1.      This Court Does Not Have Jurisdiction Over, and Should Decline to
> Exercise Jurisdiction Over, OSA's Claims With Respect to Defendants'
> Foreign Trademark Filings.

As defendants showed in their submissions in support of their prior motion for judgment

on the pleadings, which, pursuant to the Court's order, are incorporated herein by reference, this

Court lacks jurisdiction over OSA's claims with respect to foreign trademark applications and

registrations, and, under principles of international comity and *forum non conveniens*, should

decline jurisdiction over and should dismiss those claims.  (*See* Def. 4/1/04 Mem. [Docket # 70]

at 22-27; Def. 5/5/04 Mem. [Docket # 79] at 3-5; Def. 8/3/04 Mem. [Docket # 92] at 5-8).

The Court expressed significant doubts at the July 20, 2004 hearing whether claims for

foreign trademark filings were properly heard in this Court, and expressly granted defendants

permission to renew their application to dismiss these claims on summary judgment.

Astonishingly, in light of this record, OSA does not even attempt to show that it is appropriate

for this Court to decide the validity and extent of the parties' respective foreign rights or to

determine whether defendants' foreign trademark applications were made in bad faith.  Nor

could OSA do so, given the undisputed evidence that most – 18 of 25 – of the foreign filings

about which OSA claims are presently the subject of pending foreign proceedings before the appropriate foreign trademark authorities. (*See* Def. 56(a)2 Statement ¶ 54), and that OEI has prevailed over OSA in several foreign trademark disputes, demonstrating that the parties' respective foreign rights are not clear-cut and present significant litigable issues. (*See* Riggs 4/1/04 Dec. ¶¶ 5-7 & Exs. A-C; Riggs 10/4/04 Dec. ¶ 6 & Ex. S).[8]

> 2. OSA Has Failed to Provide Evidence of its Claimed Foreign Trademark Rights Sufficient to Entitle it to Summary Judgment on its Claims with Respect to Defendants' Foreign Trademark Filings.

Even if claims relating to foreign filings were properly before this Court, OSA (which bears the burden of proof) has made no effort to demonstrate the extent or scope of its claimed rights to OMEGA marks in the foreign jurisdictions at issue, and has offered no evidence of the applicable foreign trademark law that governs the parties' respective foreign trademark rights.

Even assuming, *arguendo*, that OSA states a claim for relief with respect to foreign trademark filings, it would have to prove, *inter alia*, that defendants' alleged trademark filings were made in bad faith and were wrongful under applicable foreign trademark law, and that OSA's prior legitimate foreign trademark rights were blocked by these filings. OSA's papers are devoid of any such evidence, and, for that independent reason, summary judgment should be denied with respect to OSA's claims regarding foreign filings, and those claims dismissed.

---

[8]     Indeed, even if it were appropriate to consider defendants' foreign trademark filings in this Court (which, as we have shown, it is not) the applicable law would not be CUTPA and the Lanham Act, but the law governing defendants' alleged conduct in each foreign jurisdiction. *See, e.g., MM Global Servs., Inc. v. Dow Chemical Co.*, 283 F. Supp. 2d 689, 704-05 (D. Conn. 2003) (dismissing CUTPA claim alleging an unfair scheme, enacted in various foreign jurisdictions, to usurp plaintiffs' business, and holding that foreign law applied); *USGI, Inc. v. Michele Ltd. Partnership*, 1990 U.S. Dist. LEXIS 19067 (D. Conn. Jan. 26, 1990) (CUTPA claim can only be asserted "when choice of law principles indicate[] applicability of Connecticut law."). There is no sound reason for this Court to take upon itself the interpretation and application of the laws of the several foreign jurisdictions at issue, particularly where pending disputes are being heard in those jurisdictions, and OSA has made no effort to prove up the relevant foreign law.

Moreover, OSA's evidence with respect to foreign filings should be precluded and OSA's claims with respect to such filings should be dismissed in light of the numerous abuses of discovery and failure to obey discovery orders set forth in defendants' motion for Judgment on the Pleadings and for an Order of Preclusion With Respect To Evidence Relating To Foreign Trademark Filings, filed on April 1, 2004 [Docket # 70].

    **E.**    **OSA's Blocking Claims Are Barred By the 1994 Agreement and the _Omega I_ Settlement to the Extent They Relate to Applications to Register OMEGA Marks for OEI's Scientific and Industrial Timing Devices.**

As set forth above (pp. 10-11), the majority of goods in defendants' trademark filings (both U.S. and foreign) that are challenged by OSA are period timers, scientific and industrial clocks, timing apparatus for science and industry and other apparatus to measure and control industrial parameters.  (_See_ Def. 56(a)2 Statement ¶ 54).  As shown in defendants' brief in support of summary judgment (Def. 9/15/04 SJ Mem. at 24-25), however, the parties' 1994 Agreement expressly permits OEI to register and use OMEGA marks in connection with "computer controlled measuring, timing and display apparatus" intended for science or industry, and further expressly provides that OSA will not object to the use or registration by OEI of any OMEGA marks for "apparatus industrially and/or scientifically employed for measuring or controlling variable parameters."  (M. Hollander Dec. ¶¶ 32-33 & Ex. T).

In addition, as we have also shown (Def. 9/15/04 SJ Mem. at 23), in _Omega I_, OSA released OEI and its affiliates from "any and all claims, actions and causes of action in the U.S.A. relating to the application to register, registration or use of period timers for science and industry or industrial and scientific clocks under the Omega mark or Omega design, in the Omega I Litigation, Omega III Litigation or the Cancellation Proceedings," and further agreed that "OSA will not make claims or assertions in _Omega III_ [_i.e._ this case] relating to application to register, registration or use by OEI of the Omega mark or Omega design on period timers or

industrial and scientific clocks." (Riggs Dec. ¶ 15 & Ex. L). Although this language is limited to "claims, actions and causes of action in the U.S.A.," including claims in this case, on its face it extends to such claims whether they relate to trademark filings either in the U.S. or abroad.

