## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br><br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (MRK) <br><br><br> October 6, 2004 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### ITS MOTION TO STAY THE CASE PENDING THE
### OUTCOME OF THE APPEAL IN OMEGA I

Plaintiff, Omega S.A. ("OSA"), submits this memorandum of law in support of its motion to stay this case pending the outcome of the appeal in *Omega I*, Case No. 398-CV-2464 (AVC). On August 12, 2004, Judge Covello adopted Magistrate Smith's Report and Recommendation to enforce the settlement agreement between the parties and judgment was entered dismissing the case. See *Omega Engineering, Inc., v. Omega S.A*, Case No. 398-CV-2464 (D.Conn. 1998.) ("*Omega I*") at Docket Entries ("D.E.") Nos. 148, 160 and 161, copies of

these documents attached hereto in Exhibit A. On September 13, 2004, OSA filed its notice of appeal in *Omega I*. See, *Omega I*, D.E. No. 163 attached hereto in Exhibit A.

OSA has filed a motion to stay the settlement agreement before Judge Covello, and a copy of this filing is attached as Exhibit B. Also attached hereto, as Exhibit C, is a copy of the settlement agreement signed only by OEI that Judge Covello has enforced. OSA disputes certain terms as ambiguous. Said motion is incorporated herein by reference.

## DISCUSSION

### A. The interests of judicial economy are served by staying this case pending appeal

For the sake of judicial economy, the law and arguments set forth in the motion for stay in *Omega I* will not be repeated here and are incorporated here by reference. OSA will review the pertinent portions of the settlement that require action in this Court and which could be irreversible and therefore constitute irreparable harm to OSA if the Court's order enforcing the agreement is reversed on appeal. In the interest of simplicity and economy, OSA refers to Exhibit B, its motion in *Omega I*.

The settlement agreement enforced by the Court ("Settlement Agreement") set forth numerous terms, conditions and obligations of each party. One of the obligations is set forth in paragraph number 1 of subsection B, which provides:

> 1. OEI will file an amendment at the United States Patent & Trademark Office ("PTO") to trademark registrations Nos. 2,022,762 and 2,034,705 by deleting "industrial and scientific clocks" in International Class 14 and by amending its Class 9 identification of "timers, namely period timers" to "period timers ancillary to and incorporated into apparatus scientifically or industrially employed for the measurement and/or control of temperature, pressure, force, load, vibration electrical conductivity, liquid level, acidity, humidity, strain or flow." OEI and OSA will cooperate to file this amendment as soon as possible at the PTO and to obtain the PTO's approval of the amendment and to obtain dismissal with prejudice of the two cancellation proceedings by OSA against OEI that are

pending but stayed, Nos. 25, 575, and No. 27,612 (the "Cancellation Proceedings") relating to registrations Nos. 2,022,762 and 2,034,705 respectively.

See Settlement Agreement, annexed hereto as Exhibit C.

The express terms contained in paragraph 1 of the Settlement Agreement, and its purpose and effect, are to make OEI limit the scope of its identification of goods and provide for the dismissal *with prejudice* of the cancellation proceedings brought by OSA. Since the terms of any settlement will be unenforceable or altered if the Plaintiff prevails on appeal, then OEI will have taken action that is not required and *OSA will have permanently given up its rights to the cancellation proceedings*. Moreover, these cancellation actions are evidence sought to be used by OSA in this Court. If these actions, pursuant to the Settlement Agreement are to be taken, then OSA will have lost rights and certain proof having an irreversible effect on this case, subject to reversal on appeal.

More importantly, if OEI amends the subject registrations to comply with the Settlement Agreement, but as a result of the ruling on appeal would not have been required to so limit the scope of goods identified; OEI will be unable to subsequently amend these registrations to reclaim identification of the goods it had originally identified without violating federal law. *Trademark Manual of Examining Procedure* 804.09; *Trademark Rule* 2.71 (b); 37 CFR 2.71 (a)(while a trademark applicant may amend an identification of goods to clarify or limit the identification, the applicant may never add goods to the identification); see *also* 3 McCarthy on Trademarks and Unfair Competition §19:49. While OEI could refile a new application for these goods after this litigation ended, (which itself is without prejudicial effect except loss of a filing date in its Trademark Office) OSA will have permanently, and with prejudice, dismissed its proceedings with respect to these very goods, and would be barred by *res judicata* from re-

3

asserting a cancellation proceeding if and when OEI were to refile a new application in this regard and would alter the evidence in this case.

Since the purpose of a motion for stay is to preserve the status quo of the parties pending appeal, the parties' efforts to amend, dismiss, cancel (and possibly reinstitute) the applications and cancellation proceedings would be inefficient and a waste of resources, even if the parties could do so. These actions will have effect in this Court, and should be delayed until the appeal is decided.

Paragraph 2 of the Settlement Agreement also imposes a substantial obligation on OEI that should be avoided until the appeal is decided. Paragraph 2 of the Settlement Agreement requires OEI to include a reference to "Omega Engineering, Inc., Stamford, Conn., and its location", on all shipping boxes for Omega Engineering timers. If OEI uses the name "Omega Engineering" or any "Omega" trademark on these goods, then OEI must include the same reference." This obligation commences upon the exhaustion of existing inventory for such timers. OEI has given no indication that it has commenced compliance with this term of the agreement. However, such change in use would be evidence in this case.

Moreover, Paragraph 2 states that in addition to deleting the identification of goods in its registrations as described above, OEI must refrain from using the words "industrial and scientific clocks" on any such products in this respect. Again, however, compliance with this term would undermine OSA's evidence in this case.

