IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMEGA S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| OMEGA ENGINEERING, INC., | ) | |
| OMEGA SCIENTIFIC, INC., and | ) | |
| OMEGA PRESS, INC., | ) | |
| | ) | |
| Defendants. | ) | Civil Action No.: |
| | ) | 3:01 CV 2104 (MRK) |
| OMEGA ENGINEERING, INC., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | October 6, 2004 |
| | ) | |
| v. | ) | |
| | ) | |
| OMEGA S.A. and | ) | |
| THE SWATCH GROUP LTD., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF JAMES H. FOUSS**

I.  **Statement of the Case**

Plaintiff Omega, S.A., ("OSA"), has identified James H. Fouss (hereinafter referred to as "Fouss") as an expert that may testify at trial. OSA has provided a copy of the report upon

1

which Fouss will base his testimony (hereinafter referred to as the "Fouss Report") to the Defendants Omega Engineering, Inc., Omega Scientific, Inc., and Omega Press, Inc. (hereinafter collectively referred to as "OEI.") OEI has moved the Court to exclude the testimony of Fouss, based upon deficiencies that OEI claims exist in the Fouss Report. OSA opposes OEI's motion to preclude for the reasons set forth below.[1]

## II.     The Expert Testimony Is Admissable Pursuant To The Federal Rules Of Evidence And The Daubert Standard.

OEI principally relies upon the test for determining the admissibility of expert opinion that was set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (*See* Section II of Defendant's Memorandum at pages 6-22.)[2] The proffered testimony of Fouss, and the Fouss Report, completely satisfies the *Daubert* standard and thus both the testimony and report are completely admissible at trial.

---

[1] Four surveys are at issue: Surveys 1, 2, and 3 pertain to websites "omegawatch.com", "omegatime.com", and "omega.net". Survey 4 pertains to the "Omega" name.

[2] OEI also asserts that Surveys 1, 2, and 3 are irrelevant because claims relating to domain names were previously excluded on *res judicata* grounds. (*See* OEI's memorandum at 5.) This assertion, though, recognizes that Judge Underhill, in a prior ruling, ruled that the registration of the domain names for these websites was relevant to the issue of bad faith conduct on the part of OEI. While the surveys cannot delve into the subjective intent of OEI, they are relevant to prove the claim as a whole, i.e., whether OEI's conduct in fact caused a likelihood of confusion and whether any damages were sustained as a result.

2

*Daubert* simply requires a court, in considering whether to admit expert scientific testimony pursuant to Fed. Rule Civ. Pro. 702, to conduct a preliminary assessment as to whether the methodology employed is scientifically valid and is applicable to the facts of the case. *Daubert* at 591. This consideration can include many inquiries, but there is not an exhaustive checklist. Instead, the entire consideration should be kept "flexible." *Id.* The consideration should be made with cognizance of the object of Rule 702: to obtain evidence or testimony that assists the trier of fact in understanding the evidence or to determine a fact in issue. *See* Fed. Rule of Civ. Pro. 702.[3] *Daubert* emphasizes that even this inquiry is "a flexible one." *Daubert* at 594-95. This role has been described as a "gatekeeping" obligation that applies not only to scientific knowledge, but to technical or other specialized knowledge as well. *Kumho Tire Co.v. Carmichael*, 526 U.S. 137, 141 (1999).

A trial judge's decision on whether to admit or exclude expert testimony is subject to an abuse of discretion standard. *Fashion Boutique of Short Hills, Inc.* v. *Fendi USA, Inc.* 314 F.3d 48, 59 (2002). In performing this "gatekeeping" function, the judge should examine the relevance of the evidence in the context of Fed. R. Evid. 401. *Id.* Specifically, the trial judge

---

[3] Fed. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case:"

3

should determine whether the testimony " 'ha[s] any tendency to make the existence of the fact that is of consequence to the determination of the action more probable or less probable than if it would be without the evidence.' " *Id.* (*citing Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (*quoting* Fed. R. Evid.401).)

