## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| OMEGA ENGINEERING, INC., ) | |
| OMEGA SCIENTIFIC, INC., and ) | |
| OMEGA PRESS, INC., ) | |
| ) | |
| Defendants. ) | Civil Action No.: |
| ) | 3:01 CV 2104 (MRK) |
| OMEGA ENGINEERING, INC., ) | |
| ) | |
| Counterclaim-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OMEGA, S.A. and ) | |
| THE SWATCH GROUP LTD., ) | |
| ) | |
| Counterclaim-Defendants. ) | |

## DECLARATION OF ROBERT H. EMMONS

I, Robert H. Emmons under the penalty of perjury, hereby declare as follows;

1. I am the General Manager for the Omega Division of The Swatch Group (U.S.) Inc., and Senior Vice President for Swatch Group (U.S.) Inc., , 1200 Harbor Blvd., Floor 7, Weehawken, New Jersey 07087 (hereinafter "Omega"). I am personally familiar with the facts set forth herein. If called as a witness, I could and would competently testify as to these facts.

2. On April 8, 2004, I was deposed in this matter. At the time of my deposition, I understood that the entire deposition would be treated as confidential. In

RECVD 10/5/04
DKT 1
DKT 2

addition, I recall specific instances where my attorney specifically designated portions of my testimony as confidential.

3. I have been informed by my attorneys that excerpts from my deposition, in addition to excerpts from my colleagues' depositions, have been filed with the Clerk of the Court and are currently part of the public record. My attorneys have asked me to review the deposition excerpts to determine whether they contain any sensitive, confidential, or trade secrete information.

4. I have been given copies of the Exhibits B, D, and E to the Declaration of Thomas Smart, which was filed with the Clerk of the Court in support of Omega Engineering, Inc.'s motion for summary judgment.

5. After reviewing these documents, I was shocked to discover that they contained multiple types of confidential information which is highly sensitive, including advertising expenditures, sales summaries, customer and clientele information, advertising strategies, and marketing programs. This data has been compiled over the course of many years, and it constitutes a most valuable business asset.

6. For example, throughout pages 69-79 of my own deposition, I discussed the organization of Omega's retailers and accounts, including how exactly Omega chooses it retailers and other secret information. I distinctly remember that my attorney designated this portion and the remainder of my deposition as confidential. Yet it was apparently filed with the Clerk of the Court and is regrettably available for public review.

7. It is critical that this information remain sealed. Should our retailers or competitors learn of our specific criteria or business strategies, it would provide them with a distinct advantage in negotiating terms in our relationships. In addition, it allows

our competitors to copy our business methods, which we have pain-stakenly developed at an enormous expense throughout our history over the past 150 years.

8. Similarly, my deposition provides a detailed list of our promotional efforts and advertising plans, which have been a key factor of Omega's success. This information would unfairly give competitors and newcomers insight as to how to mimic the efforts of a very successful and prestigious brand name and company.

9. The deposition also discusses personnel organization, retailer incentive programs, account divisions, and targeted markets, which we consider highly confidential propriety information.

10. During my deposition, I also discussed the purchasing habits of some of our most valuable corporate clients. This is information that is highly confidential as its disclosure could threaten Omega's business relationships with these customers.

11. At the very least I would consider pages 36-39, 57-60, 69-79, 80-104, 110-112, 132-134, and 175 as confidential information that could cause serious harm to Omega if it were disclosed to the public. In fact, I provided this information based on my understanding that it would not be disseminated to the public.

12. I have also reviewed the deposition excerpts of Guy Gibbons and Hamid Kayal who also work for, or at the direction of, Omega. Their testimony also contains sensitive information.

13. For example, the Deposition of Guy Gibbons provides pricing terms, mark-up materials, customer lists, advertising costs, total sales data, and specific information regarding its clients. This information can be used in a variety of contexts. The mark-up information could be used in negotiating transcations and the sales

information could play a substantial role in bidding strategies. Pages 100-103, 124, 137-139, 148-156, 170-180, and 180-182 of the Deposition of Guy Gibbons contain confidential business information that we must keep private.

14. In addition, the Deposition excerpts of Hamid Kayal contain highly confidential information pertaining to advertising plans, future product lines, sales data, and advertising expenditures. This information can also severally undercut our ability to effectively negotiate contracts with clients. Pages 84, 107, 115, 133, and 176 of the Deposition of Hamid Kayal contain confidential information.

15. I note that every deposition excerpt that I reviewed contained the heading "Confidential." As a witness, this would indicate that some discretion would be employed before the testimony would be placed on the public record. That clearly was not done here.

16. I respectfully plead that the Court seal the confidential information as listed above in order to protect the privacy of Omega's sales data, advertising expenditures, advertising strategies, future business plans, personnel organization, account organization, clientele purchasing habits and marketing costs.

Signed under oath this 4th of October, 2004.

Robert H. Emmons
General Manager of the Omega Division and
Senior Vice President of The Swatch Group (U.S.) Inc.