# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

OMEGA S.A.,

       Plaintiff,

v.

OMEGA ENGINEERING, INC.,
OMEGA SCIENTIFIC, INC., and
OMEGA PRESS, INC.,

       Defendants.

OMEGA ENGINEERING, INC.,

       Counterclaim-Plaintiff,

v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.,

       Counterclaim-Defendants.

Civil Action No.:
3:01 CV 2104 (MRK)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION

# TABLE OF CONTENTS

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION**

I. PRELIMINARY STATEMENT......................................................................2

II. STATEMENT OF FACTS..............................................................................3

III. DISCUSSION..................................................................................................5

   A. Defendants' Motion for Summary Judgment on Plaintiff Claims for Trademark Infringement, Dilution, and False Designation of Origin Must Fail..............................................................................................................5

      1. *The Cornerstone Confusion Factors All Favor Plaintiff*..........................6

         i. *The Parties Use Identical Marks*......................................7

         ii. *Plaintiff's Mark is Undeniably Strong for Time Related Products*..........................................7

         iii. *The Parties Goods are in Close Proximity*......................9

            a. *Defendants' "Period Timers" are Timers – PERIOD!*......................................9

            b. *Defendants' Customers are Consumers*....................12

         iv. *Instances of Actual Confusion*......................................13

      2. *The Remaining Polaroid Factors Favor a Finding of Infringement*............15

         i. *Defendants' Use of the OMEGA mark has Encroached Plaintiff's Natural Zone of Expansion*..............15

         ii. *Post Sale Confusion*........................................................18
         iii. *There is Significant Overlap in Trade Channels*.................19

         iv. *Sophisticated Buyers can be Confused*........................23

         v. *Defendants' Good Faith – or Lack Thereof*..................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3rd Cir. 2000)..................................................................................7

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*,
126 F.Supp. 2d 328, 336 (S.D.N.Y. 2001)...........................................................27

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4, 9 (2nd Cir. 1976)..................................................................................7

*Allen v. McCurry*,
449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed. 2nd 308 (1980) ....................................30

*Ameritech, Inc., v. American Information Technologies Corp.*,
811 F.2d 960 (6th Cir. 1987).................................................................................24

*Amstar Corp. v. Domino's Pizza, Inc.*,
615 F.2d 252, 259-60 (5th Cir. 1980).....................................................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)...................................5

*Ball Corp. v. Xidex Corp.*,
705 F.Supp. 1470 (D.Col. 1988)...........................................................................29

*Big O Tire Dealers, Inc., v. Goodyear Tire & Rubber, Co.*,
561 F.2d 1365 (10th Cir. 1977)............................................................................24

*Brookfield Communications, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036, 1054 (9th Cir. 1999)................................................................7, 15

*CAE v. Clean Air Engineering, Inc.*,
267 F.3d at 679-80 (7th Cir. 2001)............................................................13, 18, 23

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56, 61 (2nd Cir. 2000).............................................................................5

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*,
754 F.2d 591, 596 (5th Cir. 1985)........................................................................23

*General Mills, Inc. v. Kellogg Co.*,
824 F.2d 622, 627 (8th Cir. 1987)..........................................................................9

    B. <u>Defendants' Motion for Summary Judgment on Plaintiff's CUTPA and Unfair Competition Claims Must Be Denied</u>..................................26

        1. *This Court has Subject Matter Jurisdiction to Consider Plaintiff's Claims*....................................................26

        2. *Defendants' Have Misapplied the Noerr-Pennington Doctrine*............28

        3. *Defendants' Trademark Filings Cause Harm to Plaintiff*..................29

    C. <u>Summary Judgment is not Appropriate Based on Estoppel</u>.......................30

IV.    **CONCLUSION**.........................................................................33

*In the Matter of Registration No. 1557184*
(U.K. Patent and Trademark Office 2004)..............................................8, 29, 30

*Inmuno Vital, Inc. v. Golden Sun, Inc.*,
49 F.Supp. 2d 1344, 1356 (S.D.Fla. 1997)..............................................24

