**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| OMEGA, S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OMEGA ENGINEERING, INC., | ) |
| OMEGA SCIENTIFIC, INC., and | ) |
| OMEGA PRESS, INC., | ) |
| | ) |
| Defendants. | )  Civil Action No.: |
| | )  3:01 CV 2104 (MRK) |
| OMEGA ENGINEERING, INC., | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OMEGA, S.A. and | ) |
| THE SWATCH GROUP LTD., | ) |
| | ) |
| Counterclaim-Defendants. | ) |

**OMEGA ENGINEERING'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION TO EXCLUDE THE TESTIMONY OF JAMES H. FOUSS**

Thomas A. Smart (CT 21462)  
Paul C. Llewellyn (CT 25417)  
**KAYE SCHOLER LLP**  
425 Park Avenue  
New York, NY  10022  
(212) 836-8000  

Of counsel:  

Victoria Haje  
Michelle R. Tepper  

Dated: October 20, 2004  

Thomas E. Minogue (CT 06845)  
**MINOGUE BIRNBAUM LLP**  
237 Elm Street  
New Canaan, CT  06840  
(203) 966-6916  

*Attorneys for Defendants and for
Counterclaim-Plaintiff*  

Doc. #30959962.WPD

OSA fails to make any showing that the four Fouss surveys have any relevance to any of the issues in this case and ignores the case law that demonstrates that the surveys are so flawed that they are not admissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence ("FRE") 702.

## ARGUMENT[1]

I. **The Four Fouss Surveys Are Irrelevant**

    A. *The Domain Name Surveys Are Irrelevant and Barred by Res Judicata*

OSA has utterly failed to demonstrate that the three consumer surveys regarding the domain names omegatime.com, omegawatch.com and omegatime.net have any relevance to the issues remaining in this case. Indeed, remarkably, OSA has not even bothered to rely on any of the surveys in support of its own motion for summary judgment or in opposition to OEI's summary judgment motion. Its failure to do so is not surprising because the surveys have no relevance to the issues of trademark infringement and unfair competition that remain. Rather, the surveys were clearly designed to support plaintiff's domain name claims in the Omega II litigation and in this lawsuit. However, OSA does not dispute, nor could it, that Judge Underhill previously dismissed the domain name claims from this case on the grounds of *res judicata*. Moreover, even OSA concedes that the surveys "cannot delve into the subjective intent of OEI," which is the only possible issue that Judge Underhill held might be pertinent from the dismissed

---

[1] Facts pertinent to this reply memorandum are set forth in the Declaration of Thomas A. Smart dated September 15, 2004 and the exhibits thereto (which includes the Fouss Report that is the subject of plaintiff's motion), the Declaration of Dr. Seymour Lieberman dated June 4, 2004 and the Declaration of Dr. Milton Hollander dated September 14, 2004.

domain name claims to the rest of this case. (OSA Opposition to Motion to Exclude ("OSA Opposition") at p.2, n.2; *see* Motion Hearing 4/22/03 Tr. 61).[2]

### B. The Fourth Fouss Survey is Also Irrelevant Because It Does Not Measure Likelihood of Confusion

Plaintiffs concede that the fourth Fouss survey (the "OMEGA Interpretation" survey as we have called it in our Motion to Exclude), was not intended to and does not measure likelihood of confusion. (OSA Opposition at p. 12). Indeed, OSA does not dispute defendant's observation that the goals of the Fouss surveys do not even include determining confusion. (*See* Fouss Report at p. 3; OEI Mtn. to Exclude at p. 2). OSA instead now argues for the first time that the survey "seeks to determine whether there is secondary meaning of OSA's mark" - notwithstanding that neither OEI nor OSA has raised or briefed the issue of secondary meaning in any of the summary judgment papers filed in this action because it is not an issue in the case. (OSA Opposition at pp. 8-9 & n. 4). It is therefore not surprising that, as with Fouss's domain name surveys, OSA also has not profferred the OMEGA Interpretation survey to the Court either in support of OSA's summary judgment motion or in opposition to defendants' summary judgment motion.

