IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

OMEGA, S.A.,

        Plaintiff,

  v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND                 Civil Action No.:
OMEGA PRESS, INC.,                                        3:01 CV 2104 (MRK)

        Defendants.

OMEGA ENGINEERING, INC.,

        Counterclaim-Plaintiff,

  v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

        Counterclaim-Defendants.

_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

30958764.DOC

OSA seeks to avoid summary judgment by relying on hearsay (often in unauthenticated documents); argument unsupported by citation to any evidence or to evidence that proves the opposite; and a declaration of Hamid Kayal that flatly contradicts his prior deposition testimony, which, as a matter of law, does not create a factual dispute.  In short, OSA continues to mislead the Court, as it did in *Omega I*, where Judge Smith found that "OSA's briefs and objections are riddled with distortions, material omissions, misstatements of fact, misstatements of law, and unwarranted and irrelevant conclusions."  (Riggs 9/14/04 Dec. Ex. M at 22).

Moreover, in its Rule 56(a)(2) response ("OSA 56(a)2"), OSA has admitted 106 of the 135 paragraphs in defendants' Rule 56(a)1 Statement ("Def. 56(a)1"), thereby admitting itself out of court.  Although OSA attempts to avoid its admissions by adding a boilerplate statement that it objects to "any contentions or arguments therein," it fails to cite any facts to the contrary, and merely refers to a purported "Statement of Disputed Facts" which itself cites no evidence and which does not contain a single citation to the record.  It is settled law that "[a] party may not create a genuine issue of material fact by presenting . . . unsupported statements." *DeRay v. Larson*, 2004 U.S. Dist. LEXIS 19642, at *17 (D. Conn. Sept. 29, 2004).  Rather, "[w]hen a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present '*significant probative evidence* to create a genuine issue of material fact.'"  *Id.* at *16 (emphasis added).  This OSA has utterly failed to do.

In addition, the denials in OSA's Rule 56(a)2 Statement are either not supported by the evidence cited or fail to cite any evidence at all.  Thus, for example, OSA denies that OSA's 30(b)(6) witness, Ms. Sauser Rupp, could not identify any injury to OSA as a result of defendants' use of OMEGA marks, but cites no evidence in support of this denial. (OSA 56(a)2 ¶ 114; Def. 56(a)1 ¶ 114).  To take another example, OSA denies that the foreign trademark filings

30958764.DOC

of OEI at issue are the subject of pending opposition proceedings (*see* OSA 56(a)2 ¶ 129), but most of the documents OSA cites indicate a pending opposition on their very first page! (*See, e.g.,* OSA Exs. 37-42, 44, 46-50, A). OSA denies that OEI intends to use certain applied-for variations of the OMEGA marks once registrations issue (*see* OSA 56(a)2 ¶¶ 42-43), but in support cites PTO files that provide no evidence that OEI does not intend to use the marks. Other denials cite to "Kayal Dec." without any paragraph references; to "Smart Exs. A, B" (exhibits that consist of scores of deposition pages) without any page cites; to inadmissible evidence such as the Reilly Dec. exhibits, submitted by a Collen IP employee not on personal knowledge and without any attempt to authenticate the exhibits attached thereto, many of which are plainly hearsay; or to the unauthenticated and hearsay exhibits to which defendants have previously objected (*see* Def. 10/6/04 56(a)2 Stat.).[1] These are just examples and by no means an exhaustive list. When the Court views the *admissible* evidence presented by the parties, as well as OSA's admissions in its 56(a)2 Statement, it is clear that OEI is entitled to summary judgment on all of OSA's claims.[2]

I.  **OSA's CLAIMS ARE BARRED BY ITS CONSENT IN THE 1994 AGREEMENT TO THE REGISTRATIONS AND USES AT ISSUE, AND BY THE RELEASE CONTAINED IN THE OMEGA I SETTLEMENT AGREEMENT.**

   A.  **OSA Has Admitted that OEI's Period Timers and Related Goods Are Covered by Provisions of the 1994 Agreement Which Permit OEI to Register and Use the OMEGA Marks for Products Used in Science and Industry.**

It is well established that consent is a defense to claims under the Lanham Act. *E.g., Society for the Advancement of Educ., Inc. v. Gannett Co.,* 1999 U.S. Dist. LEXIS 700, at *26-

---

[1] Defendants object to the Reilly Dec. and its exhibits on the grounds that they are not properly authenticated and are cited for hearsay, and reassert the objections to OSA's exhibits in support of its summary judgment motion, as set forth in defendants' opposition to that motion.

