IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

OMEGA, S.A.,

                    Plaintiff,

        v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND
OMEGA PRESS, INC.,

                    Defendants.

OMEGA ENGINEERING, INC.,

                    Counterclaim-Plaintiff,

        v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

                    Counterclaim-Defendants.

_____

Civil Action No.:
3:01 CV 2104 (MRK)

**OMEGA ENGINEERING'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR CANCELLATION**

      Omega, S.A.'s ("OSA") opposition confirms that there are no disputed issues of material

fact that require a trial with respect to Omega Engineering, Inc.'s ("OEI") claims to cancel

OSA's U.S. Trademark Registrations, Nos. 708,731 and 1,290,661, on the separate and

independent grounds that 1) OSA has abandoned the registrations; and 2) OSA procured them

through fraud on the United States Patent & Trademark Office ("PTO").[1]  OSA's opposition

_____

[1] OSA complains that OEI filed a separate motion and brief in support of its motion for partial
summary judgment on its cancellation claim.  However, OEI's separate motion and brief relate to
OEI's separate counterclaim, which has nothing to do with its motion for summary judgment on
                                     (continued...)

further confirms that, on the undisputed facts, OEI is entitled to entry of judgment cancelling both registrations.

I.    **OSA HAS FAILED TO DEMONSTRATE THAT THERE ARE ANY DISPUTED ISSUES OF MATERIAL FACT CONCERNING OEI'S ABANDONMENT CLAIM, AND, ON THE UNDISPUTED FACTS, OEI IS ENTITLED TO ENTRY OF SUMMARY JUDGMENT IN ITS FAVOR.**

As shown in our moving brief, and as OSA does not dispute, under 15 U.S.C. § 1127, non-use of a mark for three years constitutes *prima facie* evidence of abandonment, shifting the burden to the registrant to demonstrate "reasonable grounds for the suspension and plans to resume use in the reasonably foreseeable future when the conditions requiring suspension abate." *Silverman v. CBS Inc.*, 870 F.2d 40, 47 (2d Cir. 1989); *Citigroup Inc. v. City Holding Co.*, 2003 U.S. Dist. LEXIS 1845, at *44-45 (S.D.N.Y. Feb. 7, 2003); *accord*, *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1579, 1581 (Fed. Cir. 1990). "A bare assertion of possible future use is not enough" to prove an intent to resume use. *Silverman*, 870 F.2d at 47.

OSA does not and cannot dispute the evidence demonstrating that it has made no use of the OMEGA mark for goods in science and industry at any time, let alone the last three years. The uniform testimony of OSA's 30(b)(6) witnesses was that they knew of no products that OSA sold under the OMEGA mark in the United States for industrial or scientific use.  (Rentsch Tr. 120-21, 124, 129, 131, 134-35, 138; Emmons Tr. 10-12;  Kayal Tr. 244-45;  Sauser Rupp Tr.

---

OSA's trademark infringement and unfair competition "blocking" claims.  Significantly, OSA cites no case law from this District holding that the Local Rules require a party to make one motion for summary judgment with respect to both the other side's causes of action and a party's own counterclaims, let alone file one brief in support of summary judgment on both the claims made against it and its counterclaims.  As for the cases OSA does cite, all involve situations in which a party filed separate summary judgment motions and briefs with respect to different counts of one party's claims.  Moreover, none of the cases are District of Connecticut cases or interpret rules of this District.

252, 270-71; Gibbons Tr. 142-45, 153).[2] Nor has it come forward with any evidence that it

suspended making such goods and that it has plans in place to use the OMEGA mark on such

goods in the reasonably foreseeable future, when the conditions requiring suspension abate. On

the contrary, Mrs. Sauser Rupp testified clearly in her deposition that OSA has no plans to offer

goods under the OMEGA mark for science and industry. (Sauser Rupp Tr. 168-69).

Faced with the admissions of its own witnesses, OSA now seeks to create a triable issue

of fact on the issue of abandonment through the declaration of Mr. Hamid Kayal, the General

Manager of Omega Electronics. In his deposition, however, Mr. Kayal testified clearly and

unequivocally that "in the last four years" he could not point to a single customer who had

purchased a single product from Omega Electronics for use in science and industry. (Kayal Tr.

