## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA, S.A., | ) |
| Plaintiff, | ) |
| v. | ) |
| OMEGA ENGINEERING, INC., OMEGA SCIENTIFIC, INC., and OMEGA PRESS, INC., | ) |
| Defendants. | ) Civil Action No.: |
| | ) 3:01 CV 2104 (MRK) |
| OMEGA ENGINEERING, INC., | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| OMEGA, S.A. and THE SWATCH GROUP LTD., | ) |
| Counterclaim-Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY

Defendants submit this memorandum in opposition to the motion of plaintiff Omega S.A.

("OSA") to stay this case pending appeal in *Omega Engineering, Inc. v. Omega S.A.*, 98 Civ.

2464 (AVC) ("*Omega I*"), in which Judge Covello entered judgment on August 11, 2004,

enforcing the parties' Settlement Agreement in that action. As set forth below, OSA's motion

does not come close to satisfying the requirements for a stay pending appeal, and, moreover,

OSA has unduly delayed in seeking a stay, apparently for tactical reasons. The motion is utterly

without merit and should be denied.

First, OSA has no realistic possibility of success on appeal in *Omega I*. As Magistrate Judge Smith found in that case, based on an evidentiary hearing and "the parties' briefs [and] credible testimony" concerning the parties' May 19, 2003 Settlement Agreement, "[t]here is no doubt [OSA] reached an agreement with OEI, no doubt it settled this case, and no doubt it reported the case settled to a magistrate judge and later to a district judge in open court." (March 24, 2004 Recommended Ruling on Plaintiff's Motion to Enforce the Settlement Agreement and for Attorneys' Fees and Costs ("Report") [Exhibit A hereto] at 2, 22). Accordingly, Judge Covello correctly affirmed and adopted Magistrate Judge Smith's findings and conclusions, which were amply supported by the record. OSA's argument that there are valid grounds for appeal are premised on its continued misstatements of facts and law that Magistrate Smith identified and suggested were deliberate attempts to distort the facts and law. (Report at 22).[1]

Second, OSA faces no irreparable harm in the absence of a stay. OSA argues that it will be irreparably harmed if the *Omega I* Settlement Agreement leads to an adverse judgment in this case. OEI has asserted numerous grounds for summary judgment in this case, however, of which the Settlement Agreement is but one. Moreover, OSA simply ignores Fed. R. Civ. P. 60(b)(5), which provides for relief from a judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated," and which could offer OSA an avenue for recourse in the

---

[1]     Thus, as Magistrate Judge Smith's Report correctly stated:

> OSA's representations concerning the facts and circumstances surrounding the settlement are false and distorting *at best*. Moreover, the court is convinced, as no other conclusion makes sense, that OSA assumed that the court would not actually read the cases to which it cited: virtually none of the cases cited stand for that which OSA avers. OSA's briefs and objections are riddled with distortions, material omissions, misstatements of fact, misstatements of law, and unwarranted and irrelevant conclusions. (Report at 22) (emphasis in original).

event that this case is dismissed on the basis of the *Omega I* Settlement Agreement. Particularly when balanced against the utter lack of merit of its appeal, OSA faces no irreparable harm entitling it to a stay.

Third, even if it could show a realistic chance of success on appeal, and a possibility of irreparable harm – which it cannot – OSA has unduly delayed in seeking a stay. Although OSA argues that a stay would preserve judicial efficiency, OSA's delay in moving for a stay has needlessly compounded these proceedings. Thus, judgment enforcing the *Omega I* Settlement Agreement was entered in this case on August 12, 2004, and it was apparent to both parties that OEI would rely in part on the Settlement Agreement as a ground for summary judgment in this case, in which summary judgment motions were due on September 15, 2004. Moreover, OEI asked OSA, shortly after judgment was entered in *Omega I*, to confirm that OSA would abide by the terms of the Settlement Agreement, including the requirement that OSA drop certain claims in this case. However, OSA not only ignored OEI's inquiry, but waited until October 6, 2004 – midway through the summary judgment briefing schedule in this case, and after OEI expended substantial resources briefing the Settlement Agreement to this Court in its summary judgment papers – to belatedly seek a stay. OSA provides no explanation for this delay, and one can only surmise that OSA delayed for tactical reasons. The Second Circuit has held that such a delay for tactical litigation purposes is itself sufficient grounds to deny a stay pending appeal. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39-40 (2d Cir. 1993).

