# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


OMEGA ENGINEERING, INC.,
    Plaintiff


v.               CIVIL NO. 3:98CV2464 (AVC)(TPS)


OMEGA, SA,
    Defendant

## RECOMMENDED RULING ON PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES AND COSTS

The current controversy arises out of an action for breach of contract in which the plaintiff, Omega Engineering, Inc. ("OEI"), alleged that the defendant, Omega, SA, ("OSA") breached an agreement entered into by the parties with respect to the use of "any trademark consisting of or containing the word OMEGA or the Greek letter Ω. . . ." (Compl. ¶ 16).

Pending before the court is the plaintiff's Motion to Enforce the Settlement Agreement the Parties Accepted on May 19, 2003 and for Costs and Attorneys' Fees. (Dkt. # 125). A hearing was held on February 18, 2004 to address this motion. The motion is **GRANTED IN PART** and **DENIED IN PART**. For the reasons that follow, the court concludes that the plaintiff has established that the parties reached an agreement regarding settlement of this case on May 19th.

As such, the plaintiff's motion to enforce the settlement agreement is **GRANTED**.  However, thus far the plaintiff has not demonstrated that it is entitled to costs and attorneys' fees.  As such, that aspect of the motion is **DENIED** on the instant record.

I.

Based on the parties' briefs, credible testimony, and other evidence adduced at the hearing, the court's findings of fact are as follows.  On May 8, 2003, this court ordered that a settlement conference be held on May 19th.  (Pl.'s Ex. 1).[1]  In that order, the court required that counsel "be accompanied by the appropriate persons with authority to settle."  (Id. citing Nick v. Morgan's Foods, Inc., 99 F. Supp. 2d 1056, 1062-63 (E.D. Mo. 2000)).[2]

Several days before the settlement conference, the parties engaged in settlement discussions among themselves, both orally and in writing.  (See Tr. 34-42, 44-46, Pl.'s Exs. 2-4).  These discussions related in part to OEI's use of the OMEGA mark on timers.  (See id.).  In a letter dated May 16, 2003, OEI proposed to OSA that paragraph 2 of the settlement agreement state:

Omega Engineering will include a reference to 'Omega

---

[1] Trial of this case was scheduled to begin on May 20th.

[2] The court's order cited the Nick decision because that decision explains why the presence of a decision-maker is necessary if a conference is to enjoy a reasonable chance of success, and why the absence of a person with authority to bind a party usually foredooms such a conference.

Engineering, Inc. Stamford, Conn.' or 'Omega Engineering, Inc.' and its location on the shipping boxes for all Omega Engineering timers and where practicable, on the timers themselves.

(Pl.'s Ex. 2, Tr. 38). Counsel for the defendant responded that they were "generally in accord on this point." (Pl.'s Ex. 3). He suggested, alternatively, that paragraph 2 state:

OEI undertakes to refrain from marking period timers or their packaging with the term OMEGA or an omega design, and instead will use OMEGA ENGINEERING STAMFORD CONNECTICUT, or equivalent wording.

(Pl.'s Ex. 3, Tr. 41). However, because this proposal would have prevented OEI from marking its timers with the OMEGA word mark or any OMEGA design, OEI would not accept it. (Tr. 41).

Later in the day, after discussions with counsel for OEI, counsel for OSA reformulated OSA's proposal to read, in pertinent part:

If any name or mark is used on the goods themselves, Omega Engineering will include a reference to Omega Engineering Inc Stamford Conn. or Omega Engineering Inc. and its location.

(Pl.'s Ex. 4, Tr. 45-44). No further discussions regarding OEI's use of the OMEGA marks on timers occurred until the May 19th settlement conference. (Tr. 46).

The parties met in the undersigned's chambers on May 19, 2003. (Tr. 33, 47). As ordered, counsel for both sides were accompanied by representatives with authority to settle the case. (Tr. 47). Thomas A. Smart, counsel for OEI, was accompanied by Mrs. Betty Ruth Hollander, OEI's corporate president, and B. Christine Riggs,

-3-

Esq., OEI's in-house counsel. (Id.). Jess M. Collen, counsel for OSA, was accompanied by Neal Gordon, Esq., General Counsel of The Swatch Group U.S., an affiliate of OSA. (Id.). Mr. Gordon represented that he was an authorized representative of OSA and, as such, able to bind OSA to an agreement:

> Q.    And were you Omega S.A.'s authorized representative on May 19[th], 2003?
>
> A.    Yes.
>
> Q.    And what, if any authority were you given, as authorized representative, on May 19[th], 2003?
>
> A.    I was asked to hopefully negotiate and conclude an agreement with Omega Engineering within certain parameters

