# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OMEGA ENGINEERING, INC.,

                             Plaintiff,

                                       Civil Action No. 3:98CV2464(AVC)

                v.

OMEGA, S.A.,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF OMEGA ENGINEERING INC.'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF A REPORT AND RECOMMENDATION THAT
THE COURT ENFORCE THE PARTIES' SETTLEMENT AGREEMENT**

      Pursuant to the Court's direction at the conclusion of the February 18, 2004 hearing on

plaintiff Omega Engineering, Inc.'s ("OEI") motion to enforce the Settlement Agreement that the

parties reached on May 19, 2003, OEI submits the attached proposed Findings of Fact and

Conclusions of Law in support of a report and recommendation that the Court enforce the

parties' Settlement Agreement.

Dated: March 1, 2004

                                            Respectfully submitted,

                                            By: _____

Thomas E. Minogue (CT 06845)               Thomas A. Smart (CT 21462)
MINOGUE BIRNBAUM LLP                 Paul C. Llewellyn (CT 25417)
237 Elm Street                                  KAYE SCHOLER LLP
New Canaan, CT  06840                 425 Park Avenue
(203) 966-6916                               New York, NY  10022
                                          (212) 836-8000

*Attorneys for the Plaintiff Omega Engineering, Inc.*

30846870.WPD

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OMEGA ENGINEERING, INC.,

       Plaintiff,

            Civil Action No. 3:98CV2464 (AVC)

    v.

OMEGA, S.A.,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF OMEGA ENGINEERING INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF A REPORT AND RECOMMENDATION THAT THE COURT ENFORCE THE PARTIES' SETTLEMENT AGREEMENT

Plaintiff Omega Engineering, Inc. ("OEI") commenced this action on December 17, 1998, alleging that the defendant, Omega, S.A. ("OSA"), had breached a 1994 agreement between the parties relating to their respective rights to register and use the trademark OMEGA and related design marks (together, the "OMEGA marks"). Pursuant to an Order dated May 8, 2003, the parties attended a Settlement Conference with the Court on May 19, 2003, at the conclusion of which the parties represented to the Court that the case had been settled.

On June 5, 2003, OEI filed this motion to enforce the parties' Settlement Agreement, in which OEI asserted that OSA had refused to sign the agreement reached by the parties on May 19, 2003, unless OEI would enter into a side letter agreement that would have materially changed the meaning of one of the key provisions of the Settlement Agreement. OSA opposed the motion, principally on the ground that the Settlement Agreement contained a purportedly ambiguous provision relating to OEI's use of the OMEGA mark on timers, and that this alleged ambiguity provided a basis for OSA to refuse to honor the Settlement Agreement.

An evidentiary hearing on OEI's motion was held on February 18, 2004. Two witnesses testified at the hearing: Ms. B. Christine Riggs, OEI's in-house counsel, who participated in the May 19, 2003 settlement discussions and in negotiating the Settlement Agreement; and Mr. Neal Gordon, Corporate Counsel for Swatch Group U.S., a United States affiliate of OSA, who attended the May 19, 2003 settlement conference as the person authorized to settle on behalf of OSA, and who also participated in the settlement discussions and in negotiating the Settlement Agreement. [Hearing Transcript ("Tr.") 47-50, 85-86]

The following findings of fact and conclusions of law – based upon a careful review of the entire record, an appraisal of the witnesses' testimony and demeanor and the exhibits admitted into evidence, and the reasonable inferences to be drawn therefrom – constitute the reasons for my recommendation that the Court grant OEI's motion to enforce the parties' Settlement Agreement.

## I.

## FINDINGS OF FACT

### Background

1.      This is an action for breach of contract relating to a prior agreement between the parties concerning, *inter alia,* their respective right to register and use the trademark OMEGA and related design marks (the "OMEGA marks") in their fields of commercial operations. [Complaint ¶ 5, 13-14].

2.      Plaintiff Omega Engineering, Inc. ("OEI") is a Delaware corporation that has a principal place of business in Stamford, Connecticut. [Complaint ¶ 3].

3.      Defendant Omega, S.A. ("OSA") is a Swiss corporation with a principal place of business in Bienne, Switzerland. [Answer ¶ 4].

4.     In the complaint in this action, OEI alleged that OSA had breached the terms of the parties' 1994 agreement by filing two cancellation proceedings and one opposition proceeding at the United States Patent & Trademark Office, in which OSA argued that registration by OEI of the mark OMEGA for use on period timers and scientific and industrial clocks was likely to cause confusion with OMEGA marks that OSA had registered in the United States. [Complaint ¶¶ 7-23]

5.     On May 8, 2003, the Court ordered the parties to attend a settlement conference scheduled for May 19, 2003. Trial of this case was scheduled to begin on May 20, 2003, the day after the settlement conference. [Plaintiff's Exhibit ("PX") 1].

6.     The Court's May 8, 2003 Order directed that counsel for the parties be accompanied to the settlement conference by "appropriate persons with authority to settle." [PX 1].

