# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OMEGA ENGINEERING, INC.,

        Plaintiff,

              Civil Action No. 3:98CV2464(AVC)

    v.

OMEGA, S.A.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF OMEGA ENGINEERING INC.'S RESPONSE TO DEFENDANT
OMEGA S.A.'S OBJECTIONS TO RECOMMENDED RULING ON
PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

   Plaintiff Omega Engineering, Inc. ("OEI") submits this memorandum in response to the

objections of defendant Omega S.A. ("OSA") to Magistrate Judge Smith's March 24, 2004

Recommended Ruling on Plaintiff's Motion to Enforce the Settlement Agreement and for

Attorneys' Fees and Costs ("Report"), which concluded that the parties reached an agreement

regarding settlement of this case on May 19, 2003 and recommended that the Court grant OEI's

motion to enforce the settlement agreement. As Magistrate Judge Smith found, "[t]here is no

doubt [OSA] reached an agreement with OEI, no doubt it settled this case, and no doubt it

reported the case settled to a magistrate judge and later to a district judge in open court." (Report

at 22).

   Magistrate Judge Smith's findings and conclusions regarding the parties' May 19, 2003

Settlement Agreement – which were made on the basis of "the parties' briefs [and] credible

testimony," and which conclude that OSA and its counsel have made numerous misstatements of

facts and law (Report at 2, 22) – are amply supported by the record evidence and the prior

proceedings in this action, and should be adopted by the Court. As set forth in detail in OEI's

30872022.WPD

Proposed Findings of Fact and Conclusions of Law ("OEI Proposed Findings & Conclusions")

that were submitted to Magistrate Judge Smith (which are attached hereto as Exhibit A and

which OEI submits herewith in response to OSA's objections), the evidence is clear that the

parties entered into a binding Settlement Agreement on May 19, 2003, that OSA attempted to

renege on the Agreement on the basis of a tortured reading of the Agreement, that the purported

ambiguity that OSA alleged was present in the Agreement does not exist, and that, even if the

Agreement were ambiguous, a claimed ambiguity in a contractual term, as a matter of law, does

not render the contract void or unenforceable.

Although we rely, in response to OSA's objections, on our Proposed Findings of Fact and

Conclusions of Law, we respond in this memorandum to certain misstatements in OSA's papers.

As Magistrate Judge Smith's Report correctly stated:

> OSA's representations concerning the facts and circumstances surrounding the
> settlement are false and distorting *at best*. Moreover, the court is convinced, as no
> other conclusion makes sense, that OSA assumed that the court would not actually
> read the cases to which it cited: virtually none of the cases cited stand for that
> which OSA avers. OSA's briefs and objections are riddled with distortions,
> material omissions, misstatements of fact, misstatements of law, and unwarranted
> and irrelevant conclusions.

(Report at 22) (emphasis in original). OSA's pattern of misrepresentations and distortions of the

facts and the law is continued in its objections to the Report.

Thus, at the very outset of its objections, OSA flatly misstates its position below, in a

continued effort to improperly use these proceedings to renegotiate the agreement entered into in

May 2003, and in apparent recognition that the position it took below is so utterly lacking in

merit that OSA has no chance on appeal unless it distorts the record. OSA's principal point in its

objections is its assertion that Magistrate Judge Smith "misconstrue[d] the disputed issue"

because, according to OSA's objections, "OSA does not contend that OEI cannot use its

OMEGA marks on certain goods" and "OSA has never disputed that the Agreement says that
OEI may use the mark OMEGA . . . on timing devices, so long as it also places '*Omega
Engineering, Stamford Connecticut*' in close proximity." (Defendant Omega S.A.'s Objections
to Recommended Ruling on Plaintiff's Motion to Enforce the Settlement Agreement ("OSA
Objections") at 3, 5 ).  These statements are false, are belied by the record, and demonstrate
OSA's continued efforts to distort the record in this matter and vexatiously compound these
proceedings.  OSA's prior submissions to the Court take the *exact opposite* position from its
current position in its objections.  In repudiating the settlement agreement and opposing this
motion, OSA has tried to create an issue regarding Paragraph 2 of the May 19, 2003 settlement
agreement, which states in pertinent part:

> If OEI uses the name Omega Engineering or any Omega trademark
> on the goods themselves, Omega Engineering will include a
> reference to Omega Engineering, Inc., Stamford, Conn. or Omega
> Engineering, Inc. and its location.

