IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

FILED
2004 NOV 10 A 10: 52
U.S. DISTRICT COURT
NEW HAVEN, CT

---------------------------------------------------------x
OMEGA, S.A.,                    )
                                )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No. 3:01 CV 2104 (MRK)
                                )
OMEGA ENGINEERING, INC.,        )
OMEGA SCIENTIFIC, INC., and     )
OMEGA PRESS, INC.,              )   November 9, 2004
                                )
        Defendants.             )

OMEGA ENGINEERING, INC.,        )
        Counterclaim-Plaintiff  )
                                )
        v.                      )
                                )
OMEGA, S.A. and                 )
THE SWATCH WATCH GROUP LTD.,    )
---------------------------------------------------------)

### PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR STAY

Plaintiff Omega S.A. ("OSA") submits this memorandum of law reply to the opposition filed by defendants Omega Engineering, Inc., Omega Scientific, Inc., and Omega Press, Inc. ("OEI") to OSA's motion for stay.

### DISCUSSION

**I.   OEI Fails to Show How It Will Suffer Any Harm if the Motion to Stay is Granted**

As OSA stated in its memorandum in support of its motion for stay dated October 6, 2004, the Second Circuit has adopted a four part analysis to determine whether a stay pending

appeal is appropriate: "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Greenridge v. Allstate Ins. Co.*, 2003 WL 22871905, at *2 (S.D.N.Y. Dec. 3, 2003) (*citing Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (*citing Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

In its opposition brief, OEI argues that: (1) OSA has no real chance of success on appeal; (2) OSA will not suffer irreparable harm in the absence of a stay; and (3) OSA's "tactical delay" in moving for a stay warrants denial of the motion for stay. (*See* OEI's memorandum of law in opposition to OSA's motion for stay at 6, 8, and 10.) OEI conspicuously fails, however, to address one factor that is very important in the analysis - whether a stay would cause any risk of any harm to OEI.

In recounting the four factors enunciated above, and in describing how it is sometimes difficult to weigh the factor of likelihood of success, the *Greenidge* court stated:

> "[i]t is helpful in analyzing a case such as this where, as will be discussed below, one of the terms in the equation – the potential harm to Allstate *(the party opposing the stay)* – is zero. That being the case, the harm to Allstate if the party if the stay is granted, multiplied by the probability that Allstate will prevail on appeal, no matter how large, is still zero. On the other hand, as long as Ms. Seay *(the party moving for the stay)* has some small chance of succeeding on her appeal and can demonstrate some harm if the stay is denied, then the product of these two factors will be a finite number greater than zero, and the stay should be granted."

*Id.* at 2. (*Parentheticals inserted.*)

The lack of harm to the nonmoving party is what led the Court in *Greenidge* to grant a motion for stay pending appeal, despite finding that the movant's chances of winning the appeal were "slim." *Id.* at 3. Because the movant's prospect on appeal were "not hopeless", *id.*, and because the harm to the movant "could be" significant, the Court granted the motion for stay. *Id.*

2

In this case, OSA has a likelihood of success on the merits and has demonstrated real potential harm if the stay is not granted.

Interestingly, the *Greenidge* Court reached its conclusion despite the nonmoving party's complaint that it would be placed at a tactical disadvantage if the stay was granted. *Id.*[1] The Court stated that the harms alleged by the non-moving party in *Greenidge* would "flow from the reversal (of the court's decision) ..., not from the stay itself." *Id.* (*parenthetical added.*)

OEI's argument suffers from the same defect: there has been no demonstration of (or even an attempt to demonstrate) any harm that could possibly result to OEI if the stay is granted. As that potential harm can only be gauged at zero, OEI's opposition to the motion for stay should be overruled on this basis alone.

## II.     OSA has at Least a Colorable Likelihood of Success on the Merits

OSA will not repeat the issues of appeal described in its memorandum in support of its motion for stay dated October 6, 2004.[2] OSA will reiterate, however, that these issues are important issues which find support in case law that is being argued on the appeal. Arguments contained in the appeal include, but are not limited to: that the settlement was not consummated due to a legitimate dispute over a material term in the settlement agreement and absence of

---

[1] This complaint is analogous to the charge made by OEI to the effect that OSA has filed its motion for stay only for tactical reasons, discussed *infra* at 5.

