IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A.,<br><br>    Plaintiff,<br>v.<br><br>OMEGA ENGINEERING, INC.,<br>OMEGA SCIENTIFIC, INC., and<br>OMEGA PRESS, INC.,<br><br>    Defendants.<br><br>OMEGA ENGINEERING, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>OMEGA, S.A. and<br>THE SWATCH GROUP LTD.,<br><br>    Counterclaim-Defendants. | Civil Action No.:<br>3:01 CV 2104 (MRK) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS, THE DECLARATION OF PETER STIERL, THE DECLARATION TO BRADFORD L. COLE, AND NUMEROUS HEARSAY EXHIBITS**

Omega S.A. ("OSA") and The Swatch Group Ltd. (collectively "Plaintiffs") hereby oppose Defendants' Motion to Exclude Peter Stierli's Declaration, Plaintiffs' Supplemental Statement of Undisputed Facts and the Declaration of Bradford L. Cole, and "numerous hearsay exhibits."

**PRELIMINARY STATEMENT**

The Court should deny Defendants' motion for several reasons. First, Defendants' motion suffers from flawed legal reasoning and has distorted the key facts. Defendants have misapplied

the rules of evidence and have merely seized upon this as just another opportunity to recast and repeat their arguments on summary judgment. Defendants fail to recognize that even if the Court accepted Defendants' position on discrete evidentiary issues, the evidence is admissible for other purposes. Second, the present motion seeks to deny Plaintiffs' ability to respond to non-credible statements and generally uncontested issues. Defendants have invited additional evidence and declarations to rebut their baseless claims. Finally, Defendants have raised exaggerated statements regarding prejudice and fairness. However, as will be seen, Defendants have engaged in the same evidentiary practices. The Court should disregard Defendants' claims of prejudice and lack of opportunity to depose. Plaintiffs will address each of Defendants' contentions below.

## DISCUSSION

### A. The Declaration of Peter Stierli, OSA's VP and CFO, is Admissible

1.   Defendants had Due Notice of Peter Stierli.

Defendants argue at length they had no notice of Mr. Stierli. Def. Mot. at 4-5. This is false. Defendants had actual knowledge of Mr. Stierli just as they knew of other witnesses they chose not to depose. Furthermore, the parties' websites have been the subject of much discovery in these litigations, produced by the parties and the identity of Mr. Stierli, as an officer and member of the board of directors is included in this disclosure. Christiane Sauser Rupp, OSA's designated Rule 30(b)(6) corporate witness, identified Mr. Stierli as OSA's chief finance officer and as a person who would have knowledge on the interplay between OSA's affiliate, Omega Electronics, and OSA, specifically with regard to new products. See Dep. Sauser Rupp, attached hereto as Exhibit A at 163. It was made quite clear to Defendants during Mr. Sauser Rupp's deposition that she could not testify to all of the subjects listed in the notice of deposition. She

2

identified several people in her deposition, including Mr. Steirli, whom Defendants chose not to depose.

In addition to actual notice of Mr. Steirli and his position at the company, Defendants had ample opportuntiy to learn of Mr. Stierli due to his position at OSA, which is a matter of public record in countless resources. Mr. Stierli is the Chief Finance Officer and Vice President of Omega S.A. Mr. Stierli has been an executive at OSA throughout the past 16 years, and throughout the three lawsuits between the parties. He is listed at OSA's website. The identity of OSA's board of directors, as is the case for many corporations, is a matter of public record.

OEI chose not to depose Mr. Stieirli; this does not constitute a ground on which to exclude his testimony.

2. <u>Defendants' Invited a Reply Declaration by its Arguments</u>

Summary Judgment serves to narrow issues for trial. *See Williams v. United Credit Plan of Chalmette, Inc.*, 526 F.2d 713, 714 (5th Cir. 1976); *Tinman v. Blue Cross and Blue Shield of MI*, 2002 WL 230803, 3 (E.D.Mich.,2002); *Calfon Const., Inc. v. U.S.*, 17 Cl.Ct. 171, 172 (Cl.Ct.,1989). Defendants seek to create issues where there is no genuine dispute, in direct contrast to the requirements of Local Rule 56 (requiring that disputed issues of material fact be genuine.)

