IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

OMEGA, S.A.,

                Plaintiff,

      v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND
OMEGA PRESS, INC.,

                Defendants.

OMEGA ENGINEERING, INC.,

                Counterclaim-Plaintiff,

      v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

                Counterclaim-Defendants.

Civil Action No.:
3:01 CV 2104 (MRK)

**DEFENDANTS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE OMEGA, S.A.
AND SWATCH GROUP LTD.'S SUPPLEMENTAL STATEMENT OF
UNDISPUTED FACTS, THE DECLARATION OF PETER STIERLI, THE
DECLARATION OF BRADFORD L. COLE AND NUMEROUS HEARSAY EXHIBITS**

        OSA's opposition confirms that OSA's Stierli declaration, Cole declaration, and

Supplemental Statement of Facts are transparent attempts to dump into the record, on reply,

purported evidence that OSA failed to disclose during discovery, that it had the burden to present

in its initial moving papers and that is irrelevant. For these reasons, OSA's late filings should be

excluded. As for the numerous exhibits cited by OSA for hearsay purposes, the opposition

effectively concedes that the exhibits were submitted and relied upon by OSA for hearsay, and

30985836.DOC

invents new alleged non-hearsay purposes for which the documents were not initially cited and which, in all events, do not create any triable issue of fact.

### A.    OSA and Swatch Group Ltd.'s Supplemental Statement of Undisputed Facts

OSA does not dispute that it failed to include in its 56(a)1 statement any facts relating to its motion for summary judgment as to OEI's OMEGA.US claim, as expressly required by Local Rule 56(a)1. Rather, OSA waited until its reply, contrary to the requirements of Local Rule 56(a), to provide a purported statement of facts relating to this aspect of its motion. OSA provides no explanation for its failure to support this purported evidence with a timely Local Rule 56(a) statement in its moving papers.

Nor is there any basis for OSA's argument that much of its belated statement of facts is legal rather than factual, or is undisputed. (OSA Opp. to OEI Motion to Exclude ("OSA Opp.") 9). To take but one example, OSA's Supplemental Statement of Facts states in ¶ 9 that "Swatch did not seek rights to the omega.us domain name in its own name, nor did it claim any rights in the Omega mark." (OSA Supp. Stmt. Facts ¶ 9). This statement is wholly factual in nature, and is disputed by defendants. (*See* OEI 10/6/04 Opp. SJ Mem. 37; OEI 56(a)2 Supp. Stmt. of Facts ¶ 3). As for the alleged domain registration procedures described in OSA's belated statement of facts, these are *facts*, not law.

OSA's attempt (OSA Opp. 10) to distinguish *Tyson v. Willauer,* 289 F. Supp.2d 190, 193-194 (D. Conn. 2003), in which the Court excluded a late Rule 56(a) statement, also is unavailing. In both *Tyson* and the instant case, the parties filed 56(a) statements which were deficient. When the plaintiff in *Tyson* attempted to file a second Rule 56(a) statement to address the deficiencies in its first statement, the Court held that the 56(a) statement was untimely and

should be disregarded. *Id.* The Court should decline to allow circumvention of Local Rule 56(a) here as well.

