## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., | ) |
|       Plaintiff, | ) |
| v. | ) |
| OMEGA ENGINEERING, INC.,<br>OMEGA SCIENTIFIC, INC., and<br>OMEGA PRESS, INC., | ) |
|       Defendants. | ) Civil Action No.:<br>) 3:01 CV 2104 (SRU) |
| OMEGA ENGINEERING, INC., | ) |
|       Counterclaim-Plaintiff, | ) |
| v. | ) |
| OMEGA, S.A. and<br>THE SWATCH GROUP LTD., | ) |
|       Counterclaim-Defendants. | ) |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW FOR RECONSIDERATION OF THE COURT'S ORDER ENTERED OCTOBER 3, 2005 ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND.................................................1

II.   STANDARD OF REVIEW.........................................................2

      A.  **The Motion for Reconsideration Standard**..................................2
      B.  **Summary Judgment Standard**..............................................4

III.  DISCUSSION OF THE LAW......................................................4

      A.  **No Proof of Actual Dilution is Required**...................................4

           1.  Fame Plus Identity Equals Circumstantial Evidence of Dilution........4
           2.  OSA's Mark is Famous...............................................5
           3.  The OSA and OEI Marks are Identical.................................6

      B.  **CUTPA- Independent Bases Exist to Support Finding a Violation
          Regardless of Whether There is a Likelihood of Confusion** .................6

           1.  Likelihood of Confusion is not a Dispositive Factor under OSA's
               CUTPA claim.......................................................6
           2.  The Court did not Consider Whether OEI's Conduct Offended Public
               Policy............................................................9

      C.  **The Court Should Reconsider Its Determination that There Is No
          Likelihood of Confusion Between the Parties' Marks**.......................12

           1.  The Strength of OSA's OMEGA Mark..................................13
           2.  The Proximity of the Marks and Bridging the Gap.....................14
           3.  Actual Confusion..................................................20
           4.  The Quality of Defendants' Products and the Defendants' Bad Faith
               ................................................................21

      D.  **In the Alternative, the Court Should Dismiss Defendants' Counterclaims
          for Trademark Infringement, Unfair Competition, and False Designation
          of Origin**............................................................22

IV.   CONCLUSION................................................................25

Now comes the Plaintiff, Omega S.A. ("OSA"), by and through its undersigned attorneys and hereby submit this Motion and Incorporated Memorandum of Law in Support of Reconsideration of the Court's Order Entered October 3, 2005 (D.E. 181) on the Parties' Cross-Motions for Summary Judgment, pursuant to Rule 7 (c) of the Local Rules of Civil Procedure.

## I.    INTRODUCTION AND BACKGROUND

The Court's Ruling on Summary Judgment (Docket Entry # 181 "Court Ruling") decided: (1) OSA's motion for summary judgment as to its trademark infringement and unfair competition claims against OEI; and (2) OEI's motion for summary judgment against OSA on its counterclaims as to trademark infringement, unfair competition, cyber-squatting, and cancellation. Trial is scheduled for December 5, 2005. OSA requests the Court to reconsider its ruling.

Plaintiff's request is based upon four distinct grounds.  The first ground is that the Court overlooked the controlling decision of *Savin Corp.* v. *The Savin Group*, 391 F.3d 439 (2d. Cir. 2004), which provides that holder of a senior mark that is identical to a junior mark does not need to show actual dilution to succeed on a dilution claim under the Lanham Act.  *Id.*  The second ground is that the Court, in deciding whether the Defendants Omega Engineering, Inc., Omega Scientific, Inc. and Omega Press, Inc. ("OEI") violated the Connecticut Unfair Practices Act ("CUTPA"), improperly included the absence of a likelihood of confusion as a factor; likelihood of confusion had no bearing upon the determination of whether Defendants violated the CUTPA.  The third ground is that the Court did not consider whether OEI's conduct offended public policy, which is one of the single factors that is relevant to finding a violation of the CUTPA.  In

connection with this aspect, the Court also did not draw inferences in favor of OSA, which the Court was required to do under controlling summary judgment adjudication principles. The fourth and final ground is that the Court decided summary judgment in favor of OEI on OSA's trademark infringement claim by weighing all of the evidence against OSA on the issue of likelihood of confusion. The weighing of evidence is error for summary judgment purposes: the Court was required to view the trademark infringement claim in the light most favorable to OSA and to draw all reasonable inferences in its favor.

## II.  STANDARD OF REVIEW

### A.    The Motion for Reconsideration Standard

Motions for reconsideration are authorized in the United States District Court of Connecticut by virtue of Rule 7(c) of the Local Rules of Civil Procedure of the District of Connecticut. Local Rule 7 (c) provides: "[M]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." *Lopez* v. *Smiley*, 375 F. Supp. 19, 21 (D.Conn. 2005)

While the Plaintiff recognizes the strict standard for granting a motion for reconsideration, *see, e.g.*, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), a district court is, however, "vested with the power to revisit its decisions before the entry of final judgment." *Transaero, Inc.* v. *La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d.

