IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

OMEGA, S.A.,

        Plaintiff,

    v.

OMEGA ENGINEERING, INC.
OMEGA SCIENTIFIC, INC., AND
OMEGA PRESS, INC.,

        Defendants.

OMEGA ENGINEERING, INC.,

        Counterclaim-Plaintiff,

    v.

OMEGA, S.A. and
THE SWATCH GROUP LTD.

        Counterclaim-Defendants.

Civil Action No.:
3:01 CV 2104 (SRU)

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

31165150.DOC

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 4

I.     THE DEMANDING STANDARD FOR RECONSIDERATION OF THIS
       COURT'S SEPTEMBER 27, 2005 RULING ............................................... 4

II.    THE COURT'S DILUTION RULING IS CONSISTENT WITH *SAVIN* AND
       CORRECT FOR OTHER INDEPENDENT GROUNDS ................................... 6

       A.     Where Plaintiff Indisputably Consented to Defendants' Use of a Mark,
              *Savin* Does Not Control and Actual Dilution Cannot be Presumed. ..................... 6

       B.     *Savin* is Not Applicable Because the Parties' Marks are Not Identical. ................ 7

       C.     OEI's Use of its OMEGA Marks Cannot Dilute OSA's Marks Where
              OSA has Expressly Consented to OEI's Use. ......................................... 8

       D.     The Undisputed Widespread Use of OMEGA Demonstrates that the Mark
              is Not Regarded as Indicating a Single Source and is Not Distinctive, and,
              Thus, is Not Capable of Being Diluted. ................................................. 9

III.   THE COURT CORRECTLY HELD THAT OSA DID NOT MEET THE
       REQUIREMENTS FOR A CUTPA CLAIM. ............................................... 10

       A.     The Ruling on Plaintiff's CUTPA Claim Did Not Turn Solely on
              Likelihood of Confusion. ................................................................. 10

       B.     There is No Basis to Find For OSA on its CUTPA "Blocking" Claim. ............... 11

       C.     Filings With the PTO Do Not Give Rise to a CUTPA claim. .............................. 13

IV.    OSA'S EFFORTS TO REARGUE ITS INFRINGEMENT CLAIMS PROVIDE
       NO BASIS FOR RECONSIDERATION. ..................................................... 15

       A.     OSA Wholly Ignores the 1994 Agreement and Its Consent to Defendants'
              Use of OEI's OMEGA Marks. ........................................................... 15

       B.     OSA Points to No Overlooked Facts or Law that Would Alter the Court's
              Ruling or the Absence of a Likelihood of Confusion. .................................... 15

              1.     *Strength of the Mark* .............................................................. 16

              2.     *Proximity of Products* ............................................................ 17

Page

a.    The So-Called Watch Batteries.................................................17

b.    The Period Timer Advertisement.....................................................18

3.    *Natural Zone of Expansion* ....................................................... 18

4.    *Actual Confusion*........................................................................ 19

5.    *Other Polaroid Factors*.............................................................. 21

V.    THE DISMISSAL OF CERTAIN OEI COUNTERCLAIMS RENDERS MOOT
OSA'S ALTERNATIVE REQUEST FOR RELIEF.................................................... 22

CONCLUSION...................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*,
  718 F.2d 1201 (1st Cir. 1983) ....................................................................................9

*Best Cellars, Inc. v. Wine Made Simple, Inc.*,
  320 F. Supp. 2d 60 (S.D.N.Y. 2003) ........................................................................20

*C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*,
  753 F.2d 14 (2d. Cir. 1985) ......................................................................................21

*Campbell v. Cantor Fitzgerald & Co.*,
  1999 U.S. App. LEXIS 34081 (2d Cir. Dec. 23, 1999) .............................................5

*Conn. State Dep't of Soc. Servs. v. Thompson*,
  3:99 CV 2020 (SRU), 242 F. Supp. 2d 127, 164 (D. Conn. 2003) ............................5

*Gersich v. Enterprise Rent A Car*,
  1995 U.S. Dist. LEXIS 22277 (D. Conn. Nov. 20, 1995) ........................................11

*HBP, Inc. v. Am. Marine Holdings, Inc.*,
  290 F. Supp. 2d 1320 (M.D. Fla. 2003),
  *aff'd*, 2005 U.S. App. LEXIS 9169 (11th Cir. Jan. 27, 2005) ...................................9

*Inc. Pub. Corp. v. Manhattan Magazine, Inc.*,
  616 F. Supp. 370 (S.D.N.Y. 1985) ...........................................................................21

*King of the Mt. Sports, Inc. v. Chrysler Corp.*,
  185 F.3d 1084 (10th Cir. 1999) ................................................................................20

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*,
  495 F.2d 1265 (2d Cir. 1974) ...................................................................................14

*Martin v. Dupont Flooring Sys.*,
  3:01 CV 2189 (SRU), 2004 U.S. Dist. LEXIS 9373 (D. Conn. May 25, 2004) ....................4, 5

*Michael Caruso & Co. v. Estefan Enters.*,
  994 F. Supp. 1454 (S.D. Fla. 1998) ..........................................................................10

*Nabisco, Inc. v. PF Brands, Inc.*,
  191 F.3d 208 (2d Cir. 1999) .......................................................................................9

*New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*,
  312 F. Supp. 2d 195 (D. Conn. 2004) .......................................................................14

*Nora Bevs. v. Perrier Group of Am.*,
269 F.3d 114 (2d Cir. 2001)................................................................20

*Petro Stopping Ctrs., L.P. v. James River Petroleum*,
130 F.3d 88 (4th Cir. 1997)...............................................................21

*Pharmacia Corp. v. Alcon Laboratories, Inc.*,
201 F. Supp. 2d 335 (D.N.J. 2002) ....................................................10

*Robichaud v. Hewlett Packard Co.*,
48 Conn. Supp. 429 (Conn. Super. Ct. 2003) ....................................11

*Russell v. Russell*,
91 Conn. App. 619 (Conn. App. Ct. 2005) .........................................11

*Savin Corp. v. The Savin Group*,
391 F.3d 439 (2d Cir. 2004)..........................................................2, 6, 7