For these reasons, summary judgment should be granted to defendants dismissing all claims with respect to applications and registrations covering period timers, industrial and scientific clocks, computer controlled measuring, timing and display apparatus for science and industry, and other apparatus industrially and/or scientifically employed for measuring or controlling variable parameters. With respect to defendants' U.S. filings, these include U.S. Reg. No. 2,022,762 (Riggs 9/14/04 Dec. Ex. J), U.S. Reg. No. 2,034,705 (*id.* Ex. K), and U.S. Applications Serial Nos. 76/337,450 (*id.* Ex. G), 76/337,374 (*id.* Ex. F) and 76/052,828 (Riggs 10/4/04 Dec. Ex. Q) – in all of which, the only goods of which OSA complains are covered by the parties' agreements. (*See* Def. 56(a)2 Statement ¶ 54 rows 12, 13, 16, 17, 24, 25). Most of the goods of which OSA complains in defendants' foreign filings similarly are covered by the parties' 1994 Agreement and the *Omega I* Settlement Agreement, and should be dismissed. (*See* Def. 56(a)2 Statement ¶ 54, rows 1-10, 14-15, 18-23).

**F.    OSA Claims With Respect to Each United States Filing At Issue Fail for a Variety of Reasons.**

As noted above, OSA identifies a total of six U.S. filings to which it objects – two registrations, three intent to use applications, and one application that was never identified in the Complaint or discovery responses. (*See* p. 11, *supra*). Apart from the reasons set forth above (including lack of a cause of action for "bad faith" trademark filings, absence of injury to OSA, absence of evidence of bad faith, and the parties' prior agreements), a review of each of these U.S. filings, and the goods objected to in each, shows that OSA's claims with respect to these applications and registrations fail for additional reasons, and that defendants are entitled to

summary judgment with respect to these filings.

    1.    <u>OEI's U.S. Registrations Nos. 2,022,762 and 2,034,705</u>.

As set forth in defendants' submissions in support of summary judgment (Def. 9/15/04 SJ Mem. at 13-14, 22-23; Def. 56(a)1 Statement ¶¶ 81-88), OSA expressly released in the *Omega I* Settlement Agreement (and agreed to delete) its allegations in this lawsuit relating to these registrations and, as noted above, its claims relating to defendants' registration or use of OMEGA marks in connection with period timers and scientific and industrial clocks, which these applications cover.  Because the *Omega I* Settlement Agreement has been held enforceable and judgment has been entered in *Omega I*, as OSA concedes (OSA 56(a)1 Statement ¶ 24), the Settlement Agreement is enforceable now despite the fact that OSA has filed a notice of appeal. *See*, *e.g., American Town Center v. Hall*, 912 F.2d 104, 110-11 (6th Cir. 1990) (appeal does not deprive federal court of jurisdiction to enforce judgment).

    2.    <u>OEI's U.S. Application Serial No.76/242,073</u>.

OSA complains that this application covers paper goods, cardboard, paintbrushes and typewriters.  (OSA 56(a)1 Statement ¶ 54).  There is no evidence that OSA offers any of these goods under OMEGA marks.  It is undisputed, moreover, that the current application as amended during the examination process does not contain any of the foregoing goods, and that the goods it does cover are expressly limited to "science and industry."  (Def. 56(a)2 Statement ¶ 54, row 11; Riggs 9/14/04 Dec. Ex. H).  It also is undisputed that no use has been made of the mark covered by this intent-to-use application, and that the application has been suspended by the PTO.  (M. Hollander 9/14/04 Dec. ¶ 29; Riggs 9/14/04 Dec. ¶12).  Given these facts, there could be no injury to OSA as a result of the application.  In addition, because there has been no use in commerce of the mark covered by this application, there is no claim with respect to it.  *See, e.g., Cognotec Servs. Ltd. v. Morgan Guar. Trust Co.*, 862 F. Supp. 45, 50-51 (S.D.N.Y. 1994) (no

claim where no materials were disseminated "in commerce"); *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F. Supp. 838, 847-48 (E.D.N.Y. 1975) (dismissing claim where no sales in commerce took place), *aff'd*, 538 F.2d 314 (2d Cir. 1976). For these reasons as well as the additional reasons set forth above, OSA's motion for summary judgment should be rejected as to this application, and OSA's claim dismissed.

> 3.    OEI's U.S. Application Serial No. 76/337,374.

OSA complains that this application covers "fire extinguishing apparatus" and "apparatus and instruments for metering . . . timing." (OSA 56(a)1 Statement ¶ 54). There is no evidence that OSA offers fire extinguishing apparatus under OMEGA marks, and it is undisputed that the current application as amended during the examination process does not contain that item. (Def. 56(a)2 Statement ¶ 54, row 12). Moreover, the goods in the application are expressly limited to those for science and industry. (*Id*.) Nor is there any evidence that OSA offers any "apparatus for metering . . . timing" for use in science and industry, and, as set forth above, the undisputed evidence is to the contrary. It also is undisputed that no use has been made of the mark covered by this intent-to-use application, and that the application has been suspended by the PTO. (M. Hollander 9/14/04 Dec. ¶ 29; Riggs 9/14/04 Dec. ¶ 8). Given these facts, there could be no injury to OSA as a result of the application. In addition, because the mark in this application has not been used, there can be no claim with respect to it. *See, e.g., Cognotec*, *supra*; *Tubeco*, *supra*. For these reasons as well as the additional reasons set forth above, OSA's motion for summary judgment should be rejected as to this application, and OSA's claim dismissed.