Most significantly, paragraph 4 of the Settlement Agreement requires OSA to file a fourth[2] amended complaint in this case that "drops" the allegations contained in the current complaint relating to the cancellation actions (which would be dismissed per the above) against

---

[2] Although the Settlement Agreement requires filing a "third" amended complaint, Plaintiff has already done so. Thus, this provision would in effect require Plaintiff to file a "fourth" amended complaint.

4

OEI's registrations described in paragraph 1 of the Settlement Agreement (See Ex. C at ¶ 4). The same paragraph also requires:

OSA to remove the claims for relief pertaining to those paragraphs; which expressly prohibits OSA from making claims or assertions in this case relating to applications by OEI to register or use the "Omega mark" or "Omega design" on period timers or industrial clocks; and sets forth that OEI also will not make any claims or assertions in this case to the effect that OSA breached an agreement reached in 1994 by filing its cancellation proceedings.

While Plaintiff does not advocate that the obligations identified did not have meaning at the time the Settlement Agreement was drafted, it cannot be denied that if the Settlement Agreement is determined to be unenforceable after a decision on Plaintiff's appeal, then the obligations outlined in paragraph 4 of the Settlement Agreement will have an unremediable effect on this litigation. This Court will expend significant resources resolving a case with matters incorrectly before it.

If this case is decided on the basis of these amended pleadings, and without evidence which otherwise would have been relevant based on the third amended complaint, then OSA's rights could be permanently and irreparably harmed since it would, ostensibly, be precluded from litigating those legal issues in the future, whether or not it had new evidence to present. OSA could be forced to litigate certain claims without certain evidence it might have after an appeal is decided in its favor; by the same token, OSA could be forced to *not* litigate certain claims, which claims may ultimately be reinstated after appeal but barred by *res judicata*. Such would be a waste of judicial resources and undeniably an irreparable harm to OSA.

On the other hand, there is no harm to OEI if a stay was granted. As the court in *Groondige . v. Allstate Insurance Co.* stated: "By contrast, [non-movant] has demonstrated no

prejudice that would result from granting the stay. While it complains that it would be placed at a tactical disadvantage and could incur additional litigation costs if the stay is granted and [movant] were subsequently [successful on appeal], these harms would flow from the reversal of [the court's order], not from the stay itself. The only real consequence for [non-movant] is that the determination of its pending summary judgment motion will be deferred, and that is not prejudicial." *2003 WL 22871905 at *2* (S.D.N.Y. 2003) citing, *Mohammed v. Reno*, 309 F. 3d 95, 100 (2nd Cir. 2002); *Hilton v. Bransushill*, 481 U.S. 770,776, 107 S.Ct. 2113, 95 L.Ed. 2d 724 (1987).

### B. The balance of harms, when combined with OSA's chance of success on appeal, clearly tips in favor of granting a stay pending appeal.

In *Mohammed*, the Second Circuit adopted the Seventh Circuit's articulation of a more precise formula for relating the likelihood of success to the balance of hardships. *Mohammed*, 309 F.3d at 101 n. 10 (*quoting American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593 (7th Cir.1986)(Judge Posner)). Judge Posner suggests that injunctive relief such as a stay should be granted: "only if the harm to the [movant] if the injunction is denied, multiplied by the probability that the denial would be an error, exceeds the harm to the [non-movant] if the [stay] is granted, multiplied by the probability that granting the [stay] would be an error." *Id.* The district courts have observed that Judge Posner's model is often difficult to apply because of the hazards of assigning probabilities of success. *Greendige*, 2003 WL 22871905, at *2. However, such courts have also noted that it is quite useful in analyzing a case such as this where one of the terms in the equation--the potential harm to the other party--is zero.

In this case, where the harm to OEI if the stay is granted, multiplied by the probability that the appellee will prevail on appeal, no matter how large, is still zero (because the current

6

harm is zero). On the other hand, as long as OSA has a chance of succeeding on appeal[3] and can demonstrate some harm if the stay is denied, the product of these two factors will be a finite number greater than zero, and the stay should be granted. *Id.*

## CONCLUSION

As set out above, OSA clearly has a colorable chance on appeal, since, among other things, the Settlement Agreement was not signed by OSA, OSA objected in writing to the terms of the agreement as ambiguous immediately after the settlement conference, and OSA reserved its execution on the record. OSA has identified several cases in this circuit having similar fact patterns in which the district court's enforcement of an unsigned settlement agreement has been reversed. *See* section A of Ex. B.; *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, (2nd Cir. 1997); *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, (2nd Cir. 1985); *see also* OSA's Objection to the Report and Recommendation in *Omega I* in the Court file as D.E. 151.

Further, OSA has identified many affirmative acts it would have to take in compliance with the settlement agreement if the stay is not granted that, if the Court's ruling was reversed on appeal, would be irreversible and constitute irreparable harm to OSA. Lastly, OEI cannot demonstrate any prejudice or harm if the stay is granted. OSA respectfully requests that the Court grant its motion for a stay of these proceedings pending the appeal of Judge Covello's rulings in *Omega I* to the Second Circuit.

---

[3] See Exhibit B, section A for discussion of OSA's likelihood of success on appeal

                                 Respectfully submitted
                                 for Plaintiff,

By: _____
    Jess M. Collen (CT20918)
    Philip Miolene (CT013377)
    Matthew C. Wagner (CT25926)
    COLLEN *IP*
    THE HOLYOKE-MANHATAN BUILDING
    80 South Highland Avenue
    Ossining, New York 10562
    (914) 941-5668
    (914) 941-6091 (facsimile)
    jcollen@collenlaw.com (email)

Dated: Ossining, New York
       October 6, 2004