Unrealistic and contradictory assumptions that might suggest bad faith are grounds to exclude expert testimony. *In re Air Disaster at Lockerbie Scotland*, 37 F.3d 804, 824 (2d Cir. 1994), *cert. denied*, 513 U.S. 1126 (1995). Assumptions that might simply be unfounded, however, go to the weight of the evidence and not to its admissibility. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir.), *cert. denied*, 506 U.S. 826 (1992). OEI cannot claim that any deficiencies in the Fouss Report amount to bad faith or are wholly unfounded. *Assuming arguendo* that any or all of the deficiencies claimed by OEI exist in the Fouss Report, these purported deficiencies do not rise beyond the level of affecting only the weight of the evidence.

The first step in any inquiry regarding any evidence, expert or not, is determining if the evidence is relevant. Relevant evidence is defined in Fed. R. Evid. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Fed. R. Evid. 403, expert evidence that is relevant can be excluded if the expert evidence will cause undue prejudice, confusion, or mislead the trier of fact. Fed R. Evid. 702 is the rule that assists

the court in determining whether expert evidence, like a survey, passes muster on the standards of relevance and prejudice.

Criteria for resolving whether a survey is admissible in evidence is described as follows: (1) a properly chosen "universe"; (2) a representative chosen sample; (3) accurate reporting of data; (4) analysis under accepted statistical principles; (5) clear and non leading questions; (6) qualified persons to conduct the survey; and (7) an objective process. *See, e.g.*, Manual for Complex Litigation 3d § 21.493 (Federal Judicial Center 1995). As will be demonstrated below, the Fouss Report satisfies each and every criterion, and, as such, is suitable for admission into evidence at trial.

### III. Other District Courts Have Allowed Into Evidence Expert Evidence That Contains Deficiencies Which Are Far Greater Than Any Purported Deficiencies In The Fouss Report.

In a trademark infringement case, the United States District Court for the Southern District of New York held admissible, as a present state of mind exception to the hearsay rule set forth in Fed. R. Evid. 803 (3), a consumer survey that showed that 24% of its respondents believed trademarked and infringing goods came from the very same source. *Friesland Brands, B.V. v. Vietnam National Milk Company,* 221 F. Supp. 2d 457, (S.D.N.Y. 2002). The Court also considered the survey pursuant to the test prescribed by Fed. R. Evid. 403, (weighing probative value against prejudicial effect), and found that, despite the flaws that might have

5

existed in the survey, the flaws were not so "obvious and egregious" that the probative value of the survey, *however minimal* that might be, outweighed any prejudicial effect. *Id.* at 460-462. *(emphasis added).*

The deficiencies claimed in the consumer survey at issue in *Friesland Brands* bear similarities to the criticisms made by OEI as to the Fouss report. OEI charges that the question contained in the Omega name brand survey, that reads "What products or services, if any, do you think are manufactured, sold, licensed, or available with the word "Omega" as part of the product or name?" is improper because it was addressed to a target that included OSA's potential consumers. (*See* OEI's Memorandum at 4, 12.)

The *Friesland Brands* survey was sent to 188 individuals (which included consumers of condensed milk) asking them to offer their "impressions" of six cans of condensed milk, including cans from the trademark plaintiff and cans from the claimed infringer consumers. A select group of these consumers were then asked if they thought that some or all of the six products were made by the same or different companies. This select group was then asked if they thought that "some or all" of the six products were made by the same or different companies. Various deductions from the survey were made, including that 24% of the consumers "grouped the two labels together." *Id.* at 459.

6

The *Friesland Brands* defendant moved to exclude the survey due to flaws in its methodology. In reaching its decision to overlook the flaws and allow the survey into evidence, the Court first noted that survey evidence is a common method of proof to show likelihood of confusion, a necessary part of a trademark infringement plaintiff's case. *Id.* The Court relied heavily upon Second Circuit decisions in reasoning that a survey can properly ask consumers about their state of mind due to an exception to the hearsay rule and that errors in methodology properly go to the weight and not the admissibility of the evidence. *Id. (citing Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733 (2d. Cir. 1994); *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d. Cir.1986).

The *Friesland Brands* court also considered whether the prejudicial effect of the survey outweighed its probative value. *Id.* at 460. In concluding that it did not, the Court reasoned that because the impressions of the consumers bore exclusively on the weight of the testimony, the Fed.R.Evid. 403 standard was more relaxed. *Id. (citations omitted.)* As a result, "flaws" (*quoting Cache, Inc. v. M.Z. Berger & Co.*, 2001 WL 38283 (S.D.N.Y. 2001)) typically still did not create enough prejudice to outweigh probative value. *Id.*

The *Friesland Brands* court stated that "[o]bviously, with the application of this more relaxed standard, many surveys that might be accorded little weight after an analysis of their methodology would still pass muster under Rule 403." Id. at 460. Therefore, "[w]hile there

7

will be occasions when the proffered testimony is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *Id. (quoting, without internal citations, AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993).