*KOS Pharmaceuticals, Inc. v. Andrx Corp.*,
369 F.3d 700, 712 -713 (3rd Cir. 2004)..............................................7

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)..........................30, 31

*Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*,
799 F.2d 867, 871 (2nd Cir. 1986)..............................................6, 10

*Marvel Characters, Inc. v. Simon*,
310 F.3d 280 (2nd Cir. 2002) ..................................................30

*McGraw-Edison v. Walt Disney*,
787 F.2d 1163, 1169 (7th Cir. 1986)..............................................13

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
818 F.2d 254, 256-58 (2nd Cir. 1987)..............................................6

*Morningside Group Ltd. v. Morningside Capital Group, LLC.*,
182 F.3d 133, 141 (2nd Cir. 1999)..............................................7, 14

*Nabisco, Inc. v. PF Brands, Inc.*,
191 F.3d 208, 215 (2nd Cir. 1999)..............................................6, 19

*New West Corp. v. NYM Co. of Cal.*,
595 F.2d 1194, 1200-01 (9th Cir. 1979)..........................................15

*Omega S.A. v. Omega Engineering, Inc.*,
228 F.Supp. 2d 112, 132 (D.Conn. 2002) ..........................................8

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
317 F.3d 209, 215 (2nd Cir. 2003)..............................................5.

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492, 495 (2nd Cir. 1961)..............................................6, 18

*Ramirez & Feraud Chili Co. v. Las Plamas Food Co.*,
146 F.Supp. 594, 602 (S.D. Cal. 1956)
(affirmed, 245 F.2d 874 (9th Cir. 1957))..........................................27, 28

*Steel v. Bulova,*
344 U.S. 280, 288 (1952) ...................................................................27

*Tally-Ho, Inc. v. Coast Community College Dist.,*
889 F.2d 1018, 1023 (11th Cir. 1989).............................................7

*TCPIP Holding Co. v. Haar Communications Inc.,*
244 F.3d 88, 100 (2nd Cir. 2001)....................................................8

*T.N. Dickinson V. LL Corp.,*
1985 WL 14175 (D.Conn. 1985).....................................................29

*Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.,*
909 F.2d 839, 842-43 (5th Cir. 1990)............................................15

*Vanity Fair Mills, Inc. v. The T. Eaton Co., Ltd.,*
234 F.2d 633, 642 (2nd Cir. 1956)..............................................27, 28

*Wal-Mart Stores v. Samara Bros.,*
529 U.S. 205, 209 (2000)................................................................5

*WE Media, Inc. v. Cablevision Systems Corp.,*
94 Fed. Appx. 29,30 (2nd Cir. 2004)..............................................5

*WE Media, Inc. v. General Elec. Co.,*
218 F.Supp. 2nd at 468-9................................................................6

*Weiner King, Inc. v. Wiener King Corp.,*
615 F.2d 512, 522 (Cust. & Pat.App. 1980)..................................25

*Woods v. Dunlop Tire Corp.,*
972 F.2d 36, 38 (2nd Cir.1992).......................................................31

*Yurman Design, Inc.,*
262 F.3d 101 (2nd Cir. 1997)..........................................................5

## STATUTES and RULES

15 U.S.C. § 1114 (1)(a)......................................................................5

15 U.S.C. § 1125 (a)...........................................................................5

Fed. R.Civ. P 56 (c)............................................................................5

Plaintiff, Omega S.A., ("OSA" or "Plaintiff") hereby submits this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on Plaintiff's causes of action.

## I. PRELIMINARY STATEMENT

Defendants' motion as it pertains to Plaintiff's CUTPA and Unfair Competition claims must fail. As already found by Judge Underhill, and as supported by Plaintiff's papers in Opposition to Defendants' second motion for judgment on the pleadings, Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits of the Untied States. Moreover, it should not go unnoticed, that Defendants' alleged bad-faith filings occurred not only abroad but also here in the United States. Defendants' reliance on the Noerr-Pennington doctrine and *Professional Real Estate*, are completely misplaced, and a reasonable juror could easily find that Plaintiff will be damaged by Defendants' attempts to expand their rights in the Omega marks to goods unquestionably sold by Plaintiff, including timing devices and jewelry.