Moreover, even if secondary meaning were an issue in this case, which to repeat it is not, the fourth Fouss Survey would still be irrelevant because it surveyed the wrong universe. When the plaintiff is alleging forward confusion where plaintiff and defendant sell different goods, the relevant universe to determine if a mark has obtained secondary meaning is likely purchasers of

---

[2] Nor may plaintiff seek to avoid Judge Underhill's dismissal of the domain name claims by arguing that evidence relating to them shows a "pattern and practice" of defendants. *See Szymanski v. County of Cook*, 2002 U.S. Dist. LEXIS 21802, at *24 (N.D. Ill. Nov. 8, 2002) (plaintiff may not avoid *res judicata* by characterizing prior claims as part of a "pattern and practice" of unlawful conduct.)

the defendant's product, just as in the case of likelihood of confusion. *See, e.g.,Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1078-79 (C.D. Cal. 1999) (where plaintiff sold automobiles and defendant sold grille covers for use on plaintiff's cars, plaintiff's secondary meaning survey was flawed because it only surveyed the "small sport utility vehicle buying market" and not the "grille cover market"); *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 789 (5th Cir. 1984) (where plaintiff sought to enjoin the use of defendant's trademark, BancTEXAS, in all of Dallas County, it failed to prove secondary meaning of its own trademark "Bank of Texas" in the relevant universe when it only surveyed a population taken from an area surrounding Bank of Texas, and not a representative sample of all of Dallas County). Secondary meaning surveys have been inadmissible when the universe surveyed was underinclusive. *See, e.g., Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F.Supp. 1454, 1467-68 (D. Kan. 1996). For the same reasons that alleged confusion among OSA's potential wristwatch customers is irrelevant in a forward confusion case, the purported strength of OSA's mark among such customers is equally irrelevant as described below. The focus is whether likely customers of OEI would recognize OSA's trademarks; thus, since Fouss surveyed purported customers of OSA, the Fouss surveys targeted the wrong universe and are irrelevant.

## II.     The Flaws in the Fouss Surveys Are Fatal to Admissibility Under *Daubert* and Do Not Merely Go to the Weight of the Survey

In addition to the irrelevance of the four Fouss surveys, the other flaws identified by defendants in all of Fouss's surveys are so great that they go to the admissibility of the surveys and related testimony, rather than merely the weight of the evidence. A survey that suffers from one or two flaws may in some circumstances still be admissible (although these flawed aspects will undermine its probative value), but when there are numerous flaws, as here, the cumulative

weight of the flaws require exclusion. *Compare Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457, 461 (S.D.N.Y. 2002) (allowing survey evidence because the flaws were not so obvious or egregious that their prejudicial effect would outweigh the survey's probative value), *with Albert v. Warner-Lambert Co.*, 234 F. Supp. 2d 101, 105-07, n.7 (D. Mass. 2002) (granting motion to exclude testimony because survey methodology was severely flawed). The flaws warrant exclusion if "the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial." *Simon Prop. Group L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1039 (S.D. Ind. 2000) ("The court need not and should not respond reflexively to every criticism by saying it merely 'goes to the weight' of the survey rather than to its admissibility").[3] Thus, in *Simon,* the survey was excluded because "it grossly distort[ed] the 'marketplace conditions' in which Internet users might actually encounter the two parties' marks together," failed to use "adequate controls to test for legally relevant confusion," and "implicitly suggest[ed] to the respondent the possibility of a business connection between the [plaintiff's and defendant's] home pages that the respondent may not have made on his or her own." *Id.* at 1041, 1048. Similarly, in *Albert*, the surveyor failed to adequately screen participants and used too small of a sample size. Because the survey also did not provide an accurate, complete and unbiased description of the product and did not follow a uniform format for recording responses to permit a valid comparison of the results, the court held that the survey conformed to virtually none of the standards accepted by the survey industry and excluded the

---

[3]   *See also Mastercard, Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, 2004 U.S. Dist. LEXIS 2485, at *22 (S.D.N.Y. Feb. 23, 2004) ("The failure to satisfy one of the[ ] criteria [assessing the reliability of a survey] may result in the exclusion of the survey"); *Albert,*234 F. Supp. 2d at 106 n.7, 107 (D. Mass. 2002) (a "fatally flawed" survey is "the kind of "junky" science that *Daubert* commands be excluded from the jury's realm"); *J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 369 (D.N.J. 2002) ("when the deficiencies are so substantial that they render the survey's conclusions untrustworthy, the court should exclude the survey from evidence"); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999) (affirming the district court's holding "'that a survey may be kept from the jury's attention entirely by the trial judge if it is irrelevant to the issues'").

survey and the testimony based on the survey. 234 F. Supp. 2d at 105-07. Other cases we cited have similarly excluded surveys.[4]

Plaintiffs simply ignore this case law and instead argue incorrectly that the only grounds to exclude survey evidence is where the survey involved "[u]nrealistic and contradictory assumptions that might suggest bad faith" or "wholly unfounded" assumptions. (OSA Opposition at p. 4). This is flatly wrong and is not the law with respect to the admissibility of survey evidence as we have shown. Tellingly, the only case cited by OSA for this proposition is not a survey case at all, but an employment discrimination case that involved an economist's testimony regarding lost earnings. (*See* OSA Opposition at p. 4; *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992), *cert. denied*, 506 U.S. 826 (1992)). As shown above, consumer survey cases have routinely excluded surveys, *without* any finding of "bad faith" or "unfounded assumptions," when they failed to satisfy the *Daubert* standard of reliability and relevance.