[2] OSA does not dispute our showing that, for several reasons, its dilution claim fails (*see* Def. 9/15/04 Mem. at 34-36).

27 (S.D.N.Y. Jan. 21, 1999) (plaintiff, "by entering into . . . consent-to-use agreement, . . . essentially admits that the defined usage is not an infringement"; plaintiff "must therefore first establish that the challenged use is not permitted by the agreement in order to sue for a trademark violation"). Here, OSA admits the following key facts in its Rule 56(a)2 response that establish its consent to OEI's registration and use of OMEGA marks on period timers and related goods:

● That it agreed in ¶ 4(c) of the 1994 Agreement not to "object to the use or registration by [OEI] of the OMEGA mark or stylized OMEGA trademarks for apparatus industrially and/or scientifically employed for measuring or controlling variable parameters." (Def. 56(a)1 ¶ 80);

● That it agreed in ¶ 4(a) of the 1994 Agreement that OEI could "use and register" OMEGA marks in connection with "computer controlled timing apparatus" intended for science or industry. (*Id.* ¶ 79);

● That because "the measurement of time is often a critical aspect of the measurement and control of variable parameters in scientific and industrial applications, some of OEI's apparatus for measuring and controlling variable parameters contain a timing function" (*id.* ¶ 5), that OEI's "time-related goods for science and industry, such as industrial and scientific period timers and industrial and scientific clocks, and similar computer-controlled measurement, timing and display apparatus" are "used in the measurement and control of variable parameters in industrial and scientific processes" (*id.* ¶ 6), and that "OEI's industrial and scientific period timers and clocks are used *both to measure and control variable parameters such as flow and temperature in industrial and scientific settings.*" (*Id.* ¶ 80) (emphasis added); and

● That "the only time related devices that defendants have offered to sell or sold are period-timers or scientific or industrial clocks and similar apparatus that are used to regulate scientific, research or manufacturing processes in laboratories or factories." (Def. 56(a)1 ¶ 15; *see* OSA 56(a)2 ¶ 15[3]).

Given these admissions by OSA, there plainly is no triable issue of fact with respect to OEI's defense of consent. Based on OSA's admissions, it is undisputed that the 1994 Agreement permits OEI to register and use OMEGA marks for period timers and industrial and scientific

---

[3] Although it purports to dispute this last statement, OSA effectively admits it, because the only evidence it cites to support its denial is (1) Reilly Ex. K, showing OEI's industrial and scientific period timers; (2) OSA Ex. 30, the so-called "watch batteries" webpage that we have shown is a red herring (*see* Def. 10/6/04 Opp. at 30); (3) OSA Ex. 31, a purported investigation report which is unsigned, unauthenticated hearsay; and (4) OSA Ex. 29, which concerns the NEWPORT- (*not* OMEGA) branded period timers that OSA misleadingly describes to the Court, as explained in Def. 10/6/04 Opp. at 29.

clocks and other apparatus for measuring variable parameters in science and industry, which are the majority of goods to which OSA objects in both its infringement and "blocking" claims. (*See* Def. 10/6/04 Opp. Mem. at 10-11, 20-21; Def. 9/15/04 Mem. at 15-16, 38). As for any purported need to interpret the language of the 1994 Agreement, plaintiff has made no attempt to show that the language is ambiguous, or to offer any evidence that OSA has *not* consented to the registration and use of the OMEGA mark on period timers for use in science and industry.

### B. The *Omega I* Release Bars OSA's Claims

OSA admits it has "release[d] and forever discharge[d]" OEI "from any and all claims, actions and causes of action the U.S.A. relating to the application to register, registration or use of period timers for science and industry or industrial and scientific clocks under the Omega mark or Omega design in the . . .Omega III Litigation. . . ." (Def. 56(a)1 ¶ 84). It also admits that judgment enforcing the *Omega I* Settlement Agreement has been entered. (*Id.* ¶ 87). Hence, on these undisputed facts, defendants are entitled to summary judgment on all claims in this case relating to period timers and scientific and industrial clocks.[4]

### II. OSA Fails to Raise a Material Issue of Disputed Fact on its Infringement Claims

### A. There Are No Disputed Issues of Material Fact Regarding the Similarity of the Marks or the Purported Strength of OSA's Marks, and Both Factors Indisputably Tip in OEI's Favor.