244-45). Mr. Kayal also testified that he thought there might have been sales to science and

industry more than four years ago but could not identify any. (*Id.*). Notwithstanding this clear

testimony, Mr. Kayal now says in his declaration, prepared six months after his deposition, that

"Omega Electronics' devices have scientific and industrial application," but provides only a

single example, the purported purchase of a Scan-O-Vision camera from Omega Electronics "in

or around 1997" by the University of Michigan "for a scientific study of the physiology of feet

during athletic activity." (Kayal 10/5/04 Dec. ¶¶ 5-6). To the extent Mr. Kayal's declaration is

being offered as evidence that OSA currently or in the last three years has sold products under

the OMEGA mark for use in science and industry, it is wholly conclusory and is flatly contrary

to Mr. Kayal's deposition testimony that there have been no such sales in the last four years. The

declaration should not be credited because "a party's affidavit which contradicts his own prior

---

[2] Pertinent deposition testimony of OSA's witnesses is attached to the Declarations of Thomas
A. Smart dated 9/15/04 and 10/5/04.

deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987).

Moreover, even if the Court were to accept the Kayal declaration, on its face, it does not create a triable issue of material fact. To begin with, the single sale to a university that Kayal cites occurred seven years ago, in 1997, and hardly shows that OSA has used its OMEGA mark in science and industry in the past three years. On the contrary, by pointing to a sale seven years ago, OSA confirms the accuracy of OEI's assertion of non-use of the mark for the three years prior to the filing of OEI's counterclaim for cancellation. In addition, it is ludicrous to suggest that a sale to a university to study the physiology of feet during athletic activity is even remotely connected to science and industry as that term is used in Registration Nos. 708,731 and 1,290,661. Rather, it is obvious that this is a sports-related study using an Omega Electronics' sports timing device.[3]

Finally, Mr. Kayal does not state in his declaration that OSA has concrete plans in the foreseeable future to sell goods under the OMEGA mark for use in science and industry in the United States. Rather, he simply asserts, vaguely, that "Omega Electronics continues to research new products, develop enhancements of its current products, explore future business opportunities," a bare conclusory assertion which is legally insufficient under the Second Circuit's holding in *Silverman v. CBS*, *Inc., supra,* 870 F.2d at 47. (Kayal 10/5/04 Dec. ¶ 9).

Nor is there any merit to OSA's argument that it has not abandoned the registrations at issue because timing devices for science and industry are a natural area of expansion for sales of

---

[3] Nor does the fact that some astronauts wear OMEGA wristwatches while they are in space establish that OSA sells Omega goods for use in science and industry. (OSA SJ Opp. at 4, 5). Under that absurd logic, any scientist who wears an Omega wristwatch to work is using an Omega device for science and industry.

watches or sports timing devices that it is currently making in the United States. (OSA SJ Opp. at 6). That is because there is no evidence from OSA, and no evidence in the record, that timing devices for science and industry are a natural area of expansion from wristwatches or sports timing devices. In each of the cases cited by OSA, the registrant had indisputably at one time sold the products at issue that were listed on the registration, had continued to make sales of closely related goods, and the products that were listed on the registration, but no longer sold by the registrant, were clearly in the natural area of expansion of the products that the registrant was continuing to sell. *See I.H.T. Corp. v. News World Comm., Inc.*, 1984 U.S. Dist. LEXIS 15260, *29-30 (S.D.N.Y. July 3, 1984); *Lucien Piccard Watch Corp. v. Since 1868 Crescent Corp.*, 314 F. Supp. 329, 332 (S.D.N.Y. 1970). Here, there is no evidence that OSA ever made sales of goods under the OMEGA marks for use in science and industry, and there is no evidence that the timing devices such as OEI makes for regulating and controlling engineering processes are so related to wristwatches or sports timing devices as to constitute a natural area of expansion for OSA. Mr. Kayal has not offered such evidence, nor has anyone else from OSA.