## BACKGROUND

OEI commenced the *Omega I* action on December 17, 1998, alleging that OSA had breached a 1994 agreement between the parties relating to their respective rights to register and use the trademark OMEGA and related design marks (together, the "OMEGA marks"). Pursuant

to an Order dated May 8, 2003, the parties attended a Settlement Conference with the Court on

May 19, 2003, at the conclusion of which the parties represented to the Court in open Court and

on the record that the case had been settled.  Upon being advised that the case was settled, the

Court adjourned the trial scheduled for the following day.  No trial has ever taken place in this

matter.  (*See* Report at 2 - 7).

Shortly after the settlement conference, OSA indicated that it would not sign the

Settlement Agreement unless the parties entered into a "side letter" changing the terms of the

agreement.  On June 5, 2003, because OSA refused to sign the settlement agreement agreed to by

the parties on May 19, OEI filed a motion to enforce the Settlement Agreement.  OSA opposed

the motion, principally on the ground that the Settlement Agreement contained a purportedly

ambiguous provision relating to OEI's use of the OMEGA mark on timers, and that this alleged

ambiguity provided a basis for OSA to refuse to honor the Settlement Agreement.  (*See* Report at

7 - 8).

An evidentiary hearing on OEI's motion was held before Magistrate Judge Smith on

February 18, 2004.  On March 24, 2004, Magistrate Judge Smith issued a recommended ruling in

which he found that the parties had entered into a binding Settlement Agreement and in which he

recommended that the Court grant OEI's motion to enforce the Settlement Agreement.  In

particular, Magistrate Smith found, based on the evidentiary hearing and "the parties' briefs [and]

credible testimony" concerning the parties' May 19, 2003 Settlement Agreement, "[t]here is no

doubt [OSA] reached an agreement with OEI, no doubt it settled this case, and no doubt it

reported the case settled to a magistrate judge and later to a district judge in open court."  (Report

at 2, 22).  On August 11, 2004, after *de novo* review pursuant to 28 U.S.C. § 636, Judge Covello

issued an order in *Omega I* adopting and ratifying Magistrate Judge Smith's recommended ruling

that the parties' Settlement Agreement be enforced, and judgment was entered in *Omega I* on

August 11, 2004 enforcing the Settlement Agreement. (*See* Exhibit B hereto).

The Settlement Agreement entered into by the parties and enforced by Judge Covello

requires OSA to drop certain allegations in this case, including allegations relating to certain

trademark cancellation actions filed by OSA.  In the Settlement Agreement, OSA also releases

OEI from, and agrees to refrain from asserting, any claims in this case relating to OEI's

application to register, registration or use of OMEGA marks on period timers or industrial and

scientific clocks. (*See* Settlement Agreement [Exhibit C hereto] ¶¶ 3-4).

In this case, by Order dated October 8, 2003, the parties faced a summary judgment

deadline of September 15, 2004. (*See* Docket No. 53).  It was apparent to both parties that one

ground on which OEI intended to move for summary judgment was the Settlement Agreement in

*Omega I*.  On September 1, 2004, counsel for OSA sent a letter to counsel for OEI that stated that

OSA was "considering a motion to stay" *Omega I*, and in which OSA recognized that "any stay

in Omega I will also affect the Omega III litigation [*i.e*, this case]," including the summary

judgment motions that were due in this case on September 15. (*See* Exhibit D, Letter from Jess

Collen to Paul Llewellyn dated 9/1/04).  OSA asked if OEI would stipulate to a stay of the

judgment in *Omega I* in light of the pending proceedings in this case. (*Id.*)  OEI promptly

responded with a letter rejecting this request and asking OSA to confirm that it was going to

comply with the requirements of the Settlement Agreement regarding this case. (*See* Exhibit E,

Letter from Paul Llewellyn to Jess Collen dated 9/7/04).  OSA never responded to this letter from

OEI.  Rather, on September 15, 2004, OSA filed a motion for partial summary judgment in this

action, and OEI filed a motion for summary judgment dismissing OSA's complaint in this action

in its entirety. (*See* Docket Nos. 101, 116). On October 6, 2004, midway through the summary

judgment briefing in this case, OSA filed this motion.