(Tr. 85-86).[3]

---

[3] OSA objects to OEI's suggestion that Mr. Gordon was "fully authorized" to enter into a settlement agreement on behalf of OSA. (D.'s Objs. to Pl.'s Prop. Find. Fact., 3/8/04, at 8)(citations omitted). They argue, instead, that he was only authorized to do so "within certain parameters." (Id.). However, these two propositions are not mutually exclusive.
     Whenever a representative with authority to settle attends a settlement conference, one would assume that the represented party has established certain parameters within which its representative may settle on its behalf. Those parameters are known only to the representative and the represented. However, when he acts, he is acting within the ambit of his apparent authority, and the opposing party may rely on that authority "so long as there was no reason to believe he was exceeding it." See Int'l Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 55 (2d Cir. 1979). If the representative exceeds those parameters in settling the case, that is a matter between the representative and the represented party.
     The May 8th order required that counsel "be accompanied by the appropriate persons with authority to settle." (Id. citing Nick v. Morgan's Foods, Inc., 99 F. Supp. 2d 1056, 1062-63 (E.D. Mo. 2000)). Implied in that requirement is the assumption that if a representative with authority to settle enters into an agreement, he is doing so within the scope of his authority.

-4-

After a day-long negotiating session in the magistrate's chambers and library, the parties came to an agreement. (See Pl.'s Ex. 5). No material terms were left out. Ms. Riggs typed this agreement at a computer in the undersigned's chambers. (Tr. 50). The exact language of the settlement agreement was drafted, revised jointly, and agreed to by all persons in attendance. (Tr. 47, 49-50, 53).[4] Paragraph 2 of the agreement, in pertinent part, stated:

> If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc., Stamford, Conn. or Omega Engineering, Inc. and its location.

(Pl.'s Ex. 5). This language is essentially the same as the language in OSA's second written proposal on May 16, 2003, except that the first clause reads: "If OEI uses the name Omega Engineering or any Omega trademark. . . ." instead of "If any name or mark is used. . . ." (Compare Pl.'s Ex. 4 with Pl.'s Ex. 5).

While the parties did not sign the agreement on May 19th, both counsel for the defendant and Mr. Gordon acknowledged that an agreement had been reached and that the agreement was not contingent on its being signed. The signatures were to simply

---

[4] Mr. Gordon himself admitted that he believed that the "case was settled" and that "the parties had agreed upon terms [of] settlement on May 19th, 2003." (Tr. 86). Moreover, Mr. Gordon agreed with Attorney Smart's statement before Judge Covello that they required "two weeks to get [the agreement] signed and the dismissal on file, *but we have reached an agreement. It has been reduced to writing.*" (Tr. 91-92; Pl.'s Ex. 6, at 3).

--5--

memorialize the agreement that had already been reached.[5] Moreover, both counsel for OSA and Mr. Gordon acknowledged that if enforcement of the settlement agreement became an issue, it would be resolved by summary judgment.

At a settlement hearing before Judge Alfred V. Covello, the undersigned represented that "the case has been settled, and that all of the terms and conditions have been agreed upon by the parties through counsel, and that this agreement has been reduced to writing." (Pl.'s Ex. 6, at 2). The undersigned also noted that "it's been represented to me by counsel who are present that the document which contains all of the terms and conditions *will* be signed by the appropriate individual, located in Switzerland." (Id. (emphasis added)). Both parties were present and agreed.

---

[5] Mrs. Hollander, on behalf of OEI, signed the agreement the next day. (Tr. 61). A representative from OSA has yet to sign. Mr. Gordon did not sign the agreement on May 19th because he claimed that, under Swiss law, a corporate officer's signature was more appropriate. However, both parties agreed that the signing of the agreement was a mere formality. (See Pl.'s Ex. 6, at 2-3).

OSA contends that "the evidence is anything from [sic] factually clear that the parties' agreement was not contingent on the settlement agreement being signed." (D.'s Objs. to Pl.'s Prop. Find. Fact., 3/8/04, at 9). As support for this exceedingly tenuous position, OSA points to "an order of the court which specifically requires that the agreement be signed, and that stipulation of dismissal be filed after the parties had consummated settlement." (Id.). However, the court knows of no such order, and OSA did not specify to which order it is referring in its objections. OSA never expressed, in any way, to either the court or the other party, that the *agreement* was *contingent* upon a signature from Switzerland. Pro forma clerical notices sent by a clerk after the fact do not retroactively undo contracts that were entered into by the parties in a settlement conference.