**Negotiations Prior to Settlement Conference**

7.     Shortly before May 19, 2003, the parties engaged in settlement discussions among themselves, both orally and in writing. [Tr. 34-42, 44-46, PX 2-4]

8.     The parties' settlement discussions in May 2003 included discussions and proposals relating to settlement terms concerning OEI's use of the OMEGA mark on timers. [Tr. 34-42, 44-46, PX 2-4]

9.     In a letter dated May 16, 2003, OEI proposed to OSA the following language concerning the marking of timers:

> "Omega Engineering will include a reference to 'Omega Engineering, Inc., Stamford, Conn.' or 'Omega Engineering, Inc.' and its location on the shipping boxes for all Omega Engineering timers and where practicable, on the timers themselves." [PX 2; Tr. 37-38]

10.    OSA responded later in the afternoon of May 16, 2003, with a proposal that would have prevented OEI from marking its timers with the OMEGA word mark or any OMEGA design mark and would have limited OEI to the use of the company name "Omega Engineering" on timers. OSA's proposed language read:

> "OEI undertakes to refrain from marking period timers or their packaging with the term OMEGA or an omega design, and instead will use OMEGA ENGINEERING STAMFORD CONNECTICUT, or equivalent wording." [PX 3; Tr. 39-42]

11.    Still later that day, after discussions between counsel for OEI and OSA, OSA proposed language that would have permitted OEI to mark its timers with the OMEGA marks as long as OEI also included on the products a reference to the company name "Omega Engineering, Inc." OSA's proposed language was:

> "If any name or *mark* is used on the goods themselves, Omega Engineering will include a reference to Omega Engineering Inc Stamford Conn. or Omega Engineering Inc. and its location." (emphasis added) [PX 4; Tr. 44-46]

12.    No further discussions regarding OEI's use of the OMEGA marks on timers occurred until the May 19 settlement conference. [Tr. 46]

**May 19, 2003 Settlement Conference**

13.    Pursuant to the May 8, 2003 Order, a settlement conference took place in this case on May 19, 2003. [Tr. 33, 47; PX 1]

14.    The settlement conference was attended by Mrs. Betty Ruth Hollander, OEI's corporate president, B. Christine Riggs, Esq., OEI's in-house counsel, Thomas A. Smart, Esq., counsel for OEI, Neal Gordon, Esq., General Counsel of OSA's affiliated company, Swatch Group U.S., and Jess Collen, Esq., counsel for OSA. [Tr. 47]

15.    Pursuant to the Court's May 8th order, counsel for the parties were accompanied by "persons with authority to settle" – Mrs. Hollander on behalf of OEI, and Mr. Gordon on behalf of OSA.  [Tr. 67, 88; PX 1]

16.    Mr. Gordon testified that he was fully authorized to enter into a Settlement Agreement on behalf of OSA at the May 19, 2003 settlement conference.  [Tr. 85, 88]  At no time has OSA asserted that Mr. Gordon was not authorized to enter into a settlement on behalf of OSA on May 19, 2003.

**The Parties' Settlement Agreement**

17.    At the May 19, 2003 settlement conference, Mr. Smart and Ms. Riggs, acting on behalf of OEI, and Mr. Collen and Mr. Gordon, acting on behalf of OSA, negotiated a written Settlement Agreement that was typed, revised and printed during course of the day on the Court's computer facilities.  [Tr. 47-51, 53; PX 5]

18.    The exact language of the Settlement Agreement was drafted, revised jointly and agreed to by Messrs. Collen, Gordon, and Smart and Ms. Riggs.  In addition, the language was approved by Mrs. Hollander on behalf of OEI.  [Tr. 47, 49-50, 53]

19.    Paragraph 2 of the final Settlement Agreement stated:

"If OEI uses the name Omega Engineering *or any Omega trademark* on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc., Stamford, Conn. or Omega Engineering, Inc. and its location." (emphasis added)  [PX 5; Tr. 51].

20.    The language in Paragraph 2 of the Settlement Agreement relating to OEI's use of the OMEGA marks on timers is essentially the same as the language in OSA's second written proposal on May 16, 2003, except that, in the final Settlement Agreement, the first clause of the

sentence stated "If OEI uses the name Omega Engineering or any Omega trademark" instead of "If any name or mark is used." [PX 4, 5].

21.    Ms. Riggs testified that she understood this to mean that OEI could use the OMEGA word mark or OMEGA design marks on timers, provided that OEI also included the phrase "Omega Engineering, Inc." on the timers. She further testified that OEI at no time told OSA's representatives that OEI interpreted Paragraph 2 of the Settlement Agreement to mean that OEI could only use the company name "Omega Engineering, Inc." on timers. She further testified, without contradiction, that at no time did either Mr. Collen or Mr. Gordon state to OEI's representatives that they interpreted this language to mean that OEI could only use the company name "Omega Engineering, Inc." on OEI's timers and could not use the mark OMEGA, standing alone, on timers. [Tr. 51-53, 63-64]

22.    It is not disputed that both OEI and OSA agreed upon the language of the final Settlement Agreement on May 19, 2003. In particular, Mr. Gordon testified that he "believe[d] that the parties had agreed upon terms [of] settlement on May 19, 2003," that he "agreed to [the Settlement Agreement] on behalf of Omega S.A." and that "the case was settled" on that day. Ms. Riggs testified that the parties "had an agreement" and that "we all agreed upon" the Settlement Agreement. [Tr. 49, 53, 86, 89, 91-92]