(*See* 2/18/2004 Tr. at 51 and PX 5, ¶ 2).  Contrary to the statements in its current objections set
forth above, OSA has *consistently* argued that this language in Paragraph 2 of the settlement
agreement *bars* OEI from using the trademark OMEGA on timers and *only* permits OEI to use
the company name "Omega Engineering, Inc." and its geographical location.  Thus, in a May 27,
2003 email to OEI's counsel, in which OSA attempted to repudiate the May 19, 2003 settlement
agreement by refusing to sign it, OSA's counsel stated:

> **We all agreed that the OMEGA mark would *never* be used by
> itself on timers, only OMEGA ENGINEERING, STAMFORD"**

and requested a "side letter" stating that the provision in question "be read as":

> **Omega Engineering will *only* use the name or mark as "Omega
> Engineering, Inc."**

(*See* 2/18/2004 Tr. at 63-64 and PX 8) (emphases added).  Similarly, OSA stated in its surreply brief:

> **[OSA] is stating that when marking period timers, OEI will *only* use the mark as 'OMEGA ENGINEERING, INC. STAMFORD CONNECTICUT,' or something similar.**

(OSA Sur-Reply at 1) (emphasis added).  Consistent with this long-asserted position of OSA, OSA's witness Neal Gordon testified at the February 18 evidentiary hearing as follows:

> **I was asked to make certain that Omega Engineering would neither register nor use the trademarks Omega and their logo on timing devices of any sort.**

(2/18/2004 Tr. at 86).[1]

OSA's numerous past representations to this Court and to OEI are directly contrary to OSA's new-founded claim that it merely asserts that under the parties' agreement, the mark OMEGA must be placed "in close proximity" to the words "Omega Engineering." (OSA Objections at 5).  Indeed, one can search OSA's briefs below and the testimony at the evidentiary hearing to enforce the settlement agreement in vain to find any assertion by OSA to the effect that it had not signed the Settlement Agreement because it was concerned about the "proximity" of the corporate name Omega Engineering, Inc. to the trademark OMEGA on period timers.  This position of OSA has been made up on appeal from Magistrate Judge Smith's ruling, in an apparent effort to use the proceedings to renegotiate the parties' Agreement, and to distort the record and confuse the issues in this clear case.

---

[1]     As Magistrate Judge Smith found, there is a clear "inconsistency" between this testimony and Mr. Gordon's conduct in agreeing to Paragraph 2 of the Settlement Agreement. (Report at 20, 21).  However, the testimony does plainly set forth OSA's position below, which is flatly contrary to what OSA has told this Court in its current objections.

Magistrate Judge Smith understood the interpretive dispute invented by OSA, and found

that OSA's position:

> does not rectify an ambiguity in the original language. To the
> contrary, it creates ambiguity and completely changes the plain
> meaning of the language as it was originally drafted.

(Report at 20). Thus, Magistrate Judge Smith correctly found that it was "clear" that Paragraph 2

of the agreement is *not* ambiguous, and correctly held that the existence of an ambiguity would

not, in any event, alter the enforceable nature of the contract the parties entered into on May 19,

2003. (Report at 20).[2]

OSA's objections to the Report also contain numerous other misrepresentations and

distortions of the facts and the law and make other arguments that are vexatious and asserted in

bad faith. To take but a few examples:

- OSA misleadingly asserts, *inter alia*, that it "never said it intended to sign the

  agreement," it never agreed that obtaining a signature was a mere formality, and it

  stated that a signature from Switzerland was necessary "in order to finally dispose

  of this action." (OSA Objections at 6). However, the transcript of the May 19,

  2003 proceedings shows that, on the record before this Court and in the presence

  of both parties, Magistrate Judge Smith stated "it's been represented to me by

---

[2]     In this regard, it should be noted that the issue of the *interpretation* of the parties'
agreement is *irrelevant* to the only issue before this Court, which is whether the parties
entered into a settlement agreement on May 19, 2003 (which, as Magistrate Smith
correctly concluded, they did). The fact that OSA later invented a purported dispute as to
the interpretation of one of the terms of that written agreement does not alter the binding
nature of the agreement. (*See* OEI Proposed Findings & Conclusions at 20, ¶ 27 and
cases cited therein). Moreover, set forth above, Magistrate Judge Smith correctly found
the language at issue is *not* ambiguous (*See* Report at 19-21; *see also* OEI Proposed
Conclusions at 21-24, ¶¶ 29-35).

counsel who are present that the document which contains all of the terms and conditions *will be signed* by the appropriate individual, located in Switzerland." (5/19/2003 Tr. at 2) (emphasis added). Counsel for OEI similarly stated "we have reached an agreement, it has been reduced to writing. We simply need the signatures of the parties, and since one party is in Switzerland, we thought we needed a little time to get the signatures." (*Id.* at 3). The record is clear that neither Mr. Gordon nor counsel for OSA – both of whom were present in the courtroom – disputed these representations to the Court. (2/18/2004 Tr. at 59, 90-92). Indeed, when the Court asked "You're pretty confident, Attorney Collen, that you're in control of this situation as far as being able to note this matter as closed?," counsel for OSA responded with an unequivocal "Yes, Your Honor." (5/19/2003 Tr. at 3). Similarly, Mr. Gordon testified that it was his understanding "that the case was settled on May 19th, 2003" and that "the parties had agreed upon terms [of] settlement on May 19th, 2003." (2/18/2003 Tr. at 86). There is absolutely no evidence in the record that OSA ever advised OEI or the Court that the parties' written agreement was contingent on the agreement being reviewed, approved or signed by any other OSA representative.