[2] OSA respectfully refers the Court, however, to: OSA's Objections to Recommended Ruling on Plaintiff's Motion to Enforce the Settlement Agreement, dated April 9, 2004, (annexed hereto as Exhibit A) and OSA's Opposition to OEI's Motion to Force Settlement, dated June 26, 2003, (annexed hereto as Exhibit B). These pleadings are filed in the case bearing docket number 98-CV-02464 (AVC), pending the United States District Court of Connecticut in Hartford, which has been previously referred to in this litigation as "Omega I." *See also* Section A of OSA's Memorandum in Support of its Motion for Stay dated October 6, 2004, Docket Entry # 131, for the purpose of illustrating the bases of the appeal, and in support of its Reply stated herein.

3

execution by OSA; that Magistrate Judge Thomas Smith should have been recused; and that the trial court erred by refusing to allow the testimony of an OSA representative.[3]

The issues on appeal have support in the relevant case law. *See e.g., Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, (2nd Cir. 1997) and *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, (2nd Cir. 1985), both of which have been cited by OSA to the Court in its initial memorandum in support of the motion for stay. The factual record and the legal arguments, as set forth in the materials that OSA identifies in footnote 2, demonstrate that OSA has *at least* a "colorable" chance that OSA will succeed on appeal. None of OEI's arguments, set forth at in Section I of its memorandum in opposition, even if successful on appeal, do not defeat the threshold showing that OSA is required to make: a "colorable chance" of success on appeal in combination with no possible harm to OEI if the stay is granted. As such, OEI's objection to the motion to stay should be overruled.

### III.  **OSA Will Suffer Irreparable Harm in the Absence of a Stay**

Beginning on Page 8 of its memorandum, OEI makes the preposterous argument that OSA concedes that it will suffer no irreparable harm in the absence of a stay. This argument makes no sense; OEI apparently chooses to blind itself to the valid claims of irreparable harm made by OSA while concurrently addressing the merits of each irreparable harm claim made by OSA. .

OSA has claimed, and continues to maintain, that it will suffer irreparable harm for several reasons. First, if the settlement agreement is enforced, then dismissal of OSA's pending

---

[3] This list of issues is for purposes of illustration only; all of the issues set forth in the notice of appeal are meritorious.

4

trademark cancellation proceedings will be required. In its initial memorandum in support of its motion for stay, OSA acknowledged that if OSA is successful on appeal, a new Court order could be obtained to correct what would then be an apparently "incorrect" cancellation. (*See* OEI's memorandum in opposition at 9.)

Due to this avenue of relief, OEI leaps to the conclusion that no irreparable harm would be sustained. OEI's argument fails to recognize that the cancellation of its proceedings would cause harm of its own because any cancellation would be of public record (to the world) for at least a definable period of time. Like the retraction of an erroneous news story, the later correction by a Court order will not make up for harm (to OSA's actual and potential market share) during that time period. Neither party to this action would need any act or omission that could add further uncertainty or ambiguity of record as to their respective marks or goods.

Also, Paragraph 4 of the settlement agreement requires OSA to file a third amended complaint in that "drops" the allegations contained in the current complaint relating to the cancellation actions against OEI's registrations described in Paragraph 1 of the Settlement Agreement. The same paragraph requires OSA to remove the claims for relief pertaining to those paragraphs; expressly prohibits OSA from making claims or assertions in this case relating to applications by OEI to register or use the "Omega mark" or "Omega design" on period timers or industrial clocks; and sets forth that OEI also will not make any claims or assertions in this case to the effect that OSA breached an agreement reached in 1994 by filing its cancellation proceedings.

OEI makes the same type argument it makes above. OEI argues that OSA can seek appropriate relief by filing a motion under Fed. R. Civ. Pro. 60 (b) (5). This argument makes the same erroneous assumption that is contained in OEI's prior

5

argument: that the harm can be "fixed" later. The argument also advances no reason why these potential harms (and inconvenience to the Court) should not be avoided.[4]

### IV.  OEI's Claim that OSA's Motion for Stay Should be Denied Because it is a Delay in Tactics is Specious and Should Be Ignored

OEI claims that OSA's "tactical delay" in moving for a stay warrants denial of the motion for stay. In support of this assertion, OEI relies on *Hirschfeld v. Board of Elections*, 984 F.2d 35 (2d Cir. 1993). OEI's reliance on *Hirschfeld* is clearly misplaced.