In their opposition to Plaintiffs' motion for summary judgment, Defendants contested whether Plaintiffs have rights to the OMEGA Mark in foreign countries for watches and timepieces. Def. Opp. To Pl. Mot. Sum. Judg. at 10. Plaintiffs boast over 1000 trademark

registrations for its OMEGA Mark in over 188 countries. Dec. Steirli ¶ 6. To date, Plaintiffs' rights to the OMEGA Mark for watches and timepieces has not been subject to a genuine dispute. Defendants' challenge deserved a response by way of a declaration, which addressed Plaintiffs' rights to the OMEGA Marks worldwide. Mr. Stierli's declaration addressed these points.

Similarly, a response was in order on the issue of harm and injury. Mr. Stierli had been identified to OEI in the course of this lawsuit at as the Chief Finance Officer of OSA. Obviously, he has knowledge as to Plaintiffs' most valuable asset- the Omega Mark, and harm or injury to that asset- Defendants' conduct. Thus, a declaration from him was not only clearly foreseeable and highly appropriate, but entirely logical as well.

Defendants admitted that a declaration from an OSA staff employee, Ms. Hlavacek would have been appropriate in response to their opposition. However, a declaration from her would have been submitted in the same procedural context as that of Mr. Stierli: both witnesses were identified during the same deposition, that of Mrs. Sauser Rupp; Defendants chose not to depose either of these witnesses; and both declarations would have been submitted as reply declarations. By their own admission, if Ms. Hlavacek's declaration would have been admissible, then, Mr. Stierli's should be just the same. Defendants' preference that one witness should be used for a declaration as opposed to the other is not grounds for preclusion.

   3. <u>The Declaration of Peter Stierli does not "Contradict" the Testimony of Christiane Sauser Rupp</u>

The declaration of Mr. Stierli is consistent with discovery throughout this case. Plaintiffs have consistently maintained that they have been harmed by Defendants' conduct. Plaintiffs have consistently maintained that the OMEGA Mark is a core asset. Plaintiffs have consistently maintained that they have superior rights to the OMEGA Mark for timing devices in the United States and around the world. Mr. Stierli's declaration does not depart from these topics. Mr.

4

Stierli's declaration directed toward expenses incurred while policing Defendants' trademark activities does not contradict, let alone "directly contradict" Ms. Sauser Rupp's lack of knowledge of an instance of actual trademark blocking.

It warrants comment that Defendants never asked Ms. Sauser-Rupp how much it costs Plaintiffs to monitor Defendants' activities. Thus, Mr. Stierli's declaration on these issues could not possibly contradict her testimony because Defendants did not query her on those subjects.

4. <u>The Declaration of Peter Stierli was Succinct and Relevant to Rebut Defendants' Allegations.</u>

Defendants' also move to exclude the declaration of Mr. Stierli on the grounds of relevance. However, each topic of Mr. Stierli's declaration is directly relevant to issues in this case:

- Mr. Stierli has factually documented marketing expenditures of OSA and worldwide sales for each of the past five years. This evidence goes directly to the strength of the OMEGA Mark, which was challenged by Defendants.[2] This evidence also shows Plaintiffs' investment in its mark. Because Defendants' conduct threatens Plaintiffs' investment, this evidence goes directly to injury.

- Mr. Stierli stated that the Omega Mark is a core asset. Because Defendants' conduct threatens the value of the Omega Mark, this evidence goes directly to harm and injury in this case.

- Mr. Stierli also discussed how Defendants' conduct causes real harm to Plaintiffs in

---

[2] Further, it should be noted that OEI's contention that OSA's OMEGA Mark is not strong in science and industry is irrelevant to the fact that the mark is recognized in the time and watch industry. Even if OEI is known to scientific or industrial communities for its scientific and industrial tools, the OSA mark is also known, both within and outside the scientific and industrial arenas, to be associated with watches and timing devices. In conducting a *Polaroid* analysis, the focus should be on whether consumers are likely to be confused. *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) (citing *Paddington Corp. v. Attiki Imps. & Distrib., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993)). Here, precisely because OSA's mark is known to be associated with watches and time devices, those in the scientific community who are exposed to both the OEI and OSA marks, are likely to be confused.

the form of in-house policing costs, which speaks to the issue of company assets devoted to OEI issues that could be invested elsewhere. Such statements could not be more relevant.