### B.    Declaration of Peter Stierli

OSA also has failed to rebut the several grounds shown for exclusion of the Declaration of Peter Stierli. First, OSA does not dispute that Mr. Stierli was never identified as a witness knowledgeable about OSA's alleged injury or the extent of OSA's rights in its OMEGA marks. Instead, OSA merely argues that defendants had knowledge of the *existence* of Mr. Stierli as an employee of OSA, and that Ms. Sauser Rupp identified Mr. Stierli at her deposition. (OSA Opp. 2-3). The fact that defendants knew of Mr. Stierli's existence or position at OSA is irrelevant. It is undisputed that defendants requested, in their Rule 30(b)(6) deposition notice, a person with knowledge about OSA's alleged injury and OSA's rights in its OMEGA marks. (*See* Smart 9/15/04 Dec. Ex. F ¶¶ 2, 3, 8, 9, 19, 20, 23). OSA designated Ms. Sauser Rupp on these topics, and does not dispute that it never identified Mr. Stierli with respect to *any* 30(b)(6) topics. (*See* Sauser Rupp Tr. 11-12 (Smart 9/15/04 Dec. Ex. A)). Furthermore, in her deposition, Ms. Sauser Rupp *never* identified Mr. Stierli as knowledgeable regarding OSA's alleged injury or the extent of OSA's rights in its OMEGA marks, but merely identified him as the chief financial officer of OSA and the person to whom employees of Omega Electronics would "show any new products to . . . for approval" (Sauser Rupp Tr. 163 (Smart 9/15/04 Dec. Ex. A)) – an issue having nothing to do with the subjects of the Stierli Declaration. As in *AT&T Corp. v. Microsoft Corp.*, 2004 U.S. Dist. LEXIS 2192, *20 (S.D.N.Y. Feb. 17, 2004), a case cited by OEI but wholly ignored by OSA, the court should exclude the Stierli Declaration because Mr. Stierli was never identified as a witness with knowledge of material facts.

Nor is there any basis for OSA's argument that Mr. Stierli was an appropriate rebuttal witness. (OSA Opp. 3-4). OSA does not dispute that it bears the burden to show injury with respect to each of its claims. (OEI Mem. to Exclude ("OEI Mem.") ¶ 8); *see* Conn. Gen. Stat. § 42-110g(a) (CUTPA requires proof of "ascertainable loss" as a result of alleged unlawful conduct); 15 U.S.C. §1125(a) (Lanham Act requires actual or likely purchaser confusion or deception). Similarly, it was OSA's burden as plaintiff to show the extent of its rights in OMEGA marks. OSA was required to meet its evidentiary burden on its causes of action in its moving papers, and cannot hold off until reply to attempt to prove these facts. OSA gives no explanation for waiting until reply to submit evidence on these essential elements of its claims.[1]

OSA's arguments regarding the relevance of Mr. Stierli's declaration also fail. First, OSA argues that the declaration is relevant because it discusses in-house policing costs. (OSA Opp. 5-6). However, OSA does not dispute that Mr. Stierli makes no effort to tie the costs of policing to trademark filing activities of OEI or to any particular filings, let alone any allegedly unlawful conduct by OEI. As for Mr. Stierli's statements regarding OSA's sales and marketing figures, it is undisputed that he makes no effort to separate United States figures from foreign figures, despite defendants' showing that OSA's claims with respect to foreign conduct should be dismissed. (OEI 9/15/04 SJ Mem. 36-39; OEI 10/20/04 SJ Reply Mem. 9-10). Moreover, putting aside OSA's foreign claims, any analysis of OSA's rights in the United States requires an analysis of domestic advertising and sales figures, and it is impossible to do such an analysis from the general figures provided by Mr. Stierli. Finally, although OSA's *attorneys* argue that ¶

---

[1] Indeed, OSA did not even address these topics in its October 6, 2004 brief in opposition to defendants' Motion for Summary Judgment, despite that defendants' moving papers established the absence of injury to OSA and the limited scope of OSA's rights in the OMEGA marks. (*E.g.*, OEI 9/15/04 SJ Mem. 8-12, 31-33, 39).

8 of Mr. Stierli's declaration relates only to OMEGA branded goods and advertising, it is not clear from Mr. Stierli's chart that his figures are so limited.