2

Cir. 1996) (*citing Cohn* v. *United States*, 259 F.2d 371, 376 (6th Cir. 1958)[1]. If the Court

has applied the incorrect law in reaching a decision, then the decision is properly subject

to reconsideration. *See, e.g., Chambers* v. *Principi*, CV 656 (SRU), 2004 U.S. Dist.

LEXIS 5562 (D. Conn. 2004) (reconsideration granted because it was discovered, after

decision, that state law claim should have been subsumed within federal law claim).

Where a party seeking reconsideration can show that a controlling decision or data was

overlooked that might reasonably be expected to change the conclusion reached by a

Court, the granting of a motion to reconsider is completely appropriate. *See, e.g.,*

*Santiago* v. *City of Hartford and Camacho*, Case No. 2386 (WIG) 2005 U.S. Dist. LEXIS

19898, *3 (D. Conn. 2005). In making this point, the *Santiago* Court cited *Shrader* v.

*CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), which held that there was no

abuse of discretion when a district court granted reconsideration based upon the

introduction of additional relevant case law and legislative history. Moreover, when an

improper burden is imposed upon a party in moving for summary judgment,

reconsideration of the summary judgment ruling is warranted. *Santiago* at *3.

OSA's argument on this motion to reconsider should be analyzed in accordance

with the shift in the burdens of proof pertaining to OEI's summary judgment motion.

*Goldberg* v. *Whitman*, 743 F. Supp. 943, 956 (D.Conn.1990). The initial burden is on the

moving party to show that no material facts are disputed; the burden then shifts to the

nonmoving party to show that there is a material issue of fact for trial. *Id.* (*citations*

*omitted*).

---

[1] On May 4, 2005, while entertaining arguments previously made by Defendants, the Court referred to its openness to reconsidering previously decided issues that it had once resolved. May 4, 2005 Transcript at 26.

### B.    Summary Judgment Standard

As stated in the Court Ruling, "[i]f reasonable minds could differ in the interpretation of evidence that is potentially determinative under substantive law, summary judgment is not appropriate. When ruling on a summary judgment motion, the Court must construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the moving party. Court Ruling at 9 (*citations omitted*).

### III.    DISCUSSION OF THE LAW

### A.    Dilution Under the Lanham Act- No Proof of Actual Dilution is Required

#### 1.    Fame Plus Identity Equals Circumstantial Evidence of Dilution

In the Court Ruling, the Court accurately described the elements that OSA is required to prove in order to succeed on its claim of trademark dilution under the Lanham Act.  The Court observed that the plaintiff must show:

> "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."

Court Ruling at 31 (*citing Savin Corp*. v. *The Savin Group*, 391 F.3d at 449.)

Continuing its analysis, the Court stated that the "first three elements are not genuinely in dispute." *Id.*  The Court then noted that OSA had failed to produce "any evidence of the fourth element, i.e., actual dilution." *Id.*  Reasoning that proof of actual dilution was as "essential element" of a federal dilution claim, and finding that OSA failed to produce evidence of actual confusion, the Court found that OSA's dilution claim failed as a matter of law. *Id.*

OSA does not dispute that the Court cited the proper controlling authority of *Savin* when analyzing OSA's dilution claim. Plaintiff does dispute, however, that the Court applied the *entire* holding of *Savin* authority in making its decision on the dilution issue. What the Court failed to include in its reasoning was the fundamental instruction of *Savin*: that commercial use of a mark identical to a senior famous mark is *circumstantial evidence* of dilution. *Savin* at 452 (*emphasis added*). "We interpret *Moseley* to mean that where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual dilution element of the FTDA claim." *Id.* In reaching this conclusion, the *Savin* Court state that "[I]ndeed, a number of commentators have suggested that this is precisely what the Supreme Court was getting at in *Moseley*-i.e., that an identity of marks creates a presumption of actual dilution." *Id.* at 453. *(footnote and citations omitted)*.

### 2.    OSA's Mark is Famous

In the present case, the Court correctly recognized that OSA's mark is famous. Further still, the record (Declaration of Peter Stierli, filed October 21, 2004) lists expenditures in U.S. and worldwide marketing in connection with OSA's marks. The same type of data, found at the District Court level, was regarded by the *Savin* Court to support finding a mark to be famous. "Plaintiff spent over $20 million in advertising in 2002 and has achieved annual revenues of $675 million." *Savin* at 450. As stated in *Savin*, fame is the "key ingredient" because this is the requirement that most substantially narrows the universe of mark holders who can and should be allowed to utilize the protections of the federal trademark dilution act. *Id.* at 449.