*Shrader v. CSX Transportation, Inc.*,
70 F.3d 255 (2d Cir. 1995)..............................................................4, 5

*Society for the Advancement of Educ., Inc. v. Gannett Co.*,
1999 U.S. Dist. LEXIS 700 (S.D.N.Y. Jan. 21, 1999)....................8, 15

*Sorisio v. Lenox*,
701 F. Supp. 950 (D. Conn. 1988) .....................................................11

*Szymanski v. County of Cook*,
2002 U.S. Dist. LEXIS 21802 (N.D. Ill. May 8, 2002) ......................12

*TCPIP Holding Co. v. Haar Comms. Inc.*,
244 F.3d 88 (2d Cir. 2001)..................................................................9

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
103 F. Supp. 2d 711 (S.D.N.Y. 2000), *aff'd* 294 F.3d 383 (2d Cir. 2002) ..........................8, 15

*Universal City Studios, Inc. v. Nintendo Co. Ltd.*,
746 F.2d 112 (2d Cir. 1984)...............................................................19

*Universal Money Ctrs., Inc. v. AT&T*,
22 F.3d 1527 (10th Cir. 1994), *cert denied*, 1994 U.S. LEXIS 8787 (1994)......................20, 21

*Virgin Enterps. Ltd. v. Nawab*,
335 F.3d 141 (2d Cir. 2003)...............................................................16

*Watson v. United States*,
2005 U.S. Dist. LEXIS 23393 (S.D.N.Y. Oct. 5, 2005) ....................5, 19

Page(s)

*Woodsmith Pub. Co. v. Meredith Corp.*,
    904 F.2d 1244 (8th Cir. 1990)......................................................................................20

## STATUTES

L.R. Civ. P. 7(c) (D. Conn.).............................................................................................4

15 U.S.C. § 1120 (2005) ...............................................................................................14

Defendants Omega Engineering, Inc., Omega Scientific, Inc. and Omega Press, Inc. (together, "OEI")submit this memorandum of law in opposition to plaintiff Omega S.A.'s ("OSA") motion for reconsideration of the Court's September 27, 2005 Ruling on Cross-Motions for Summary Judgment, which granted defendants' motion for summary judgment as to plaintiff's claims.

## PRELIMINARY STATEMENT

Motions for reconsideration are only granted in those narrow situations when controlling decisions that would have affected the outcome of the case were overlooked by the court. It is not the purpose of reconsideration to treat the Court's decisions as the beginning of a "dialogue," or to assert purported errors that, even if they existed, would have no impact on the Court's ultimate decision. As set forth more fully below, OSA does not even approach this demanding standard for reconsideration. Most prominently, OSA's motion wholly ignores the Court's holding that the parties' 1994 Agreement and *Omega I* Settlement Agreement permit the defendants to engage in most of the conduct challenged by OSA, which renders the majority of the instant motion irrelevant. In the end, OSA's latest motion – replete with the same distortions of fact and law that appeared in its summary judgment briefs[1] – is nothing but a blatant attempt

---

[1]    This is perhaps not surprising in light of OSA's similar conduct in the related *Omega I* litigation (*Omega Eng., Inc. v. Omega S.A.,* 98 Civ. 2464 (AVC) (D. Conn.)), in which, in his report recommending that the Court enforce the parties' settlement in that case, Magistrate Judge Smith found:

"OSA's representations concerning the facts and circumstances surrounding the settlement are false and distorting *at best*. Moreover, the court is convinced, as no other conclusion makes sense, that OSA assumed that the court would not actually read the cases to which it cited: virtually none of the cases cited stand for that which OSA avers. OSA's briefs and objections are riddled with distortions, material omissions, misstatements of fact, misstatements of law, and unwarranted and irrelevant conclusions." (*See* Riggs 9/14/04 Dec. Ex. M at 22) (emphasis in original).

to reargue random parts of the summary judgment motion that it already lost, and to vexatiously compound these proceedings.

OSA's argument for reconsideration of the Court's dilution holding is without merit for several reasons. First, the decision on which OSA's entire argument rests, *Savin Corp. v. The Savin Group*, 391 F.3d 439 (2d Cir. 2004), is inapposite to the undisputed facts of this case. *Savin* held that evidence of actual confusion was not needed where the parties' marks were identical. In *Savin*, however, the plaintiff had not expressly consented to defendant's use of the mark at issue. Therefore, a presumption of dilution from use of an identical mark made sense. Here, in contrast, it is undisputed, and the Court found on summary judgment, that OSA consented in the 1994 Agreement to OEI's use of OEI's OMEGA marks. Given this express consent, there is no basis to excuse proof of actual dilution and presume as a matter of law that OEI's use of a similar mark would dilute OSA's mark. Moreover, as OEI showed in its motion papers, unlike in *Savin*, the parties' marks here are *not* identical. Second, even if OSA were correct with respect to a presumption of actual dilution under *Savin*, OSA's dilution claim fails because, again, it is undisputed that OSA *consented*, in the parties' 1994 Agreement, to OEI's use of its OMEGA marks, which provides a complete defense to OSA's claim for dilution. As OEI argued in its moving papers *and as OSA never disputed*, OSA's express consent to OEI's use of its OMEGA marks is fatal to a dilution claim, regardless of whether actual dilution has occurred. Third, again wholly apart from the failure to show actual confusion and regardless of *Savin*, OSA's dilution claim fails because, in light of the more than 300 undisputed third party uses of OMEGA marks, OSA's OMEGA marks are not sufficiently distinctive in the marketplace to be capable of being diluted. This argument, too, OSA wholly ignored in its summary judgment opposition just as it ignores it in this motion.