> 4.    OEI's U.S. Application Serial No. 76/337,450.

OSA complains that this application covers "apparatus and instruments for metering . . . timing." (OSA 56(a)1 Statement ¶ 54). As with Application Serial No. 76/337,374, discussed above, the goods in the application are expressly limited to those for science and industry (Def.

56(a)2 Statement ¶ 54, row 13).  There is no evidence that OSA offers any "apparatus for metering . . . timing" for use in science and industry, and, as set forth above, the undisputed evidence is to the contrary.  And, again, it is undisputed that no use has been made of the mark covered by this intent-to-use application, and that the PTO has suspended this application.  (M. Hollander 9/14/04 Dec. ¶ 29; Riggs 9/14/04 Dec. ¶ 10).  Thus, there could be no injury to OSA as a result of the application, and no claim with respect to it.  *See, e.g., Cognotec*, *supra*; *Tubeco*, *supra*.  For these reasons as well as the additional reasons set forth above, OSA's motion for summary judgment should be rejected as to this application, and OSA's claim dismissed.

        5.      <u>OEI's U.S. Application Serial No.76/052,828.</u>

This application was not alleged in the complaint or identified in discovery responses as an application to which OSA objected, and, for those reasons, OSA's claims with respect to it should be dismissed.  Even if the Court considers this application, however, OSA's claims as to it fail on the undisputed facts.  Thus, OSA complains that this application covers "Computers," "Chronometric and horological apparatus for science and industry," "industrial and scientific timers," "period timers," "period timers used in industrial or scientific apparatus to measure and/or control other variable parameters for science and industry" and "clocking devices and apparatus for measurement or control of time or distance in science and industry."  (OSA 56(a)1 Statement ¶ 54).  The application expressly limits all of the identified goods to science and industry by stating "all of the above for use in science and industry."  (Riggs 10/4/04 Dec. Ex. Q).  Thus, these goods fall squarely within the scope of those goods for which, in the 1994 Agreement and the *Omega I* Settlement Agreement, OSA has expressly agreed that OEI could register and use its OMEGA marks, and with respect to which OSA expressly released its claims in this case.  (*See* pp. 20-21, *supra*).  Moreover, there is no evidence that OSA offers any of the identified goods for use in science and industry, and, as set forth above, the undisputed evidence

is to the contrary. Lastly, this application has been suspended and has not issued from the PTO. (Riggs 10/4/04 Dec. ¶ 2). Given these facts, there could be no injury to OSA as a result of the application. For these reasons as well as the additional reasons set forth above, OSA's motion for summary judgment should be rejected as to this application, and OSA's claim dismissed.

### G.    OSA's Claims With Respect to Defendants' Benelux Registrations Are Barred by the Judgment in *Omega II.*

OSA's extensive discussion of the *Omega II* litigation, including nearly two pages of quotations from Judge Arterton's decision in that case, confirms that OSA is in large part attempting to relitigate that case here. (*See* OSA SJ Mem. at 17-19). In *Omega II*, OSA claimed that defendants had engaged in cybersquatting by registering two domain names, omegawatch.com and omegatime.com, allegations that brought into issue defendants' registration of the same words as trademarks in the Benelux. Thus, defendants' right to register those Benelux trademarks, and its intent in doing so, were squarely before Judge Arterton, who referred to the trademark registrations as "the identical subject matter" as the domain names sued upon in *Omega II.* 228 F. Supp.2d at 134 n. 57. To the extent OSA had any claim with respect to defendants' registration of those Benelux marks, it should have raised it in *Omega II.* Not having done so, it is barred from litigating that claim here. *See, e.g., Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108-11 (2d Cir. 2000) (claims arising out of same "claim" or "nucleus of operative facts" as in prior litigation are precluded); *see also Szymanski v. County of Cook*, 2002 U.S. Dist. LEXIS 21802, at *24 (N.D. Ill. May 8, 2002) (plaintiff may not avoid *res judicata* by characterizing prior claims as part of a "pattern or practice" of unlawful conduct).

## II.    THE UNDISPUTED FACTS REQUIRE SUMMARY JUDGMENT *DISMISSING* OSA'S COUNTS 1 AND 5.

To prevail on its trademark infringement and false designation of origin claims, OSA must show that a reasonable jury *could not* find there is no likelihood of confusion. That is,

OSA must demonstrate that it is *undisputed* that there is "a 'probability of confusion, not a mere possibility,'" and that "a large number of purchasers likely will be confused as to the source of the goods in question." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001) (citation omitted).[9] Applying the factors of *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), however, as shown below and in our summary judgment brief (Def. 9/15/04 SJ Mem at 25-34), a jury could find – indeed, *could only find* – that defendants' use of OMEGA marks is not likely to cause confusion.

A.    **Defendants' Trademark Applications and Registrations Do Not Give Rise to Any Likelihood of Confusion.**

Because it is not always clear what alleged conduct OSA contends constitutes trademark infringement and false designation of origin (as opposed to, for example, alleged "bad faith" filings), defendants first address a basic principal of trademark law.  In considering whether a likelihood of confusion exists, the analysis is whether the defendants' marks, *as actually used in commerce*, create a likelihood of such confusion – *not* whether, for example, the goods claimed in a trademark application are potentially confusing.  Thus, as defendants explained in their summary judgment brief, a pending trademark application, in the absence of actual use of the subject mark in commerce, does not give rise to a claim for trademark infringement or false designation of origin.  (*See* Def. 9/15/04 SJ Mem. at 21-22).  This is because, as noted above, trademark infringement or false designation of origin requires proof of likelihood of consumer confusion, and such confusion arises, if at all, from the *use* of marks in commerce, not from the existence of trademark applications or registrations.  Absent actual use in trade, the mark cannot cause confusion.  For these reasons, analysis of OSA's trademark infringement and false

---

[9]    Although OSA now asserts a claim under CUTPA based on alleged likelihood of confusion, it concedes that the analysis of such a CUTPA claim is the same as that under the Lanham Act.  (OSA SJ Mem. at 15).

designation of origin claims must address the parties' *uses* of OMEGA marks, not the applications and registrations alleged by OSA. Accordingly, the applications and registrations that OSA sometimes relies on in its discussion of trademark infringement are irrelevant.