In the instant case, OEI complains that the Fouss Report is inadmissible because the target group (universe) of the Omega interpretation study should not have included OSA consumers. OEI also objects to the narrowing of the universe into a select group and objects to the question: "What products or services, if any, do consumers think are manufactured, sold, or licensed or available with the word "Omega" as part of the product or service name?" This question is similar to the question asked of the consumers in *Freisland Brands*, that being whether they thought that any of the products (from both the plaintiff and the defendant in that case) were made by the same or different companies. [4] As the defendant's motion to exclude in *Friesland Brands* was denied notwithstanding this type of question addressed to a potential consumer of the product, so too should OEI's motion to exclude be denied. [5]

---

[4] It is noted here, and discussed below, that the question in this survey, the fourth survey identified in the Fouss report, is a survey that seeks to determine whether there is a secondary meaning of OSA's Omega mark. OEI's motion to preclude fails to distinguish the purpose of this survey in making its argument that the surveys do contain admissible evidence as to confusion.

[5] Although not presented as a summary of the "universe" of cases on this issue, a brief illustration of decisions that have excluded survey reports based on various factors of unreliability shows that these type factors of unreliability do not exist in the Fouss report. *American Home Products Corp. v. Barr Laboratories, Inc.*, 656 F. Supp. 1058

IV. **All of the Grounds that Defendants Rely on to Preclude the Testimony of Fouss Go to the Weight and not to the Admissibility of the Testimony**

A. <u>**The Surveys Define the Correct Universe and Target the Correct Market.**</u>

OEI argues that because the Fouss report includes surveys that target the market of OSA, the universe for each survey is improper. (*See* OEI's Memorandum of Law at 12.) First, this argument ignores the fact that the fourth survey is a survey whose purpose is to determine secondary meaning. Moreover, with respect to the three other surveys, this argument misses the mark; the universe that should be studied in a survey is the "segment of the population whose perceptions and state of mind are relevant to the issues in the case." 5 McCarthy on Trademarks and Unfair Competition § 32:159 (4th Ed.). In a traditional case claiming forward confusion, not "reverse" confusion, the proper universe to survey is the potential buyers of the junior user's goods or services. But in a "reverse confusion" case, it is appropriate to survey the senior user's customer base. *Id.* (*citing, in a footnote, Sterling Drug, Inc. v. Bayer, AG*, 14 F. 3d 733 (2d. Cir. 1994), *supra* at 5.) In *Sterling Drug*, the court found a likelihood of confusion and held that

---

(D.N.J. 1987), aff'd. 834 F.2d 68 (3rd Cir. 1987) (attorney involved in design of survey); *Kroger Co. v. Johnson & Johnson*, 750 F.Supp.1055 (S.D.Ohio 1983) (inducing response with a prize); *General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716 (mischaracterizing responses as final). Clearly, none of the charges leveled by OEI as to the Fouss report constitute these indicia of unreliability; at most, they result from differences in opinion (expert) as to methodology that do not render the Fouss report inadmissible.

9

since the senior user's products were perceived to be made by the junior user, then the senior user's customers were the appropriate target to survey.

In the instant case, the survey is designed to measure whether the senior user's (OSA) products are perceived to be made by the junior user (OEI.) As such, the consumers of OSA are exactly the "segment of the population whose perceptions and state of mind are relevant" to the issue of identifying secondary meaning with respect to the fourth survey and with respect to ascertaining the likelihood of confusion with respect to the three other surveys.

It is also completely appropriate to narrow a universe from the "population at large" in various ways. 5 McCarthy on Trademarks and Unfair Competition § 32:159 (4th Ed.) (*footnote citations omitted*). The universe is the United States consumers who used the Internet and had household incomes of $80,000.00. Conducting a survey through use of the Internet is a completely valid methodology. *See, e.g., Trustees of Columbia University in the City of New York v. Columbia/HCA Healthcare Corp.*, F. Supp. 733 (S.D.N.Y. 1997). On page 3 of the Fouss Report, consumers who live in these households are defined as "high-income" consumers. Although OEI argues that the targeted consumer should have consisted of prospective purchasers and that an $80,000.00 income does not make a consumer a prospective purchaser, OEI also offers no evidence to support that a response from this type consumer would have no probative

10

value or not assist the trier of fact in understanding the issues of this case or in making a determination of fact in this case.