Defendants' Summary Judgment Motion must also fail because at minimum, the following four facts raise material issues of fact which not only defeat Defendants' motion but in fact, securely anchor the Plaintiff's claim for infringement, dilution, and false designation of origin:

**(1) The Parties use identical marks - Omega and "Ω";**

**(2) The Parties sell the same goods – timing devices;**

**(3) The Parties sell to the same customers –including the government and universities; and**



**(4) Actual consumers have been confused believing that goods sold by one Party was actually sold by the other.**

In support of its motion seeking dismissal of Plaintiff's trademark infringement, dilution, and false designation of origin claims, Defendants attempt to guide the Court far away from the above 4 essential facts. Defendants' arguments that the Parties are in completely different markets is inapposite to the record which clearly demonstrates that the Parties, in fact share many customers, including NASA, the United States Military, Penn State University and the University of Wisconsin. The evidence also shows that there is significant overlap in marketing efforts, clientele, and the Parties' products such that, when combined with Plaintiff's senior rights to the OMEGA mark, the strength of Plaintiff's mark, and the similarity between the Parties' marks, there is a strong likelihood of confusion.

Defendants also rely on various claims of *res judicata* and *collateral estoppel* based on the 1994 and 2003 agreements. As neither of these agreements constitute a final judgment on the issues now before this Court, Defendants' arguments must fail.

The terms and status of multiple Agreements between the parties remain in dispute. Resolving these contractual issues involve mixed questions of law and fact, which are disputed on the record. Accordingly, these agreements cannot provide an adequate basis to dismiss claims at summary judgment.

### III. STATEMENT OF FACTS

Plaintiff incorporates, herein, the statement of facts submitted in Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment. The following

facts additionally support Plaintiff's Opposition to Defendants' Motion for Summary Judgment and clearly demonstrate that Defendants' Motion should be denied:

- The Parties both use the OMEGA and "Ω" trademarks [Pl. Br. Ex. 1, 17 and 18].
- Plaintiff began using the Omega marks in commerce in the United States before Defendant [*Id.*].
- Plaintiff began using the Omega marks in commerce on timing devices in the United States before Defendant [*Id.*].
- The Parties sell the same goods – timing devices [Dec. Reilly Ex. H and K].
- The Parties share the same customers – including the government and certain universities [Pl. Br. Ex. 14 at 233-35; Dec. Smart Ex. B at 48, 50, 70, 171].
- Consumers have been confused believing that Plaintiff was the source of goods actually sold by Defendants [Dec. Smart Ex. A at 140; Dec. Reilly Ex. L]
- Defendants' products are available to any entity with access to the internet [Dec Hollander at 22]
- Plaintiff's OMEGA marks are neither generic nor descriptive [Pl. Br. Ex. 1, 17 and 18].
- Defendants do not market or advertise their timing devices as "period timers" [Dec. Reilly at Ex. K].
- Defendants advertise certain timers as "day or time clocks" [*Id.*].
- Engineers purchase both Plaintiff's and Defendants' timing products [Dec. Kayal; Dec. Hollander].
- Plaintiff sells products bearing the Omega marks to numerous different industries including the sports, fashion, and jewelry industries [Dec. Kayal; Dec. Smart Ex. B]
- Plaintiff sells numerous different electronic products [Dec. Kayal; Dec. Reilly Ex. H].
- Plaintiff's timing devices have been sold for a myriad of scientific applications [Dec. Kayal].
- Plaintiff and Defendants both maintain web sites that advertise and promote their respective products [www.omega.com; www.omega.ch]
- Plaintiff and Defendants both advertise their products in numerous different periodicals and magazines [Dec. Smart Ex. B; Dec. Hollander at 17-18].
- Defendants have admitted that except for the fashion and jewelry industry, there is no other industry that Defendants do not sell to. [Pl. Br. Ex. 14 at 233-35].
- Defendants' have filed at least one trademark application for the Omega mark in connection with "jewelry for science and industry" [Pl. Br. Ex. 28].
- Defendants' products range in price from $3.00 watch batteries, to products costing thousands of dollars [Pl. Br. Ex. 29-32; Def.'s Brief at 5]
- Plaintiff's products range from very inexpensive watch accessories to watches costing thousands of dollars [Def's Brief at 9; Pl. Br. Ex. 5, 7]
- Neither party has alleged a claim for anti-trust or a violation of the Sherman Act [Pl. Complaint; Def. Answer and Counterclaims].