---

[4] *See, e.g., Mastercard*, 2004 U.S. Dist. LEXIS 2485, at *27-30 (excluding a survey where the number of respondents surveyed was too small, the universe may have been improper, the survey bore "little resemblance" to the actual purchasing environment, and the survey report failed to account for non-response bias); *J & J Snack Foods.*, 220 F. Supp. 2d at 370-71 (survey inadmissible because it was incorrectly submitted to show that the mark should be classified as "suggestive" instead of "generic" or "descriptive," and because the universe was improper); *Starter*, 170 F.3d at 297 (survey fatally flawed because it was "little more than a memory test" and "did not test or demonstrate likelihood of consumer confusion" and was thus, irrelevant); *NFL Props., Inc. v. Prostyle, Inc.*, 57 F. Supp. 2d 665, 670 (E.D. Wis. 1999) (the court "exercise[d] its gatekeeping function to exclude the survey evidence" where the survey lacked controls and failed to account for "background noise"); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) ("survey is so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion" where it utilized an improper universe and asked leading, biased questions).

### A. *The Fouss Surveys Questioned the Wrong Target Market Because Plaintiff Alleges Forward Confusion*

Plaintiff primarily relies on *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457 (S.D.N.Y. 2002) to show that the probative value of the Fouss surveys, "however minimal that might be, outweighed any prejudicial effect." (OSA Opposition at p. 6). Plaintiff's reliance on *Friesland Brands*, however, is misplaced because none of the arguments offered by the defendant in *Friesland Brands* to discredit the plaintiff's survey are remotely similar to that of OEI's; nor are the surveys in both cases similar in format. At best, both OEI and the defendant in *Friesland Brands* argue that the universe surveyed was flawed. However, the court in *Friesland Brands* discounted defendant's argument in part because "even a survey with an '*overbroad*' universe may still have probative value." 221 F. Supp. 2d at 461 (emphasis added). Clearly, Fouss's universe is too *narrow*, not too *broad*. Fouss surveyed the wrong universe because he surveyed consumers who purportedly are OSA's target market for wristwatches, rather than engineers and scientists who are OEI's target market. (*See* OEI Mtn. to Exclude at pp. 12-13). It is well-settled in the Second Circuit, and plaintiff concedes, that in a trademark infringement case claiming "forward confusion," a survey must test defendant's target market. (OSA Opposition at p. 9; OEI Mtn. to Exclude at p. 12). Fouss attempted no such thing.

Plaintiff attempts to legitimize the universe Fouss surveyed by calling its case, at this late date, a "reverse confusion" case[5], in which it would be "appropriate to survey the senior user's customer base." (OSA Opposition at pp. 9-10). If the relevant universe of plaintiff's purchasers

---

[5] "Under the Lanham Act confusion is ordinarily the misimpression that the senior user [(OSA)] is the source of the junior user's [ (OEI's)] goods. Reverse confusion is the misimpression that the junior user [(OEI)] is the source of the senior user's [(OSA's)] goods." *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988).

has never been exposed to defendant's trademarks through defendant's advertising, as is the case here, there can be no reverse confusion. Thus, such a claim fails where there is no evidence that OSA's purchasers - watch consumers, athletic organizations and leagues - are ever exposed to OEI's trademarks, which, it is undisputed, are advertised in specialized trade channels. (*See* OEI SJ Mtn. at pp. 5-6, 28). This case is, thus, different from *Sterling Drug, Inc. v. Bayer, AG*, 14 F.3d 733 (2d. Cir. 1994) in which the court held that "the relevant issue is whether consumers mistakenly believe that the senior user's products actually originate with the junior user" and where it was clear that the purchasers of plaintiff's products were exposed to defendant's ads. *Id.* at 741.