OSA erroneously asserts that the similarity of the parties' marks is the most important factor in assessing likelihood of confusion. (OSA 10/6/04 Opp. at 7). However, the cases OSA cites involved similar marks on the same goods marketed to the same purchasers.[5] Here, it is undisputed that the products and the parties' customers are different, and there is overwhelming

---

[4]  OSA has attempted to avoid the consequence of this release by seeking a stay of the judgment in *Omega I*, which defendants have opposed.

[5]  *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000); *Brookfield Comms., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999).

evidence of third party use of OMEGA marks. In such circumstances, the cases we cited – which OSA pointedly ignores – hold that even identical marks do not create a likelihood of confusion. (*See* Def. 9/15/04 Mem. at 26).[6] Lastly, it is not true that the parties use "identical marks." (OSA 10/6/04 Opp. at 7). As previously shown, OSA uses Ω, often above the word OMEGA, while, as OSA concedes, OEI does *not* use Ω, but uses the "Omega bug" design, often to the left of "OMEGA" or "OMEGA ENGINEERING." (*See* Def. 10/6/04 Opp. at 35). Such variations are particularly significant given the third party use of numerous OMEGA marks.

Nor has OSA presented admissible evidence that its OMEGA marks have strength among scientists and engineers who are the purchasers of OEI's products. Thus, none of the citations on page 8 of OSA's brief support its claim that its mark is recognized as a source of scientific and industrial timers, let alone that it has strength among customers of such goods.[7]

**B.    There Are No Disputed Issues of Material Fact Regarding the Differences in the Parties' Markets, Products, and Customers.**

OSA admits that it has not sold period timers and that the only time-related devices that defendants have offered for sale are period timers or scientific and industrial clocks sold for use in science and industry. (Def. 56(a)1 ¶¶ 15, 69). It seeks to avoid these admissions by submitting a declaration of Mr. Kayal who, in direct contrast to his deposition testimony, suggests that OSA's licensee Omega Electronics has made sales of sports timing devices for use

---

[6]    OSA's argument that registrations do not matter unless there is also evidence of use is unavailing because (1) OSA *admits* to numerous third party *uses* (*See* Def. 56(a)1 ¶¶ 89-108; OSA Exs. J, K) and (2) the Second Circuit held in *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1511 (2d Cir. 1997), that evidence of third party *registrations and applications* alone undercuts any similarity of the marks at issue.

[7]    For example, Pl. Br. Ex. 1 is an unauthenticated trademark registration covering watches; Reilly Ex. J *does not mention the OMEGA mark* and is hearsay; Reilly Ex. M is purported photos from swimmer Michael Phelps' website; Kayal Dec. ¶ 3 merely states that the OMEGA mark was promoted at the 2004 Olympics, "especially during the aquatic events." Nor is there any basis for OSA's false claim that "Even Defendants admit that plaintiff is a well-known source of precision timepieces." (OSA 10/6/04 Opp. at 8).

in science and industry. However, Mr. Kayal admitted at his deposition that Omega Electronics does not advertise products for any uses other than for sport events and could not identify *anyone* in the U.S. who purchased an Omega Electronics product for scientific or industrial application. (Kayal Tr. 84-85, 244-45).[8] Under well settled law, "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987).[9]

There also is no basis for OSA's blatantly false and misleading assertion that OEI "advertised and promoted" watches next to period timers. (OSA 10/6/04 Mem. at 10). There is *no evidence* that OEI advertises, promotes (or sells) watches, next to its period timers or otherwise. Reilly Dec. Ex. K *does not advertise, promote or display any watches*, and OSA Ex. 14 and 29 involve not an OEI website, but a NEWPORT-branded website selling NEWPORT-branded products, with *no* OMEGA marks. (*See* Def. 10/6/04 Mem. at 29). Nor do the deliberately distorted photos on p.11 of OSA's brief create a triable issue of fact. Fig. A and B are photos of portions of Omega Electronics scoreboards that do not even bear OMEGA marks and that are *eight and nine feet wide* (*see* Reilly Dec. Ex. H at pp. 7, 13). In contrast, OEI's period timers in Fig. C and D are only a few *inches* wide and typically are installed at scientific and industrial facilities alongside other devices and are not seen by consumers but by scientists and engineers. (*See* M. Hollander 9/14/04 Dec. Ex. C at D-61, Ex. D at M-92). Not surprisingly, then, none of OSA's 30(b)(6) witnesses could identify OEI's period timers when shown them in their depositions, or distinguish them from a temperature controller. (*See* Def. 56(a)1 ¶ 69).