**II. OSA HAS FAILED TO DEMONSTRATE THAT THERE ARE ANY DISPUTED ISSUES OF MATERIAL FACT CONCERNING OEI'S CLAIM OF FRAUD ON THE PTO, AND, ON THE UNDISPUTED FACTS, OEI IS ENTITLED TO ENTRY OF SUMMARY JUDGMENT IN ITS FAVOR.**

OSA points out that the party seeking cancellation based on fraud on the PTO must meet its burden with clear and convincing evidence, but utterly fails to rebut our showing by clear and convincing evidence that OSA, knowing full well that it did not make sales under the OMEGA mark in science and industry, nevertheless filed false affidavits of use at the PTO in support of the registrations at issue on this motion. (OSA SJ Opp. at 3). As demonstrated in our moving brief, and above, it is clear, based on the uniform testimony of OSA's witnesses, that OSA did not sell *any* goods intended for use in science or industry at the time that OSA's renewals were filed, and the person who signed the renewals could not point to any such evidence. It is also clear that no such goods are sold in the United States under OSA's OMEGA marks today. (Rentsch Tr. 120-21, 124, 129, 131, 134-35, 138; Emmons Tr. 10-12; Kayal Tr. 244-45; Sauser Rupp Tr. 252, 270-71; Gibbons Tr. 142-45, 153).

On these facts, the evidence is clear that the false statements were made with an intent to defraud the PTO. OSA does not dispute that, as we argued in our moving brief, fraudulent intent is present when a party "kn[ew] or should [have] know[n]" that the mark was not being used in connection with the covered goods. *Medinol Ltd. v. Neuro Vasx, Inc.*, 2003 TTAB LEXIS 227, at *13 (T.T.A.B. May 13, 2003). As in *Medinol*, OSA "kn[ew] or should [have] know[n]" that the mark OMEGA was not being used in connection with scientific or industrial goods. Thus, Mr. Rentsch admitted that OSA did not offer industrial or scientific goods in the United States, yet he signed a renewal affidavit squarely to the contrary. The readily apparent misrepresentations in OSA's PTO submissions warrant cancellation of OSA's trademark

registrations. These admissions are in sharp contrast to the facts in *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 2002 U.S. Dist. LEXIS 4950, * 14-15 (S.D.N.Y. March 26, 2002), where there was no admission by the registrant that the mark at issue was not in use on the subject goods. Similarly, in *Lucien*, defendant offered "no evidence to substantiate" its claim for fraud on the PTO. *Lucien*, 314 F. Supp. at 331.

Nor is there any merit to OSA's argument that the false statements in the renewal affidavits were not material to the determination to grant the application.  (OSA SJ Opp. at 3-4). As explained in our opening brief (pp. 7-8), the false statements in OSA's affidavits that the OMEGA mark was in use with scientific and industrial goods were plainly material, as the failure to file the affidavits with respect to the goods at issue would have resulted in cancellation of the registrations as to those goods. *See* 15 U.S.C. § 1058; Trademark Manual of Examining Procedure § 1604.09(c); *see also Medinol*, 2003 TTAB LEXIS 227, at *11.

## III.    CONNECTICUT'S THREE YEAR STATUTE OF LIMITATIONS FOR FRAUD DOES NOT BAR OEI'S CANCELLATION CLAIMS.

OEI's counterclaim for cancellation as a result of abandonment and fraud on the PTO is not barred by the statute of limitations.  First, statute of limitations is not a bar to claims for abandonment or fraud under 15 U.S.C. § 1064, the statute on which OEI premises its cancellation counterclaim.  15 U.S.C. § 1064 expressly states that a petition for cancellation may be brought "at any time."  Thus, courts have held that there is no time limit for bringing an abandonment claim based on 15 U.S.C. § 1064.  *See, e.g., Emmpresa Cubana Del Tabaco v. Culbro Corp*., 2002 U.S. Dist. LEXIS 21731, *12-14 (S.D.N.Y. Oct. 8, 2002) (rejecting laches defense to abandonment claim).  Indeed, because abandonment is a continuing violation, the statute of limitations would not bar it in all events, and, not surprisingly, OSA cites no case applying a statute of limitations to a trademark abandonment claim.