## ARGUMENT

### I.     OSA Has No Realistic Probability of Success on the Merits of Appeal

As set forth in detail in OEI's Proposed Findings of Fact and Conclusions of Law ("OEI

Proposed Findings & Conclusions") submitted to Magistrate Judge Smith in *Omega I* (attached

as Exhibit F), the evidence is clear that the parties entered into a binding Settlement Agreement

on May 19, 2003, that OSA attempted to renege on the Agreement on the basis of a tortured

reading of the Agreement, that the purported ambiguity that OSA alleged was present in the

Agreement does not exist, and that, even if the Agreement were ambiguous, a claimed ambiguity

in a contractual term, as a matter of law, does not render the contract void or unenforceable.

Thus, Magistrate Judge Smith concluded that there was "no doubt" that OSA entered into a

binding agreement. (Report at 22).

Rather than burden the Court with additional argument on these issues, which already

have been considered by Magistrate Judge Smith and Judge Covello, OEI incorporates herein by

reference its Proposed Findings and Conclusions, as well as its April 22, 2004 Response to

Defendant Omega S.A.'s Objections to Recommended Ruling in *Omega I* (attached as Exhibit

G). A few of OSA's continuing distortions of the facts and law in *Omega I*, however, bear

mention. In particular:

- OSA falsely asserts that it specifically reserved its right to execute the Agreement and

reserved its need to obtain execution. (OSA Mem. at 7). However, the transcript of the May 19,

2003 proceedings in *Omega I* (Exhibit H hereto) shows that, on the record before this Court and

in the presence of both parties, Magistrate Judge Smith stated "it's been represented to me by

counsel who are present that the document which contains all of the terms and conditions *will be signed* by the appropriate individual, located in Switzerland." (Ex. H at 2) (emphasis added). Counsel for OEI similarly stated "we have reached an agreement, it has been reduced to writing. We simply need the signatures of the parties, and since one party is in Switzerland, we thought we needed a little time to get the signatures." (*Id.* at 3). The record is clear that neither OSA's representative at the settlement conference, nor counsel for OSA – both of whom were present in the courtroom – disputed these representations to the Court. (*Id.*). Indeed, when the Court asked "You're pretty confident, Attorney Collen, that you're in control of this situation as far as being able to note this matter as closed?," counsel for OSA responded with an unequivocal "Yes, Your Honor." (*Id.*). There is absolutely no evidence in the record that OSA ever advised OEI or the Court that the parties' written agreement was contingent on the agreement being reviewed, approved or signed by any other OSA representative. Moreover, any attempt by OSA to condition its agreement to settlement upon further review by company officials in Switzerland would have been inconsistent with Magistrate Judge Smith's order, dated May 8, 2003 (Exhibit I hereto), which required both sides to have parties present at the settlement conference who had authorization to enter into an agreement.

●  OSA misleadingly cites and relies upon cases (OSA Mem. at 7) in which, unlike this case, the parties had merely discussed orally the terms of a settlement agreement, but had omitted material terms from their discussions or had later disputed the precise terms of the settlement. *See, e.g., Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985). Here, in sharp contrast to the cases relied upon by OSA, the parties *did* reduce all of the terms of their agreement to writing, and OSA simply has reneged on its agreement.

As Magistrate Judge Smith already found and as Judge Covello agreed after *de novo* review, the parties' Settlement Agreement is enforceable on the clear facts and as a matter of law. There is no realistic chance that the Court of Appeals, which will review this Court's findings of fact under a clearly erroneous standard, will hold otherwise.

## II.    OSA Correctly *Concedes* That it Faces No Irreparable Harm in the Absence of a Stay.

Even if OSA had some chance of success on appeal, it is not entitled to a stay because it faces no irreparable harm in the absence of a stay. OSA advances three bases for its claim of irreparable harm, none of which have merit. First, OSA apparently argues that *OEI* will be prejudiced in the absence of a stay because it will be required to amend certain trademark registrations at the PTO. (OSA Mem. at 3). A stay of this case, however, would not affect the parties' obligations under the *Omega I* Settlement Agreement. OSA, moreover, has no standing to complain of irreparable harm to OEI (and, as set forth below, such amendments to registrations would not amount to irreparable harm in all events because the Court could undo them following a reversal on appeal).