–6–

(See id. at 2-3).[6]  In fact, counsel for OSA agreed that "he was in control of this situation as far as being able to note this matter as closed." (Pl.'s Ex. 6, at 3). Upon being advised that the case had settled, Judge Covello adjourned the trial scheduled for the following day. (Tr. 60). No trial has ever taken place in this matter.

The day after the settlement conference, Mrs. Hollander signed the settlement agreement on behalf of OEI and Ms. Riggs forwarded the agreement to Mr. Collen for signature. (Pl.'s Ex. 7; Tr. 61-62). OSA refused to sign the agreement. Instead, on May 27, 2003, counsel for OSA sent an email to counsel for OEI stating that OSA wanted the parties to enter into a "side letter" agreeing that the phrase "Omega Engineering will include a reference to Omega Engineering, Inc." in paragraph 2 of the settlement agreement should "be read as 'Omega Engineering will only use the name or mark as Omega Engineering, Inc. . . .'" (Pl.'s Ex. 8). This

---

[6] OSA argues that the undersigned "never reported to Judge Covello that a binding agreement had been reached." (D.'s Objs. to Pl.'s Prop. Find. Fact., 3/8/04, at 3). This conclusion, however, is erroneous. A binding agreement is one in which the parties mutually assent to the terms and conditions of the settlement. Brown v. Nationscredit Commercial, No. 3:99cv592 (EBB), 2000 U.S. Dist. LEXIS 9153, at *5-6 (D. Conn. June 23, 2000). Implied in the undersigned's statement to Judge Covello that "all of the terms and conditions have been agreed upon by the parties" is that the parties mutually assent to the agreement's terms and conditions. As such, while he did not use the word "binding" to describe the settlement agreement, it is absolutely clear that the undersigned reported to Judge Covello that a binding agreement had been reached. Judge Covello would not have postponed the trial on any other basis. His acceptance of this recommended ruling is a finding of fact in this latter regard.

alteration was premised upon OSA's baseless assumption that the parties "all agreed that the OMEGA mark would never be used by itself on timers, only OMEGA ENGINEERING, STAMFORD. . . ." (Id.). Such an alteration would change paragraph 2 to read:

> If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will only use the name or mark as Omega Engineering, Inc. . . .

OEI refused and subsequently filed the pending motion.

Judge Covello referred this motion to the undersigned on July 15, 2003. (Dkt. # 128). A hearing[7] was held before the undersigned on February 18, 2004. (Dkt. # 141). Attorney James R. Hastings, who was not present at the settlement conference, argued on behalf of OSA. (See Tr. 65). At the hearing, Mr. Gordon agreed both that he understood "that the case was settled on May 19[th], 2003" and that he "believe[d] that the parties had agreed upon terms [of] settlement on May 19[th], 2003." (Tr. 86). He also contended that OSA had established certain parameters within which he could settle on its behalf:

---

[7] OSA had planned on calling Ms. Christianne Sauser-Rupp during the hearing, but she was unable to attend. It submits that "the court refused to continue the hearing to allow Ms. Sauser to testify although it had given prior indication to OSA that if her testimony was desired that such a continuance would be granted. . . ." (D.'s Objs. Prop. Find. Fact, 3/8/04, at 7). The court had previously indicated to OSA that it would grant a continuance if Ms. Sauser-Rupp's testimony was necessary. However, her testimony was irrelevant, and as such, the court refused to grant the continuance. The "offer of proof" that Mr. Hastings made at the hearing establishes the irrelevance of further testimony by Ms. Sauser-Rupp.

-8-

> I was asked to make certain that Omega Engineering would neither register nor use the trademarks Omega and their logo on timing devices of any sort.

(Tr. 86).  In addition, at the hearing, OSA moved, for the first time, that the undersigned recuse himself pursuant to 28 U.S.C. § 455 (2004) on the basis of the undersigned's "personal knowledge" and "intense involvement in these negotiations."  (Tr. 70).

## II.

### A.    The Parties Entered Into A Binding Agreement

OSA, in its opposition brief, argues that OEI's motion to enforce the settlement agreement should be denied because: (1) no stipulation of dismissal has been entered and additional papers have been filed pursuant to Local Rule 41(b); (2) the parties are not bound by an agreement which has not been signed by both parties; and (3) the court should not compel the execution of an agreement when the parties already dispute the interpretation of its terms."  (D.'s Mem. Opp. Mot., 6/26/03, at 1).  None of these arguments are meritorious.

As a threshold matter, OSA contends that, even had an agreement existed (they argue that one did not), this court would not retain jurisdiction to enforce it.  (Id. (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381 (1994)).  OSA's reliance on Kikkonen is unwarranted.  That case concerns a court's jurisdiction over an enforcement motion *after* the execution

-9-

of a stipulation and order of dismissal with prejudice.  511 U.S. at 376-77.  No such stipulation has been executed in this case, as OSA admits in its misplaced argument that dismissal at this time would be inappropriate.  (See D.'s Mem. Supp. Mot., 6/26/03, at 3). As such, Kikkonen clearly does not apply in this case.