23.    It also is not disputed that, after drafting of the Settlement Agreement was completed on May 19, 2003, the parties reported to me that an agreement settling the case had been reached and that the parties had a deal. [Tr. 53-57]

24.    The Settlement Agreement was not signed on May 19, 2003, however, because, although Mr. Gordon had authority to settle and bind OSA, he was unable to sign the agreement on behalf of OSA. Nonetheless, both Ms. Riggs and Mr. Gordon testified that they understood

that the parties had reached a binding agreement and that the case was settled on May 19, 2003, and the evidence is clear that the parties' agreement was not contingent on the Settlement Agreement being signed. [Tr. 53-57, 59, 86, 90-92]

**Presentation of the Settlement Agreement to the Court**

25.     Because the Settlement Agreement that was drafted, finalized and reported to me on May 19, 2003 was not being signed that day, the parties and I appeared before Judge Covello to report that a binding agreement had been reached and that the case had been settled. [Tr. 54, 57-60]

26.     I advised Judge Covello, on the record, that the matter was settled and that the Settlement Agreement would be signed by an appropriate individual from OSA located in Switzerland. I stated:

> "It's my understanding that the case has been settled, and that all of the terms and conditions have been agreed upon by the parties through counsel, and that this agreement has been reduced to writing. And, it's been represented to me by counsel who are present that the document which contains all of the terms and conditions will be signed by the appropriate individual, located in Switzerland."
> [PX 6, p. 2, lines 7-13; Tr. 58-59]

27.     In addition, counsel for OEI represented to the Court, without disagreement from counsel for OSA, that "[w]e have reached an agreement, it has been reduced to writing. We simply need the signatures of the parties, and since one party is in Switzerland [OSA], we thought we needed a little time to get the signatures." [PX 6, p. 3, lines 9-12]

28.     At no time did Mr. Collen or Mr. Gordon disagree with the representations to the Court that an agreement had been reached and that the case was settled. To the contrary, Mr. Collen agreed on the record with Judge Covello that he was "in control of this situation as far as being able to note this matter as closed." [PX 6, p. 3, lines 18-19; Tr. 59, 90-92]

29.    At no time did Mr. Collen or Mr. Gordon advise OEI or the Court that the parties'

agreement was contingent upon the Settlement Agreement being reviewed, approved or signed

by any other OSA representative.  Indeed, such a requirement would be contrary to the Court's

order that parties send a person "with authority to settle," and contrary to Mr. Gordon's admitted

authority to settle on behalf of OSA.  [PX 1; Tr. 55-57, 59]

30.    Upon being advised that the case was settled, Judge Covello adjourned the trial

scheduled for the following day.  [Tr. 60]  No trial has ever taken place in this matter.

**OSA's Refusal to Sign the Settlement Agreement**

31.    The day after the settlement conference, May 20, 2003, Mrs. Hollander signed the

Settlement Agreement on behalf of OEI, and Ms. Riggs forwarded the Settlement Agreement to

Mr. Collen for signature by OSA.  [PX 7; Tr. 61-62].

32.    OSA did not sign the agreement.  Instead, on May 27, 2003, counsel for OSA,

Mr. Collen, sent an email to counsel for OEI, Mr. Smart, stating that OSA wanted the parties to

enter into a "side letter" agreeing that the phrase "Omega Engineering will include a reference to

Omega Engineering, Inc." in Paragraph 2 of the Settlement Agreement should  "be read as

'Omega Engineering will *only* use the name or mark as Omega Engineering, Inc. . . .'"  [PX 8

(emphasis added); Tr. 62-64]

33.    There is no evidence that, at any time prior to agreeing to the terms of the

Settlement Agreement on May 19, 2003, anyone representing OSA advised OEI that OSA

interpreted paragraph 2 of the Settlement Agreement to mean that OEI could only use the phrase

"Omega Engineering, Inc." on timers, or could not use the OMEGA word mark or an OMEGA

design mark, standing alone, on timers.  On the contrary, it is apparent from Mr. Gordon's

testimony that he believes he made a mistake in agreeing to the language of paragraph 2, which

does not prohibit OEI from using any OMEGA marks, standing alone, on timers. [Tr. 52-53, 64-65, 92]

34.     It is apparent, based on my review of the witness's testimony and the other evidence presented at the evidentiary hearing, that, following May 19, 2003, OSA had a "change of heart" with respect to the Settlement Agreement drafted by and agreed to by the parties on May 19, 2003, and decided that it no longer wished to be bound by the terms of the agreement.

**OEI's Motion to Enforce the Settlement Agreement**

35.     On June 5, 2003, OEI filed this motion to enforce the Settlement Agreement, submitting as support for its motion, *inter alia*, correspondence between the parties relating to negotiation of settlement provisions , the Settlement Agreement, and a copy of the transcript of the May 19, 2003 proceedings before Judge Covello in which counsel for OEI, counsel for OSA, Ms. Riggs, Mr. Gordon and I, participated. [OEI Mem. and Exhibits thereto]

36.     Among other things, OEI's moving brief plainly relied upon my statements to Judge Covello, on the record, that:

> "It's my understanding that the case has been settled, and that all of the terms and conditions have been agreed upon by the parties through counsel, and that this agreement has been reduced to writing. And, its been represented to me by counsel who are present that the document which contains all of the terms and conditions will be signed by the appropriate individual, located in Switzerland." [OEI Mem. at 3 & Ex. B.]