- OSA falsely asserts that it "was given clear indication from the Court that if testimony from Ms. Sauser Rupp, an in-house attorney at OSA in Switzerland, was requested at the hearing, that a continuance would be granted" (OSA Objections at 25) and that the Court "acknowledges" in the Report that it would permit Ms. Sauser Rupp to testify. (*Id.* at 3). In fact, as Magistrate Judge Smith correctly states in the Report in responding to this same argument by OSA, the

Court had previously indicated that a continuance would be granted "*if* Ms. Sauser-Rupp's testimony was *necessary*." (Report at 8 n.7) (emphasis added). That testimony, the Court correctly found, was *not* necessary because it would be irrelevant: Ms. Sauser Rupp was not at the parties' May 19, 2003 settlement conference, and there is no evidence that her subjective views on settlement or her alleged limitations on Mr. Gordon's authority ever were communicated to OEI. (*See* OEI Proposed Findings & Conclusions at 22-23, ¶ 33 & n.5; Report at 8 n.7) OSA simply ignores the authority cited by OEI that a party's unexpressed intent in agreeing to a contract provision is irrelevant and the authority cited in the Report that a party is entitled to rely on the apparent authority of another's representative in the absence of express limitations on the representative's authority. (*See* Proposed Findings & Conclusions at 22, ¶ 33; Report at 4 n.3).

• OSA continues to assert that Magistrate Judge Smith should have recused himself on the ground that he had personal knowledge regarding the motion, despite the lack of a legal basis for recusal (*See* OEI Proposed Findings & Conclusions at 11-13, ¶¶ 1-6; Report at 23-24) and despite inexcusable delay on part of OSA in making a recusal request. Thus, OSA has known since July, 2003 that this motion had been referred to Magistrate Judge Smith, yet delayed until the middle of the evidentiary hearing, at the close of OEI's case, to make an untimely request for disqualification that plainly was calculated to further delay and compound these proceedings. (*See* OEI Proposed Findings & Conclusions at 13-14, ¶ 7). Moreover, OSA now asserts for the first time that Magistrate Judge Smith should have recused himself on the ground of personal bias or impartiality, although it

30872022.WPD                                   7

made no such request at the February 18, 2004 hearing or prior thereto, or in its

March 8, 2004 objections to OEI's Proposed Findings and Conclusions.

- OSA misleadingly asserts that Magistrate Judge Smith drew conclusions from the

  evidence "without ever finding . . . Mr. Gordon's testimony to be non-credible."

  (OSA Objections at 3).  In fact, the Report at least twice refers to Mr. Gordon's

  testimony as containing an "inconsistency."  (Report at 20-21).

- OSA distorts the record by asserting that "[t]here was no evidence or testimony to

  support the court's 'apparent authority' argument" – that is, Magistrate Judge

  Smith's finding that Neal Gordon had apparent authority to bind OSA to a

  settlement agreement.  (OSA Objections at 13).  This assertion ignores the

  undisputed evidence that by Order dated May 8, 2003, the Court had directed that

  counsel for the parties be accompanied to the May 19, 2003 settlement conference

  by "appropriate persons with authority to settle" and that Mr. Gordon was OSA's

  "authorized representative" pursuant to the May 8 Order.  (2/18/2004 Tr. at 33,

  85).  It also ignores the fact that there was absolutely no evidence that OSA had at

  any time communicated to the Court or to OEI any limitations on the

  "parameters" within which Mr. Gordon was authorized to settle, and ignores

  settled law holding that OEI was entitled to rely on Mr. Gordon's apparent

  authority at the settlement conference. (*See* Report at 4 n.3)

- OSA continues to misleadingly cite and rely upon cases in which, unlike this

  case, the parties had merely discussed orally the terms of a settlement agreement,

  but had omitted material terms from their discussions or had later disputed the

  precise terms of the settlement. *See, e.g., Forden v. Bristol Myers Squibb*, 63 Fed.

Appx. 14 (2d Cir. 2003); *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78

(2d Cir. 1985); *Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d. 425, 433 (D.

Conn. 2002); *Groupo Sistemas Integrales de Telecommunicaion S.A. v. AT&T*

*Communications, Inc*, 1994 U.S. Dist LEXIS 11896 *14 (S.D.N.Y. 1994).

Indeed, OSA's reliance on these cases prompted Magistrate Judge Smith to

observe "the court is convinced, as no other conclusion makes sense, that OSA

assumed that the court would not actually read the cases to which it cited:

virtually none of the cases cited stand for that which OSA avers." (Report at 22).

Here, in sharp contrast to the cases relied upon by OSA, the parties *did* reduce all

of the terms of their agreement to writing, and OSA simply has reneged on its

agreement.

The remaining assertions in OSA's objections are equally baseless and are addressed in

the Proposed Findings and Conclusions attached as Exhibit A.

Dated:  April 22, 2004

Respectfully submitted,

By: _____

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Of counsel:

Michelle R. Tepper

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

*Attorneys for the Plaintiff Omega Engineering, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2004, I caused the foregoing PLAINTIFF OMEGA ENGINEERING INC.'S RESPONSE TO DEFENDANT OMEGA S.A.'S OBJECTIONS TO RECOMMENDED RULING ON PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT to be served by Federal Express overnight delivery on the following counsel for defendant Omega, S.A.:

Jess M. Collen, Esq.
James Hastings, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY  10562

Kasey Stein

30872022.WPD

10