*Hirschfeld* involved a civil rights lawsuit wherein a district court held in favor of the plaintiff, directing the defendant to place the plaintiff on an election ballot. After the plaintiff continued with his campaign efforts, and six days before the election, the defendant filed an appeal of the order and a motion for stay pending the appeal. *Id.* at 37, 38. The Court noted that In addition to disregarding Rule 8 (a) of the Federal Rules of Appellate Procedure (by filing the application not with the district court but with the appellate court), the defendant filed its notice of appeal four weeks after the judgment was entered, on the Wednesday before the Tuesday of an election.

The Court characterized these maneuvers as "misleading at best", *id.* at 38, and mentioned how the defendant had fostered the plaintiff's expectations that he would be on the ballot. The Court denied the motion for stay, finding that the timing of the notice of appeal and motion for stay suggested that the defendant was more interested in delay than in the merits of an appeal. *Id.*

---

[4] Given the history of the litigation between the parties, it is also doubtful that any motion filed under Rule 60 would be uncontested. As such, OEI's proposed resolution only leaves the door open for the expenditure of more judicial resources, which door would remain shut if the stay is granted.

6

The facts of the instant case are not remotely close to the facts of *Hirschfeld*. In an effort to minimize undue time and expense on behalf of both parties, OSA notified OEI that it planned on filing a notice of appeal and was considering filing a motion to stay. (*See* letter from Jess Collen to Paul Llewelyn, annexed to OEI's memorandum as Exhibit B.) In that letter, OSA reminded OEI of a September 15, 2004 deadline to file summary judgment motions, and solicited comment from OEI as to how to avoid unnecessary time and expense on the summary judgment motions. That OEI chose not to respond until September 7, 2004, and that OEI only sought confirmation that OSA would amend its pleadings (contrary to what OSA has asked for in its letter) evidences only a failure of OEI to mitigate subsequent litigation efforts.

Further, the arguments being made in the appeal are arguments that have been long known to OEI, because many of the same arguments have been made during the course of this litigation. (*See* OSA's objections to the recommendation of ruling, annexed hereto as Exhibit A, and OSA's opposition to OEI's motion to enforce settlement, annexed hereto as Exhibit B.) Finally, there is no imminent event, like an election, that is looming over the parties within the relatively near future.

In sum, this argument echoes the complaint made by the nonmoving party in *Greenidge*, wherein the Court noted that "[B]y contrast, [non-movant] has demonstrated no prejudice that would result from granting the stay. While it complains that it would be placed at a tactical disadvantage and would incur additional litigation costs if the stay is granted and [movant] were subsequently [successful on appeal], these harms would flow from the reversal of [the court's order], not from the stay itself. The only real consequence for [non-movant] is that the determination of its pending summary judgment motion will be deferred, and that is not prejudicial." *Greenidge*, 2003 WL 22871905, at *3.

7

## CONCLUSION

The harm to OEI, if the stay is granted, multiplied by the probability that the OSA will prevail on appeal, no matter how large, is zero. While OSA believes that it will succeed on appeal, all that is required to enter a stay, pursuant to *Greenidge*, is "some small chance"[5] of success on appeal. Because OSA has at least a chance of success on appeal, and has demonstrated some harm if the stay is denied, the product of these two factors is greater than zero. The balance of equities tips in OSA's favor, and as such, the stay should be granted.

By: Respectfully submitted
for Plaintiff,

_____
Jess M. Collen (CT20918)
Matthew C. Wagner (CT25926)
Philip J. Miolene (CT01377)
COLLEN *IP*
THE HOLYOKE-MANHATAN BUILDING
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
(914) 941-6091 (facsimile)
jcollen@collenlaw.com (email)

Dated: Ossining, New York
November 8, 2004

---

[5] *See* discussion of *Greenidge, supra* at 2.

# EXHIBIT A