Defendants argue that the worldwide sales figures are irrelevant because the Lanham Act encompasses sales in the U.S. only. Defendants' reliance on the Lanham Act in this context, by this stage of the litigation, would appear to be less than genuine. Defendants challenged Plaintiffs' rights to and the strength of the OMEGA Mark worldwide. Def. Opp. To Pl. Mot. Sum. Judg. at 10. Defendants cannot now claim that evidence submitted to rebut to this challenge is irrelevant. Worldwide marketing and sales figures are indeed relevant to the issue of OEI's practices of actively pursuing intellectual property rights that infringe on the established rights of OSA around the world. In addition, Plaintiffs' unfair competition claim is based on CUTPA, and the Lanham Act as well as Defendants' worldwide behavior. To preclude evidence on the basis of the Lanham Act, where the claim clearly is based on CUTPA, and not limited to the Lanham Act, would be erroneous.

Furthermore, Defendants argue that the declaration is irrelevant because the worldwide figures are not limited to figures for the OMEGA Mark, as opposed to other marks. This is simply wrong. The first sentence of that applicable paragraph states; "Omega S.A. has spent substantial sums to promote and protect the OMEGA and Ω trademarks in the United States and around the world." Dec. Stierli at ¶ 8. The remainder of the paragraph listed the worldwide sales and promotional figures. Clearly, the figures represent expenditures for the OMEGA Marks. These figures are relevant.

In summary, the Declaration of Peter Stierli should not be excluded. It was submitted in direct rebuttal to arguments made by Defendants. Defendants had knowledge of Mr. Stierli. Mr. Stierli's declaration is consistent with the testimony of Plaintiffs' witnesses. Finally, Mr. Stierli's

declaration is relevant.

### B. The Court Should not Exclude the Declaration of Bradford L. Cole and his Investigation Report, Plaintiffs' Exhibit 31.

Defendants sold and offered for sale watch batteries under the OMEGA Mark at their website at www.omega.com. Defendants never disclosed this fact to Plaintiffs, but Plaintiffs discovered the watch battery advertisements during a routine review of Defendants' website.

Bradford L. Cole ("Mr. Cole") is a private investigator. He was hired by Plaintiffs for the purpose of investigating Defendants' websites and activities with respect to the marks at issue. He ordered a set of watch batteries from Defendants' website. Mr. Cole sent them to Plaintiffs along with an investigation report of a type typically created by an experienced private investigator such as Mr. Cole. Plaintiffs attached the investigation report to their motion for summary judgment as Exhibit 31.

In Defendants' opposition papers and in the present motion, they contend that the report is hearsay and unauthenticated. However, the report falls with the "business records exception" to the hearsay rule. Fed. Rule. Evid. 803(6). The report clearly indicated that it was created in the normal scope of Mr. Cole's investigation business. Pl. Mem. Sup. Sum. Judg. Ex 31. His report clearly documented his work and investigation of Plaintiffs' website. Furthermore, the report also states that it was created at the direction of Plaintiffs' attorneys and sent to Plaintiffs' attorneys. Pl. br. Sup. Mot. Sum. Judg. at 9, 30.

The touchstone of admissibility under Rule 803(6) is reliability. 'The principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir.1993) (quoting *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir.1987)). Defendants have not contested the reliability of the information contained in Mr. Cole's investigation report or his declaration. To the contrary, they

have admitted that Defendants sold watch batteries at their website, thus verifying the very content that they now seek to exclude. Def. Mot. to Pre. at 6. In addition, Plaintiffs' Ex. 30, which immediately preceded Mr. Cole's investigation report, contains printouts from Defendants' website showing the advertisement of "watch batteries." There can be no question as to the trustworthiness of Mr. Cole's report, which merely stated that Defendants advertised and sold watch batteries.