## C.   **Declaration of Bradford L. Cole**

OSA also fails to provide any reasonable explanation for waiting until its reply to submit the Declaration of Bradford Cole. First, OSA falsely states that Mr. Cole's identity and evidence were disclosed to OEI "as soon as it was discovered and the evidence was available." (OSA Opp. 8). In fact, Mr. Cole's purported report was submitted with OSA's motion for partial summary judgment, but that report did not contain Mr. Cole's signature, or even his name, and was not authenticated. (*See* OSA Ex. 31). Mr. Cole's identity was not actually disclosed to defendants until Mr. Cole's declaration was filed in conjunction with OSA's reply brief. (Cole 10/19/04 Dec.). Yet, the report, on its face, states that it was created during the period of May 28, 2004 through June 2, 2004. (OSA Ex. 31). There is no excuse for OSA's delay until September 15, 2004 to disclose the report, and until October 21, 2004 to disclose Mr. Cole's identity.[2] Submitting Mr. Cole's declaration on reply is yet another attempt by OSA to dump additional evidence into the record at the latest possible time, leaving defendants no chance to depose Mr. Cole or properly respond to his purported testimony.[3]

---

[2]   OSA's argument (OSA Opp. 7) that defendants failed to disclose the presence of "watch batteries" on their website has no merit. OEI made available its entire website in discovery, including thousands of pages which contained information on all of OEI's products. Moreover, as set forth in n.3, *infra*, OSA's reference to purported "watch batteries" is a red herring because OEI has never sold batteries for use in watches.

[3]   OSA's conduct is in sharp contrast to defendants' submission of the Declaration of Hilda Burke. Ms. Burke is a true rebuttal witness, as her declaration was filed in direct response to the issue raised by OSA for the first time in its moving papers, regarding the alleged presence of so-called "watch batteries" on defendants' website. Ms. Burke explained that the batteries at issue are offered to OEI's customers because they are the power source for OEI's "Digital Open Channel Water Velocity Meter," a device that measures water velocity in sewers, pipes and similar industrial locales, and that is also sold on the same web page. She further explained that
(continued...)

OSA's argument that the investigator's report fits within the "business records exception" to the hearsay rule (OSA Opp. 7) also is without merit. OSA conceded that the report was "created at the direction of Plaintiffs' attorneys," and the report itself recites that "If prepared under the direction of an attorney, it was done so in anticipation of litigation." (OSA Ex. 31). An investigator's report that is prepared at the direction of an attorney, for use in a litigation, lacks sufficient indicia of trustworthiness to be considered a business record under Fed. R. Evid. 803(6). *See, e.g., Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205-206 (4th Cir. 2000).

**D.     OSA's Inadmissible Hearsay Exhibits**

As defendants showed in their moving brief, OSA cited numerous exhibits for blatant hearsay purposes. (OEI Mem. 7-8). For example, OSA cited to pages from its own website, www.omega.ch, to support its statement that OSA and OEI sell to "similar customers including . . . NASA." (OSA 9/15/04 SJ Mem. at 7; OSA Ex. 2). Putting aside the fact that OSA and OEI do *not* sell their goods to similar customers (*see, e.g.,* OEI 10/20/04 Reply Mem. at 7; *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1209 (1st Cir. 1983)), OSA clearly cites its website in an attempt to prove alleged facts by way of inadmissible hearsay. Similarly, OSA cites its own press releases to support its statement that OSA's "timing devices were used in the 2004 Summer Olympic Games held in Greece and broadcast nationally in the United States" (OSA 9/15/04 SJ Mem. at 3; OSA Ex. 3) – again a clear reliance on hearsay.

---

the reference to the batteries as "watch batteries" was merely a result of the use of a similar phrase, "watch style batteries," by the third party supplier of the water velocity meter, and that the phrase "watch batteries" was removed from OEI's website several months ago for reasons wholly unconnected to this litigation. (OEI 10/6/04 SJ Opp. Mem. at 30; Burke 10/1/04 Dec. ¶ 2-5; Exs. A-B). Notably, there is absolutely no evidence that any consumer ever purchased the batteries at issue for use in a watch or for any other purpose.

OSA also relies on inadmissible hearsay found in its trademark registration certificate No. 25,036 (OSA Ex. 1) to attempt to prove that it has been "using OMEGA and the Greek letter $\Omega$ in conjunction with its products since 1894." (OSA 9/15/04 SJ Mem. at 2).