3.    OSA and OEI Marks are Identical

In analyzing the degree of similarity between the marks, the Court reached the same conclusion.  After describing OEI's existing marks (ΩE-the "Omega bug" and OMEGA) and comparing these marks to OSA's marks, the Court concluded that "the word mark 'OMEGA' is, in effect, identical to OSA's mark."  (*See* Court Ruling at 18-19.)  OEI's opposition to Plaintiff's motion for summary judgment conceded that the word mark OMEGA was identical.[2]

Accordingly, the evidence shows that OSA's OMEGA mark is famous, and that OEI uses a mark that is identical to the OSA famous mark.  It was therefore a misapplication of *Savin* for the Court to require OSA to demonstrate any proof of actual dilution.

**B.  CUTPA- Independent Bases Exist to Support Finding a Violation Regardless of Whether There is a Likelihood of Confusion**

1.  Likelihood of Confusion is not a Dispositive Factor under OSA's CUTPA claim

The Court correctly cited to the controlling prohibition against committing an unfair trade practice in Connecticut, as enunciated in Connecticut General Statute ¶ 42-110 (b) (4):

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen.

(*See* Court Ruling at 30, *citing Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 355 (1987) (*internal citations omitted*).

---

[2] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment at 35.

In the Court's next step of deliberation, the Court referred to Connecticut decisions that find a likelihood of confusion establishes a violation of CUTPA. *Id.* at 30. Plaintiff does not assert that this principle of law is incorrect, and does not dispute that a likelihood of confusion certainly can establish a violation of CUTPA. However, OSA's CUTPA claim was not dependent on its trademark infringement claim. A likelihood of confusion is relevant to determination of a CUTPA violation *only if* a trademark infringement claim is relevant to the CUTPA claim.

The Court's application of only a trademark analysis to determining whether CUTPA had been violated, while incorrect to do in ruling on OEI's motion to enter summary judgment on OSA's CUTPA claim, is certainly understandable due to the common practice of a trademark infringement plaintiff bringing a claim pursuant to CUTPA because similar conduct is often alleged as the bases for each claim. This common practice is what has led this District Court to often rely on a Plaintiffs' trademark infringement claim to discern the basis for the same Plaintiffs' CUTPA claim. (*See, e.g., New Colt Holding Corp.*, et al v. *RJG Holdings of Florida, Inc.*, et al, 312 F. Supp. 2d 195,  ---, 2004 U.S. Dist. LEXIS 5481, ---- (D. Conn. 2004) (rendering decision on CUTPA violation by referring to trademark counts because "[d]efendants do not make any arguments tailored to the CUTPA."). In so holding, the *New Colt Holding* court stated:

> "[m]any courts view a violation of the Lanham Act as a per se violation of the CUTPA. See e.g. Timex Corp. v. Stoller, 961 F. Supp. 374, 381 (D. Conn. 1997), but see also Sporty's Farm, LLC v. Sportsman's Mkt., Inc., No. 3:96CV0756 (AVC), 1998 U.S. Dist. LEXIS 23290, *25 (D. Conn. 1998) (Finding of a violation of the Lanham Act does not necessarily obviate the necessity to consider the CUTPA standard)."

*Id.*

What OSA did in the present case, however, was precisely what the Court in *Sporty's Farm* counseled a plaintiff to do: provide a basis (independent from the basis of its Lanham Act claims) upon which the Court should consider OSA's allegation of CUTPA violation. Since OSA has pleaded (and raised a material issue of fact regarding) independent bases to find OEI liable under the CUTPA, OEI is not entitled to summary judgment on OSA's CUTPA claim.

The specifics of OSA's CUTPA claim are found in Count 3 of Plaintiff's Third Amended Complaint[3], which are summarized as follows: OEI registered the domain name OMEGATIME.NET for improper and illegitimate purposes. OEI embarked upon a systematic process of trying to register trademarks to block OSA from obtaining trademarks. OEI made false representations to the USPTO, including a claim that OEI intended to use its OMEGA marks upon goods when OEI had no intention to do so. Additionally, OEI filed Application No. 76/337,374 for mark $\Omega$ .COM that was confusingly similar to Plaintiff's marks. (*See* ¶¶ 49-55 of Plaintiffs' Third Amended Complaint.)[4]

The crux of OSA's CUTPA count is found in this specific allegation:

"By registering these marks and domain names in which OEI has no bona fide intention to use or which OEI has registered for the sole purpose of obstructing OSA's rights to such marks or, alternatively, for the sole purpose of restricting OSA's ability to register its trademarks, or, alternatively, for the purpose of holding the domain names or trademarks for leverage in legal proceedings in this country or elsewhere, OEI has violated the Connecticut Unfair Trade Practices Act C.G.S. 42-110(a), in

---

[3] OSA did, prior to detailing the specifics of the CUTPA count, generally re-allege the preceding paragraphs of the Third Amended Complaint.