2

Nor is there any basis for reconsideration of the Court's ruling with respect to OSA's CUTPA claim. OSA misleadingly asserts that the Court erred because it purportedly rejected the CUTPA claim solely due to the absence of likelihood of confusion. In fact, the Court also expressly held that defendants' alleged conduct did not violate CUTPA because it was not "immoral, unethical, oppressive or unscrupulous" and because it did not cause "substantial injury to consumer, competitors or other businessmen." (Ruling on Cross-Motions for Summary Judgment ("SJ Ruling"), p. 31) (internal quotations omitted). In all events, wholly apart from OSA's distortion of the Court's ruling on CUPTA, the CUTPA claim fails for the many other reasons set forth in defendants' moving papers that were ignored by OSA, including (a) OSA's failure to prove the scope of the parties' respective foreign rights and the failure to prove the applicable foreign law, both necessary for a jury to determine whether any foreign conduct by defendants was wrongful; (b) OSA's failure to show any ascertainable loss resulting from defendants' conduct; and (c) OSA's failure to show that any U.S. applications by OEI "blocked" OSA. (Confirming the frivolous and vexatious nature of the instant motion, OSA also attempts to reassert in its CUPTA argument a claim decided on defendants' *motion to dismiss*, when it asserts that OEI's registration of a domain name violated CUTPA. OSA's claim with respect to this domain name, of course, was dismissed by the Court *three years ago* on res judicata grounds. *See* Apr. 22, 2003 Tr. at 61.)

As for the Court's ruling with respect to OSA's trademark infringement claim, OSA merely reargues the same issues and facts that were presented to the Court in exhaustive detail in the parties' cross motions, voluminous declarations and oral argument. OSA points to no controlling authority and no facts that were overlooked and that would alter the outcome of the infringement claim.

Lastly, OSA's request for alternative relief in the form of dismissal of certain of OEI's counterclaims is moot. As OEI already has advised plaintiff's counsel, OEI intends to voluntarily dismiss the counterclaims for which OSA seeks dismissal, and to assert counterclaims only for trademark cancellation and breach of contract relating to two OSA trademark registrations in the United States (*i.e.* the second and fifth counts of OEI's Counterclaims). Furthermore, in light of this voluntary dismissal, there is no merit to OSA's assertion that trial of OEI's counterclaims would involve the same issues of fact as would trial of OSA's dismissed claims.

## ARGUMENT

### I.    THE DEMANDING STANDARD FOR RECONSIDERATION OF THIS COURT'S SEPTEMBER 27, 2005 RULING

The standard for a motion for reconsideration in the Second Circuit and this Court is narrowly construed and strictly applied. Local Rule 7(c) states in relevant part that "Motions for reconsideration . . . shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." L.R. Civ. P. 7(c) (D. Conn.). "Such motions 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Martin v. Dupont Flooring Sys.*, 3:01 CV 2189 (SRU), 2004 U.S. Dist. LEXIS 9373, at *2 (D. Conn. May 25, 2004) (quoting *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Martin,* 2004 U.S. Dist. LEXIS 9373, at *3.

The concerns reflected in this strict standard are purposefully designed to prevent exactly the type of "wasteful repetition of arguments already briefed, considered and decided" that OSA engages in on this motion. *Campbell v. Cantor Fitzgerald & Co.*, 1999 U.S. App. LEXIS 34081, at *4 (2d Cir. Dec. 23, 1999) (internal quotations and citations omitted). A motion for reconsideration "is not simply a second opportunity for the movant to advance arguments already rejected," *Martin*, 2004 U.S. Dist. LEXIS 9373, at *4 (citing *Shrader*, 70 F.3d at 257). "A party seeking reconsideration 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'" *Watson v. United States*, 2005 U.S. Dist. LEXIS 23393, at *6 (S.D.N.Y. Oct. 5, 2005) (internal quotations and citations omitted). Where "the principle now raised by the [movant] was both previously raised by the [movant] and previously known to the court, the [movant] has failed to meet the threshold requirement for a motion for reconsideration . . ." *Conn. State Dep't of Soc. Servs. v. Thompson*, 3:99 CV 2020 (SRU), 242 F. Supp. 2d 127, 164 (D. Conn. 2003).

Applying this strict standard here, OSA does not come close to meeting the requirements for reconsideration. In pointing to facts it believes the Court "overlooked," OSA merely points to evidence that is the same as or merely cumulative to evidence it raised in the prior motions and at oral argument. Similarly, OSA has made the same arguments it raises in this motion for reconsideration in its prior briefs, and relies on authority and facts that would not change the ultimate outcome of the parties' summary judgment motions. Most egregious of all, OSA makes no effort to dispute the Court's holding regarding the 1994 Agreement and the *Omega I* Settlement Agreement, which dictate the outcome of OEI's summary judgment motion in most

respects. Thus, this motion is precisely the type that the local rules and the strict reconsideration standard aim to avoid, and it should be denied in its entirety.

## II.    THE COURT'S DILUTION RULING IS CONSISTENT WITH *SAVIN* AND CORRECT FOR OTHER INDEPENDENT GROUNDS

### A.    Where Plaintiff Indisputably Consented to Defendants' Use of a Mark, *Savin* Does Not Control and Actual Dilution Cannot be Presumed.

OSA argues that the Court should reconsider its dilution ruling because the Court purportedly "overlooked the *controlling decision*" of *Savin Corp. v. The Savin Group*, 391 F.3d 439 (2d. Cir. 2004) (Plaintiff's Motion for Reconsideration ("Mtn. for Reconsid."), p. 1) (emphasis added). While *Savin* may hold that the owner of a senior mark that is identical to a junior mark does not need to show actual dilution to succeed on a dilution claim under the Lanham Act, *Savin* is not controlling on the undisputed facts of this case.

Unlike here, the plaintiff in *Savin* had not expressly consented to the defendant's use of the mark at issue. As this Court found on summary judgment and as OSA does not dispute on this motion, the parties' 1994 Agreement and *Omega I* Settlement Agreement recognize OEI's rights in its OMEGA marks and constitute OSA's undisputable consent to OEI's use of these OMEGA marks. (SJ Ruling, pp. 7-8). OSA has consented to OEI's use of its OMEGA marks on various goods, including the period timers covered by the *Omega I* Settlement and the "apparatus industrially or scientifically employed for measuring or controlling variable parameters" and "computer controlled measuring, timing and display apparatus" for science and industry covered by the 1994 Agreement. (*Id.*) Given the fact that OSA has expressly consented to OEI's use of its OMEGA marks, OSA should not be entitled to any presumption of actual dilution under *Savin*.