**B.    The Undisputed Facts Show That There Is No Likelihood of Confusion.**

1.    The Parties Offer Different Goods to Different Customers.

As defendants have demonstrated (Def. 9/15/04 SJ Mem. at 26-28), the undisputed facts show that there is no competitive proximity between the parties. Thus, defendants use OMEGA marks to sell scientific and industrial process measurement and control instruments to sophisticated manufacturing, laboratory and similar customers. (M. Hollander 9/14/04 Dec. ¶¶ 3, 5, 6, 13). OSA, in contrast, sells very expensive luxury wristwatches to consumers, and sports timing equipment to athletic organizations. (Sauser Rupp Tr. 41, 62-63, 65-67, 89-90, 163-64; Rentsch Tr. 104, 109, 111, 119-120; Gibbons Tr. 37, 138-44, 153; Kayal Tr. 142-44, 176-77; Emmons Tr. 30-32, 40; Smart 9/15/04 Dec. Exs. G). OSA's witnesses concede that OSA does not sell OMEGA-branded products in the United States for use in science and industry. (Kayal Tr. 244-45; Gibbons Tr. 142-45, 153; Rentsch Tr. 120-21, 124, 128-31, 133-34, 138; Sauser Rupp Tr. 251-52, 270-71). Although OSA argues (OSA SJ Mem. at 28) that it sells to NASA and to many universities, OSA's claims, as shown in defendants' Rule 56(a)2 Statement, are unsupported by the evidence. (*See* Def. 56(a)2 Statement ¶ 30). Thus, the undisputed record evidence with respect to the parties' customers shows, at most, that OSA's licensee sometimes sells sports timing equipment to universities, typically to their athletic departments, while to the extent OEI sells to universities, it is to their science and engineering departments. (Kayal Tr. 143, 168-69; Gibbons Tr. 124, 131, 138-44, 148-57; Smart 9/15/04 Dec. Ex. T; M. Hollander 9/14/04 Dec. ¶ 13). OSA has offered no evidence that it has sold sports timing devices to any college or university to which OEI has sold any products. (*See* Def.

56(a)2 Statement ¶ 30).  OSA has submitted no admissible evidence that OSA sells any goods to NASA, and the only evidence concerning NASA is Ms. Sauser Rupp's testimony that astronauts wear OMEGA wristwatches.  (Sauser Rupp Tr. at 64).

OSA's discussion of the parties' alleged competitive proximity (OSA SJ Mem. at 27-30) merely confirms the gulf between the parties' products, and that OSA's infringement claim is wholly without merit.  Thus, OSA's principle – indeed, nearly exclusive – argument in support of its infringement claim is that OEI sells *period timers* under OMEGA marks.  (*See* OSA SJ Mem. at 27-28, 30).  As set forth above and in defendants' summary judgment brief *(see supra*, pp. 8, 10-11, 20-21; Def. 9/15/04 SJ Mem. at 13-14, 22-25, 39-40), however, OSA has expressly *released* its claims in this case relating to period timers, and has expressly *agreed* that OEI can use OMEGA marks in connection with such goods, in the *Omega I* Settlement Agreement and in the 1994 Agreement.  And, even if claims relating to period timers were not barred by the parties' agreements, the undisputed evidence makes clear that OEI's sale of period timers for science and industry does not give rise to a likelihood of confusion.  It is undisputed that OSA does not sell period timers or any other products for use in science or industry, as shown in defendants' summary judgment brief.  (*See* Def. 9/15/04 SJ Mem. at 16-17).

Nor is there any merit to OSA's argument that there is a risk of "post-sale confusion." (*See* OSA SJ Mem. at 29).  There is no evidence that any such confusion is likely here. Moreover, the undisputed evidence is that OEI's period timers are used by sophisticated scientific and industrial users, not ordinary consumers, further eliminating the possibility of post-sale confusion.  Indeed, there is no evidence that any consumer even would *recognize* an OEI period timer as a timer, and the evidence is to the contrary.  Thus, as is evident from the devices themselves, OEI's period timers are not wristwatches, are not strapped on persons' wrists to tell

time, and are too bulky to be used in such fashion.  Rather, they look and are used like the other

scientific and industrial controllers that OEI sells.  (*See* Riggs 10/4/04 Dec. ¶¶ 8, 9, 10 & Exs. U,

V, W).  Not surprisingly, therefore, when shown an OEI period timer and an OEI temperature

controller at their depositions, each of OSA's Rule 30(b)(6) and other witnesses could not tell the

difference between the two and did not recognize OEI's period timers as timers.  (Rentsch Tr.

272; Sauser Rupp Tr. 222-23, 234-35; Gibbons Tr. 191-92; Kayal Tr. 229-32; (Riggs 10/4/04

Dec. ¶¶ 8, 9, 10 & Exs. U, V, W).[10]

    Faced with these indisputable truths, OSA is forced to resort (as it did in resisting the

parties' Settlement Agreement before Judge Smith in *Omega I*) to a series of misrepresentations

and distortions of fact.  OSA asserts, without any factual support, that OEI uses "images of

watches" alongside "the word OMEGA" on OEI web pages offering "OEI timer[s]."  (OSA SJ

Mem. at 27, 30).  ***This statement is utterly false.***  The evidence cited to support this false claim

(OSA Ex. 29 at Exs. G, H) shows not OEI timers, but **NEWPORT**-branded period timers sold

by OEI's affiliate Newport Electronics (which also are sold only for use in science and industry).