Moreover, OEI fails to recognize that the survey also included a measurement of the likelihood that these consumers may or may not buy a watch over the next two years with a value in excess of $250.00 (*See* list of Survey 4 questions contained in the Appendix to the Fouss Report). Certainly the ability to pay for a watch and being part of a target group that is defined as "high income" has a relation to whether the targeted consumer may be in the market for an OSA watch. That this criterion at least allows the report to include probative value cannot be disputed.

### B. The Surveys Accurately Replicated the Market Place.

As was stated in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 135, (1999), (*cited* in OEI's Memorandum at 7, 8), the issue is not the reasonableness in general of a particular methodology. *Id.* at 153. Rather, it is the reasonableness of using the approach, the particular method of analysis, and how a conclusion is drawn on the particular matter that is relevant to whether the expert testimony is admissable. *Id.* at 153-54.

In the case at hand, the particular issue on which the expert testimony is relevant is not only likelihood of confusion, but strength of the OSA mark. When OEI criticizes the Fouss Report for not replicating the marketplace, OEI assumes that each and every survey was

designed to test consumer confusion. As stated above, the fourth survey does not test confusion, it tests the strength of the Omega mark by ascertaining whether the mark has a secondary meaning. With respect to that survey, OEI's complains of not showing a mark black 12 point font and of not displaying advertising brochures. These are complaints that clearly go to the weight and not to the admissibility of the Fouss report.

All of these purported deficiencies can be the subject of cross-examination or can be addressed at trial by OEI's own expert. The same has to be said with respect to OEI's criticisms that the three *other* surveys (pertaining to websites) did not include a sample with a hyperlink: this purported deficiency should be explored at trial on the merits- to preclude the report based on this type of claimed deficiency is to erroneously magnify the scope and substance of a *Daubert* analysis.

### C. The Questions Contained in the Surveys Were Not Leading or Improper.

OEI's contention that the Omega name survey included leading and improper questions is without merit. When the question is analyzed as a whole, it is readily observed that it was formulated to include controls that gave the question more objectivity.[6] The question reads

---

[6] The question is also only one of six questions, identified in the Appendix to the Fouss Report. The five questions that OEI does not address are completely open –ended. One of the questions, for example, was simply "Do you own a wristwatch?"

12

"Please state whether or not you think approval of "Omega" is required for each of the following items." The question then referred to a table, which included descriptions of wristwatches and time keeping products, clothing, food products, financial services, and home improvement products.

These subsections, pertaining to completely unrelated products, acted as a filter to eliminate a consumer perception of connection of the Omega mark to any one product or service. OEI ignores that these filters are built right into the question. Again, any possible problem that exists with this question can only go to the weight of the evidence, not to its admissibility. OEI's complaint, that asking whether approval is required is asking for a legal conclusion, is unfounded. The question seeks the consumer perception and lay opinon as to approval, not a legal conclusion. This question therefore cannot preclude the admission of the Fouss Report. The same point is made with OEI's complaint as to compound or vague questions. In fact, complaining as to the vagueness of a question runs contrary to complaining about the questions that are leading. The end result is the same-these type objections or complaints to the evidence may be proper ground for cross-examination but they are not proper grounds to preclude admission of the Fouss report or his testimony.

V. **Conclusion**

The Fouss Report, and Fouss's proffered testimony, satisfy the Daubert test. The survery survery seeks information that is relevant and that will assist the trier of fact in deciding the issues in this case. The methodology used in the Fourss Report was valid. None of the claimed deficiencies should preclude admission of the Fouss Report. Consequently, OEI's motion to preclude should be denied.

By: _____
Jess M. Collen (CT20918)
Philip Miolene (CT013377)
Matthew C. Wagner (CT25926)
COLLEN *IP*
THE HOLYOKE-MANHATAN BUILDING
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
(914) 941-6091 (facsimile)
jcollen@collenlaw.com (email)

Dated: Ossining, New York
October 6, 2004