4

- Available for sale through Defendants' website are timers that are depicted and advertised with a wristwatch and stopwatch [Pl. Br. Ex. 29].

### III.    DISCUSSION OF THE LAW

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party has established its right to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2nd Cir.2000). A dispute is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all ambiguities must be resolved and all reasonable inferences drawn in favor of the party opposing the motion. *See id.* at 255. In a trademark context, "[i]f a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *WE Media, Inc. v. Cablevision Systems Corp.* 94 Fed.Appx. 29,30 (2nd Cir. 2004), quoting *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 215 (2d Cir.2003).

### A.   Defendants' Motion for Summary Judgment on Plaintiff Claims for Trademark Infringement, Dilution, and False Designation of Origin Must Fail

To succeed on a claim of trademark infringement under 15 U.S.C. § 1114(1)(a), or false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must prove that: (1) that the mark is distinctive, either inherently or through secondary meaning, and (2) that there exists a likelihood of confusion. *Yurman Design, Inc.*, 262 F.3d 101 (2nd Cir. 1997) citing *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 209 (2000). To determine whether

5

a likelihood of confusion exists, a court must determine whether an "ordinarily prudent purchaser" in the marketplace is likely to be confused as to the origin or sponsorship of the goods. *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2nd Cir.1986). The inquiry into likelihood of confusion is guided by the following factors: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the owner will bridge the gap; (5) evidence of actual confusion; (6) defendant's good faith in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the consumers. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2nd Cir.1961). To state a cause of action for dilution, a plaintiff must establish five elements: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *WE Media, Inc. v. General Elec. Co.* 218 F.Supp.2d at 468-9 citing *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2nd Cir.1999).

### 1.     The Cornerstone Confusion Factors All Favor Plaintiff

Although *Polaroid* lists many nonexclusive factors to be considered during a likelihood of confusion analysis, certain factors are consistently recognized as the essential considerations. These factors include: (1) the similarities of the Parties' marks; (2) the strength of the plaintiff's mark; and (3) the proximity of the Parties' goods. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256-58 (2nd Cir.1987). This Circuit has also recognized evidence of actual confusion as "the most telling indication that

confusion is likely." *Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 141 (2d Cir. 1999). All four of these elements unequivocally favor Plaintiff.

i.   <u>The Parties Use Identical Marks</u>

Perhaps the most important factor in a likelihood of confusion analysis is the similarity of the marks. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.* 237 F.3d 198 (3rd Cir. 2000); *KOS Pharmaceuticals, Inc. v. Andrx Corp.* 369 F.3d 700, 712 - 713 (3rd Cir. 2004) ("The single most important factor is mark similarity"); *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir.1999); ("The similarity of the marks factor will always be important [and] it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.")

Here, it cannot be disputed that both Parties use identical marks, the OMEGA word mark and the Ω design, as illustrated in the Parties' respective trademark registrations. [Pl. Br. Ex. 1, 17, 18]. It also cannot be disputed that Plaintiff is the senior user of the OMEGA mark as its registration occurred 70 years prior to Defendants' very existence.

ii.   <u>Plaintiff's Mark is Undeniably Strong for Time Related Products</u>

A trademark's strength is measured by a trademark's distinctiveness. See, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir.1976). It is undisputed that Plaintiff's mark is inherently distinctive as it is neither generic nor

descriptive. That is, the ordinary definition of the word "Omega" is completely unrelated to Plaintiff's goods and services.