    **B.** ***Even Assuming the Proper Universe Were Consumers, Fouss Failed to Survey Potential Consumers of OSA's Luxury Watches***

    Even assuming the proper universe were ordinary consumers and not scientists and engineers, OSA has failed to rebut our showing that Fouss failed to target the market properly. Fouss surveyed consumers who have household incomes of $80,000 or higher rather than prospective buyers of the product in question - watches. Plaintiff misleadingly argues that "OEI fails to recognize that the survey also included a measurement of the likelihood that the[] consumers [surveyed] may or may not buy a watch over the next two years with a value in excess of $250.00." (OSA Opposition at p. 11). However, OSA does not dispute that Fouss took no account of that question in screening respondents; the question was asked only *after* respondents qualified. Moreover, it is undisputed that the $250.00 price point does not even fall within the range of prices that OSA's watches sell for in the United States, and is over $2000.00 short of representing the average price that OSA's watches sell for. (Emmons Tr. 59-61).

    **C.** ***The Fouss Surveys Did Not Replicate the Marketplace***

    OSA does not even attempt to argue that Fouss presented the marks to anyone's purchasers as they are actually seen in the market. Nor does OSA dispute that in order for a survey to be of probative value as an evaluation of consumer confusion, it must faithfully replicate market conditions and courts have repeatedly rejected surveys for failure to do so. (OEI

Mtn. to Exclude at pp. 16-18). To the extent that OSA argues that the fourth Fouss survey need not replicate the marketplace because it is a secondary meaning survey, that ignores well settled law that secondary meaning surveys are required to be conducted "under actual market conditions" just like likelihood of confusion surveys. *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 361 (2d Cir. 1983). Moreover, OSA has not cited a single trademark case accepting a survey even remotely like that of Fouss's in which the parties' products or advertising and actual trademarks were not presented to respondents.

Nor has plaintiff responded to our point that the Fouss domain name surveys are fatally flawed because respondents were shown an artificial sample of one screen printed from a webpage (with the hyperlinks disabled), rather than a functioning website with working links. (*See* Appendix to Fouss Report; OEI Mtn to Exclude at pp. 16-18). OSA ignores the fact that courts have rejected surveys for failure to approximate the actual market conditions through which the products are advertised and sold. (OEI Mtn to Exclude at pp. 16-18).

D. *Fouss's Use of an Internet Survey Likely Generated a Low Response Rate Such That Projections Are Speculative*

Nor does OSA's opposition rebut our showing that the universe Fouss surveyed was likely not representative of Fouss's desired target audience given the likelihood that Fouss's Internet survey generated a very low response rate. (*See* OEI Mtn to Exclude at pp. 15-16). Indeed, plaintiff has attempted to mislead the Court by citing *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 747 (S.D.N.Y. 1997) for the proposition that "[c]onducting a survey through the internet is a completely valid methodology" when, in fact, the Court rejects an Internet survey for the very reasons the Fouss surveys should be excluded here. (OSA Opposition at p. 10). In *Trustees of Columbia Univ.,* the plaintiff introduced into evidence responses from an Internet health survey conducted by the defendant. The court held that "[t]he Internet survey, although evidence of some confusion, is entitled to

little *if any weight* both because of the extremely small numbers involved and because there was no showing that supported the trustworthiness of the survey methodology." *Id.* at 747 (emphasis added). As set forth more fully in OEI's Motion to Exclude and Lieberman Critique[6], Internet surveys of the type that Fouss conducted typically generate a very low response rate such that any projections drawn from the surveys would be "highly questionable and speculative." (OEI Mtn to Exclude at p. 15; Lieberman Critique at p. 5). OSA has not made any showing to support the trustworthiness of the Fouss survey methodology, either by showing an adequate response rate or otherwise.

E.   *The Fouss Surveys Ask Improper and Leading Questions*

Lastly, OSA has failed to refute, and instead ignores, the uniform case law we cited in our opening brief (OEI Mtn to Exclude at pp. 18-20, 22) rejecting surveys based on leading questions that suggest the idea of an affiliation between plaintiff and defendant, as do the critical questions in each of the Fouss surveys here.

CONCLUSION

For the foregoing reasons, the Court should preclude the proffered expert testimony and report of James H. Fouss.

---

[6]   OSA has offered no expert rebuttal of the Lieberman Critique which identifies numerous flaws in the Fouss surveys.

Dated: October 20, 2004  Respectfully submitted,
New York, NY

  /Thomas A. Smart/
Thomas A. Smart (CT 21462)
Of counsel:  Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
Victoria Haje  425 Park Avenue
Michelle R. Tepper  New York, NY  10022
(212) 836-8000

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

*Attorneys for Defendants and for Counterclaim-Plaintiff*