---

[8]   Pertinent deposition excerpts are attached to the Smart 9/15/04 and 10/5/04 Declarations.

[9]   The book excerpts attached as Ex. A to the Kayal declaration –largely in French and untranslated – provide no proof of sales in science and industry and are, in all events, irrelevant to the U.S. As for the exhibits to the Reilly Dec., which is not made on personal knowledge as required by Fed. R. Civ. P. 56(e), they are not properly authenticated, a number (including Exs. G, J and O) plainly are hearsay, and none evidences sales by OSA to science and industry.

OSA's argument at pp. 20-22 that "science and industry" is not a meaningful distinction is similarly without support.  The parties have repeatedly used "science and industry" to distinguish their separate markets, and Dr. Hollander explained that the phrase has a specific meaning – in particular, defendants' market, and *not* OSA's.  (*See* Def. 10/6/04 Opp. at 31).

Nor is there a triable issue of fact regarding customer overlap. (*See* OSA Opp. p. 20). The Kayal declaration, even if accepted, at most mentions one sale in 1997 for a study relating to athletics, which is not science and industry.  (Kayal Dec. ¶ 6).  The Emmons testimony merely suggests that a few large corporations to which OEI sells process measurement and control devices have also purchased some OSA *watches*, from jewelers, as employee gifts and for astronauts to wear.  (Emmons Tr. 176-77).  Mr. Gibbons, the U.S. distributor of Omega Electronics, speculated that he might have sold sports timing devices to a university, the separate engineering department of which is an OEI customer.  (Gibbons Tr. 154-55).[10]  Such *de minimis* overlap at the institutional level does not suggest any likelihood of confusion, which "must be shown to exist not in a purchasing institution, but in 'a customer or purchaser'"; it "cannot be presumed" that the goods are chosen by the same persons in an institution.  *Electronic Design & Sales, Inc. v. Electronic Data Sys. Corp.*, 954 F.2d 713, 717 (Fed. Cir. 1992).

As for its argument that sophisticated purchasers can be confused, the case it cites, *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 600, 679, 682 (7th Cir. 2001), is readily distinguishable. The parties there indisputably sold the same products and services under the identical mark to dozens of the same companies and targeted the same purchasers using the same trade journals and shows, and there is no indication that the mark at issue, CAE, was used by any third parties.

---

[10]   OSA also repeats (p. 20) its false assertion that OEI sells "watch batteries" to consumers, which we previously showed is supported only by unauthenticated, unsigned hearsay (OSA Ex. 31) and which creates no triable issue of fact. (*See* Def. 10/6/04 Opp. at 30).

### C. There is No Admissible Evidence of Actual Confusion

As evidence of actual confusion, OSA relies (p. 14) on inadmissible hearsay testimony of Ms. Sauser Rupp and an unauthenticated purported order from a German company to a Swiss company (which is irrelevant to the U.S.), which is also inadmissible hearsay and which was not produced in discovery. Moreover, even if admissible, two instances of purported confusion in the 17 years that OEI has sold period timers does not raise a triable issue of fact. "[T]he fact that there may be a few confused consumers does not create a sufficiently disputed issue of fact regarding the likelihood of confusion so as to make summary judgment improper." *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 n.8 (2d Cir. 1984).

### D. There is No Evidence of Post Sale Confusion or Reverse Confusion.

OSA's post-sale confusion argument (pp. 18-19) ignores the lack of evidence that anyone outside of OEI's scientific and industrial target market is exposed to OEI's products and marks. Indeed, OSA's own witnesses did not even recognize OEI's period timers when shown them at deposition, or distinguish period timers from a temperature controller. (*See* Def. 10/6/04 Opp. at 28-29). Nor is there merit to OSA's reverse confusion argument (p. 24), which was not pled in the complaint and not previously advanced by OSA in this litigation. Because it is undisputed that OEI does not market or advertise its products to the sports timing market (*see* Def. 56(a)1 ¶ 16), there is no possibility that its advertisements will cause purchasers of OSA's products to believe that OSA's products originate with OEI. There can be no reverse confusion where, as here, OSA's customers are not exposed to OEI's advertising or marks.