As for OEI's cancellation claim based on fraud on the PTO, OSA cites only a single district court decision for its argument that a statute of limitations defense applies to such claims. *See Calzaturificio Rangoni S.p.A. v. United States Shoe Corp.,* 868 F. Supp. 1414 (S.D.N.Y. 1994). Although OEI is aware of no Second Circuit authority on this issue (and OSA cites none), the Third Circuit has expressly rejected the holding of *Calzaturificio* and has held that no statute of limitations applies to cancellation claims sounding in fraud on the PTO. *See Marshak v. Treadwell*, 240 F.3d 184, 195 (3d Cir. 2001) (rejecting plaintiff's assertion that fraudulent procurement defense and counterclaim are time-barred). Because 15 U.S.C. § 1604 expressly states that cancellation claims can be brought "at any time," *Marshak* holds, this "language of the Lanham Act makes it clear that a claim for cancellation of a mark based on fraudulent procurement and a defense to an otherwise incontestable mark on a similar ground may be asserted *at any time*." *Id.* at 193 (emphasis added). Furthermore, *Marshak* explained the public policy in maintaining the integrity of the trademark register, and held that "a statute of limitations should not operate to frustrate that interest." *Id.* at 194. *Marshak* expressly questioned and refused to credit the *Calzaturificio* case cited by OSA, noting that it relied solely upon on a prior district court decision that had applied a state statute to a false advertising claim brought under Section 43(a) of the Lanham Act, and holding that "[a] false advertising claim under Section 43(a) . . . is quite different from a request for cancellation under Section 14(3)." *Id.* at 195. OSA's reliance on *Calzaturificio* is also misplaced because, in *Calzaturifiico*, the party moving for cancellation had acknowledged the fraud in a letter that was written to the registrant seven years prior to filing the suit, where the applicable state statute of limitations for fraud was six years. *See* 868 F. Supp. at 1420-21. Here, in contrast, as discussed below, OSA has pointed to no evidence on this motion that OEI knew or should have known of OSA's fraud

on the PTO more than three years before filing its counterclaim in this action.

Moreover, even if a statute of limitations did apply to cancellation claims sounding in fraud, the undisputed facts confirm that OEI's cancellation claim based on fraud is not time barred.  With respect to the claim to cancel OSA's Registration No. 708,731, the undisputed facts are that the trademark renewal and false affidavit in support thereof were filed with the PTO on December 20, 2000.  (Smart 9/15/04 Dec. Ex. N).  It is further undisputed that OEI filed its cancellation counterclaim within three years of that date, in May, 2002, when it filed its Amended Answer and Counterclaims.  (OEI Amended Answer and Counterclaims).  Plainly, OEI's cancellation claim with respect to Registration No. 708,731 is not time barred.

As for OEI's cancellation claim with respect to Registration No. 1,290,661, the renewal for which was filed in August 14, 1990 (Smart 9/15/04 Dec. Ex. O), OSA admits that the statute of limitation does not run until the party discovered the fraud or could with reasonable diligence have done so.  (OSA Opp. at 8-9).  OSA asserts that OEI should have discovered that OSA had filed a false affidavit as a result of its monitoring of OSA's filings at the PTO.  (OSA SJ Opp. at 9).  This assertion is absurd and creates no triable issue of fact.  The mere filing of an affidavit by OSA at the PTO hardly put OEI on notice that the affidavit was false, and OSA points to no other evidence that OEI knew or should have known of OSA's fraud more than three years prior to filing of its cancellation counterclaim.

## CONCLUSION

For the foregoing reasons, OEI's motion for summary judgment on its counterclaim for cancellation should be granted.

Dated: October 20, 2004     Respectfully submitted,
   New York, NY


              /Thomas A. Smart/
             Thomas A. Smart  (CT 21462)
Of counsel:          Paul C. Llewellyn   (CT 25417)
             KAYE SCHOLER LLP
Victoria Haje          425 Park Avenue
Michelle R. Tepper       New York, NY 10022
             (212) 836-8000

             Thomas E. Minogue (CT 06845)
             MINOGUE BIRNBAUM LLP
             237 Elm Street
             New Canaan, CT  06840
             (203) 966-6916

             *Attorneys for Defendants and for*
             *Counterclaim-Plaintiff*