Second, OSA argues that it will be harmed in the absence of a stay because the Settlement Agreement requires dismissal of OSA's pending trademark cancellation proceedings with respect to OEI's applications. OSA asserts that it "will have permanently given up its rights to the cancellation proceedings" and would be unable to use the proceedings as evidence in this case. (OSA Mem. at 3). As with OEI's obligations under the Settlement Agreement, however, a stay of this case would not and could not affect OSA's obligations under the Settlement Agreement in *Omega I*. In addition, there is no basis for OSA's argument that changes in the Patent and Trademark Office are irrevocable. The Lanham Act expressly provides that:

> In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119; *see also* Trademark Manual of Examining Procedure § 1610 (PTO "must rectify the register and make appropriate entry upon its records in response to a court order. . . pursuant to 15 U.S.C. § 1119"). The Settlement Agreement's obligations with respect to PTO proceedings create no risk of irreparable harm.

Third, OSA argues it will suffer irreparable harm in this case if a stay is not granted because it will "ostensibly" be precluded from litigating certain issues in this case as a result of the *Omega I* Settlement Agreement. (OSA Mem. at 5). This argument fails for a number of reasons. As this Court is aware, the *Omega I* Settlement Agreement is just one of many bases for OEI's motion for summary judgment. Indeed, as OEI's reply brief in support of summary judgment in this case (Docket No. 148) shows, OSA's claims fail primarily because, in a 1994 Agreement between the parties, OSA consented to OEI's use of OMEGA marks on period timers for science and industry. (*See* Docket No. 148 at 2-4). The fact that one aspect of the Settlement Agreement provides one ground among many for dismissal of OSA's claims is hardly a reason to stay the case, which already has been pending for some three years. Moreover, to the extent OSA argues that it will be prevented from presenting evidence or argument in this case, it ignores the fact that it already has extensively argued the issue of period timers in the summary judgment motions. As for trial, there is no reason to believe that the Second Circuit will not resolve the appeal in this case before then. Finally, it is simply not correct that if OSA prevails on appeal in *Omega I*, it will be without a remedy here. In that very unlikely event, OSA can seek relief by an

appropriate motion to the Court, such as a motion under Fed. R. Civ. P. 60(b)(5), which provides

that the court may relieve a party "from a final judgment, order or proceeding" where, *inter alia*,

"a prior judgment upon which it is based has been reversed or otherwise vacated."

**III.    OSA's Tactical Delay in Moving for a Stay Warrants Denial of OSA's Motion.**

Although Judge Covello entered judgment in *Omega I* on August 12, 2004, OSA

unaccountably delayed two months, until October 6, 2004, to seek a stay of this case pending

appeal of *Omega I*.  OSA argues that a stay would be efficient because it would avoid needless

litigation in this case, yet OSA waited until midway through summary judgment briefing here –

after OEI had made tactical decisions and expended litigation efforts on the basis of the

enforceability of the Settlement Agreement in this case – to move for a stay.  As the Second

Circuit has held in rejecting a similar eleventh-hour request for a stay pending appeal, "[t]his is a

delaying tactic that is inequitable to the [other party] and to the courts as well." *Hirschfeld v. Bd.

of Elections*, 984 F.2d 35, 39 (2d Cir. 1993).  After asking OSA to confirm that it would comply

with its obligations under the Settlement Agreement and receiving no reply whatsoever (*see* Ex.

D), OEI expended significant effort briefing the Settlement Agreement on summary judgment in

this case, and crafted a summary judgment motion that, while not dependent on, certainly was

influenced by the enforceability of the Settlement Agreement here.  OEI thereby made (and

revealed) tactical litigation choices that it might not have made or revealed had OSA promptly

sought and obtained a stay, rather than wait as it did until midway through the summary

judgment briefing schedule.  OSA's obvious tactical gamesmanship in this regard should not be

countenanced, and is itself sufficient grounds to deny OSA's motion for a stay.

## CONCLUSION

In sum, OSA is unlikely in the extreme to prevail on appeal and can identify *no* irreparable harm it will suffer in the absence of a stay.  In contrast, OEI will be seriously injured, particularly by OSA's delay in making this motion.  For all of the foregoing reasons, OSA's Motion to Stay the force and effect of the terms of the Settlement Agreement should be denied.

Dated: October 26, 2004

Respectfully submitted,

By: _____
Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

Of counsel:

Michelle R. Tepper

*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26 day of October, 2004, I caused the foregoing DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY and attachments thereto to be served by hand upon the following counsel for defendant Omega, S.A.:

Jess M. Collen, Esq.
Matthew Wagner, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY  10562

Michelle Tepper

30962052_V11.WPD