One cannot dispute that the court retains jurisdiction, prior to the dismissal of the case, to enforce a settlement agreement in a case over which it presided.  As the Second Circuit remarked, "[a] court's authority to enforce a settlement by entry of judgment in the underlying action is *especially* clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)(emphasis added)(citations omitted).  This authority is "not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes." Brown v. Nationscredit Commercial, No. 3:99cv592 (EBB), 2000 U.S. Dist. LEXIS 9153, at *4 (D. Conn. June 23, 2000)(citations omitted).  It "has its basis in the policy favoring the settlement of disputes and the avoidance of costs and time-consuming trials." Id.

OSA first argues that OEI's request to enforce the settlement agreement is in contravention of Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure and Rule 41(b) of the Local Rules of Civil Procedure.   (D.'s Mem. Opp. Mot., 6/26/03, at 3).   Rule

-10-

41(a)(1)(ii) states, in part, that "an action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action." Fed. R. Civ. P. 41(a)(1)(ii). OSA argues that, because "neither party has signed [nor filed] a stipulation of dismissal," under the "plain language of Rule 41(a)(1)(ii), this action cannot be dismissed." (D.'s Mem. Opp. Mot., 6/26/03, at 3).

The court agrees with the OSA to the extent that the court cannot rely on Rule 41(a)(1)(ii) to dismiss this case, but fails to understand why OSA even made such an argument. OEI does not seek dismissal; that much is clear from its motion to extend the dismissal date until after the court rules on its motion to enforce the settlement agreement. Moreover, as aforementioned, the court will enforce the settlement agreement by an entry of judgment, not a dismissal. As such, the court finds that OEI's motion to enforce the settlement agreement is not in contravention of Rule 41(a)(1)(ii).

Local Rule 41(b) states that "[w]hen counsel of record report to the Court that a civil action pending on its docket has been settled between the parties and no closing papers are filed within thirty (30) days thereafter, the Clerk shall enter an order of dismissal." Loc. R. Civ. P. 41(b). Accordingly, the clerk's office issued a notice to counsel alerting them that "a judgment will be entered on 6/18/03 unless closing papers are filed on or before that date, or unless counsel reports prior to that date that

-11-

the case is not in fact settled." (Dkt. # 123). That notice is administrative in nature; it serves to ensure that the appropriate papers are submitted within the allotted period of time.[8] It has no bearing whatsoever on whether a binding agreement was formed on May 19, 2003. As aforementioned, the court granted OEI's motion to extend the dismissal date until the court has ruled on the pending motion.

OSA contends that judgment is not appropriate because OEI has reported that the case did not settle. (D.'s Mem. Opp. Mot., 6/26/03, at 3). This argument is based on the inaccurate portrayal of OEI's motion to extend the dismissal date as a "notif[ication to the] court that the case had not in fact settled." (Id.). A motion which purports to extend a dismissal date until the court rules on a motion to *enforce a settlement agreement* cannot, by any stretch of the imagination, be understood as notification that the case has not settled. On the contrary, that a party files a motion to enforce a settlement agreement means *precisely* that it believes

_____

[8] OSA argues that "[i]f the requirement of 'closing papers' has no meaning, that is, if [sic] signature has no significance, then the entire purpose of this rule, and the 30 day period would be without significance." (D.'s Mem. Opp. Mot., 6/26/03, at 4). On this basis, OSA surmises that "if a party cannot sign [the closing papers}, the result is that there has been no agreement." (Id.). The court fails to understand how the latter follows from the former. Moreover, Rule 41(b) was not enacted "for the protection of the Defendant", as OSA states (without any authority whatsoever). Rule 41(b) is simply an administrative rule which ensures that the proper paperwork is filed with the court within a reasonable amount of time.

that an agreement has been reached and the other party seeks to renege on that agreement. In fact, that is exactly what happened here.

In addition, OSA incorrectly cites <u>The Milgard Corp. v. White Oak Corp.</u>, 224 F.Supp.2d 425, 433 (D. Conn. 2002) for the proposition that "a case may not be dismissed, even after the parties notify the Court on the record that a settlement has been reached, before each party is given the full 30 days to file their 'closing papers.'" (D.'s Mem. Opp. Mot., 6/26/03, at 4). <u>Millgard</u> does not stand for that proposition. <u>Millgard</u>, in relevant part, stands for the proposition that where a party fails to show that all the parties mutually assented to all of the essential terms and conditions of settlement, where an agreement would customarily be in writing, and where a party fails to point to any evidence indicating that a "written agreement was contemplated only as a memorialization of the oral," a court should refuse to enforce a settlement agreement. <u>See</u> 224 F.Supp.2d at 433. Given the foregoing analysis of OSA's argument, the court finds that OEI's motion to enforce is clearly not in contravention with Rule 41(a)(1)(ii) nor with Local Rule 41(b).