37.     In addition, the parties were aware that I was present during part of the settlement conference on May 19, 2003, had been requested by Judge Covello to hold the settlement conference, and had ordered the settlement conference to take place on May 19, 2003.

38.     By Order dated July 15, 2003, which was promptly circulated to all counsel of record, Judge Covello referred this motion to me for decision.

39.     At the February 18, 2004 evidentiary hearing on this motion, at the end of Ms. Riggs' direct testimony and at the close of OEI's case, OSA moved, for the first time, that I disqualify myself pursuant to 28 U.S.C. § 455 on the ground that I am a "material witness" or have personal knowledge of facts relating to the motion.  [Tr. 70-71]

## II.

## CONCLUSIONS OF LAW

### OSA's Disqualification Motion

1.     Pursuant to 28 U.S.C. § 455, a magistrate judge shall disqualify himself where, *inter alia*, he has "personal knowledge of disputed evidentiary facts concerning the proceeding" or he is "to [his] knowledge likely to be a material witness in the proceeding."

2.     It is settled that disqualification is not warranted where a judge's knowledge was obtained during performance of the judge's judicial duties.  Only knowledge obtained through extrajudicial means gives rise to a need for disqualification under 28 U.S.C. § 455.  *See Apple v. Jewish Hosp. and Med. Center*, 829 F.2d 326, 333 (2d Cir. 1987); *Bisaccia v. United States*, 2000 U.S. Dist. LEXIS 7231, *9 (E.D.N.Y. April 12, 2000).  This same rule applies where the judge's knowledge was obtained during the course of settlement negotiations or a settlement conference.  *E.g.*, *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 926 (D. Nev. 1983) (knowledge obtained through participation in settlement discussions does not require disqualification); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (same).

3.     Here, my knowledge relating to these proceedings, and any potential that I could be a "material witness," arise solely out of performance of my judicial duties and, accordingly, do not implicate 28 U.S.C. § 455.

4.    Nor does it appear that I am a "material witness" or that any knowledge that I may have regarding the settlement conference and the Settlement Agreement relates to "disputed evidentiary facts." At no time has either party expressed an intention to call me as a witness in this proceeding, and neither party sought to have me testify during the hearing in this matter. In addition, as set forth above, it is not disputed that the parties reached agreement on a written Settlement Agreement on May 19, 2003 and reported to me and to Judge Covello that an agreement had been reached and the case settled. Mr. Gordon, OSA's witness, testified that he understood on May 19, 2003 that the parties had agreed to the Settlement Agreement and that the case was settled. In short, there is no dispute that on May 19, 2003, both parties understood that the case was settled.

5.    Nor does the decision in *Black v. Kendig*, 227 F. Supp. 2d 153 (D.D.C. 2002), cited by OSA at the hearing, support disqualification in this instance. The magistrate in *Black* exercised "intensive supervision" over the parties' settlement discussions. This "intensive supervision" included participation in discussions relating to the substance of a settlement provision, the interpretation of which was disputed by the parties. *Id.* at 156. Here, in contrast, my involvement in the settlement conference was limited to facilitation of the settlement process, and there is no evidence in the record or otherwise that I was involved in the *substance* of the parties' negotiations. In particular, the undisputed record evidence is that Ms. Riggs, Mr. Smart, Mr. Collen and Mr. Gordon negotiated the language contained in paragraph 2 without any participation from this Court in discussing or drafting the language in paragraph 2 that OSA now purports to dispute. Although, by virtue of my involvement in the settlement process, I am aware

that the parties reached an agreement on May 19, 2003, the evidence in that regard is (as set forth above) undisputed.[1]

6.    Furthermore, it is settled law that a motion for disqualification under § 455 must be made "at the earliest opportunity" after information relating to the grounds for disqualification is obtained. *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). The Second Circuit applies a four factor balancing test to determine the timeliness of a disqualification motion, which considers whether (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay. *Id.* at 333-34.

7.    Application of these factors indicates that OSA's motion for disqualification was untimely in the extreme. OSA has participated in these proceedings from their beginning, and was aware since the time of OEI's June 5, 2003 motion that I was in possession of knowledge relating to the settlement proceeding, and that OEI had cited my statements on the record to Judge Covello in support of its motion. Shortly thereafter, OSA was aware that in his July 15, 2003 Order, Judge Covello had referred to me OEI's motion to enforce the Settlement Agreement. Thus, even though OSA was well aware of the facts on which it sought to disqualify this Court for some seven months, it waited until after this Court had scheduled and rescheduled this hearing, after substantial correspondence between the parties regarding scheduling issues, and until the very end of Ms. Riggs' testimony and the close of OEI's case at the evidentiary

---

[1]    Moreover, there was no question in *Black* regarding the timeliness of the disqualification request in that case. Here, as discussed more fully *infra*, OSA's disqualification motion clearly is untimely.

hearing, before moving to disqualify the Court. Such delay obviously is unwarranted, because