Notwithstanding, Plaintiffs submitted a declaration of Mr. Cole in direct response to Defendants' position that the investigation report was inadmissible. The declaration merely repeats the information already stated in Mr. Cole's report. Now Defendants complain that they did not have the opportunity to cross-examine Mr. Cole because the declaration was submitted with Plaintiffs' reply brief.

Defendants' timeliness argument is unavailing. The watch batteries were not discovered and ordered until after the close of discovery, and until after all but one deposition had taken place in this case. As soon as this was discovered and the evidence was available, it was disclosed to Defendants. Mr. Cole was not involved in this case until discovery was closed. The timing of Mr. Cole's involvement in this case is due in no small part to Defendants' failure to disclose that it was selling and advertising watch parts at their website, which they were required to do in response to discovery requests – but failed to do so. Plaintiffs had no reason to know that Mr. Cole would be involved in this litigation. If Defendants seriously challenge the veracity of his report, then they are free to request additional discovery. The Declaration of Bradford L. Cole and his investigation report, Ex. 31 to Plaintiffs' opening brief in support of summary judgment, should not be excluded.

C. **The Court Should not Exclude Plaintiffs' Supplemental Statement of Facts**

Plaintiffs moved for partial summary judgment on Defendants' counterclaim for cyber-

8

squatting in connection with Plaintiffs' registration of the domain name "OMEGA.US." Plaintiffs' initial Local Rule 56(a)(1) statement contained facts related to this claim including statements related to Plaintiffs' rights to the OMEGA Mark.[3] However, a large portion of Plaintiffs' cyber-squatting argument pertained to the procedures for acquiring new domain names, and how new domain names containing the .US suffix would be distributed to competing trademark, otherwise known as the Sunrise Registration System. These procedures are legal, not factual, in nature. Thus they were omitted from Plaintiffs' statement of undisputed facts. However, Plaintiffs attached as exhibits the instructions, official notices, and articles related to the Sunrise Registration System for the Court's convenience.

In Defendants' opposition papers, they claim that because Plaintiffs did not submit a separate statement of facts on the cyber-squatting claim, its motion for summary judgment should be denied. However, Defendants did not dispute the Sunrise Registration System as presented in Plaintiffs' papers. Nor did they dispute other facts listed in that portion of Plaintiffs' opening brief.

In its reply papers, Plaintiffs submitted a concise supplemental statement of facts in direct response to Defendants' opposition. Plaintiffs listed the procedural steps in the domain name registration process, and how to resolve the disputes to certain domain names. Many of these discrete facts can actually be considered legal argument, because they merely list the procedures and the legal requirements to obtain a domain name using the Sunrise Registration System.

Plaintiffs also restated its rights to the OMEGA Marks, which in turn entitled it to register the domain name OMEGA.US, and defeat Defendants' claim for cyber-squatting. A few

---

[3] Incidentally, Plaintiffs' statements that are related to its rights to the OMEGA Mark which were also discussed in Plaintiffs' original statement of undisputed facts are all that is required to succeed on summary judgment on Defendant's count for cyber-squatting for registering the domain name OMEGA.US. Thus, Defendants' suggestion that Plaintiffs' failure to submit two L.R. 56(a)(1) statements is not a "fatal defect." Rather, Plaintiffs' motion for summary judgment is still validly before the Court regardless of whether the Court excluded Plaintiffs' supplemental statement of undisputed facts.

remaining facts corresponded directly to statements made in Plaintiffs' opening brief, including a list of Plaintiffs' other domain names and practice of registering its trademark as a domain name with country-related TLD's (ccTLD's), which employ as a suffix a particular county designation such as "ch" for Swtizerland, "ca" for Canada or "be" for Belgium (Omega.ch, Omega.ca, and Omega.be.)