OSA does not dispute that, as defendants showed in their moving brief, it may not rely on hearsay for this motion for summary judgment. *Shumway v. United Parcel Serv.*, 118 F.3d 60, 65 (2d Cir. 1997) (evidence on motion for summary judgment must be "admissible evidence."); *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 257 (D. Conn. 2004) (same). Instead, OSA now argues that these blatant hearsay exhibits are relevant to consumer perception, effectively conceding that the purposes for which they were originally submitted and cited are hearsay, and that, to the extent they are cited for such impermissible purposes, they must be disregarded. Thus, for example, OSA argues that the hearsay statements on its website stating that OSA sells to NASA "go directly to consumer perception that Plaintiffs [sic] sell timing devices in scientific and industrial settings." (OSA Opp. 12). However, the perception of *consumers* with regard to OSA's purported sales to "scientific and industrial settings," or with regard to "the reliability and precision of Plaintiffs' timing products" (*id.*) is irrelevant – particularly where the overwhelming evidence shows that OEI's OMEGA marks and advertising are directed not at consumers, but sophisticated scientific and industrial purchasers. Moreover, even if these exhibits were relevant to consumer perception, as OSA now asserts, OSA has presented no evidence regarding the scope of consumer awareness of these exhibits or their impact on consumers.

**E.     OEI's Evidentiary Submissions To Which OSA Objects**

Out of desperation, and faced with a clear showing that many of its exhibits are inadmissible hearsay, OSA argues, without any merit, that certain OEI evidentiary submissions are also inadmissible as hearsay. (OSA Opp. 14-16). For example, OSA now alleges that the

exhibits to the Tepper Declaration are hearsay.  OSA not only did *not* object to these exhibits, but, to the contrary, *admitted* the assertions of fact in OEI's 56(a)1 Statement (¶¶ 89-109) regarding those exhibits.  (OSA 56(a)2 Stmt. of Facts ¶¶ 89-109).  Similarly, Smart Declaration Exhibits P, V and W also are admissible, as they (like the other OEI evidence of third party use) are not being cited by OEI for the truth of the statements therein.  Smart Exhibits P, V and W are pieces of advertising and marketing materials showing third party use of the word OMEGA by a retailer, Alpha Omega, in connection with the sale of watches (including those of OSA's competitors), another point conceded by OSA.  (Smart 9/15/04 Dec. Exs. P, V, W; OEI 56(a)1 Stmt. of Facts ¶ 90; OSA 56(a)2 Stmt. of Facts ¶ 90).  It is settled that such evidence of third party registrations and uses of similar marks is admissible to show that plaintiff's mark is one of a crowded field of marks and, hence, the lack of distinctiveness of plaintiff's mark and the absence of likely confusion.  *See, e.g., Time, Inc. v. Petersen Pub'g Co.,* 173 F.3d 113, 118 (2d. Cir. 1999) ("Along with the inherent distinctiveness of a mark, the mark's distinctiveness in the marketplace also must be considered in determining its strength."); *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1511 (2d Cir. 1997) (relying on third party trademark registrations and pending applications to find that plaintiff's mark was weak).

Smart Exhibit WW, a webpage printout from omegatime.com, is also not being cited by OEI for hearsay purposes, contrary to OSA's assertion.  This exhibit is submitted, with accompanying declaration testimony, to prove the fact that there is no website operating at omegatime.com (another fact not disputed by OSA), *not* to prove the truth of any out-of-court statements.  (Smart Dec. 10/5/04 ¶ 20 & Ex. WW; OEI 10/6/04 SJ Opp. Mem. 16; OEI 56(a)2 Stmt ¶ 45; OSA 10/21/04 SJ Reply Mem.).  Another exhibit objected to by OSA on hearsay grounds is Hollander Exhibit P, which consists of various pages from OEI's omega.com website.