[4] Only this allegation (made in ¶ 55 of Plaintiff's Third Amended Complaint), would make consideration of a likelihood of confusion relevant to the CUTPA analysis. However, when viewed in the context of all of the other specifics alleged in the CUTPA count (¶¶ 50, 51, 52, 53, and 54) and when viewed in relation to the central basis of the CUTPA count (found in ¶ 56 and as quoted above), there is no question that a likelihood of confusion, under a trademark analysis, was not determinative to determination of whether OEI had violated CUTPA.

that said actions are immoral, oppressive and unscrupulous and cause substantial damage to the Plaintiff."

(¶ 56 of Plaintiffs' Third Amended Complaint.)

Clearly, OSA's CUTPA claim includes OEI's engagement in a systematic business practice of registering domain names and trademarks marks with the singular intent of blocking OSA from registering domain names or its marks. As such, consideration of whether a likelihood of confusion existed was not determinative on the issue of whether OSA's CUTPA count should survive summary judgment. Consequently, the Court's reliance upon the likelihood of confusion question improperly impacted the Court's application of the controlling definition of a CUTPA violation. (If the Court reconsiders its analysis of the likelihood of confusion as discussed below, the absence of which provided the grounds for the dismissal of OSA's CUTPA count, then it logically follows that the CUTPA claim should be reinstated.)

2. <u>The Court did not Consider Whether OEI's Conduct Offended Public Policy.</u>

OEI's memorandum of law opposing OSA's motion for summary judgment incorrectly claimed that "[A]lthough OSA now asserts a claim under CUTPA based on likelihood of confusion, it concedes that the analysis of such a CUTPA claim is the same as that under the Lanham Act. (OSA SJ Mem. At 15)."[5]   OSA did not make such a concession. OSA's Memorandum of Law in Support of its Motion for Summary Judgment, articulated the argument, with references to supporting evidence in the record, that OEI violated CUTPA *for the reason that OEI's conduct, with respect to trademark*

---

[5] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 26, fn. 9.

*and domain name applications and registrations, offended public policy and violated the law. Id. at 16 (emphasis added).*

From Page 16 through Page 25, OSA thoroughly recited the offense against public policy by way of the following: listing all of the applications and registrations that were made to block OSA from registering trademarks in its business of sports and timing, *id.* at 17-20; describing the lack of good faith, including the filing of false declarations that OSA pursued in its business with the USPTO, *id.* at 20-23; listing goods in U.S. trademark application upon which is lacked the statutorily required bona fide intent to use the mark on such goods in commerce; and describing the same lack of good faith by OSA in its practices before foreign trademark tribunals.

It is this conduct to which the argument listed as No. 1 on Page 16 referred to as that which "offends public policy". The record clearly shows, and certainly if viewed in light most favorable to OSA, a triable issue of fact to support that this conduct existed so as to allow the CUTPA claim to proceed on the merits to a jury.

It was an undisputed fact that OEI knew of OSA's marks before it registered the domain name which formed the basis of OSA's CUTPA claim. (*See Omega SA v. Omega Engineering, Inc.*, 228 F.Supp.2d 112 (D.Conn. 2002); *see also* 1994 Trademark Agreement.) The Connecticut District Court has held "the registration of a single domain name with the knowledge that it incorporates a competitor's mark similarly informs an inference of bad faith intent. *Prime Publishers, Inc.* v. *American-Republican*, 160 F. Supp.2d 266, 281; U.S. Dist. LEXIS 14361 *35 (August 7, 2001). As the Court correctly recognized, in ruling on the motion for summary judgment against OSA, the Court was required to "construe the facts in the light most favorable to the non-moving party and

must resolve all ambiguities and draw all reasonable inferences against the moving party." Court Ruling at 9 (*citing Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986)).

Consequently, the Court misapplied the controlling authority on CUTPA which the Court explicitly and correctly recognized at Page 30 of its ruling, by failing to consider whether or not OEI's practices offended public policy. CUTPA explicitly states that, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42110b (a). As the Court already has correctly noted, determining whether conduct is unfair pursuant to the statute requires determining whether the practice: (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury. (*See* Court Ruling at 30.)

> "However, all three criteria need not be satisfied to support a finding of unfairness. *Omega Engineering v. Eastman Kodak*, 908 F. Supp. 1084, 1099 (D.Conn.1995)(internal citation omitted). A practice may be unfair because of the degree to which it meets one of the criteria or because, to a lesser extent, it meets all three. Id. (internal citation omitted)."