**B.**    _Savin_ **is Not Applicable Because the Parties' Marks are Not Identical.**

The Court in _Savin_ emphasized "that for the presumption of dilution to apply, the marks must be identical" – a requirement that is not met here. _Savin_, 391 F.3d at 453. The Court stated that a "mere similarity in the marks – even a close similarity – will not suffice to establish per se evidence of actual dilution." _Id._ As _Savin_ further holds, the issue of whether the marks are identical for dilution purposes is "context - and/or media-specific." _Id._ Indeed, because the Second Circuit in _Savin_ could not determine whether or not the district court engaged in the requisite detailed analysis of the identity of the marks, the court remanded that issue for clarification.

Here, OEI's and OSA's marks are not identical because, as we previously showed, and OSA did not dispute, OEI uses a design called the "Omega bug" which consists of the juxtaposed Greek letters Omega ($\Omega$) and Epsilon (E) (Defendants' Rule 56(a)1 Statement, ("OEI 56(a)1 Statement"), ¶ 2), which, the district court properly recognized, "differs from OSA's marks . . ." (SJ Ruling, pp. 18-19).   Defendants do not use the Greek letter $\Omega$ standing alone. Moreover, OSA often displays the word OMEGA directly under the Greek letter $\Omega$, while OEI, in contrast, typically places its design mark directly to the left of the words "OMEGA" or "OMEGA ENGINEERING."  (Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment ("OEI Opp. to SJ"), p. 35).

Furthermore, as we previously showed and OSA also did not dispute, the contexts in which the parties' non-identical marks are presented are very different. (_See, e.g_, OEI SJ Br., pp. 33-34). The undisputed evidence shows that OEI's marks are used in materials directed at a scientific and technical audience, and frequently are accompanied by references to "Made in the U.S.A.," images of Americana paintings, and the decidedly unsophisticated "Dilbert" comic

strip.  (OEI 56(a)1 Statement, ¶¶ 19, 21, 22, 24).  OSA's products, in contrast, are marketed as

Swiss-made, frequently in advertisements that feature movie stars and other celebrities.  (OEI

56(a)1 Statement, ¶¶ 52-53).  The commercial impression of the parties' marks is therefore quite

different and the marks cannot be said to be identical for purposes of presuming actual dilution.

Thus, *Savin* is inapplicable to these facts and does not warrant reconsideration of this Court's

holding regarding dilution.

**C.    OEI's Use of its OMEGA Marks Cannot Dilute OSA's Marks Where OSA has Expressly Consented to OEI's Use.**

Wholly apart from OSA's failure to show actual dilution, and even if *Savin's* holding

regarding actual dilution did apply here, OSA's dilution claim would fail because it is undisputed

that the 1994 Agreement and the *Omega I* Settlement Agreement between the parties confirms

OEI's rights in its OMEGA marks and amounts to OSA's undisputable consent to OEI's use of

its OMEGA marks.  Thus, OSA has expressly consented to OEI's use of its OMEGA marks at

least twice – a point that OEI argued in its moving papers, the Court recognized in the Summary

Judgment Ruling, and *OSA has never disputed*.  This fact alone is fatal to the dilution claim,

because consent is a defense to a claim under the Lanham Act.  *See, e.g., Times Mirror*

*Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 738 (S.D.N.Y. 2000),

*aff'd* 294 F.3d 383 (2d Cir. 2002); *Society for the Advancement of Educ., Inc. v. Gannett Co.*,

1999 U.S. Dist. LEXIS 700, at *26-27 (S.D.N.Y. Jan. 21, 1999).  (*See also* OEI SJ Br., p. 34;

OEI 56(a)1 Statement, ¶¶ 75-80).  Having expressly consented to OEI's use of OMEGA marks,

OSA cannot now argue that defendants' use of OEI's OMEGA marks unlawfully dilutes OSA's

marks.

**D.    The Undisputed Widespread Use of OMEGA Demonstrates that the Mark is Not Regarded as Indicating a Single Source and is Not Distinctive, and, Thus, is Not Capable of Being Diluted.**

Regardless of OSA's failure to show actual dilution, regardless of the impact of *Savin*, and even putting aside OSA's consent, reconsideration is not warranted because OSA's dilution claim fails for the separate and additional reason that OSA's OMEGA marks are not sufficiently distinctive in the marketplace to be capable of being diluted.  While the Court held that fame was not disputed, the distinctiveness of OMEGA – a separate requirement for dilution – has always been disputed.  (*See* OEI SJ Br. pp. 34-35).  As defendants argued on summary judgment, and as OSA never disputed, it is well-established that to be protected from dilution, a mark must not only be famous, but also distinctive such that it is capable of losing its unique identity.  (*Id.*)  Indeed, distinctiveness is a separate requirement from that of fame for purposes of dilution.  *See, e.g., Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 216 (2d Cir. 1999).  As the Court of Appeals held in *Nabisco*:

> A mark that, notwithstanding its fame, has no distinctiveness is lacking the very attribute that the antidilution statute seeks to protect.  The antidilution statute seeks to guarantee exclusivity not only in cases where confusion would occur but throughout the realms of commerce.  Many famous marks are of the common or quality-claiming or prominence-claiming type – such as American, National, Federal, Federated, First, United, Acme, Merit or Ace.  It seems most unlikely that the statute contemplates allowing the holders of such common, albeit famous, marks to exclude all new entrants.

*Id.; accord, TCPIP Holding Co. v. Haar Comms. Inc.*, 244 F.3d 88, 93 (2d Cir. 2001).

As defendants also argued on summary judgment, and OSA never disputed, extensive third party use of the same or a similar mark negates that distinctiveness and defeats a dilution claim.  (OEI SJ Br., pp. 34-35).  *See, e.g., Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1210 (1st Cir. 1983) (rejecting dilution claim in view of numerous third party uses of similar marks); *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320,

1338 (M.D. Fla. 2003) (same), *aff'd*, 2005 U.S. App. LEXIS 9169 (11th Cir. Jan. 27, 2005);

*Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp. 2d 335, 379 (D.N.J. 2002) (same);

*Michael Caruso & Co. v. Estefan Enters.*, 994 F. Supp. 1454, 1463 (S.D. Fla. 1998) (same).