These timers are clearly labeled NEWPORT, *not* OMEGA; they are sold on Newport's web

sites, not OEI's website.  (*See id*. at Exs. G, H).  Contrary to OSA's blatantly false statements,

the two Newport web pages at issue *do not* contain the word OMEGA, *do not* advertise "OEI

timers," and *do not* have "the word OMEGA . . . as the second level domain for the webpages."

(OSA SJ Mem. at 27, 30).  (*See* OSA Ex. 29 at Exs. G, H).

---

[10]    Thus, the facts of this case are wholly different from the post-sale confusion cases cited
by OSA, *1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467 (S.D.N.Y. 2003) and *Clinique
Labs., Inc. v. Dep Corp.*, 945 F.Supp. 547, 555 (S.D.N.Y.1996).  (OSA Mem. at 29).  In those
cases, both parties were directing the marks at issue to ordinary consumers and using them in
connection with ordinary consumer products, unlike here, where there is no evidence that
ordinary consumers see or use OEI's industrial and scientific period timers or other products.

Similarly, OSA continues to invent new allegations in this case as its old ones are refuted. Thus, the only other purported OEI product that OSA addresses in its infringement discussion is "watch batteries." There are no allegations in OSA's Complaint concerning watch batteries, and in its interrogatory answers and deposition testimony, OSA never identified watch batteries as allegedly infringing goods of OEI. (*See* OSA's 2/13/04 Supp. Answers to Interrog. No. 2 (Smart 9/15/04 Dec. Ex. X); OSA's 3/15/04 Second Supp. Answers to Interrog. No. 2 (Smart 10/5/04 Dec. Ex. RR); Sauser Rupp Tr. 157-59*).* There is no evidence that OSA sells batteries under the OMEGA brand, and none of the OSA trademark registrations cited by OSA cover batteries.

Even putting those defects aside, moreover, there is no evidence that OEI's use of the term "watch batteries" on its web site poses a likelihood of purchaser confusion. The batteries displayed in OSA Exhibit 30 are not branded with any OMEGA marks. (Burke 10/1/04 Dec. ¶ 4). The batteries at issue are offered on the cited web page to OEI's customers because they are the power source for OEI's "Digital Open Channel Water Velocity Meter," which is a device that measures "water velocity . . . in open channels and partially filled pipes such as sewers," and that also is sold on the same web page. (OSA Ex. 30; Burke 10/1/04 Dec. ¶ 2, 4). Moreover, the web page in question was changed several months ago for reasons wholly unrelated to this litigation, and the current version of the page no longer contains the phrase "watch batteries." (Burke 10/1/04 Dec. ¶ 3 & Ex. A). And, the undisputed evidence is that "watch batteries" was used in the past merely because the phrase is sometimes used to describe the small batteries of the type that this flow meter product uses – thus, the third party manufacturer of the flow meter sold by OEI refers to the batteries as "watch-type batteries." (Burke 10/1/04 Dec. ¶ 5 & Ex. B; Drucker 9/2/04 Tr. 84-85).[11]

---

[11]     Nor is there any evidence that anyone has ever bought these batteries for any purpose

In the face of this wide gulf between the parties' products and customers, OSA is left to argue (OSA SJ Mem. at 28) that "science and industry" is not a meaningful distinction of OEI's products and markets.  This argument suffers from numerous defects.  First, for purposes of likelihood of confusion analysis, "science and industry" clearly is meaningful:  As set forth above, the undisputed facts show that in the reality of the marketplace, the parties sell completely different goods to completely different purchasers.  Second, OSA's argument that "science and industry" is not a distinct trade channel is astonishing, considering that in at least two separate agreements, the parties themselves have used precisely those terms to delineate their respective fields of trade.[12]  As for OSA's assertion (at OSA SJ Mem. at 28, and not supported in OSA's 56(a)1 Statement) that Dr. Hollander "identified many different 'industries' including the transportation industry, the racing industry (i.e. sporting industry), the construction industry, the fashion industry, and the entertainment industry," it is completely false and misleading.  The testimony makes clear that while Dr. Hollander was aware that the term "industry" was sometimes used in other contexts, the phrase "science and industry" describes the particular market for OEI's goods.  Thus, he explained, "Industry and science, science and industry, it is a way of distinguishing it from other areas."  (M. Hollander Tr. 232).  Furthermore, OSA's assertion that he identified a "racing industry" is simply untrue and unsupported by the record.

other than for use with the industrial flow meter with which they are sold, and there is absolutely no evidence that they have ever been purchased by an ordinary consumer or by anyone for use with a watch.  Indeed, there is no evidence that any consumer has ever seen the cited web page that offers the batteries for sale.  Lastly, the undisputed evidence shows that the product at issue is but *one* of over 68,000 products sold by OEI for use in science and industry.  (M. Hollander 9/14/04 Dec. ¶ 3).  OSA has presented no evidence that this item is anything but an insignificant and *de minimis* product among OEI's extensive offerings of apparatus for science and industry.

[12]     *See* 1994 Agreement [M. Hollander 9/14/04 Dec. Ex. T] at  ¶ 4(a) ("intended for science and industry") and ¶ 4(c) ("apparatus industrially and/or scientifically employed"); *Omega I* Settlement Agreement [Riggs 9/14/04 Dec. Ex L] at ¶ 1 ("apparatus scientifically or industrially employed") and ¶ 3 ("period timers for science and industry").

2.    OSA Has Submitted Absolutely No Evidence that it Will "Bridge the Gap," and the Undisputed Evidence is to the Contrary.