As Plaintiff has used the OMEGA mark on timepieces since 1894, it is undisputed that Plaintiff's mark has "acquired distinctiveness" and a high degree of consumer recognition. *See TCPIP Holding Co. v. Haar Communications Inc.*, 244 F.3d 88, 100 (2nd Cir.2001). [See, Pl. Br. Ex. 1] Plaintiff has promoted its mark at some of the most visible events on the world stage, including many Olympic Games, including the 2004 Athens games where Plaintiff's mark was displayed prominently throughout many events. Most recently, millions of viewers were exposed to Plaintiff's mark while Michael Phelps and Amanda Beard won over a dozen combined Olympic medals at the swimming arena in Athens that displayed the Omega marks. [Dec. Reilly Ex. J, M.] In fact, Michael Phelps recently accepted an endorsement from Omega S.A. [Dec. Reilly Ex. O.]

Plaintiff's mark has also been widely promoted by celebrity "ambassadors" such as Pierce Brosnon, Ernie Els, and Cindy Crawford, advertised in countless periodicals, featured in mainstream Hollywood movies such as the popular James Bond films, displayed at hundreds of televised sporting events, and used in connection with great historical moments, such as NASA's landings on the moon. [See Dec. Kayal; Pl. Br. Ex. 2.] Even Defendants admit that Plaintiff is a well-known source of precision timepieces. [See, Defendants' Statement of Undisputed Facts.] This level of distinction has also been recognized by courts in this country and abroad. See, *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112, 132 (D.Conn. 2002); *In the Matter of Registration No. 1557184*

8

Case 3:01-cv-02104-SRU    Document 145    Filed 10/06/2004    Page 14 of 14

(U.K. Patent and Trademark Office 2004) ("The measurement and recording of time is the very core of the business of [Plaintiff]") [Pl. Br. 21.]

It simply cannot be disputed that Plaintiff's mark has been widely used in commerce.[2] Accordingly, another highly important likelihood of confusion factor - the strength of the senior user's mark - unquestionably favors Plaintiff.[3]

iii.   The Parties Goods are in Close Proximity

   a.   Defendants' "Period Timers" are Timers—PERIOD!

Time is at the center of Plaintiff's diverse businesses, and has been for over 100 years. Defendants sell a number of timers and related products that when it is convenient, such as defending this lawsuit, or to avoid a rejection from a trademark office, they define as "period timers" or "scientific clocks." Defendants have alleged that these devices are distinct from Plaintiff's timing products because a "period timer" is a term of art that describes a timer that can be used to control other devices. [Dec. Dr. Hollander 6-7.] Even if "period timer" is in fact a real term of art,[4] this does not change the fact that Defendants' products measure and/or record time and are sold under an identical mark to Plaintiff's indisputably strong OMEGA mark. Most importantly, Defendants do not market or sell these products as "period timers." As depicted below, OEI's timing

---

[2] Defendants try to dilute the strength of Plaintiff's mark by pointing to various third parties who have applied to register derivations of the OMEGA mark in the United States Patent and Trademark Office. The existence of third party applications and registrations is not material. Rather, the extent and use of the identical marks by third parties is the correct question. See, *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir.); see also, *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987). While Defendants have argued that Plaintiff's mark is diluted because another entity, Alpha Omega, also sells Plaintiff's watches, it should be noted that as a distributor of OSA's watches, Alpha Omega operates under the same control and regulations as all of OSA's other distributors.

[3] Notably, the great strength of Plaintiff's mark also supports its claim for dilution. See *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d at 215 (To obtain relief under dilution, a trademark owner must show that its mark is both famous and distinctive.)

[4] Of the millions of records available at the Patent and Trademark Office, only one other company has ever used the term "period timers" in a trademark application, and no other company has ever used the term "scientific clock" in a trademark application. [Dec. Laraaj at 1-2.]

9