### E. OSA's Expansion Argument is Unsupported by the Evidence

OSA's "natural zone of expansion argument (OSA Opp. at 15-18) is long on rhetoric and inadmissible hearsay (*e.g.* OSA Ex. 2, Reilly Exs. G, J) and devoid of explanation as to what

OSA contends is its "natural zone of expansion," as is the Kayal Dec., which vaguely asserts that "Omega Electronics continues to research new products." (Kayal Dec. ¶ 9). Clearly that "zone" does not include timers for science and industry, given the testimony of its witnesses, described above, that OSA does not sell to science and industry and has no plans to do so.

F. **There is No Evidence of Intent to Trade on OSA's Marks.**

OSA does not dispute that OEI adopted OMEGA for reasons unrelated to OSA. (*See* Def. 56(a)1 ¶ 1). Rather, OSA merely speculates that OEI adopted OMEGA for period timers with an intent to trade on OSA's mark. "[T]he mere incantation of intent or state of mind" cannot "defeat an otherwise valid" summary judgment motion. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 125 (2d Cir. 2001) (summary judgment for defendant).

III. **OSA Has Failed to Raise a Material Issue of Disputed Fact on its Blocking Claims.**

OSA is simply wrong when it states (p. 27) that the Lanham Act can be applied to the mere filing of trademark applications. It is black letter law that Section 43(a) of the Lanham Act, under which OSA proceeds, expressly requires "use" in commerce of a false statement of fact or designation of origin, and does not provide a cause of action for allegedly infringing trademark applications, whether in the U.S. or abroad. (*See* Def. 10/6/04 Opp. at 12-13). However, OSA's blocking claims are premised upon mere trademark applications.

As for *Ramirez & Feraud Chili Co. v. Las Palmas Food Co.*, 146 F. Supp. 594 (S.D. Cal. 1956), OSA is flatly wrong and misleads the Court in asserting that the case applied the Lanham Act to "the facts now before this court, namely, where the unfair competition derives from bad-faith filing of foreign trademark applications." (OSA Opp. at 27). In *Ramirez*, defendants were "using plaintiff's mark . . . as a part of a counterfeit of plaintiff's label" placed upon goods, and thereby directly affecting plaintiff's sales from the U.S. *Id.* at 604. *Steel v. Bulova*, 344 U.S. 280

(1952), also involved actual uses of a mark in commerce that had a substantial impact in the United States. There is no evidence that OEI's filings have had any cognizable impact on OSA, much less a substantial impact in the U.S.

OSA wrongly states that the *Noerr-Pennington* doctrine does not apply outside of the antitrust context. (OSA Opp. at 28-29). The Second Circuit has applied *Noerr* beyond antitrust, including to claims under CUTPA and other state laws. *E.g. Suburban Restoration, Co. v. ACMAT Corp.*, 700 F.2d 98, 101 (2d Cir. 1983); *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 33 F. Supp. 2d 122, 125 (D. Conn. 1998), *aff'd*, 312 F.3d 90 (2d Cir. 2002); *see also Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 691-93 (D. Del. 1998) (applying *Noerr* in challenge to patent application).

As for injury, OSA cites no evidence that it has suffered any injury as a result of defendants' trademark filings (*see* Def. 10/6/04 Opp. at 13-16), and merely points to pending foreign trademark oppositions that are *sub judice* and this pending lawsuit, none of which constitute cognizable harm. Nor has OSA offered any evidence of its claimed foreign trademark rights in goods such as precious metals and jewelry. Indeed, the undisputed evidence is that OEI continues to prevail in foreign proceedings against OSA registrations covering, for example, jewelry, which conflict with OEI's superior rights as to precious metals. (*See* Riggs 10/4/04 Dec. Ex. S; Riggs 10/19/04 Dec. Exs. X, Y, Z). And, OSA *admits* that it can identify "no instance in which any OSA trademark application or registration had been blocked as a result of any filing in the United States by defendants." (Def. 56(a)1 ¶ 117).

## **CONCLUSION**

For all of the foregoing reasons, defendants' motion for summary judgment should be granted.

Dated: October 20, 2004  Respectfully submitted,
       New York, NY

    /Thomas A. Smart/

Thomas E. Minogue (CT 06845)  Thomas A. Smart (CT 21462)
MINOGUE BIRNBAUM LLP  Paul C. Llewellyn (CT 25417)
237 Elm Street  KAYE SCHOLER LLP
New Canaan, CT  06840  425 Park Avenue
(203) 966-6916  New York, NY  10022
 (212) 836-8000

Of counsel:
Victoria Haje
Michelle R. Tepper

*Attorneys for Defendants*