Second, OSA argues that, under the four factor test delineated in <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78, 80 (2d Cir. 1985), it is not bound by the May 19th settlement agreement. However, <u>Winston</u> was decided under New York law and only applies in

-13-

cases in which an agreement has not been reduced to writing,[9] as is clear by its terms:

> The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. (citations omitted).  As such, Winston does not apply in this case.  That said, even applying the Winston factors, it is clear that the parties entered into an enforceable settlement agreement.[10]

---

[9] In Winston v. Mediafare Entm't Corp., while several draft agreements were circulated later, an oral agreement served the basis for the motion to enforce.  777 F.2d 78, 79 (2d Cir. 1985).

[10] OSA's argument that, under the Winston test, no binding agreement had been reached, is tenuous at best, and contains several flagrant misstatements of law and fact.  The court will only mention a few.

Even a quick perusal of Fordon v. Bristol Myers Squibb, 63 Fed. Appx. 14 (2d Cir. 2003) will reveal that it did not concern "virtually the identical circumstances to those now before this Court," as OSA disingenuously suggests.  (D.'s Mem. Opp. Mot., 2/26/03, at 5-6).

Moreover, OSA argues that it "expressly stated to the court, and it was fully understood by both parties, that the agreement needed to be signed by his client."  (Id. at 6-7).  To apprise the court of an intention to sign an agreement does not "clearly demonstrate[] OSA's intent not to be bound without such signature."  (See id. (emphasis added)).  OSA never expressed a reservation to be bound.  In fact, it agreed that obtaining the signatures was a mere formality.  (Pl.'s Ex. 6, at 2-3).  It also represented to the magistrate judge that the settlement was not contingent on the agreement's being signed, but that it was a "done deal."

Further, OSA cites Winston for the proposition that "[t]o meet the requirement of having a written agreement, the agreement must be fully executed."  (D.'s Mem. Opp. Mot., 6/26/03, at 7).  If by "fully executed" OSA means "signed", then neither does Winston stand for nor does any other federal case hold such a proposition; it is, quite simply, an incorrect statement of law.

-14-

In addition, OSA implores the court to consider other factors which they allege support the theory that no binding agreement was formed on May 19, 2003. It notes that in Villery & Boch v. The Systems, Inc., No. 84 Civ. 8073 (BN), 1991 U.S. Dist. LEXIS 7352, at *4, 20 (S.D.N.Y. June 3, 1991) the parties employed a "safety net" clause which stated that the agreement "shall be effective only upon signature by all parties." Of course, no such clause exists in this case. However, OSA explains that "[b]ecause the agreement in the case at bar was an evolving document put together on the eve of trial, OSA did not have a reasonable opportunity to include" it in the agreement. (D.'s Mem. Opp. Mot., 6/26/03, at 8). OSA also suggests that its "express reservation to get the agreement signed by the party located in Switzerland, similarly established a 'safety net' allowing OSA to confirm that the agreement accurately reflected their intentions." (Id.).

First of all, the picture that OSA tries to paint of an evolving document that was hastily thrown together is entirely inaccurate. The parties spent the entire day in the undersigned's chambers meticulously working out the details of the agreement, not to mention the pre-May 19th exchanges. Mr. Gordon testified that "[w]e all tried to put together an agreement, looked over several drafts." (Tr. 88). OSA had more than a reasonable opportunity to include a safety net clause in the agreement. It failed to do so. Secondly, as aforementioned, OSA did not condition its agreement on a signature from Switzerland. CSA agreed that the signature was a

-15-

mere formality. Therefore, it did not "establish a safety net" of any sort.

OSA also argues that because "OSA identified and conveyed its disapproval of the agreement almost immediately, the Court should not force OSA to be bound." (D.'s Mem. Opp. Mot., 6/26/03, at 9). It cited <u>Bernie v. Fitch Sanitarium, Inc.</u>, 167 F.Supp. 652, 654 (S.D.N.Y. 1958) for the proposition that "after settlement has been reported by counsel--a party has a duty to express disapproval within a reasonable time." (D.'s Mem. Opp. Mot., 6/26/02, at 9). <u>Bernie</u> concerned an attorney who had entered into a settlement agreement on behalf of a client who was not present. 167 F.Supp. at 654. The court noted that an attorney has implied authority to settle a case and remarked that "it is a client's duty to express disapproval of a settlement within a reasonable time, *if he has a basis for disapproval.*" <u>Id.</u> (emphasis added). Whatever spin OSA wishes to put on the holding on <u>Bernie</u>, it is clear that it does not apply in this case.[11] In this case, the client was present during the negotiations and participated in the agreement's development and reduction to writing.