OSA had participated in a substantial manner in the briefing of the motion and evidentiary

hearing, granting the motion would represent a waste of judicial resources, and OSA has made no

showing of good cause for its extraordinary delay.[2]

### Applicable Law Regarding
### Enforcement of Settlement Agreements

8.      "The power of a trial court to enter a judgment enforcing a settlement agreement

has its basis in the policy favoring the settlement of disputes and the avoidance of costs and

time-consuming litigation." *Brown v. Nationscredit Commercial*, 2000 WL 888507, at *1

(D. Conn. June 23, 2000) (citing *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621

(6th Cir. 1973)). *Accord, Joe v. First Bank Sys.*, 202 F.3d 1067, 1070 (8th Cir. 2000);

*Massachusetts Casualty Insurance Co., v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972). Summary

enforcement is not only essential to the efficient use of judicial resources, but also preserves the

integrity of settlement as a meaningful way to resolve legal disputes. *Brown*, 2000 WL 888507,

at *1; *Audubon Parking Assoc. Ltd. Partnership v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 812

---

[2]     OSA expressly did not premise its disqualification motion on the fact, disclosed by me at
the hearing, that Mrs. Hollander of OEI had sent me a tin of popcorn the day after the
settlement conference with a note expressing her appreciation for my assistance in
helping the parties to reach a settlement. In all events, these additional facts provide no
basis for disqualification. Mrs. Hollander's expression of gratitude shows, at most, that
she thought that the parties had reached an agreement on May 19, 2003, a fact that, as set
forth above, is undisputed in the record. Nor would this attempted de minimis gift by
Mrs. Hollander – which, as stated at the hearing, I did not accept, and attempted to return
– cause "an objective, disinterested observer fully informed of the underlying facts [to]
entertain significant doubt that justice would be done absent recusal." *In re Aguinda*, 241
F.3d 194, 201 (2d Cir. 2001) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d
Cir. 1992)). [Tr. 69]

(1993) (when parties agree to settle a lawsuit they are effectively contracting for the right to avoid trial).

9.     "A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986).

10.     It cannot be disputed that this Court has jurisdiction, prior to dismissal of the case, to enforce a settlement agreement entered into in this case and reported to the Court on the record. *See id.*; *Brown*, 2000 WL 888508, *1. In arguing to the contrary, OSA relies on cases not applicable here which merely hold that a District Court does not have jurisdiction to enforce the terms of a settlement agreement *after* the case has been dismissed unless the dismissal reserved the jurisdiction of the Court to enforce the terms of the settlement agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996).

11.     It is well established that parties are bound to the terms of a settlement agreement, even though the agreement is unsigned or oral. Accordingly, numerous cases in this Circuit and in this State have enforced unsigned or oral settlement agreements where the parties had agreed to be bound. *See, e.g., International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 56-57 (2d Cir. 1979) (holding that settlement agreement was enforceable prior to signing); *Hunt v. Fuksman*, 1999 U.S. App. LEXIS 18158, *2 (2d Cir. July 30, 1999) (unpublished) (affirming district court's enforcement of an oral settlement); *Winn v. Seaport Manor Corp.*, 2002 U.S. Dist. LEXIS 22991, *5-6 (S.D.N.Y. August 22, 2002) (enforcing unsigned settlement agreement); *Mone v. Park E. Sports Med. & Rehab., P.C.*, 2001 U.S. Dist. LEXIS 19445, *15-16 (S.D.N.Y.

Nov. 27, 2001) (same); *Brown*, 2000 WL 888507, at *2 (same); *Vari-o-matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) (same); *Hartt v. Schwartz*, 1998 Conn. Super. LEXIS 1056, *7-8 (Conn. Super. Ct. Apr. 15, 1998) (same); *Montgomery v. Smith*, 40 Conn. Supp. 358, 360 (Conn. Super. Ct. 1985) (same).

12.    The only essential prerequisite for a binding settlement agreement is that the parties mutually assent to the terms and conditions of the settlement. *See, e.g., Brown*, 2000 WL 888507, at *2; *Hartt*, 1998 Conn. Super. LEXIS 1056, *4.

13.    As OSA acknowledges, a settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing. *See, e.g., Brown*, 2000 WL 888507, at *2; *Montgomery*, 40 Conn. Supp. at 359-61; *Morris v. Scardelletti*, 1995 WL 708550 at * 1 (E.D. Pa. 1995). Once a settlement is reached, the agreement may not be repudiated by either party. Rather, such an agreement will be summarily enforced by the court. *See, e.g., Brown*, 2000 WL 888507, at *2; *Montgomery*, 40 Conn. Supp. at 360-61.

14.    "One who attacks a settlement agreement must bear the burden of showing that the contract he made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen v. Penn. R.R. Co.*, 332 U.S. 625, 630 (1948).

**The Parties Entered Into a Binding Settlement
Agreement on May 19, 2003**

15.    As set forth above, the testimony of Ms. Riggs and of Mr. Gordon make clear that the parties had agreed to the Settlement Agreement on May 19, 2003, and that the agreement was binding on the parties as of that date.

16.    OSA contends in its opposition brief that the Settlement Agreement was not binding on OSA because it was not signed by OSA. That position is without merit for several reasons.