Defendants' motion to exclude the supplemental statement of facts is based solely on the timing of the supplemental Local Rule 56(a)(1) statement. Prejudice to Defendants by allowing this supplemental statement of facts is minimal, because Defendants do not actually dispute the facts submitted.

In addition, in support of their argument, Defendants rely on *Tyson v. Willauer*, 289 F.Supp.2d 190, 194 (D.Conn. 2003) for the proposition that courts should disregard untimely Local Rule 56 statements. However in *Tyson*, the nonmoving party submitted an amended statement of facts *after* the moving party submitted its reply papers without seeking leave of the court. The amended Rule 56(a) statement that was submitted *after* the entire briefing schedule on summary judgment was completed. Here, Plaintiffs submitted its supplemental statement of facts along with its reply papers to address procedural issues raised by Defendants. Under Local Rule 7, Plaintiffs are allowed to respond to arguments raised in Defendants' opposition to Plaintiffs' motion. Defendants chose to rely on procedural arguments in their opposition papers, which could be addressed by procedural devices. That Plaintiffs duly addressed those procedural issues within the briefing schedule, are not sufficient grounds to exclude Plaintiffs' supplemental Rule 56 statement.

Furthermore, Defendants have not demonstrated any prejudice caused by the supplemental 56(a)(1) statement. They have not raised any disputes related to the content of the supplemental statement because none exists.

10

### D. OSA's Evidence from websites is not Hearsay

Defendants also moved to exclude various website printouts as inadmissible hearsay. However, Defendants fail to recognize that information that is available to consumers, or information that reflects consumer perception is of paramount important in a trademark case, and it <u>is admissible</u>;

> Whether a term is entitled to trademark status, is dependent on how the mark is understood and perceived by the purchasing public. Proper evidence of purchaser understanding may derive from the direct testimony of consumers, consumer surveys, trade journals, dictionary listings, newspapers, and other publications. Internet listings fall within this category of evidence.

*Mid City Bowling Lanes & Sports Palace, Inc. v. Don Carter's All Star Lanes-Sunrise Ltd.*, 1998 WL 118103, *2 (E.D.La.1998) (citing *Glover v. Ampak, Inc.*, 74 F.3d 57, 49 (4th Cir.1996); *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 641 (Fed.Cir.1991).

The reasoning behind this rule finds support in traditional hearsay analysis. The hearsay rule generally excludes out of court statements that are offered for the truth of the matter asserted. *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 232 (2d Cir. 1999). However, if a statement is relevant to other issues, it is admissible. For example, if an out of court statement shows the effect on the hearer is admissible. *U.S. v. Scandifia*, 390 F.2d 244, *251 FN 8 (2d Cir. 1968). Likewise, if a statement shows the declarant's state of mind, it is admissible for that purpose as well. *Schering Corp.*, 189 F.3d 227.

Regardless of the truth of the matter asserted within each website, consumers have access to the website or other public information. The websites are relevant and admissible to show the effect that they may have on its audience. Notably, Defendants have not sought limited treatment (such as a limiting instruction) of this evidence. Instead, Defendants request that the Court strike the evidence entirely. The evidence, however, is admissible for many reasons. For example, Defendants state that OSA cannot establish that it sells items to NASA by directing the Court to

11

its website. Notwithstanding that the testimony of OSA's witness Hamid Kayal on this point, as discussed and verified in his declaration, Plaintiffs' advertisements related to NASA go directly to consumer perception that Plaintiffs sell timing devices in scientific and industrial settings. Indeed, this perception has manifested itself in independent articles, such as Esquire Magazine. See, Exhibit B to the Supplemental Declaration of Amy Laraaj. The significance of this article is its mere existence – and it is therefore admissible. Accordingly, Defendants' motion with respect to the Plaintiffs' website exhibits (Exhibit 2 to Plaintiffs' opening brief, Exhibits G, J, and O to the Declaration of Brendan J. Reilly, and Exhibit A to the Declaration of Hamid Kayal) must be denied.