This exhibit was cited by OEI not for the proof of any statements thereon, but as evidence of how OEI's OMEGA marks are presented in the marketplace. (OEI 9/15/04 SJ Mem. 33-34; Hollander 9/14/04 Dec. ¶21). It is settled that "in determining whether two marks are confusingly similar, we must 'appraise the overall impression created by . . . the context in which they are found." *Nabisco, Inc. v. Warner-Lambert Co.*,, 220 F.3d 43, 47 (2d Cir. 2000) (affirming summary judgment for defendant); *accord, Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("While the two names sound similar, the trademarks themselves are not confusingly similar, given the context in which a purchaser sees them"); *Gruner & Jahr USA Pub'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993). This exhibit showing OEI's use of its OMEGA marks in one of OEI's primary marketing channels (*see* Hollander 9/14/04 Dec. ¶ 21) is indisputably not hearsay, and is relevant in determining the absence of likelihood of confusion.

As for Riggs Exhibit Q, it is a trademark application which is cited by OEI only for the purposes of showing the goods covered by the application and noting that the application expressly limits all of the identified goods to science and industry by stating "all of the above for use in science and industry." (OEI 10/6/04 SJ Opp. Mem. 24; Riggs 10/4/04 Dec. Ex. Q). This is not being cited for hearsay purposes but for the fact of the application's scope of goods and services (a fact not disputed by OSA), and, thus, is admissible. In all events, it is excepted from the hearsay rule by Fed. R. Evid. 803(8), 803(14) and 807. Similarly, Riggs Exhibit T is a collection of WhoIs reports showing OEI's ownership of various domain names containing "Omega" and "US," and which is being cited for the simple proposition that OEI has registered and owns these domain names. (OEI 10/6/04 SJ Opp. Mem. 39; Riggs 10/4/04 Dec. ¶7 & Ex. T) Riggs Exhibit T is excepted from hearsay under Fed. R. Evid. 803(6), 803(14) and 807, and,

moreover, OSA does not dispute the facts contained in Riggs Exhibit T. (OEI 56(a)2 Supp. Stmt. of Facts. ¶ 12).

Lastly, although OSA argues that Dr. Hollander has contradicted his prior deposition testimony in his September 14, 2004 declaration (OSA Opp. 15), it utterly fails to explain how the declaration contradicts the prior testimony. Paragraph 29 merely says that OEI intends to use the marks at issue on the goods and services listed in three applications described therein. OSA has cited no deposition testimony contradicting this statement in Dr. Hollander's declaration.[4]

## CONCLUSION

For all of the foregoing reasons, defendants' motion to exclude the above listed OSA evidentiary submissions should be granted.

Dated:  December 17, 2004
        New York, NY

Respectfully submitted,



Thomas E. Minogue (CT 06845)          Thomas A. Smart (CT 21462)
MINOGUE BIRNBAUM LLP                   Paul C. Llewellyn (CT 25417)
237 Elm Street                         KAYE SCHOLER LLP
New Canaan, CT  06840                  425 Park Avenue
(203) 966-6916                         New York, NY  10022
                                       (212) 836-8000

                                       Of counsel:
                                       Michelle R. Tepper

                                       *Attorneys for Defendants*

---

[4] It is undisputed that each of these applications has been modified to eliminate all of the goods about which OSA complains, except for a reference to "apparatus and instruments for metering . . .timing" which is limited in all cases to use in science and industry and, thus, is permitted by the parties' 1994 Agreement and the *Omega I* Settlement Agreement. (*See* Hollander 9/14/04 Dec. ¶ 29; Riggs 9/14/04 Dec. Exs. Ex. F, G, H).

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December, 2004, I caused the foregoing DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE OMEGA, S.A. AND SWATCH GROUP LTD'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS, THE DECLARATION OF PETER STIERLI, THE DECLARATION OF BRADFORD L. COLE AND NUMEROUS HEARSAY EXHIBITS to be served by Federal Express upon the following counsel for defendant Omega, S.A.:

Matthew Wagner, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY  10562

Paul C. Llewellyn (CT 25417)

30985836.DOC                                        11