*World Championship Wrestling* v. *Titan Sports, Inc. d/b/a The World Wrestling Federation and USA Network,* 46 F. Supp. 2d 118 (D. Conn. 1999) 1999 U.S. Dist. LEXIS 5238 (March 29, 1999).

Because this factor alone could, as a matter of law, provide the basis for a CUTPA claim, and because the evidence proffered by OSA at least raised the inference that OEI's conduct did offend public policy, the Court was required to consider the issue of OEI's conduct offended as it offended public policy in violation of the CUTPA.

11

### C. The Court Should Reconsider Its Determination that There Is No Likelihood of Confusion Between the Parties' Marks

To establish a trademark infringement claim under the Lanham Act, a plaintiff

must show that the defendant used in commerce, without the plaintiff's consent, a

"reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection

with the sale, offering for sale, distribution, or advertising of any goods or services on or

in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1)(a).

To prevail under this statute, the plaintiff must show that "it has a valid mark entitled to

protection and that the defendant's use of it is likely to cause confusion." *Gruner + Jahr*

*USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir. 1993); *Cadbury*

*Beverages v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir. 1996).

In deciding whether the plaintiff has established likelihood of confusion, the law

of this Circuit requires that courts consider the eight factors elaborated in *Polaroid*. 287

F.2d at 495. These factors are: (1) strength of the plaintiff's mark; (2) the degree of

similarity between the two marks; (3) the proximity of the products; (4) the likelihood

that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendants' good

faith in adopting its mark; (7) the quality of the defendant's product; and (8) the

sophistication of the buyers. *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.

1996).

In its analysis of the Polaroid factors, the Court correctly noted that, "the courts

[should not] use a mechanical process by which the party with the greater number of

factors prevails." (*See* Court Ruling at 17). The Court analyzed each of the eight

"Polaroid" factors, finding two in favor of OSA and six in favor of Defendants. The

Court recognizes, in several instances, facts which may establish confusion, bearing in

mind that no single factor is determinative, and any single factor may be determinative. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).

### 1.    The Strength of OSA's OMEGA Mark

The Court found that OSA's mark was not only inherently distinctive, but had obtained acquired distinctiveness. *Id* at 17.  However, the Court found "minimal evidence" of the strength of Plaintiff's mark, which is contrary to the undisputed evidence.  As discussed in the Declaration of Peter Stierli dated October 19, 2004, between 1999 and 2003 OSA sold approximately $1.9 billion of goods bearing the OMEGA mark, and spent over $420 million on marketing and advertising the OMEGA brand. This translates to nearly $10 million per month spent on advertising and promoting the OMEGA brand. In perspective, OSA's marketing efforts for the OMEGA mark are more than seven times greater than Defendants' advertising expenses during the same period, and OSA's sales (which according to the Defendants are limited strictly to watches and certain sports related products) quadruples Defendants' total revenues of over 68,000 different OMEGA-brand products. *Compare* Dec. Stierli dated October 19, 2004 and Dec. M. Hollander ¶¶ 24-25 dated September 14, 2004. *Id*.  OSA's mark is over 100 years old.

According to *Virgin Enterprises,* authority upon which the Court relied, the law accords "broad, muscular protection" to marks that are inherently distinctive. *Virgin Enterprises Ltd. v. Nawab et al*, 335 F.3d at 147. On marks that are famous or that have obtained acquired distinctiveness, the Second Circuit also noted that "widespread consumer recognition of a mark previously used in commerce increases the likelihood that consumers will assume it identifies the previously familiar user, and therefore

13

increases the likelihood of consumer confusion if the new user is in fact not related to the first." *Id.* at 148.

In light of (1) the Court's finding that the mark is strong (2) the evidence of commercial success indicating that Plaintiff's mark is beyond famous and (3) controlling authority that strong and famous marks are entitled to a heightened level of broad protection, this factor should be given substantial weight.

### 2. The Proximity of the Marks and Bridging the Gap

The Court considered certain evidence with regard to one factor, but ignored that same evidence with regard to the next factor.

For example, the Court only considered the Defendants' sale of watch batteries under the OMEGA mark with regard to bridging the gap but did not incorporate the sale of watch batteries and other products sold by the parties with similar purposes into its discussion of the proximity of the products. Moreover, it also appears that the Court overlooked evidence from the summary judgment record including the Declaration of Brad Cole, filed October 21, 2004 and the Defendants' Declaration of Hilda Burke filed October 6, 2004. In the Court's discussion of watch batteries, the Court did not mention either these two declarations, which were directed specifically to this issue. Indeed, Exhibit A to Mr. Cole's Declaration confirms that Defendants sold watch batteries from www.omega.com under an identical mark—Plaintiff's famous OMEGA mark, which is clearly placed on the product packaging. See Figure 1 below:



Fig 1, Ex. A to Dec. Cole, October 21, 2004.