Defendants showed in their summary judgment motion, and OSA never disputed, that OSA's

OMEGA mark is but one of many third party uses of marks containing OMEGA, including some

325 pending federal trademark applications and registrations for marks containing "omega other

than those owned by the parties. (*See* OEI SJ Br., pp. 12, 34-35; OEI 56(a)(1) Statement ¶¶ 89-

109). As OSA never disputed in opposing summary judgment, such widespread registration and

use of OMEGA for a variety of goods and services demonstrates that the mark is not regarded as

indicating a single source, and, thus, is not capable of being diluted. (OEI SJ Br., p. 35).

## III.   THE COURT CORRECTLY HELD THAT OSA DID NOT MEET THE REQUIREMENTS FOR A CUTPA CLAIM.

### A.   The Ruling on Plaintiff's CUTPA Claim Did Not Turn Solely on Likelihood of Confusion.

Plaintiff incorrectly argues that the Court erred in rejecting CUTPA based on the absence

of a likelihood of confusion and by "failing to consider whether or not OEI's practices offended

public policy." (Mtn. for Reconsid, pp. 7,11). In fact, *in addition* to holding that OSA had not

raised a triable issue of material fact with respect to the likelihood of confusion, the Court then

held that OSA failed to establish at least two of the "Cigarette Rule" factors, specifically holding

that defendants' alleged conduct did not violate CUTPA because it was not "immoral, unethical,

oppressive or unscrupulous" and because it did not cause "substantial injury to consumer,

competitors or other businessmen." (SJ Ruling, pp. 30-31).

A CUTPA analysis requires the balancing of three "Cigarette Rule" factors. A court may

weigh these factors on a summary judgment motion when the underlying facts are not in dispute.

*See Sorisio v. Lenox*, 701 F. Supp. 950, 963 (D. Conn. 1988).[2]  When the second and third "Cigarette Rule" factors are not satisfied, it may be inferred that the first prong is also unsatisfied. *See, e.g., Russell v. Russell*, 91 Conn. App. 619, 647 (Conn. App. Ct. 2005).  Indeed, several courts have held that where the plaintiff makes a weak showing on the second and third "Cigarette Rule" factors, its claim under CUTPA must fail. *See, e.g., Gersich v. Enterprise Rent A Car,* 1995 U.S. Dist. LEXIS 22277, *12 (D. Conn. Nov. 20, 1995) ("Even if [defendant's conduct] offends public policy . . . , the plaintiffs nevertheless have failed to satisfy either the second or third prongs of the Cigarette Rule"; granting motion to dismiss CUTPA claim).  Indeed, some criteria have been deemed duplicative of others. (*Sorisio*, 701 F. Supp. at 963) (granting summary judgment, finding that the second criterion – "immoral, unethical, oppressive or unscrupulous" conduct – "is largely duplicative of the other two factors.")

As set forth above, the Court explicitly held both that OSA had not raised a triable issue of material fact with respect to the likelihood of confusion, and also expressly addressed two of the three "Cigarette Rule" factors, thereby leading it to conclude that OSA's CUTPA claim failed as a matter of law.   OSA points to no error that would change this outcome.

**B.**    **There is No Basis to Find For OSA on its CUTPA "Blocking" Claim.**

Even assuming, *arguendo*, that the Court had failed to properly consider the application of the "Cigarette Rule" factors to OSA's CUTPA claim for alleged "blocking," OSA's argument that the alleged conduct by OEI "offended public policy" and gave rise to liability under CUTPA is not supported by the undisputed facts.  As shown below, the specific alleged conduct identified by OSA in its Motion for Reconsideration does not establish a CUTPA claim.

---

[2]    *See also, e.g., Robichaud v. Hewlett Packard Co.*, 48 Conn. Supp. 429, 432 (Conn. Super. Ct. 2003) (where plaintiffs "have failed to identify any facts that are in dispute" "their CUTPA claim can[ ] be decided on a motion for summary judgment").  OSA does not argue to the contrary.

First, astonishingly, OSA refers to the registration of the domain name

OMEGATIME.NET. (Mtn. for Reconsid., p. 8). That claim was not mentioned in OSA's

summary judgment opposition – no doubt because it was dismissed by this Court on *res judicata*

grounds at the motion to dismiss stage, on April 22, 2003. (*See* Apr. 22, 2003 Tr. at 61). For

that reason alone, it is an inappropriate subject for reconsideration.[3] As for OSA's reference to

unspecified other domain names, OSA points to no evidence that the Court overlooked showing

that OEI wrongfully registered any such domains. Indeed, OEI owns numerous domain names

that correspond to OEI's registered trademarks.

Second, OSA refers to OEI's alleged registration of trademarks to block OSA from

obtaining trademarks. (Mtn. for Reconsid., pp. 8-9). However, as set forth in detail in

defendants' moving papers, (1) OSA provided *no evidence* of the law of the foreign jurisdictions

where this alleged conduct occurred, or of the scope of the parties' respective foreign trademark

rights, so that it would be impossible for a jury to determine that the foreign filings were

wrongful; (2) the majority of filings to which OSA objects are for period timers and for goods in

science and industry, which, the undisputed evidence showed, OEI was entitled to register under

the 1994 Agreement and the *Omega I* Settlement Agreement; (3) the undisputed evidence is that

OEI has prevailed in many of the parties' foreign trademark disputes, confirming that its filings

are not wrongful so as to offend public policy; (4) OSA has provided no evidence of any

ascertainable loss arising from any wrongful conduct abroad or in the U.S.; and (5) OSA

concedes that it has *not* been blocked by any trademark filings in the U.S. (OEI SJ Br., pp. 36-

40; OEI's Reply Memo. in Support of its Summary Judgment Motion, ("OEI SJ Reply"), pp. 9-

---

[3]    Moreover, where a claim is barred by *res judicata*, a party cannot avoid *res judicata* by
casting the claim as part of a "pattern or practice" of unlawful conduct. *See, e.g., Szymanski v.
County of Cook*, 2002 U.S. Dist. LEXIS 21802, at *24 (N.D. Ill. May 8, 2002).