There is no evidence to support OSA's claim that it will "bridge the gap" and compete with OEI, and the evidence is to the contrary.  Thus, OSA's lawyers assert, without any evidentiary citation, that "Given the opportunity to expand the products, OSA would further expand its products to schools, laboratories and 'industry.'"  (OSA SJ Mem. at 31).  However, OSA's Rule 30(b)(6) witness, Ms. Sauser Rupp, testified that OSA has *no* plans to sell OMEGA-branded goods to the scientific or industrial market in the U.S. (Sauser Rupp Tr. 168-69).

3.    OSA's Own Evidentiary Submissions Confirm the Weakness of its OMEGA Mark Outside of OSA's Specific Product Areas.

"The strength of a particular mark is measured by the degree to which it indicates source or origin of the product" and should be analyzed "from the vantage point of the product's commercial setting."  *Nora*, 269 F.3d at 123.  As defendants showed in their summary judgment brief (Def. 9/15/04 SJ Mem. at 31-32), there is no evidence that OSA's OMEGA marks are recognized in the marketplace as identifying a source of scientific or industrial products, or are recognized among the sophisticated science and industry purchasers at whom defendants' marketing and sales are exclusively directed – which is not surprising, because the undisputed evidence is that OSA has not made any sales to these purchasers or these fields.  As defendants also showed (Def. 9/15/04 SJ Mem. at 31-33), there are numerous third party registrations and uses of similar OMEGA marks that cause OSA's mark to be weak outside of its product areas and which negate any possibility of purchaser confusion.  Not only is this evidence of third party use indisputable, but it is confirmed by OSA's own Exhibits J and K, which demonstrate still more uses of OMEGA marks for a variety of products.

Moreover, OSA has utterly failed to submit admissible evidence to support its assertions regarding the extent, duration or scope of its use of OMEGA marks, relying on nothing but

attorney argument, unauthenticated copies of trademark registrations and assertions on its own
web site and in its own press releases, all of which are inadmissible hearsay. There is no record
evidence that OSA's OMEGA mark is strong with respect to the vague terms "timepieces" or
"timing devices," as OSA asserts. (OSA SJ Mem. at 26). To the contrary, the undisputed
evidence in the record shows that there has been very little advertising and extremely low sales
of OSA's OMEGA-branded sports timing devices. (*See* Def. 9/15/04 SJ Mem. at 10; Kayal Tr.
143; Gibbons Tr. 124, 131, 181-82; Smart 9/15/04 Dec. Ex. R).

> 4. OSA's Arguments Regarding Intent Are Utterly False, and Unsupported,
> and There is No Evidence That OEI Adopted its Mark With an Intent to
> Trade on OSA's Mark.

OSA's arguments with respect to the intent factor are not only unsupported by the
evidence, but are affirmatively false and, indeed, border on libelous. First, OSA asserts that OEI
acted with bad faith because "OEI were all aware of the OMEGA mark for timepieces before
OEI was even created and before it adopted the OMEGA mark for period timers and scientific
clocks," citing Ms. Riggs' testimony. (OSA SJ Mem. at 31).[13] However, Ms. Riggs merely
testified that she was aware of OSA's use of the OMEGA trademark for wristwatches, *not* the
vague and general term "timepieces." (Riggs Tr. 107-08). OSA's distortion of the testimony
again illustrates its efforts to claim that OSA somehow owns "time."

Moreover, mere awareness of OSA's OMEGA mark is insufficient as a matter of law to
establish an intent to trade on OSA's goodwill. *See, e.g., W.W.W. Pharmaceutical Co. v. Gillette
Co.*, 984 F.2d 567, 575 (2d Cir. 1993); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397
(2d Cir. 1995). There is absolutely no evidence that anyone at OEI, at any time, believed OSA

---

[13]     Ms. Riggs, In-House counsel for OEI, began working for OEI in 1994, well after it was
founded in 1962 and at least seven years after it began selling period timers. (Riggs Tr. 37, 39;
M. Hollander 9/14/04 Dec. ¶ 6).

to have any rights or goodwill in the OMEGA marks with respect to time generally or with respect to goods for science and industry, much less any evidence that OEI intended to trade on such goodwill.  Rather, the undisputed evidence is that Mrs. Hollander selected the name Omega Engineering in 1962 because an early user of her thermocouples was a company called Alpha Molykote, and, Alpha being the first letter of the Greek alphabet, she decided to adopt the last letter of the Greek alphabet, Omega.  (M. Hollander 9/14/04 Dec. ¶ 2).

As for the assertion that "[t]his Court on three separate occasions has already found OEI's conduct to constitute bad faith" (OSA SJ Mem. at 31), it is utterly false and contrary to the public record, and confirms OSA's readiness to say anything, true or not, and to mislead this Court.  This Court has *never* before found OEI's conduct to constitute bad faith.  First, in *Newport Electronics, Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 214 (D. Conn. 2001) – a case involving not OEI but OEI's affiliate Newport – the District Court merely held that there were questions of fact as to the bad faith element of plaintiffs' claim under the Anti-cybersquatting Consumer Protection Act ("ACPA").  157 F. Supp. 2d at 216.   What's more, after trial in that case, the jury *found in favor of Newport* on the ACPA claim.  (Riggs 10/4/04 Dec. ¶ 5).  Second, there also was no "finding" of bad faith in Omega II.  Rather, Judge Arterton merely denied summary judgment on the ground that there was an issue of fact as to bad faith that "[was] properly left to a jury."  *Omega S.A. v. Omega Engineering, Inc.*, 228 F. Supp. 2d 112, 131 (D. Conn. 2002).  As OSA concedes, that case later settled with the transfer of two domain names to OSA.  (OSA 56(a)1 Statement ¶ 26).  Third, OEI was *not* found to have acted in bad faith in violation of ACPA in *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F. 3d 489, 497-98 (2d Cir. 2000).  To the contrary, the Second Circuit clearly stated that OEI "*prevailed on all* the claims made against it by Sportsman's," and *affirmed* the district court's judgment "in *all*

particulars." *Id.* at 495 n.8, 502 (emphasis added).  And, even if OSA's description of these decisions was not completely false, misleading and unsupported, as it is, such purported evidence of prior "bad acts" is irrelevant and inadmissible under Fed. R. Evid. 404(b).