Despite OSA's attempt to convince the court otherwise, it is

---

[11] Nor do any of the other cases that OSA uses to support this misstatement of law apply in this case. <u>See Viventi v. Cap'n Rick Corp.</u>, No. 76 Civ. 3581 (RWS), 1978 U.S. Dist. LEXIS 14477 (S.D.N.Y. Nov. 8, 1978)(same facts as <u>Bernie</u>); <u>Hall v. People to People Health Foundation, Inc.</u>, 493 F.2d 311, 313 (2d Cir. 1974)(the parties had never entered into an agreement).

axiomatic that <u>Brown v. Nationscredit Commercial</u>, No. 3:99cv592 (EBB), 2000 U.S. Dist. LEXIS 9153 (D. Conn. June 23, 2000) applies in this case.  "One who attacks a settlement agreement must bear the burden of showing that the contract he made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."  <u>Id.</u> at *5 (<u>citing</u> <u>Callen</u> <u>v. Penn. R.R. Co.</u>, 332 U.S. 625, 630 (1948)).  OSA has failed to meet its burden.

"It is well established that parties are bound to the terms of a contract even though it is not signed [or even written]."  <u>Id.</u> (<u>citing</u> <u>Main Line Theatres, Inc. v. Paramount Film Dist. Corp.</u>, 298 F.2d 801, 802-04 (3d Cir. 1962); <u>Schwarzschild v. Martin</u>, 191 Conn. 316, 320-21 (1983) (parties may be bound even if contract not signed), <u>cited in</u> <u>Schwitzer v. Panteloeakos</u>, No. CV 950050211S, 1998 Conn. Super. LEXIS 3602, at *1 (Conn. Super. Ct. Nov. 29, 1998)).  "The only essential prerequisite for a valid settlement agreement is that [the parties] mutually assent to the terms and conditions of the settlement."  <u>Id.</u> at *5-6.  <u>See also</u> <u>Pugh v.</u> <u>Super Fresh Food Mkts., Inc.</u>, 640 F. Supp. 1306, 1308 (E.D.Pa. 1986), <u>cited in</u> <u>Brown</u>, 2000 U.S. Dist. LEXIS 9153, at * 6 ("It is well recognized that an agreement to settle a lawsuit, voluntarily entered into, is binding on the parties.").

Moreover, "a settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing."

Brown, 2000 U.S. Dist. LEXIS 9153 at *6 (citation omitted). "Once a settlement is reached, the agreement may not be repudiated by either party. Rather, such an agreement will be summarily enforced by the court." Id. at *6-7. See also V'Soske v. Barwick, 404 F.2d 495 (2d Cir. 1968)(agreement enforced against defendant despite failure to agree on several significant terms).

Clearly, the parties reached an agreement in this case. This court's May 8th order required that counsel be accompanied by representatives with authority to settle the case. Attorney Collen was accompanied by Mr. Gordon. Mr. Gordon represented to the court and to OEI that he had authority to settle the case on behalf of OSA. Mr. Gordon also admitted that he understood that the case had settled and that the parties had agreed on the terms of conditions of the settlement agreement.

This is not a close case. But it is a clear one, a clear case of OSA reneging on an agreement that it made in a settlement conference, conducted under the auspices of a federal court. The agreement was not "contingent" on its being signed; it was represented to the court as a fait accompli. OSA represented that the proper person to sign the agreement was in Switzerland, and thus it had to be transmitted there. But the agreement was not conditional or contingent on its being signed. The signature was simply a ministerial step in the memorialization of the agreement that had been reached on May 19, 2003. This was explicitly

-18-

acknowledged by the representatives of OSA, in accordance with the practice that has been followed for years. That Mrs. Hollander left before signing the agreement shows just how unimportant the signing of the agreement was. Mrs. Hollander left without signing the agreement because her signature was just as ministerial, pro forma, and unimportant as that of the missing Swiss representative.