17.    First, as noted above and as set forth in the Findings of Fact, Mr. Gordon conceded in his testimony that the parties entered into the Settlement Agreement on May 19, 2003, and that this agreement was reported to the Court that day. Mr. Gordon further testified that, consistent with this Court's order that the parties' counsel be accompanied at the settlement conference by persons with authority to settle, he was authorized to settle the case on behalf of OSA. That Mr. Gordon now claims to have made a unilateral mistake in agreeing to a provision of the Settlement Agreement does not alter the fact that he had authority to enter into an agreement on behalf of OSA on May 19, 2003.

18.    Second, as also set forth in the Findings of Fact, at no time did Mr. Gordon or counsel for OSA state that the Settlement Agreement was not binding absent a signature on behalf of OSA. Nor did the Settlement Agreement contain any provision stating that it was not binding in the absence of signatures.[3] As set forth above, the only essential prerequisite for a valid settlement agreement is that the parties mutually assent to the terms and conditions of the settlement, and a written, unsigned settlement agreement is enforceable where the parties have expressed an intent to be bound.

---

[3]    Thus, this case differs from the cases cited by OSA in which the agreements at issue contained express clauses stating that the agreements were not effective until signed. *See Ciraramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 324-25 (2d Cir. 1997); *Villeroy & Boch S.a.r.l. v. THC Systems, Inc.*, 1991 U.S. Dist. LEXIS 7352, *4-9 (S.D.N.Y. June 3, 1991).

**Even Applying the Four Factor Test of Winston v.**
**Mediafare Entertainment, an Enforceable Agreement Exists**

19.    OSA also has contended that no enforceable agreement was entered into under the

four factor test of *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

(OSA Mem. at 5-7).  It is questionable whether the four factor test of *Winston*, which was

decided under New York law and which did not involve an agreement that had been reduced to

writing, applies to this diversity action under Connecticut law in which there is a written, but not

fully signed, agreement.  However, I need not decide whether *Winston* applies, because even

under its four factor test, an enforceable settlement agreement exists.

20.    The relevant factors under *Winston* are whether (a) all of the terms of the alleged

contract have been agreed upon; (b) there has been an express reservation of the right not to be

bound in the absence of a writing; (c) there has been partial performance of the contract; and (d)

the agreement at issue is the type of contract that is usually committed to writing.

21.    Applying the foregoing factors, it is clear that the parties entered into an

enforceable settlement agreement.  First, as is evident from the written agreement that the parties

created at the settlement conference [PX 5], all of the material terms of the agreement were

agreed to.  There is no evidence that there were any material terms yet to be agreed upon by the

parties.  Nor is there any evidence that, at the time the parties presented their agreement to the

Court on May 19, 2003, OSA advised the Court or OEI that there were further terms to be

negotiated.  To the contrary, the parties represented to the Court that an agreement had been

reached and that all that remained was the formality of signing.

22.    OSA contends that all material terms had not been agreed upon because,

according to OSA, there was a dispute as to the interpretation of Paragraph 2 of the Settlement

Agreement. The fact that the parties differ as to the *interpretation* of a provision of a settlement agreement, however, does not mean that all the material terms of the agreement have not been agreed upon. The cases relied upon by OSA for this argument involved agreements in which the terms were not reduced to writing and the language of the purported agreement was in dispute.[4] Here, in contrast, "all of the terms and conditions [were] agreed upon by the parties through counsel, and [the] agreement [was] reduced to writing." (PX 6, p. 2).

23.    Second, the Settlement Agreement did not provide that it was not binding until executed. Nor did Mr. Gordon or counsel for OSA advise the Court on May 19, 2003 that the Settlement Agreement was not binding until executed. Rather, the parties represented to the Court that they had reached a written agreement and that all that remained to be done was to sign it, which, based on the representations made to the Court, was a mere formality.

24.    Third, there was partial performance, as the trial that was scheduled to begin on May 20, 2003 was adjourned. *See Mone v. Park E. Sports Med. & Rehab., P.C.*, 2001 U.S. Dist. LEXIS 19445, *7 (S.D.N.Y. November 29, 2001) ("there was partial performance of the agreement in the sense that plaintiff gave up her right to the imminent firm trial date").

25.    Fourth, unlike in the cases cited by OSA, the Settlement Agreement was reduced to writing, in the form of a final version drafted jointly by the parties.

---

[4]    *See Forden v. Bristol Myers Squibb*, 2003 U.S. App. LEXIS 6991, *6 (2d Cir. Apr. 11, 2003) (unpublished) (oral agreement in which no agreement had been reached on material terms, e.g., the release clause); *Winston,* 777 F.2d at 82 (the parties exchanged several drafts but no final draft agreed on); *Millgard Corp. v. White Oak Corp*, 224 F. Supp. 2d 425, 433 (D. Conn. 2002) (parties reported that an oral settlement agreement had been reached but the agreement had not been reduced to writing and not all the terms had been agreed upon); *Grupo Sistemas Integrales De Telecommunicacion S.A. De. C.V. v. AT&T*, 1994 U.S. Dist. LEXIS 11896, *14-15 (S.D.N.Y. Aug. 24, 1994) (oral agreement in which terms "remained to be negotiated between the parties," e.g., the indemnification provision).