Similarly, Plaintiffs advertise that it was the official timekeeper of 2004 Olympic Games and the next three Olympics in various press releases. Plaintiffs' press releases on these events also go directly to consumer perception, and have admissible qualities beyond that which Defendants suggest. For example, it is relevant to the consumer perception of the reliability and precision of Plaintiffs' timing products. In other words, press releases that Plaintiffs will be the official timekeepers of such prestigious sporting events is admissible to show the effect that such documents may have on its audience—consumers. Accordingly Plaintiffs' Exhibit 4 to its opening brief should not be excluded.

Another example is Exhibit G to the Declaration of Brendan J. Reilly which Defendants seek to exclude on hearsay grounds. That exhibit contains printouts from an independent website for scuba divers. The website boasts the technical features of Plaintiffs' OMEGA SEAMASTER brand watch and why it should be used for "multimillion dollar deep-sea exploration projects." Regardless of the truth of the matters asserted within the exhibit, the website shows that consumers believe that Plaintiffs' products have applications beyond being mere "luxury products" of "prestige and cache" as Defendants suggest. The website goes directly to the

12

author's state of mind, and the effect that the website may have on the public. In other words, the website is not inadmissible hearsay.

In the same manner, Defendants also moved to exclude certain official documents, including copies of Plaintiffs' trademark registrations and copies of a court opinion from the United Kingdom. Copies of Plaintiffs' trademark certifications are prima facie evidence of Plaintiffs' rights to the trademark and Plaintiffs' adoption and use of the marks on the listed goods in the trademark registrations. *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112, 120 (D.Conn. 2002); 15 U.S.C. § 1057(c). The registration certificates are judicially noticeable under Federal Rule of Evidence 201. *Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d at 120. The trademark registrations are also self-authenticating under Federal Rule of Evidence 902. *Id.*

Similarly, the U.K. decision is a self-authenticating document that can be judicially noticed. Aside from issues of evidentiary value, the U.K. decision is a secondary source of legal authority and commentary, which addresses several identical factual issues that are before this Court. It is an appropriate document for the Court to review and consider.

Defendants moved to exclude Plaintiffs' exhibits related to the Sunrise Registration System. These documents include Exhibits E, F, and G to Plaintiffs' opening brief. Two of these documents, Exhibits E and F are articles, which list the legal requirements to apply for and obtain a Sunrise domain name registration. Similar to the U.K. decision mentioned above, the articles constitute secondary legal authority which are appropriate for the Court's consideration.

The final exhibit, Exhibit G is Plaintiffs' application for the OMEGA.US domain name. This document should not be excluded on the grounds of hearsay for several reasons. First, this document relates to Plaintiffs' interest in property, namely the domain name OMEGA.US. All of the statements contained in the document relate to Plaintiffs' property rights in the OMEGA.US.

Indeed Exhibit G is the document that effectuated Plaintiffs' acquisition of that domain name. Accordingly it falls within the hearsay exception for statements in documents affecting an interest in property. Fed. R. Evid. 803 (15).

Second, the Sunrise application itself is a verbal act. The application and the information contained therein, constituted verbal acts of applying for the OMEGA.US domain name. It is not hearsay under the definition of that term. Fed. R. Evid. 801(c). Here, it is the best evidence to show Plaintiffs' act of applying for the domain name. *United States v. Jennings*, 527 F.2d 862, 869 (5th Cir.1976) (stating that where a statement is offered merely to show that the statement was made, then the statement is not considered hearsay).

Finally, Plaintiffs do not rely on Exhibit G for the truths of the matters asserted. A necessary element of Defendants' cybersquatting claim is Plaintiffs' intent. *See,* 15 U.S.C. §1125(d)(1)(B). Documents offered to show the state of mind of the declarant are admissible. *See, Schering Corp.*, 189 F.3d 227. Plaintiffs' application for the OMEGA.US reveals Plaintiffs' state of mind, or its intent, at the time of filing acquiring the domain name. It shows that Plaintiffs believed then, as it still does, that it is entitled to the OMEGA.US domain name based on its established trademark rights to the OMEGA Marks and presence in the United States.