*Assuming arguendo* that reasonable minds could differ on whether identical goods that are sold by two companies under an identical word mark is likely to cause confusion, this evidence exists and may not be summarily discounted by the Court in the context of determining whether OSA has a triable issue of fact in this context. Taken in tandem with the strength of Plaintiff's mark, the three most Polaroid factors resoundingly favor OSA. It is difficult to have a finding that confusion is unlikely with respect to Defendants' sale of watch batteries even standing alone.

Moreover, the Court relied on *Virgin Enterprises Ltd. v. Nawab et al*, for the proposition that consumers are less likely to assume that their similarly branded products come from the same source if the parties are operating in completely different areas of commerce. 335 F.3d at 150. In that case, the Second Circuit expressly confusion where, as here, the marks are identical and the senior user's mark is strong. *Id.* The following passage from that case provides significant guidance here:

15

The famous list of factors of likely pertinence in assessing likelihood of confusion in *Polaroid* was specially designed for a case like this one, in which the secondary user is not in direct competition with the prior user, but is selling a somewhat different product or service. In *Polaroid*, the plaintiff sold optical and camera equipment, while the defendant sold electronic apparatus. The test the court discussed was expressly addressed to the problem "how far a valid trademark shall be protected with respect to goods other than those to which its owner has applied it." *287 F.2d at 495* (emphasis added); *see also Arrow Fastener, 59 F.3d at 396* (noting that products need not actually compete with each other). The very fact that the test includes the "proximity" between the defendant's products and the plaintiff's and the likelihood that the plaintiff will "bridge the gap" makes clear that the trademark owner does not lose, as the district court concluded, merely because it has not previously sold the precise good or service sold by the secondary user.

*Id.* at 150-1.

In light of this authority, it is clear that the parties are to be able to have all of their evidence considered. The facts may certainly lead a reasonable fact finder to conclude that where the parties perform the same function albeit in different contexts (precision timing of certain events) and serve the same purposes, fall within the same class, or are used for similar purposes, the likelihood of confusion is greater. *Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir.1993) (high end professional cameras v. low end consumer cameras). Put another way, it can only benefit Defendants' sale of period timers and industrial clocks[6] that Plaintiff is a leader in precision equipment for timekeeping devices for athletic events and personal use. All of Plaintiff's efforts to establish itself the provider of high precision timing equipment, even if they were only watches, is used to the benefit of Defendants.

Regarding OEI's use of wrist-watches and stopwatches beside period timers, the Court's opinion appears to have overlooked evidence in the record. Specifically, the

---

[6] It is important to consider period timers and industrial clocks here because the Court expressly stated that its finding of the lack of confusion was not premised on its determination that OSA consented to the use of the OMEGA mark on these products. Court Ruling at 18.

Court dismissed any notion that Defendants' advertisement of period timers (Defendants' products) next to watches (Plaintiff's products) indicates proximity of those products mainly because the Defendants' products in the cited evidence appeared in NEWPORT materials rather than OMEGA. However, a similar advertisement with period timers bearing the OMEGA mark was included as an exhibit in the OEI in support of *their* motion for summary judgment. *See* Figure 2, below. As discussed at oral argument, the excerpt comes directly from Defendants' Made in the USA Handbook, which shows the same type of advertisement except with the OMEGA mark.



Figure 2, Page Z-123 to Exhibit A of the Declaration of Milton Hollander filed September 15, 2004[7].

    Moreover, to the extent Defendants argue that their customers would not believe that these products originated from OSA, certainly a reasonable factfinder could find that

---

[7] A blowup of this advertisement was provided to the Court at oral argument.

such advertisement such indicate sponsorship or an affiliation[8]. The Court should reconsider its finding that there is no material issue of fact regarding proximity in light of this evidence.

With regard to bridging the gap, the Court found that "OSA has not, however, presented evidence raising a triable issue of fact with respect to the likelihood that OSA will bridge the gap or the contention that its 'natural zone of expansion' extends to OEI's market of thermocouples and other industrial and scientific apparatus." Order entered October 3, 2005 at 21. Respectfully, this statement reflects a misapplication of this factor.