10). On this undisputed factual record, OSA cannot establish that OEI's conduct offends public policy or otherwise is unfair so as to violate CUTPA, and cannot establish that it has suffered ascertainable loss as required by CUTPA. (OEI SJ Br., p. 39). Nor can OSA show, on these undisputed facts, that OEI has acted in an objectively and subjectively baseless manner, as required under the *Noerr-Pennington* doctrine and *Professional Real Estate* to hold it liable for these governmental filings. (OEI SJ Br., pp. 37-39). Moreover, as defendants' moving papers show, OSA's blocking claims relating to foreign trademark filings are barred by *Vanity Fair* and principles of international comity. (OEI SJ Br., p. 37).

Third, as for OSA's renewed argument that OEI applied to register OMEGA marks for goods that it lacked the intent to offer, the goods of which OSA complain are goods that, it is undisputed, OSA does not offer and has no intent to offer. (Defendants' Rule 56(a)2 Statement in Opp. to Partial Summary Judgment ("OEI Rule 56(a)2 Statement"), pp. 34-36). For this reason, it is not surprising that OSA has never been able to point to any ascertainable loss or "blocking" that it had suffered as a result of these applications[4].

Fourth, OSA reargues that OEI applied to register the mark $\Omega$.com. This application, like the other United States applications about which OSA complains (see the preceding paragraph), were not for any goods sold by OSA, and there is no evidence that OSA was blocked or injured in any way by this intent-to-use application. (OEI SJ Br., p. 39; OEI SJ Reply, p. 10).

C.    **Filings With the PTO Do Not Give Rise to a CUTPA claim.**

Regardless of whether or not the Court correctly applied all the CUTPA "Cigarette Rule" factors or whether the undisputed facts would even support a finding of liability under CUTPA,

---

[4]    The undisputed evidence also showed that any erroneous filings by OEI in the U.S. were the result of oversight, and not any intent to harm OSA. Such conduct cannot rise to the level of a CUPTA violation.

summary judgment to OEI on OSA's CUTPA claim is warranted because, as OEI previously argued and OSA did not refute, CUTPA does not apply to PTO filings. (OEI Opp. to SJ, p. 13; OEI SJ Br., p. 37; *see also* Defendants' Motion to Dismiss, dated 4/1/04 ("OEI Mtn. to Dismiss") [Docket # 70], pp. 27-32; Defendants' Reply In Support of Motion to Dismiss, dated 5/5/04 ("OEI Mtn. to Dismiss Reply") [Docket #79], pp. 5-6). A defendant cannot be liable under a state statute for the mere filing of trademark applications with government authorities (whether federal or foreign) with the alleged intent to "block" plaintiff's trademark rights, and plaintiff does not cite a single case that holds otherwise. *See New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*, 312 F. Supp. 2d 195, 237 (D. Conn. 2004) ("there is no basis to assert a CUTPA violation" where filings with the PTO were "not so without base as to be unethical, unfair, or in violation of public policy; granting summary judgment).[5] Indeed, CUTPA is limited to the actual "conduct of trade or commerce," and does not extend to conduct ancillary or incidental to the conduct of trade or commerce, such as, in this instance, filing trademark applications. (OEI Opp. to SJ., pp. 12-13). Moreover, the Second Circuit has stated that the proper statute to seek damages for a "false or fraudulent registration" at the U.S. PTO is Section 38 of the Lanham Act, 15 U.S.C. § 1120, a provision that OSA has not asserted in its Complaint and does not seek to apply here. *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270-71 (2d Cir. 1974). (*See* OEI Mtn. to Dismiss, p. 31; OEI SJ Br., p. 37).

---

[5]     Moreover, to the extent that OSA reargues that OEI "lacked the statutorily required bona fide intent to use the mark" on certain goods listed in its trademark applications thereby providing a basis for its public policy argument under CUTPA, OEI has previously asserted that OEI inadvertently included those goods and that they have since been removed from the applications. This type of honest mistake cannot give rise to liability under CUTPA and OSA does not dispute this. (OEI 56(a)2 Statement, ¶ 35).

## IV.    OSA'S EFFORTS TO REARGUE ITS INFRINGEMENT CLAIMS PROVIDE NO BASIS FOR RECONSIDERATION.

### A.    OSA Wholly Ignores the 1994 Agreement and Its Consent to Defendants' Use of OEI's OMEGA Marks.

As the Court found, and as OSA does not dispute on their Motion for Reconsideration, OSA is barred by the 1994 Agreement and the *Omega I* Settlement Agreement from asserting that defendants' registration or use of OMEGA marks in connection with period timers, industrial and scientific clocks, or other measuring, timing and display apparatus sold for the measurement or control of variable parameters in science and industry, constitutes trademark infringement. (SJ Ruling, pp. 11, 13-16). OSA completely ignores this holding that OSA expressly released and waived any claims regarding OEI's registration and use of OMEGA marks in connection with period timers and other goods that measure and control variable parameters in science and industry in the parties' 1994 Agreement and their *Omega I* Settlement Agreement. These agreements cover the goods that OSA alleges are infringing and, thus, the 1994 Agreement and the *Omega I* Settlement Agreement provide a separate and independent basis, wholly apart from any application of the *Polaroid* factors, for granting summary judgment in favor of OEI on OSA's trademark infringement claim. OSA simply ignores OEI's argument and the Court's holding that consent is a defense to OSA's infringement claim. *See, e.g., Times Mirror Magazines, Inc.,* 103 F. Supp. 2d at 738; *Society for the Advancement of Educ., Inc.,* 1999 U.S. Dist. LEXIS 700, at *26-27.

### B.    OSA Points to No Overlooked Facts or Law that Would Alter the Court's Ruling or the Absence of a Likelihood of Confusion.

Even putting aside the effect of the 1994 Agreement and *Omega I* Settlement Agreement on OSA's infringement claim, OSA's arguments for reconsideration of the Court's ruling on infringement do not meet the strict requirement for a motion for reconsideration. OSA points to

no new authority or overlooked facts that would alter the outcome on summary judgment.