5.    The Parties Do Not Use the Identical Marks

As defendants have shown (Def. 9/15/04 SJ Mem. at 33-34), the mere fact that two entities use even the identical trademark does not create a likelihood of confusion or bar summary judgment for a defendant.  Moreover, although both parties do use the word mark OMEGA, there are differences between the parties' marks as used in commerce which – particularly in light of the many undisputed third party uses of OMEGA marks – further prevents confusion.  Thus, although OSA states (OSA SJ Mem. at 27) that both parties use the "identical . . . Greek letter Ω," their only support for this is two of *OSA's own* trademark registrations.  Defendants does not use the Greek letter Ω standing alone, but uses a design mark consisting of the juxtaposed Greek letters omega and epsilon.  (*See* M. Hollander 9/14/04 Dec. ¶ 4 & Ex. A).  Moreover, a review of OSA's Exhibits 2 and 4 (the only examples submitted by OSA of its use of its marks) shows that OSA often displays the word OMEGA directly under the Greek letter Ω (as depicted in OSA's U.S. Reg. 578,041, *see* OSA Ex. 6).  OEI, in contrast, typically places its design mark directly to the left of the words "OMEGA" or "OMEGA ENGINEERING."  (*See, e.g.,* M. Hollander 9/14/04 Dec. Exs. B, C, D, E, F, J, K, L, P, Q).

6.    The Undisputed Evidence Shows that the Remaining Polaroid Factors Favor Defendant.

OSA does not address several other *Polaroid* factors.  As defendants showed in their moving brief, however, these factors – namely, differing marketing channels, lack of evidence of actual confusion, sophistication of the parties' respective customers, and quality of defendants' products – confirm the absence of any likelihood of confusion.  (Def. 9/15/04 SJ Mem. at 28-31).

The absence of evidence of actual confusion is particularly telling.  OSA has come forward with no survey evidence showing purchaser confusion, a failure which, as the Second Circuit has repeatedly held, "counts against finding actual confusion."  *Merriam-Webster, Inc. v. Random House*, 35 F.3d 65, 72 (2d Cir. 1994); *see* Def. 9/15/04 SJ Mem. at 30.  Moreover, OSA has come forward with, and its witnesses could identify, no evidence of actual confusion – despite that the parties have co-existed for approximately 40 years and OEI has sold period timers since 1987, with hundreds of millions of dollars of sales under OEI's OMEGA marks. (*See* Def. 9/15/04 SJ Mem. at 29-30).  Such a lack of actual confusion where the parties' marks that have been in use for many years is "significant" evidence of a lack of likelihood of confusion.  *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 258 (2d Cir. 1982).

**III.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO OEI'S COUNTERCLAIM FOR CYBERSQUATTING.**

In seeking summary judgment on OEI's counterclaim for cybersquatting under the ACPA, the burden is on OSA to show that no genuine factual dispute exists.  *Nationwide Life Ins. Co.  v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).  OSA has failed to carry that burden.  As a preliminary matter, none of the assertions of fact made by OSA in support of its motion for summary judgment on OEI's cybersquatting counterclaim are set forth in OSA's 56(a)1 Statement, and the exhibits that OSA submitted in connection with these assertions are – like most of OSA's exhibits -- unauthenticated and largely hearsay.[14]  For those reasons alone, OSA's motion should be denied for failure to comply with Fed. R. Civ. P. 56(e) and Local Rule 56(a).  Furthermore, OEI's cybersqatting counterclaim is asserted against The Swatch Group

---

[14]    Several exhibits submitted by OSA with respect to OEI's cybersquatting claim – which, as noted above, are not even cited in OSA's 56(a)1 Statement – are cited for inadmissible hearsay, including OSA Exs. E, F and G.  In addition, OSA Exs. E, F, G, and I are not authenticated.  Defendants object to these exhibits on authentication and hearsay grounds.

Ltd. ("Swatch Group"), *not* OSA.  However, only OSA, and not Swatch Group, has moved for summary judgment on this claim.  For this additional reason, the motion should be denied.

Moreover, as OEI shows herein and in its Local Rule 56(a)2 Statement, triable issues of fact exist with regard to Swatch Group's bad faith registration of the OMEGA.US domain name, and with regard to OEI's trademark rights to OMEGA.US.

A. **There Are Triable Issues of Fact as to Whether the Registration of OMEGA.US Constitutes Bad Faith.**

Contrary to OSA's unsupported assertions, there are numerous bases on which a jury could find that Swatch Group engaged in bad faith in registering the OMEGA.US domain name.

First, as OSA concedes, during the Sunrise Period[15] for ".US" domain names, only "owners of existing or pending trademarks valid in the United States were allowed to submit a claim form for each domain name."  (OSA SJ Mem. at 32).  The undisputed evidence, however, is that the claim for OMEGA.US that resulted in the registration at issue was submitted by Swatch Group, which, its Rule 30(b)(6) witness concedes, does not own *any* OMEGA marks *anywhere in the world.*  (Sauser Rupp. Tr. 466-67; 472-74; Smart 10/5/04 Dec. Ex. PP).  Thus, in applying for OMEGA.US during the Sunrise Period, Swatch Group falsely stated that it owned a registration or application for OMEGA when it does not.  The assertion that "there is no evidence of false statements to the registrar" (OSA SJ Mem. at 36), then, is false.[16]

Second, OSA falsely states that Swatch Group "did not seek rights to the omega.us domain name in its own name," when, in fact, Swatch Group did register OMEGA.US in its own

---

[15]     As OSA explains (OSA SJ Mem. at 32), the Sunrise Period for ".US" domains was the period from March 4, 2002 through April 24, 2002 when applications for ".US" domains were accepted from owners of United States trademarks.