Third, OSA argues that the court should not enforce the settlement agreement because it contains disputed terms. This argument is not persuasive at all; it shares the same shortcomings as OSA's other arguments in this case. OSA suggests that the "dispute that now exists between the parties regarding the settlement results solely from the parties different interpretation of the language of paragraph 2." (D.'s Mem. Opp. Mot., 6/26/03, at 11). However, OSA does not purport to interpret the clear language contained in paragraph 2 of the agreement, it seeks to change it. (See Pl.'s Ex. 8). Moreover, CSA contends that it "at all times leading up to, and during the settlement conference maintained a consistent position that the OMEGA mark could only be used by OEI on period timers when it appears with the words: "ENGINEERING STAMFORD CONNECTICUT (thus OMEGA ENGINEERING STANFORD CONNECTICUT) or some equivalent wording." (D.'s Mem. Opp. Mot., 6/26/03, at 11). However, that statement is patently untrue; the settlement agreement itself, inter alia, permits OEI to use "any Omega trademark." (Pl.'s Ex. 5; see also Pl.'s Ex. 4 (e-mail from Attorney Collen allowing "any name or mark" to be used on timers)).

-19-

While the court need not determine whether paragraph 2 of the settlement agreement is ambiguous, it is clear that it is not.

> If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc. Stamford, Conn. or Omega Engineering, Inc. and its location.

(Pl.'s Ex. 5). The meaning of this plain language is obvious: If OEI uses *any* Omega trademark, it will include a reference to itself and its location.

OSA purports to "clear up" the alleged ambiguity by suggesting that the language be reformulated to read:

> If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will only use the name or mark as Omega Engineering, Inc. Stamford, Conn. or Omega Engineering, Inc. and its location.

(See Pl.'s Ex. 6, 8). The court finds that this does not rectify an ambiguity in the original language. To the contrary, it creates ambiguity and completely changes the plain meaning of the language as it was originally drafted. If OEI may only use "Omega Engineering, Inc..." as a mark, why the need for the dependant clause? Would not a simple independent clause: "Omega Engineering will only use the name or mark as Omega Engineering, Inc...." have made more sense? Surely. However, if OSA had suggested such a drastic language change, its argument that that is what it meant would have been even weaker than it is now.

Buttressing this finding is the inconsistency of Mr. Gordon's testimony. Mr. Gordon testified that OSA authorized him to settle

-20-

the case within certain parameters:

> I was asked to *make certain* that Omega Engineering would
> neither register nor use trademarks Omega and their logo
> on timing devices of any sort.

(Tr. 86) (emphasis added). But if that was the case, then how is
it possible that language which unambiguously allows OEI to use
"any Omega trademark on the goods themselves" could have found its
way into the final draft of an agreement which the parties had
effectively been working on for several days? The only possible
answer is that Mr. Gordon made a mistake in agreeing to the
contract—that he exceeded the scope of his authority. While that
would be a matter between Mr. Gordon and OSA, Mr. Gordon vehemently
denied that he made any mistake in agreeing to the final language
of the contract. (Tr. 92). Whatever may be said about Mr.
Gordon's testimony, the court is at a loss to reconcile its
inconsistency, given the plain language of the agreement, absent
mistake on his part. Unfortunately for OSA, however, Mr. Gordon's
mistake would have no bearing on whether the parties had entered
into an enforceable agreement.

The court finds none of OSA arguments against enforcement of
the settlement agreement to be at all persuasive. Moreover, the
record requires a finding that the parties in this case clearly
manifested their mutual assent to the terms and conditions of the
settlement agreement. As such, the court finds that the parties
entered into a binding and enforceable agreement on May 19, 2003.

-21-

Accordingly, OEI's motion to enforce the settlement agreement (**Dkt. # 125**) should be **GRANTED**.

A few remarks are in order regarding the briefs and objections submitted to the court by OSA and its counsel. First of all, the undersigned, having conducted this settlement conference on May 19, 2003, is intimately aware of the facts and circumstances surrounding the settlement. OSA's representations concerning the facts and circumstances surrounding the settlement are false and distorting *at best*. Moreover, the court is convinced, as no other conclusion makes sense, that OSA assumed that the court would not actually read the cases to which it cited: virtually none of the cases cited stand for that which OSA avers. OSA's briefs and objections are riddled with distortions, material omissions, misstatements of fact, misstatements of law, and unwarranted and irrelevant conclusions.

Reduced to its simplest terms, OSA has repudiated a contract which it entered into during a negotiation session held under the aegis of the U.S. District Court. There is no doubt it reached an agreement with OEI, no doubt it settled this case, and no doubt it reported the case settled to a magistrate judge and later to a district judge in open court. Having taken itself out from "under the gun" of imminent trial before Judge Covello, OSA then promptly broke its word, reneged on the contract, and now attempts to use the contract it broke as a springboard from which to negotiate an

-22-

even better deal. *This* is what happened here. It should not be countenanced by a United States court. "Judges must not be blind to what others see." <u>Hilliard v. Beto</u>, 465 F.2d 829 831 n.5 (5th Cir. 1972)(citations omitted).