**The Purported Ambiguity of Paragraph 2 Does Not**
**Render the Settlement Agreement Unenforceable**

26.    OSA also contends that the Settlement Agreement is unenforceable because, it

asserts, the parties dispute the meaning of Paragraph 2 of the Settlement Agreement.

Alternatively, OSA appears to argue, the Settlement Agreement is unenforceable because OSA

purportedly was mistaken as to the meaning of Paragraph 2 of the Settlement Agreement.  Both

of these arguments are without merit.

27.    First, a purported ambiguity or mistake as to the interpretation of an agreement

does not render the agreement unenforceable or void.  Under Connecticut law, an agreement is

enforceable even where one party says there is a dispute as to the interpretation of a provision of

the contract.  *See, e.g., Gebbie v. Cadle Co.*, 49 Conn. App. 265, 276-77 (Conn. App. 1998)

("According to general principles of contract law, rescission based on a mistaken understanding

of the terms of an agreement is available only where the mistake is mutual, or where one party's

mistake has been caused by the other party's fraud") (citing *Restatement(2d) of Contracts*, §§

152, 153); *Dainty Rubbish Serv., Inc. v. Beacon Hill Ass'n, Inc.*, 32 Conn. App. 530, 537 (Conn.

App. 1993) ("There is no evidence that both parties were mutually mistaken about the same fact.

They simply disagreed on the meaning of the contract.  Consequently, the trial court improperly

found that there was a mutual mistake."); *accord, Callen*, 332 U.S. at 630 ("One who attacks a

settlement must bear the burden of showing that the contract he made is tainted with invalidity,

either by fraud practiced upon him or by a mutual mistake under which both parties acted.");

*Visiting Nurse Association v. VNA Healthcare, Inc.*, 347 F.3d 1052, 1054 (8th Cir. 2003)

(enforcing oral settlement agreement notwithstanding dispute over the interpretation of a

provision of the agreement; merely because parties do not "entertain the same subjective views" as to a contract term's meaning does not render contract unenforceable).

28.     Even if an ambiguity in a term of a settlement agreement were a valid basis to find the agreement unenforceable, I find that the provision at issue, Paragraph 2, is not ambiguous.

29.     Whether a contract provision is ambiguous is a question of law for the Court to determine. *See HLO Land Ownership Assoc. Ltd. v. City of Hartford*, 248 Conn. 350, 357 (1999). I find as a matter of law that the plain language of paragraph 2 of the Settlement Agreement clearly and unequivocally permits OEI to use any Omega trademark on its period timers, and, contrary to OSA's argument, does not restrict OEI to use only the phrase "Omega Engineering Inc." on its timers.

30.     OSA's contrary interpretation of Paragraph 2 – that OEI is prohibited from using the OMEGA mark standing alone on timers, and is limited to use of the "Omega Engineering Inc." – is not supported by the text of Paragraph 2 and makes no sense. Paragraph 2 clearly permits OEI to use "any Omega trademark" on timers. OSA's interpretation simply ignores this plain and unambiguous language. Indeed, OSA's interpretation would render the provision internally inconsistent, in that it would state that OEI could use "any Omega trademark," but then would only permit OEI to use the company name "Omega Engineering Inc." *See State Constr. Co., Inc. v. State Dep't of Pub. Works*, 1994 Conn. Super. LEXIS 2639, *20-22 (Conn. Super. Ct. Oct. 17, 1994) (refusing to interpret a clause in a manner that would be inconsistent with another clause in the contract).

31.     Moreover, even if Paragraph 2 were not unambiguous as a matter of law, the undisputed history of the negotiation of that provision demonstrates that OSA's interpretation of the provision is flatly incorrect, and that there was no basis for OSA's request that OEI enter into

30846870.WPD                                          21

a side letter agreeing to the new meaning of Paragraph 2 proposed by OSA. To resolve an ambiguity in a contractual provision, the court may inquire into evidence from the negotiation antedating the contract. *See Maier v. Arsenault*, 140 Conn. 364, 368 (1953) ("parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the interpretation of the contract"); *Stelco Industries, Inc. v. Bette*, 2 Conn. App. 17, 23 (Conn. App. 1984) (same).

32.    As set forth above (Findings of Fact, ¶¶ 7-12), OSA negotiated for, but did not obtain from OEI, language that would have forbidden OEI from using the OMEGA marks on timers and that would have limited OEI to use of only the phrase "Omega Engineering, Inc." on timers. Subsequently, OSA proposed language, very similar to the final version of Paragraph 2, that expressly permitted OEI to use "any OMEGA mark" on timers provided that OEI also included a reference to "Omega Engineering, Inc." on the products. Particularly in light of this undisputed history of the parties' negotiations, OSA's interpretation of Paragraph 2 of the Settlement Agreement is clearly incorrect. OSA's claimed interpretation of Paragraph 2 would materially change the meaning of the provision to which the parties agreed.