## II. Defendants have Submitted a Declaration of a Witness Never Previously Identifed to OSA, and have also Submitted a Declaration Containing Factual Asserttions which Directly Contradict the Witness's Prior Testimony

Defendants have entered the testimony of an individual unknown to Plaintiffs, and have entered another Declaration, that of Milton B. Hollander offered in support of Defendants' motion for summary judgment, which contains complete departures from his previously given deposition testimony.

### A. Defendants submitted the Declaration of Hilda Burke without Previously Disclosing Her

Defendants complain that they were surprised by the declarations of Mr. Stierli and Mr. Cole because these individuals allegedly were not disclosed to Defendants. Notwithstanding that Mr. Stierki was specifically disclosed to Defendants during a deposition, Defendants have submitted the declaration of a certain Hilda Burke in support of their opposition to Plaintiffs' motion for summary judgment. This witness was not disclosed to Plaintiffs during any initial disclosures or any depositions. Thus any harm to Defendants caused by the declarations of Mr. Stierli and Mr. Cole was also experienced by Plaintiffs by and through the declaration of Hilda Burke.

### B. The Declaration of Milton B. Hollander Contradicts his Previous Deposition

A significant issue in this case concerns Defendants' actual intent to use the goods listed in their trademark applications and registrations in association with the marks in the application. In particular, Plaintiffs confronted Defendants witnesses with the listing of goods in their intent-to-use trademark applications. Dr. Hollander stated that he had no idea where the listing of goods originated from. He also stated in reference to particular goods, that Defendants had no intent to sell such goods. Pl. Br. Sup. Sum. Judg. at 21-24.

Dr. Hollander's testimony was reinforced by the depositions of Dr. Drucker and Defendants' in-house counsel, Ms. B. Christine Riggs. Yet in Dr. Hollander's declaration, he changes his position and states that Defendants intend to use the mark on the goods, which is direct contrast to the depositions of all Defendants' witnesses. Dec. Hollander September 14, 2004, ¶ 29.

A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, *619 (2d Cir. 1996); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) (examining

15

omission in four-day deposition); *Martin v. City of New York,* 627 F.Supp. 892, 896 (E.D.N.Y.1985) (examining direct contradiction between deposition and affidavit). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma,* 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id.* Thus, while Defendants complain of contradictions, which are unsubstantiated allegations, they are guilty of the same conduct.

### C. Defendants also Rely on Exhibits which They Believe are Hearsay

Despite Defendants' claims of prejudice and hearsay, they too rely on website printouts which, under Defendants' arguments, would be inadmissible, namely;

- Exhibits A-S to the Declaration of Michele Tepper;
- Exhibit P to the Declaration of Milton B. Hollander;
- Exhibits Q and T to the Declaration of B. Christine Riggs.

Defendants also rely on newspaper articles which under Defendants' arguments, would be inadmissible, namely;

- Exhibits P, W, V, SS, TT, UU, and WW to the Declaration of Thomas S. Smart.

Defendants also rely on foreign court opinions which under Defendants' arguments would be inadmissible, namely;

- Exhibit S to the Declaration of B. Christine Riggs.

The Court should not be persuaded by Defendants' claims of unfair prejudice. Both parties relied on similar forms of evidence in their summary judgment papers. There are no issues of prejudice to one party.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court consider the Declarations of Peter Stierli and Bradford L. Cole, Plaintiffs' Supplemental Local Rule 56 Statement, Exhibits 1, 2, 4, 21 E, F, G submitted on September 15, 2004, Exhibits G, J, and O to the Declaration of Brendan J. Reilly, and Exhibit A to the Declaration of Hamid Kayal during the summary judgment proceedings. Defendants' motion to exclude evidence should be DENIED.

                              Respectfully submitted
                              for Plaintiff and Counterclaim Defendant,

By: _____
      Jess M. Collen (CT20918)
      Matthew C. Wagner (CT25926)
      COLLEN *IP*
      THE HOLYOKE-MANHATAN BUILDING
      80 South Highland Avenue
      Ossining, New York 10562
      (914) 941-5668
      (914) 941-6091 (facsimile)
      jcollen@collenlaw.com (email)

Dated: December 6, 2004