The central query is not whether OSA intends to sell thermocouples, or even period timers. See *Cadbury Beverages v. Cott Corp.*, 73 F.3d at 482 ("the absence of a present intent to bridge the gap is not determinative") (*quoting McGregor-Doniger v. Drizzle, Inc.,* 599 F2d 1126, 1136 (2d. Cir. 1979)). The correct inquiry, rather, is whether consumers might find it plausible that OSA would expand its business to include Defendant's products. *Id.*

With regard to watch batteries, there is certainly no gap to bridge. Regarding period timers and industrial clocks, it is difficult to say, in a light most favorable to OSA, that no consumer would believe that Plaintiff's business includes products for timing industrial applications and processes. As the Court recognized, OSA's evidence shows that it has continually expanded its activities in the United States, including certain scientific applications of its timing devices, including watches-space and sports. Plaintiff's evidence shows even its sports timing equipments was purchased for use in a

---

[8] Incidentally, please note the advertisement's goading reference to Plaintiff's market for sporting events: "No *Time Out* for This Programmable Timer" (*emphasis added*).

university research on physiology. These facts must be weighed in light of OSA's mark on watches and sports timing goods.

The Court's entire discussion of the bridging the gap factor discusses Plaintiff's evidence and arguments exclusively. The Court does not identify or refer to the evidence which it believes "tips in favor of OEI" on this factor. It cannot be said that all of the above, viewed in a light most favorable to OSA should cause the evidence to "tip" in OEI's favor. The Court instead discounted each argument and piece of evidence of OSA's, which is inappropriate on a summary judgment motion.

### 3.  Actual Confusion

OSA also seems to have been deprived of the deference demanded by case law in its treatment of OSA's evidence regarding actual confusion. It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir. 1986). "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Savin Corp. v. Savin Group*, 391 F.3d 439, 459 (2d Cir. 2004) (*quoting World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)).

In its order, the Court discussed two instances of actual confusion between the parties' marks. The Court found, however, that these instances of actual confusion, which consisted of customers contacting Plaintiff for Defendants' goods, did not show that the

customers were confused as to source of the products as opposed to merely mistaking

telephone or fax numbers. Defendants offered no evidence demonstrating that these

instances of actual confusion were such incidents and nothing beyond speculation is able

to refute these all-to-real occurrences.  No evidence suggested that these events were

merely isolated mistakes. The seems not to have drawn all reasonable inferences in

Plaintiff's favor, which it is required to do under summary judgment jurisprudence.

Instead, the Court found that these events *might* have been "misdirected

communications" even though no evidence suggested such a finding. At the very least,

reasonable minds can differ as to the impact of this evidence.[9] *See KeyCorp. V. Key Bank*

*and Trust*, 99 F.Supp, 2d 818 (N.D. Ohio 2000) (district court refused to even consider

the "misdirected communications" argument at summary judgment where there was no

evidence that suggesting that such communications were merely misdirected).

    The Court's reliance on *Universal City Studios, Inc. v. Nintendo Co. Ltd.*, 746

F.2d 112 (2d. Cir. 1984 appears misplaced. That case does not stand for the proposition

that a few instances of actual are insufficient to defeat a motion for summary judgment.

Rather, while discussing responses from a consumer confusion survey in a footnote the

Second Circuit stated that a hypothetical situation where a few consumers may

experience confusion would not raise a genuine issue of material fact.  *Universal City*

*Studios, Inc. v. Nintendo Co. Ltd.*, 746 F.2d at 118 n.8. There court was not faced with

instances actual confusion, as exists here.

---

[9] As discussed by the Court, one of the "misdirected communications" was sent to a company called
Daktronics, Plaintiff's former exclusive U.S. distributor of OMEGA-brand sports timing products. This is
not the type of situation where a consumer could have possibly read the wrong entry in a phone book or
simply misunderstood their names; Daktronics and Omega Engineering, Inc., have completely different
names.

4. The Quality of Defendants' Products and the Defendants' Bad Faith

The Court found that the quality of Defendants' Products and Defendants' bad faith weighed in Defendants' favor. The Court's consideration of these two factors appears to have helped "tip" the balance of a likelihood of confusion in Defendants' favor a create on the two Polaroid factors.

The Court's emphasis on these two factors, however, is somewhat misguided. In *Virgin Enterprises Ltd. v. Nawab et al.*, 335 F.3d at 150 the Second Circuit described the role of these two factors while reversing a district court's determination that no likelihood of confusion existed:

> Neither factor is of high relevant to the issue of likelihood of confusion. A finding that a party acted in bad faith can affect the court's choice of remedy or can tip the balance where questions are close. It does not bear directly on whether consumers are likely to be confused... the issue of quality of the secondary user's products goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion.

335 F.3d 151-2 (*internal citations omitted*). In so holding, the Second Circuit found that these factors were either neutral or irrelevant to the issue of whether consumers would actually be confused.

Plaintiff respectfully submits that if the Court resolved all ambiguities or inferences in Plaintiff's favor, it would have found that the likelihood of confusion is more probable, or, at the very least, the Court would have recognized genuine issues of material fact sufficient to send these issues to a jury.