Rather, OSA merely reargues the same issues and evidence relating to likelihood of confusion

that have already been briefed by the parties and considered by the Court in exhaustive detail.

       1.    *Strength of the Mark*

OSA points to the same vague evidence of sales and advertising expenditures that it

improperly submitted on reply in support of its summary judgment motion. (*See* Mtn. for

Reconsid., p. 13). However, as defendants noted in their Motion to Exclude OSA's

Supplemental Statement of Facts and the Declaration of Peter Stierli, and as OSA conceded in its

opposition to that motion, the Stierli declaration provides purported *worldwide* sales and

advertising figures, and it is impossible to determine from these data OSA's U.S. sales and

advertising expenditures under the OMEGA marks. (Defendants' Motion to Exclude, dated

11/11/04 [Docket # 161], p. 6; OSA's Opposition to Motion to Exclude, dated 12/6/04 [Docket #

165, pp. 5-6). (Indeed, it is not even clear from the Stierli declaration whether the data are

limited to sales and advertising under the OMEGA marks.) OEI, by contrast, showed substantial

advertising in the U.S. of many millions of dollars, and sales of hundreds of millions of dollars.

(*See* M. Hollander 9/14/04 Dec. ¶¶ 24-25). Moreover, OSA wholly ignores, yet again, the

undisputedly widespread third party registration and use of OMEGA marks for a variety of

goods and services, as well as the settled law that such third party use reduces a mark's strength

and reduces any possible confusion. (*See* OEI SJ Br., pp. 31-33, and citations therein). In

contrast, the case that OSA cites for its argument regarding strength of the mark, *Virgin Enterps.

Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003), did *not* involve any evidence of such third party use,

and, indeed, addresses the strength of "unusual" marks rather than marks in widespread use by

third parties. *Id.* at 148.

2.   *Proximity of Products*

a.   The So-Called Watch Batteries

In its motion for reconsideration, Plaintiff improperly reargues the already rejected

argument that OEI's sale of so-called watch batteries supports a finding of a likelihood of

confusion, and points to no new authority or facts concerning this failed argument.  The Court

clearly considered the parties' arguments and all evidence submitted with respect to the "watch

batteries" argument, and OSA's reassertion of this argument fails for all of the reasons set forth

in defendants' moving papers.  (*See* OEI Opp. to SJ, p. 30).  Briefly summarized, defendants

showed that it was undisputed that the batteries at issue were offered on a web page for, and as a

power source for, OEI's "Digital Open Channel Water Velocity Meter," which is a device for

scientific and industrial uses that measures "water velocity . . . in open channels and partially

filled pipes such as sewers." (OEI Opp. to SJ, p. 30).  It was further undisputed that the Digital

Open Channel Water Velocity Meter is sold to scientific and industrial consumers, and that OEI

has never marketed or sold these batteries for use in watches.  (OEI Opp. to SJ, pp. 3-4, 8, 30;

OEI Reply to SJ, p. 7).  The undisputed evidence showed that the term "watch batteries" (which

is no longer in use on the web page for reasons wholly unrelated to this litigation) was used in

the past merely because the third party manufacturer of the flow meter sold by OEI refers to the

batteries as "watch-type batteries" (OEI Opp. to SJ, p. 30).  There is no evidence that OEI's use

of the term "watch batteries" on its web site created a likelihood of purchaser confusion, that

anyone ever bought these batteries for any purpose other than for use with the industrial flow

meter with which they are sold, or that the batteries have ever been purchased by an ordinary

consumer or by anyone for use with a watch, or that any consumer has ever even *seen* the cited

web page that offered the batteries.  What is more, there is absolutely no evidence that OSA has

ever marketed or sold batteries in the United States for use in watches or that any of the United States OMEGA registrations owned by OSA cover watch batteries.

b.    The Period Timer Advertisement

OSA next reargues that the Court purportedly overlooked an OEI technical article about a period timer that appears in one of OEI's "Made in the U.S.A." handbooks of scientific and industrial process control and measurement instruments, and that depicts a picture of a stopwatch. The article at issue – one page out of millions that OEI has published about its products – is about a period timer that OEI undisputedly is permitted to sell under the 1994 Agreement and the *Omega I* Settlement Agreement, as the Court has concluded and as OSA does not dispute on this motion. (SJ Ruling, pp. 14-16). The Court correctly recognized that the placement of a stopwatch near a period timer does not raise a material issue of fact regarding the proximity of the parties' products. (SJ Ruling, pp. 19-20). Indeed, it is undisputed that OEI's period timers (which OEI has sold for many years) have a timing function, so the use of a stopwatch in an article about a period timer to convey that function is hardly surprising. Nor does OSA point to any other evidence not already considered by the Court at the summary judgment stage. Thus, the judge correctly held that "OEI and OSA 'are operating in completely different areas of commerce . . .'" and OSA has not submitted any new evidence to refute this conclusion. (SJ Ruling, p. 19).

3.    *Natural Zone of Expansion*

Dissatisfied with the Court's correct holding that "OSA['s] . . . 'natural zone of expansion' [does not] extend[ ] into OEI's market of thermocouples and other industrial and scientific apparatus," plaintiff asserts for the first time in its Motion for Reconsideration a wholly new argument with respect to the "zone of expansion" factor. (SJ Ruling, p. 21). Thus, in its Opposition to Defendants' Motion for Summary Judgment ("OSA Opp. to SJ"), OSA asserted

that OEI's use of its OMEGA marks encroached on OSA's natural zone of expansion because OSA purportedly had vague and ambiguous plans to sell scientific and industrial goods. (OSA Opp. to SJ, pp. 15-18). Apparently recognizing that it provided no evidence of such plans – and that they would, in all events, be irrelevant in view of the 1994 Agreement – OSA now argues that "[t]he correct inquiry . . . is whether consumers might find it plausible that OSA would expand its business to include Defendant's products." (Mtn. for Reconsid., p. 18).