[16]     Indeed, although OSA relies on  United States Trademarks Registration Nos. 25,036 and 566,370 to support the registration of OMEGA.US, it is plain on the face of those registrations that they are in the name of OSA, not Swatch Group.  (OSA SJ Mem. at 36; OSA Exs. 1, 5).

name.  (Sauser Rupp. Tr. 472-73; Smart 10/5/04 Dec. Ex. PP).  Indeed, the evidence shows that

Swatch Group and OSA submitted multiple applications for OMEGA.US during the ".US"

Sunrise Period so as to increase the odds of winning the domain name in the Sunrise Period

lottery, even though only OSA owned any OMEGA marks.  (Sauser Rupp Tr. 473).

     Third, OSA and Swatch concede that neither company holds itself out as an American

company or promotes its products as "Made in the U.S."  (Sauser Rupp Tr. 468-71).  Indeed,

Swatch Group, the registrant of the OMEGA.US domain name, does not conduct *any* business or

sell any products in the United States, or under any OMEGA marks.  (Sauser Rupp Tr. 467).

OSA admits that it has never registered or used the mark OMEGA.US.  (Sauser Rupp Tr. 475).

     Fourth, OSA and Swatch Group concede that it neither operates a website at the domain

OMEGA.US, nor has made any use of the domain name since its registration in 2002, nor are

there any plans to develop or post a site on OMEGA.US.  (Sauser Rupp Tr. 474-75, 476-77).

Decisions have repeatedly held that such "warehousing" of a domain name is evidence of bad

faith.  *See, e.g., Domain Name Clearing Co. v. F.C.F. Inc.*, 2001 U.S. App. LEXIS 15619, at

*111 (4th Cir. July 12, 2001) (citing defendants' failure to use domain name for a web site as a

factor suggesting bad faith); *The J. Paul Getty Trust v. Domain 4 Sale & Company*, Nat. Arb.

Forum, No. 95262 (2001) (transferring domain name and finding bad faith and no legitimate

rights where respondent had made no use of websites at the domain name at issue).

**B.    OEI Has Superior Rights to Swatch Group in the Names "Omega US" or "US Omega."**

     OSA also argues that OEI has no rights as the "US Omega" or "Omega US."  However,

there is, at a minimum, a triable issue of fact as to OEI's rights with respect to those marks.  The

undisputed evidence shows that OEI is a U.S. company, that most of OEI's products are

manufactured in the United States, and that OEI's marketing and advertising materials routinely,

repeatedly, consistently and prominently emphasize these facts.  (M. Hollander 9/14/04 Dec. ¶ 22 & Exs. B, C, D, Q).  For example, OEI's primary handbooks of products are called the "Made in the USA Handbook Volume 1" and the "Made in the USA Handbook Volume 2."  The covers of these handbooks, and OEI's other handbooks, bear variations of paintings by the famous Americana painter Norman Rockwell.  OEI specifically obtained a license to use these Norman Rockwell paintings to emphasize the Made in the USA message of OEI and the fact that OEI is itself a U.S. company that sells as many U.S. products as possible.  Also, a "Made in the USA" red, white and blue logo or an American flag appears on almost every page inside the handbooks. (M. Hollander 9/14/2004 Dec. ¶ 22 & Exs. B, C, D).  Other OEI advertising materials repeatedly emphasize "US" and OEI's status as a United States company.  (M. Hollander 9/14/04 Dec. ¶ 22 & Ex. Q).  And, OEI has registered a number of domain names that contain "OMEGA" and "US."  (*See* Riggs 10/4/04 Dec. ¶ 7 & Ex. T).  Just as Judge Arterton held in *Omega II* that OSA might have rights in the domain names omegatime.com and omegawatch.com despite never having used those names as trademarks, OEI has rights in "OMEGA.US" by its extensive advertising and marketing of its OMEGA mark in association with "US" and "USA."  *See Omega II*, 228 F. Supp. 2d at 128.

OSA ignores this evidence, and argues that there are other companies that use "OMEGA" in the United States.  (OSA SJ Mem. at 36-37 & Exs. J, K).  OEI does not dispute this fact – indeed, OEI itself has shown that numerous companies use the OMEGA and that this widespread use *weakens* OSA's mark and bars its infringement and dilution claims. (*See* Tepper 9/14/04 Dec. ¶¶ 2-20 & Exs. A-S; Def. 9/15/04 SJ Mem. at 31-33; *supra* p. 33).  However, OSA has submitted no evidence that any of these other companies emphasize a U.S. connection or use "U.S." prominently in their advertising materials, as, it is undisputed, OEI does.

The undisputed record evidence of OEI's prominent advertisement of "US" and its United States connection also refutes OSA's argument that the ".US" in OMEGA.US should be disregarded. To be sure, some domain name cases disregard the top level domains in domain names. Most of those cases, however, involve domain names ending in ".COM" or ".NET," not ".US," which is different in that it is a geographic identifier. None of the cases cited by OSA, moreover, involved a dispute between a U.S. company and non-U.S. company where the evidence showed, as it does here, that "US" figured prominently in the American company's advertisements or marketing materials and the U.S. company claimed rights in the combination of its trademark and "US." The authorities OSA cites are inapposite to the unique facts here.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for partial summary judgment should be denied, and summary judgment should be entered for defendants dismissing the Complaint in its entirety.

Dated:  October 6, 2004
        New York, NY

Respectfully submitted,


Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Of counsel:
Victoria Haje
Michelle R. Tepper

*Attorneys for Defendants*