**B.    Recusal Was Not Warranted In This Case**

At the February 18th hearing, OSA orally motioned for the undersigned's recusal based on his "personal knowledge" and his "intense involvement in these negotiations." (Tr. 70). It based this motion on 28 U.S.C. § 455 which states, in relevant part, that a magistrate judge shall disqualify himself where, <u>inter alia</u>, he has "personal knowledge of disputed evidentiary facts concerning the proceeding" or he is "to [his] knowledge likely to be a material witness in the proceeding." However, nothing prohibits a judicial officer who has presided at a hearing to enforce an agreement that was reached at the conference; there is no evidence of extra-judicial bias or information in this case. <u>See Apple v. Jewish Hosp. & Med. Ctr.</u>, 829 F.2d 326, 333 (2d Cir. 1987) (requiring "extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context). In fact, sound reasons exist why such an officer should make a summary determination of enforceability <u>vel non</u>. The judicial officer who was there need not remove himself from the process or blind himself

-23-

to the objective facts.[12]  Moreover, the undersigned's involvement

in these negotiations was minimal; the parties drafted the

provisions on their own.  Similarly, <u>Black v. Kendig</u>, 227 F. Supp.

2d 153 (D.D.C. 2002) does not help OSA; it deals with a ruling

regarding the *interpretation* of an agreement, not whether an

agreement in fact exists.  The court should not permit the

settlement process to be abused in the manner that OSA attempts.

### C.  OEI Is Not Entitled To Costs and Attorney's Fees On This Record

OEI contends that it should be awarded costs and attorney's

fees pursuant to Rule 16(f) of the Federal Rules of Civil

Procedure.  Rule 16(f) states, in pertinent part:

> If a party or party's attorney fails to obey a scheduling
> or pretrial order, or if no appearance is made on behalf
> of a party at a scheduling or pretrial conference, or if
> a party or party's attorney is substantially unprepared
> to participate in the conference, or if a party or
> party's attorney fails to participate in good faith, the
> judge, upon motion or the judge's own initiative, may
> make such orders with regard thereto as are just. . . ."

Fed. R. Civ. P. 16(f)(2004).  OEI also notes that, under Local Rule

16(g), the court "may impose sanctions directly against counsel who

. . . intentionally obstruct the effective and efficient

administration of justice."  Loc. R. Civ. P. 16(g).

The court declines to award costs and attorney's fees upon

---

[12] What an unfair advantage this would confer on contractual
repudiators such as OSA.

-24-

this basis on this record.  OSA did not fail to obey a scheduling or pretrial order; OSA sent Mr. Gordon, a representative with the authority to settle the case, as required by the May 8th order.  An appearance was made on behalf of OSA at the conference.  Further, the plaintiff presents no evidence that the defendants were unprepared for the conference.  Most importantly, however, the court is not convinced that the OSA failed to participate in good faith at the conference; the conference was fruitful and resulted in the settling of the case.[13]  While OSA's attempt at reneging on their agreement is certainly desperate and utterly ill-founded, among other things, it does not thereby retroactively taint its behavior at the conference.  Nor does it yet rise to the level of intentionally obstructing the effective and efficient administration of justice.  As such, the plaintiff's motion for an award of costs and attorneys' fees (**Dkt. #125**) is **DENIED** on this record.

For the foregoing reasons, OEI's motion to enforce the settlement agreement is **GRANTED**.  However, its motion for an award

---

[12] OEI cites <u>Francis v. Woman's Obstetrics</u>, 144 F.R.D. 646 (W.d.N.Y. 1992) to support its contention that the court should award costs and attorneys' fees for OSA's alleged failure to participate in the settlement conference in good faith.  (Pl.'s Mem. Supp. Mot., 6/5/03, at 8.  However, that case is easily distinguishable from the case at bar.  In <u>Francis</u>, the defendant's bad faith manifested prior to and during the settlement conference and that bad faith "frustrate[d] the purpose of the conference."  <u>See id.</u> at 647.  Here, OSA participated in the settlement conference in good faith.  Only after an agreement was reached did OSA attempt to renege on its agreement.

-25-

of costs and attorneys' fees is **DENIED** on the present record.  The foregoing text and footnotes constitute the magistrate judge's findings of fact and conclusions of law.  The parties may seek timely review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72(b).  Failure to do so may bar further review.  28 U.S.C. § 636(b)(1)(B); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

    Dated at Hartford, Connecticut this 24th day of March, 2004.

/s/ Thomas P. Smith
Thomas P. Smith
United States Magistrate Judge