33.    Furthermore, there is no evidence that, prior to the presentation of the parties' agreement to the Court on May 19, 2003, OSA ever advised OEI of its claimed interpretation of Paragraph 2 of the Settlement Agreement. It is settled that a party's unexpressed subjective views as to the meaning of a contractual provision or as to the party's intent in agreeing to a provision are legally irrelevant. *See Gateway Co. v. DiNoia*, 232 Conn. 223, 231-32 (1995) ("[i]n determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties") (quoting *Water & Way Properties v. Colt's Mfg. Co.*, 230 Conn. 660, 666

(1994)); *Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 21 (1985) (same); *W.G. Maltby, Inc. v. Associated Realty Co.*, 114 Conn. 283, 289 (1932) (held parol testimony may be introduced as to the meaning of a contract term "not for the purpose of ascertaining any unexpressed intent, but in order to determine the intent they meant to express by the phrase they used"); *Fairfield Lease Corp. v. Eastern Sportswear Co., Inc.*, 6 Conn. Cir. Ct. 347, 351 (Conn. Cir. Ct. 1970) (held testimony concerning negotiations prior to executing the contract was admissible "for the purpose of showing the meaning of the term as used in the contract," and "not for the purpose of ascertaining any unexpressed intent").[5]

34. Nor is OSA's alleged unilateral mistake as to the meaning of Paragraph 2 a basis on which to find the agreement unenforceable. As set forth above, a mere dispute as to the interpretation of a contract's provision does not render a contract unenforceable.

35. In addition, given the undisputed history of negotiations relating to Paragraph 2, OSA's assertion that it understood that Paragraph 2 prohibited OEI from using the OMEGA mark on OEI's timers is not credible. Indeed, Mr. Gordon acknowledged in his testimony at the hearing that he made a mistake in agreeing to the terms of Paragraph 2 because Ms. Sauser-Rupp

---

[5] For this reason, the testimony of Ms. Christiane Sauser-Rupp, an attorney for OSA, proffered by OSA – relating to the terms of settlement that would be acceptable to OSA – is legally irrelevant, and there is no reason to withhold decision on this motion pending her testimony. [Tr. 93-94] Ms. Sauser-Rupp, who is located in Switzerland, did not come to the United States and did not attend the May 19, 2003 settlement conference on behalf of OSA. Thus, it is undisputed that Ms. Sauser-Rupp did not participate in the negotiation or finalization of the Settlement Agreement, and, indeed, she is not mentioned in OSA's opposition papers. Her unexpressed intention that OSA not enter into an agreement that permitted OEI to use the OMEGA mark on timers is legally irrelevant. Moreover, the February 18, 2004 evidentiary hearing in this matter was set by Order dated December 8, 2003, providing the parties with ample opportunity to arrange for the presentation of all relevant evidence. Hence, even if Ms. Sauser-Rupp had pertinent testimony to offer, and she does not, there is no reason why she could not have been present for the February 18th hearing.

apparently did not want to agree to permit OEI to use the OMEGA mark on timers. This testimony indicates that OSA understood the plain meaning of Paragraph 2 at the time its authorized representatives negotiated the agreement but had a change of heart with respect to the parties' agreement because, after the fact, Ms. Sauser-Rupp expressed displeasure with the agreement that OSA's authorized representatives had indisputably made.

**The Court's Notice to Counsel and OEI's Motion to Extend the Dismissal Date Have No Bearing on the Enforceability of the Settlement Agreement**

36.    Nor is there any merit to OSA's argument that the Notice to Counsel issued by the Clerk of the Court on May 23, 2003 indicated that no agreement was reached by the parties. (OSA Mem. at 3.) The Clerk's notice simply provided a period of time for the parties to obtain the signatures they needed and to file the dismissal with the Court. The Clerk's notice did not, and could not, vitiate the agreement of the parties as entered into by them, and represented to the Court on the record, on May 19, 2003.

37.    Similarly, OEI's motion to extend the dismissal date does not indicate that no settlement had been reached. OEI merely sought to extend the date of dismissal because, contrary to its binding agreement and its representations to the Court, OSA had refused to return a signed copy of the Settlement Agreement. Thus, the motion requested an extension "to a date after this Court has ruled on OEI's Motion to Enforce the Settlement Agreement the Parties Accepted on May 19, 2003."

## CONCLUSION

As I stated at the February 18, 2003 hearing, this is a clear-cut case, and if the parties' Settlement Agreement here is not enforced, then no settlement agreement could ever be enforced. The clear evidence is that there was no reservation of rights on the part of OSA to make the

agreement contingent on its signing. To the contrary, it was represented to the Court that the agreement was going to be signed. Under these circumstances, the Settlement Agreement plainly is binding and enforceable.

For each and every one of the foregoing reasons, I recommend that the Court GRANT Omega Engineering's motion to enforce the parties' May 19, 2003 Settlement Agreement and that the Court order Omega S.A. to comply in full with its obligations under the Settlement Agreement as if Omega S.A. had signed the agreement.


_____
Honorable Thomas P. Smith
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of March, 2004, I caused the foregoing PLAINTIFF OMEGA ENGINEERING INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF A REPORT AND RECOMMENDATION THAT THE COURT ENFORCE THE PARTIES' SETTLEMENT AGREEMENT to be served by Federal Express overnight delivery on the following counsel for defendant Omega, S.A.

Jess M. Collen, Esq.
James Hastings, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY  10562

30846870.WPD                                                  26