21

**D. In the Alternative, the Court Should Dismiss Defendants' Counterclaims for Trademark Infringement, Unfair Competition, and False Designation of Origin**

If this case were to go to trial under its current posture, the jury would be asked to adjudicate Defendants' counterclaims for infringement, false designation of origin and unfair competition under the Lanham Act. Accordingly, if the Court denies Plaintiff's motion for reconsideration (a motion which, if granted will simply preserve for trial issues that are currently going to trial), then the Court should dismiss Defendants' confusion-based counterclaims for lack of likelihood of confusion. Defendants are estopped from re-adjudicating this issue at trial.

The Court has already adjudicated "The products are not similar; the parties do not operate in the same areas of commerce; there is negligible evidence that OEI is likely to bridge the gap between the two lines of products and negligible evidence of actual confusion… purchasers of both OEI and OSA products are sophisticated… [and there is] and absence of evidence raising a material issue of fact concerning the likelihood of consumer confusion." Court Ruling at 26.

The analysis of the likelihood of confusion on Defendants' claims will be identical. Beginning with the strength of the mark, Plaintiff's mark has been found strong, famous, and inherently distinctive. Defendant's mark cannot be found any more so, in any manner, which would affect the analysis. Both marks are arbitrary. Second, an analysis of whether the parties' marks are similar, the consumers are sophisticated, and whether there is actual confusion, will be the same *regardless* of which party is the claimant. The Court has also found both parties products to be of high quality, another

factor to be considered. On the Polaroid factors, the Court's (or the jury's) analysis should be substantially the same.

As to Plaintiff's good faith, there is no dispute that the Plaintiff adopted the OMEGA mark in the United Stated nearly seventy years before Defendants even existed. There is no dispute that Plaintiff adopted the mark in good faith. These are issues upon which there has not no genuine issue of material fact.

On the two remaining factors, the proximity of the products and the likelihood that the Defendants will bridge the gap, Defendants have consistently maintained that the parties attempted to delineate their goods in the 1994 Agreement—that Defendants have the exclusive rights to sell goods for use in science and industry and the Plaintiff is restricted to consumer goods and sports timing equipment. In fact, in support of Defendants' motion for summary judgment for cancellation of Plaintiff's trademark registrations, Defendants repeatedly maintained that the parties have acted in keeping with this agreement and that Plaintiff has not sold and has no intention to sell goods for use in science and industry. The Court found that there was no competitive overlap between the parties and Plaintiff does not sell goods in science and industry.

In its summary judgment papers, Defendants have consistently asserted to this Court that there is no competitive overlap sufficient to convince the Court that likelihood of confusion exists between the parties. In order to prove a likelihood of confusion with regard to their Lanham Act claims, Defendants will have to show evidence contrary to their position and establish that that certain of Plaintiffs' product are, in fact, proximate to Defendants' line of business. The Court has found that the parties operate in completely different market sectors.

23

If the Court allows OEI's claims for trademark infringement to survive, then the jury will be asked to decide a likelihood of confusion, after the Court already disposed of this issue. This is inconsistent with the law of this case; further, if a jury finds that reasonable minds can differ as to this critical issue of trademark infringement, a Court cannot properly dismiss Plaintiff's claims at summary judgment.

As a matter of law, the Court cannot find that there is no set of facts arising from those presently before the Court would result in confusion, and permit on the other hand that confusion exists because the parties' goods are proximate. *For examples of cases discussing estoppel issues, see e.g. Bates v. Long Island R.R.,* 997 F.2d 1028, 1038 (2d Cir. 1993); *CSFB HOLT L.L.C. v. Collins Stewart Ltd.,* 2004 U.S. Dist. LEXIS 15774 (S.D.N.Y. 2004); *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,* 2005 U.S. App. LEXIS 20287 (Fed. Cir. 2005); *Royal Ins. Co. of Am. v. Zygo Corp.,* 349 F. Supp. 2d 295, 304 (D. Conn. 2004).

## IV.     CONCLUSION

For the reasons that set forth above, the Court should reconsider its finding that OEI is entitled to summary judgment on OSA's claim of dilution and on OSA's claim that OEI has violated the CUTPA and should allow OSA to proceed to its proof at trial on the merits of these claims.

Further, the Plaintiff respectfully requests that the Court either reconsider its decision finding no likelihood of confusion between the parties or extend its ruling to reach Defendants' counterclaims pursuant to collateral and judicial estoppel and to avoid the possibility that a jury could reach results that are inconsistent with the Court's decision.

Respectfully Submitted,

By.

COLLEN *IP*
Jess M. Collen
Matthew C. Wagner
Philip J. Miolene
80 South Highland Avenue
Ossining, NY 10562
914-941-5668
914-941-6091

Dated: October 18, 2005