This new-found argument fails for several reasons. First, by arguing that the zone of expansion factor now hinges on consumers' expectations, plaintiff improperly adopts a new argument on reconsideration. As stated above, "[a] party seeking reconsideration . . . may [not] then use such a motion to advance new theories . . . in response to the court's rulings.'" *Watson*, 2005 U.S. Dist. LEXIS 23393, at *6 (internal quotations and citations omitted). Second, in advancing this new argument, OSA merely reasserts the same facts already considered and rejected by the Court. Third, there is absolutely no evidence in the record that consumers in the United States would expect OSA to sell in science and industry. Lastly, putting aside the foregoing points, it is irrelevant whether consumers would expect OSA to sell in science and industry, or whether OSA has any plans to do so, because OSA indisputably recognized OEI's right to use OMEGA marks in science and industry in the 1994 agreement, and gave up any rights of its own to do so. (SJ Ruling, pp. 6-8, 13-16; M. Hollander 9/14/04 Dec. ¶ 30 & Ex. T ("1994 Agreement")).

        4.    *Actual Confusion*

OSA also uses this Motion for Reconsideration to improperly reargue the legal significance of two isolated incidents of purported confusion – evidence that was already considered and rejected by the Court in its summary judgment ruling. (SJ Ruling, pp. 23-24). Thus, the Court expressly held that two alleged misdirected communications was not sufficient

evidence to present a triable issue of fact with respect to actual confusion, citing to *Universal City Studios, Inc. v. Nintendo Co. Ltd.*, 746 F.2d 112 (2d Cir. 1984) for the proposition that "[T]he fact that there may be a few confused consumers does not create a sufficiently disputed issue of fact regarding the likelihood of confusion so as to make summary judgment improper." (SJ Ruling, p. 24).

Plaintiff misreads the holding of *Universal City Studios*, which clearly held that summary judgment is warranted even assuming the existence of a few instances of actual confusion. Indeed, it is settled law in this and other Circuits that *de minimis* or isolated instances of actual confusion are insufficient to support a finding of likelihood of confusion. *See, e.g., Nora Bevs. v. Perrier Group of Am.*, 269 F.3d 114, 124 (2d Cir. 2001) (even if testimony had been admissible as non-hearsay, "two anecdotes of confusion [between the parties' products] over the entire course of competition constituted de minimis evidence insufficient to raise triable issues"); *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999) (holding that "seven examples of actual confusion" was "de minimis and does not support a finding of a genuine issue of material fact as to the likelihood of confusion"); *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1535 (10th Cir. 1994), *cert denied*, 1994 U.S. LEXIS 8787 (1994) (rejecting evidence of consumer inquiries and complaints regarding plaintiff's affiliation with defendant's product as "*de minimis*"); *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1249 (8th Cir. 1990) (where "[plaintiff] offered evidence of a few instances of actual confusion . . . a court may find such evidence insufficient to establish the existence of a genuine issue of material fact regarding likelihood of confusion"); *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 76 (S.D.N.Y. 2003) (where the only evidence of actual confusion consisted of testimony as to questions raised by consumers regarding plaintiff's affiliation with defendants'

shops, such "'de minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion'") (citing *Universal Money Ctrs.*).

Moreover, the parties have co-existed and achieved substantial sales under their respective OMEGA marks for over four decades. (SJ Ruling, p. 4; OEI SJ Br., p. 29; OEI 56(a)1 Statement, ¶¶ 1, 2, 27). This is particularly significant, because courts have repeatedly held that especially where the parties have made significant sales over a long period of time, isolated instances of actual confusion should be disregarded as *de minimis*. *See, e.g., C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985) (holding that two letters allegedly evidencing actual confusion were "insignificant when contrasted to the hundreds of thousands of magazines sold over the years"); *Petro Stopping Ctrs., L.P. v. James River Petroleum*, 130 F.3d 88, 95 (4th Cir. 1997) (where plaintiff was a "significant commercial actor" in the relevant market, its "failure to uncover more than a few instances of actual confusion creates a 'presumption against likelihood of confusion in the future'"); *Inc. Pub. Corp. v. Manhattan Magazine, Inc.*, 616 F. Supp. 370, 386-90 (S.D.N.Y. 1985) (rejecting plaintiff's anecdotal evidence of actual confusion, including certain "[d]eclarations arguably falling within a more probative category [that were] de minimis in the totality of circumstances"). Two minor instances of alleged confusion over the course of forty years hardly raises a triable issue of fact as to actual confusion as to source.

5.    *Other Polaroid Factors*

As for OSA's remaining arguments regarding the judge's application of the *Polaroid* factors, there is absolutely no basis for OSA's assertion that the Court placed "misguided" "emphasis" on the Quality of Defendants' Goods and Good Faith factors. (Mtn. for Reconsid., p.

21).  It is clear that an application of all of the *Polaroid* factors, as a whole, overwhelmingly favored defendants.

## V.      THE DISMISSAL OF CERTAIN OEI COUNTERCLAIMS RENDERS MOOT OSA'S ALTERNATIVE REQUEST FOR RELIEF.

OSA's request for alternative relief in the form of dismissal of certain of OEI's counterclaims is moot.  Prior to the filing of the instant motion, OEI advised plaintiff's counsel that OEI intends to voluntarily dismiss with prejudice the counterclaims for which OSA seeks dismissal, and to assert only its Second and Fifth Counterclaims, for trademark cancellation and breach of contract relating to two OSA trademark registrations in the United States.  In the event that OSA does not consent to this voluntary dismissal, OEI intends to move to voluntarily dismiss these claims.  In light of this voluntary dismissal, there is no merit to OSA's assertion that trial of OEI's counterclaims would require the jury or judge to adjudicate issues that have already been resolved.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for reconsideration should be denied in its entirety, and defendants should be awarded their costs and attorneys' fees incurred in responding to this meritless and vexatious motion.

Dated:  November 3, 2005
     New York, NY

Respectfully submitted,

Thomas E. Minogue (CT 06845)
MINOGUE BIRNBAUM LLP
237 Elm Street
New Canaan, CT  06840
(203) 966-6916

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Of counsel:
Victoria Haje
Christopher D. Baker
*Attorneys for Defendants*