# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA, S.A., <br><br> Plaintiff, <br><br> v. <br><br> OMEGA ENGINEERING, INC., <br> OMEGA SCIENTIFIC, INC., and <br> OMEGA PRESS, INC., <br><br> Defendants. <br><br> OMEGA ENGINEERING, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OMEGA, S.A. and <br> THE SWATCH GROUP LTD., <br><br> Counterclaim-Defendants. | Civil Action No.: <br> 3:01 CV 2104 (SRU) |

## OMEGA ENGINEERING, INC.'S MOTION *IN LIMINE* AND INCORPORATED MEMORANDUM OF LAW TO PRECLUDE HEARSAY AND OPINION TESTIMONY

Counterclaim-plaintiff Omega Engineering, Inc. ("OEI") hereby submits this motion *in limine* to preclude hearsay testimony pursuant to Rule 802, Fed. R. Evid., and opinion testimony relating to contract interpretation that was not discussed between the parties during the negotiation of the contract at issue. In further support of this motion, OEI states as follows:

### I. PRELIMINARY STATEMENT

OEI claims, *inter alia*, that counterclaim-defendant Omega, S.A. ("OSA") breached an agreement between the parties entered into in August 1994 related to the OMEGA and Ω trademarks (the "1994 Agreement"). (A copy of the 1994 agreement is attached as Exhibit A.)

Doc. #31174482_V12.WPD

One important issue in this case is the meaning of one provision of this agreement, Paragraph 4(b).

Under Connecticut law, any ambiguities in an agreement are resolved by ascertaining the intent of the parties who negotiated the agreement. *See HLO Land Ownership Assocs. Ltd. P'ship v. City of Hartford*, 248 Conn. 350, 356-57, 727 A.2d 1260, 1264-5 (1999). Here, the evidence, including the deposition testimony of OSA's own witnesses, confirms that the 1994 Agreement was negotiated by two people: namely, Mr. William Coutts on behalf of OSA and Dr. William Drucker on behalf of OEI. Mr. Coutts and Dr. Drucker did not sign the agreement. The people who signed the 1994 Agreement on behalf of OSA and OEI were corporate officers of the two companies who did not participate in any way in the negotiations leading up to the 1994 Agreement. Mr. Coutts passed away in 1999, and was not deposed in this case. Despite this clear and undisputed factual record, OSA has indicated that it expects to call as witnesses at trial Christiane Sauser Rupp and Hanspeter Rentsch, to testify, among other topics, about "the negotiation, drafting, execution, and purpose of the 1994 Agreement between OSA and OEI."

Ms. Sauser Rupp and Dr. Rentsch testified at their depositions in this case about the 1994 Agreement and, in prior depositions, about conversations with Mr. Coutts regarding the negotiation of the 1994 Agreement. OSA apparently intends to present similar testimony at trial. OEI moves to exclude trial testimony of OSA witnesses as to out-of-court statements made by Mr. Coutts concerning his intent with respect to the 1994 Agreement, his interpretation of provisions of the agreement, or his statements during the negotiations. Ms. Sauser Rupp and Dr. Rentsch had no involvement in the negotiations with OEI of the 1994 Agreement and, thus, any such testimony is hearsay, pursuant to Rule 803, Fed. R. Evid., if offered to prove OSA's or Mr. Coutts' intent or statements during the negotiations of the 1994 Agreement.

In addition to excluding testimony regarding Mr. Coutts' out-of-court statements, OEI moves to exclude all testimony of OSA's witnesses regarding "the negotiation, drafting, execution, and purpose of the 1994 Agreement between OSA and OEI." Such testimony is irrelevant for the purpose of ascertaining the intent of the parties who negotiated the 1994 agreement. *See Gateway Co. v. DiNoia,* 232 Conn. 223, 231-32, 654 A.2d 342, 347 (1995). Accordingly, OEI moves to exclude any trial testimony concerning the parties' interpretation of the 1994 Agreement, or intent with respect to the agreement, except for admissible, non-hearsay evidence of statements made by OSA's representatives to OEI's representatives during the negotiations that led to the 1994 Agreement.

## II. RELEVANT FACTS

### A.    Testimony Concerning The Negotiation of The 1994 Agreement

OSA listed Ms. Sauser Rupp, legal counsel for OSA since 1997, and Mr. Rentsch, former president of OSA, as witnesses it expects to call at trial to testify regarding "the negotiation, drafting, execution, and purpose of the 1994 Agreement between OSA and OEI." Sauser Rupp first began working for OSA as an attorney in 1997, three years after the 1994 Agreement was signed. She testified that she was not involved in negotiating the agreement and that the only person from OSA who negotiated on behalf of OSA was Mr. Coutts:

> Q: Can you identify Exhibit 78 for the record?
> A: This is the agreement concluded between Omega Engineering and Omega, S.A. on the 2nd day of August 1994.
>
> Q: That is an agreement that was signed by Hanspeter Rentsch and Hans Kurth on behalf of Omega, S.A.; is that correct?
> A: Correct.
>
> Q: This agreement is still in force and effect, correct?
> A: Correct.

Q:     Now, you did not participate in negotiating Exhibit 78, did you?

A:     No.  I was not yet in the company.

\*   \*   \*

Q:     Have you spoken to either Mr. Kurth or Mr. Rentsch to ascertain what discussions, if any, they had with Mr. Drucker here regarding what the term science and industry in this agreement meant?

A:     To my knowledge, Dr. Drucker only had contacts, direct contacts with Mr. Coutts regarding this agreement . . .

(Exhibit B, Sauser Rupp 3/17/2004 Dep. Tr. 407:8-408:18).

Ms. Sauser Rupp also testified at an earlier deposition taken in another proceeding between the parties in this District, *Omega S.A. v. Omega Eng'g, Inc.*, 3:00 CV 1848 (JBA) ("*Omega II*"), that the two corporate officers who actually signed the 1994 Agreement on behalf of OSA, Mr. Hans Kurth and Dr. Rentsch, were not involved in the negotiations:

Q:     Who is charged with negotiating the 1994 agreement for Omega, S.A.?

A.     So it was Mr. Coutts . . .

\*   \*   \*

Q:     Have you asked anyone at Omega, S.A. or Swatch Group or SMH about their involvement with Mr. Coutts in connection with what became the 1994 agreement?

A:     I think that Mr. Coutts did that on his own.  Did that on his own.  But then just at the end, because he had no signature power for the company, he had to give the agreement to some persons who could sign it because they were empowered to sign on behalf of Omega, S.A.

Q:     I was just about to ask you that.  So on the last page of Plaintiff's Exhibit 1 there is a signature of Hans Kurth and Hans Peter Rentsch, correct?

A:     Exactly.

Q:     And do you know what involvement they had other than signing the agreement in connection with negotiating the '94 agreement?

A:     I think none.

(Exhibit C, Sauser Rupp 6/27/01 Dep. Tr. 79:13-15, 82:22-83:16).

In his deposition testimony in *Omega II*, Dr. Rentsch confirmed that he was not involved in negotiating the 1994 Agreement with OEI, and that his only role was to sign the 1994 agreement.[1] Thus, Dr. Rentsch testified:

> Q.    Do you recall discussing this 1994 agreement with Mr. Coutts?
>
> A.    Certainly.  I think before signing I certainly would have it discussed, yup.
>
> Q.    And did Mr. Coutts handle the negotiations on behalf of Omega S.A. with Omega Engineering's representative?
>
> A.    Yes.

(Exhibit D, Rentsch 11/6/01 Dep. Tr. 119:1-8).  Dr. Drucker, who negotiated the 1994 Agreement on behalf of OEI, similarly testified in deposition that he only dealt with Mr. Coutts during the negotiation of the 1994 Agreement.  (Exhibit E, Drucker 9/2/2004 Dep. Tr. 47:2-25, 59:3-61:12).  Thus, the uniform testimony is that only two people were involved in the negotiation of the 1994 agreement – Mr. Coutts on behalf of OSA and Dr. Drucker on behalf of OEI.[2]

On these facts, any testimony by Ms. Sauser Rupp or Dr. Rentsch concerning the negotiation of the 1994 Agreement is necessarily based on the out-of-court statements of Mr. Coutts, and is therefore hearsay.

---

[1]    Nor did Mr. Hans Kurth, the other person who signed the 1994 Agreement on behalf of OSA, participate in the negotiations leading up to the 1994 Agreement.  (*See* Exhibit F, Kurth 11/5/2001 Dep. Tr. 40:13-41:12).

[2]    As for the fact that the agreement was executed (including by Dr. Rentsch) and is binding on both parties, those facts are not in dispute.  OSA's witnesses concede that the 1994 Agreement is a valid, binding agreement.  (Exhibit G, Rentsch 4/23/2004 Dep. Tr. 266:7-9, 266:17-24; Exhibit B, Sauser Rupp 3/17/2004 Dep. Tr. 407:23-25).

**B.**    <u>Testimony Concerning Contract Interpretation</u>

As shown above, the only persons involved in the negotiation of the 1994 Agreement

were Mr. Coutts (on behalf of OSA) and Dr. Drucker (on behalf of OEI).  The corporate officers

who signed the 1994 agreement on behalf of OSA were not involved in the negotiation of the

1994 agreement.  Both Ms. Sauser Rupp and Dr. Rentsch, however, have testified at deposition

about their interpretation of the 1994 Agreement, and OSA has indicated that it intends to present

their testimony regarding the "purpose" of the 1994 Agreement.  As shown below, any such

testimony, if offered at trial, constitutes unexpressed legal opinion testimony and is not

admissible.

### III. <u>ARGUMENT</u>

**A.**    **Testimony From OSA Witnesses On the Negotiation**
        **Of the 1994 Agreement Is Inadmissible Hearsay**

Pursuant to Rule 802, Fed. R. Evid., out-of-court statements introduced to prove

the truth of the matter asserted are inadmissible.  *See, e.g., United States v. Cardascia*, 951 F.2d

474, 486 (2d Cir. 1991).[3]

Here, Ms. Sauser Rupp and Mr. Rentsch of OSA testified in deposition as to

conversations they had with Mr. Coutts concerning the negotiations leading up to the 1994

agreement and the intent of the parties in connection with those negotiations.  Any such

testimony, if offered by OSA at trial to prove the parties' understanding of, or intent with respect

---

[3]    A federal court sitting in diversity jurisdiction applies the federal rules, including the
Federal Rules of Evidence, for procedural matters.  *See Consorti v. Armstrong World
Indus., Inc.*, 72 F.3d 1003, 1011 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031
(1996).

to, the 1994 Agreement during the negotiations, or to prove any statements made by the parties to one another during negotiations, is inadmissible hearsay. *CITE*

**B.    Unexpressed Legal Opinion Testimony on Contract Interpretation Should Be Excluded**

In a breach of contract action, the first step is to construe the contract and resolve any ambiguities. *See HLO Land Ownership Assocs. Ltd. P'ship v. City of Hartford*, 248 Conn. 350, 356-57, 727 A.2d 1260, 1264-5 (1999); *Barnard v. Barnard,* 214 Conn. 99, 109, 570 A.2d 690, 696 (1990).   The Court, as a matter of law, determines if any ambiguities exist. *See HLO*, 248 Conn. at 357, 727 A.2d at 1264-5.

To resolve an ambiguity in a contractual provision, the Court may inquire into other provisions of the contract, evidence from the negotiation antedating the contract and industry custom and course of performance. *See Cody v. Remington Electric Shavers*, 179 Conn. 494, 498-99, 427 A.2d 810, 813 (1980) (various other provisions of the contract may be considered in determining the meaning of ambiguous terms); *Maier v. Arsenault,* 140 Conn. 364, 368, 100 A.2d 403, 405 (1953) ("parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the interpretation of the contract"); *Stelco Indus., Inc. v. Bette*, 2 Conn. App. 17, 23, 475 A.2d 1105, 1109 (Conn. App. 1984) ("parol evidence of conversations between the parties antedating the contract may be used as an aid in determining their intent"); *Pratt, LLC v. Aetna Life Ins. Co.*, 1999 Conn. Super. LEXIS 917, at *15 (Conn. Super. Ct. Mar. 26, 1999) ("statements made [at the time of the formation of the agreement] by the parties involved in the partnership agreement may be properly considered to aid in determining the intent of the parties"); *see also Wards Co., Inc. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 122 (2d Cir. 1985) (court may inquire into "the circumstances

surrounding the sublet clause's negotiation and drafting, the identity of the drafter, custom in the

trade, or any other evidence it deems probative on the issue of the parties' intent at the time the

lease was drafted and executed").

On the other hand, it is not proper, when construing a contract, to consider unexpressed

intent or opinions held by the parties to the contract. *See Gateway Co. v. DiNoia,* 232 Conn. 223,

231-32, 654 A.2d 342, 347 (1995) ("'[i]n determining the meaning and effect of the controverted

language in the lease, the inquiry must focus on the intention expressed in the lease and not on

what intention existed in the minds of the parties'") (quoting *Water & Way Properties v. Colt's

Mfg. Co.*, 230 Conn. 660, 666, 646 A.2d 143, 146 (1994)); *Hatcho Corp. v. Della Pietra,* 195

Conn. 18, 21, 485 A.2d 1285, 1288 (1985) (same); *W.G. Maltby, Inc. v. Associated Realty Co.*,

114 Conn. 283, 289, 158 A. 548, 550 (1932) (holding that parol testimony may be introduced as

to the meaning of a contract term "'not for the purpose of ascertaining any unexpressed intent,

but in order to determine the intent they meant to express by the phrase they used'") (citation

omitted); *Fairfield Lease Corp. v. Eastern Sportswear Co.*, 6 Conn. Cir. Ct. 347, 351, 273 A.2d

300, 302 (Conn. Cir. Ct. 1970) (held testimony concerning negotiations prior to executing the

contract was admissible "for the purpose of showing the meaning of the term as used in the

contract," and "not for the purpose of ascertaining any unexpressed intent").    Nor is testimony

regarding a parties' present interpretation of a contractual provision admissible to assist the Court

in interpreting a contract. Where the parties disagree over the meaning of a contract, "[t]he intent

of the parties must be taken from the agreement itself, not from the parties' present

interpretations, and the agreement must be enforced as it is written." *Rolling Lands Invs., L.C. v.

Northwest Airport Mgmt., L.P.*, 111 S.W.3d 187, 196 (Tex. Ct. App. 2003). *See also Tele-Pac,

Inc. v. Grainger*, 168 A.D.2d 11, 19 (N.Y. App. Div. 1991) (statement of plaintiff's principal to

third party concerning her belief as to the effect of an agreement executed 20 years prior deemed to be "hearsay" and of "no probative value since her belief is irrelevant" to the issue of interpreting the terms of a contract).

As discussed above, OSA has stated that it intends to present at trial testimony by Ms. Sauser Rupp and Dr. Rentsch about "the negotiation, drafting, execution, and purpose of the 1994 Agreement between OSA and OEI." However, any testimony by Ms. Sauser Rupp or Dr. Rentsch regarding their or OSA's interpretation of the agreement, their or OSA's intent with respect to the agreement, or the "purpose" of the agreement, is irrelevant to the intent of the parties at the time that the agreement was negotiated and executed. As confirmed by the authorities cited above, even testimony as to what a party intended at the time the agreement was negotiated is not relevant, unless the understanding was expressed to the other party before the agreement was executed.

Here, as set forth above, it is undisputed the only two people involved in the negotiations on the 1994 Agreement were OSA's Mr. Coutts and Dr. Drucker on behalf of OEI. Dr. Rentsch did not negotiate the agreement with Dr. Drucker, and Ms. Sauser Rupp was not even employed by OSA in 1994. Thus, the only relevant testimony regarding the parties' interpretation of, or intent with respect to, the agreement are the statements that Mr. Coutts and Dr. Drucker expressed to each other during the negotiations leading up to the 1994 Agreement. All other testimony – including by those who signed the agreement but were not involved in the negotiations (*i.e.*, Dr. Rentsch) – is irrelevant opinion testimony and should be excluded.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Court exclude: (1) all hearsay testimony of OSA witnesses, including Ms. Sauser Rupp and Dr. Rentsch, concerning

prior conversations regarding negotiations or intent with respect to the 1994 Agreement; and (2)

all unexpressed legal opinion testimony regarding interpretation of the 1994 Agreement.

Dated: November 10, 2005
     New York, NY

          Respectfully submitted,

Of counsel:

Victoria Haje
Christopher D. Baker

          Thomas A. Smart (CT 21462)
          Paul C. Llewellyn (CT 25417)
          KAYE SCHOLER LLP
          425 Park Avenue
          New York, NY  10022
          (212) 836-8000

          Thomas E. Minogue (CT 06845)
          MINOGUE BIRNBAUM LLP
          237 Elm Street
          New Canaan, CT  06840
          (203) 966-6916

          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2005, I caused the foregoing MOTION *IN LIMINE* AND INCORPORATED MEMORANDUM OF LAW TO PRECLUDE HEARSAY AND OPINION TESTIMONY to be served by Federal Express overnight delivery and by facsimile upon the following counsel for Plaintiff-Counterclaim-Defendant Omega, S.A.:

Jess M. Collen, Esq.
Matthew Wagner, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY 10562

Paul C. Llewellyn

EXHIBIT A



030394 CTS

## A G R E E M E N T

THIS AGREEMENT is made between:

(1)     OMEGA ENGINEERING INCORPORATED, a Corporation organised and existing under the Laws of the State of Delaware, United States of America, of One Omega Drive, Stamford, Connecticut 06907, United States of America, of the ONE PART, and

(2)     OMEGA SA (OMEGA AG) (OMEGA LIMTED) a Société Anonyme organised under the Laws of Switzerland, of 96, Rue Staempfli, Bienne, Switzerland, of the OTHER PART;

WHEREAS

(A)     Both parties hereto are desirous of terminating Opposition proceedings lodged by Omega Engineering Incorporated against a Hong Kong Trademark Application N° 3221/86 in class 9 of OMEGA SA.

(B)     OMEGA ENGINEERING INCORPORATED has made a Hong Kong Trademark Application to register the mark "ΩE under Application N° 1115A/87 in class 9.

(C)     OMEGA SA intends to oppose Hong Kong Trademark Application N° 1115A/87 in class 9.

(D)     OMEGA ENGINEERING INCORPORATED has made applications under N°s 12775 and 12776 in the Federal Republic of Germany to register as trademarks OMEGA SOFT and OMEGA in class 9 and class 42.

(E)     OMEGA SA intends to oppose German Trademark Applications N°s 12775 and 12776.

(F)     Both parties hereto are desirous of coming to an arrangement for the avoidance of future interference Worldwide between their respective fields of commercial operation under their Rights in respect of Trademarks consisting of or including the word OMEGA and/or the Greek letter Ω or containing elements colourably resembling either of thos two elements.

IT IS HEREBY AGREED as follows:

1.      OMEGA ENGINEERING INCORPORATED shall forthwith withdraw its Opposition to Application N° 3221/86 upon the signing of this Agreement by formal notification to the Hong Kong Registrar of Trademarks.

2464000287



2.  OMEGA SA shall upon the signing of this agreement amend the specification of goods in its application N° 3221/86 to read:

*"Computer controlled apparatus for checking and controlling the measurement of time and distances for use in sporting events; electronic information display apparatus for use in sporting events and in public concourses; parts and fittings for the aforesaid goods; all included in class 9."*

3.  Each of the parties hereto will bear its own costs in the said Opposition proceedings.

4.  Henceforth from the signing of this Agreement and effective in all countries of the World:-

a.  OMEGA ENGINEERING INCORPORATED undertakes not to use, register or apply to register any trademark consisting of or containing the word OMEGA or the Greek letter Ω or any mark containing elements colourably resembling either of those two elements in respect of computer controlled measuring, timing and display apparatus, unless intended for science or industry.

b.  OMEGA SA undertakes not to use, register or apply to register any trademark consisting of or containing the world OMEGA or the Greek letter Ω, or any element colourably resembling either of those two elements, in respect of.

*"Apparatus industrially and/or scientifically employed for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow".*

c.  OMEGA SA will not object to the use or registration by OMEGA ENGINEERING INCORPORATED of any trademark consisting of or containing the word OMEGA or the Greek letter Ω or any element colourably resembling either of those two elements in respect of apparatus industrially and/or scientifically employed for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow.

5.  OMEGA ENGINEERING INCORPORATED shall upon the signing of this Agreement amend the specification of goods in its application N° 1115A/87 to read:

*"transducers, detectors, sensors; electrical instruments and apparatus for controlling, checking, indicating, displaying, measuring, monitoring, warning, data logging (all for use with variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow) and parts and fittings for all of the aforesaid goods, computers, computer programs, computer interfacing instruments and apparatus; signal conditioning instruments and apparatus and signal amplifiers; thermocouples, thermocouple probes and thermopiles; electrical power supply units; electric adapt-*

2464 000288



*ors, connectors, terminals, feedthrough unions, bushings, sockets, wires and cable, all of the foregoing only for use in science and industry, and not including computer controlled apparatus for checking and controlling the measurement of time and distances for use in sporting events; electronic information display apparatus for use in sporting events & in public concourses and parts and fittings for the aforesaid goods".*

6.  OMEGA ENGINEERING INCORPORATED further undertakes to use and/or register the mark "ΩE" the subject of application N° 1115A/87 only in the form as applied for under the said application.

7.  OMEGA ENGINEERING INCORPORATED shall upon the signing of this Agreement amend the specification of goods in its German applications N°s 12775 and 12776 so as to set forth that all of the goods covered are for scientific and/or industrial use.

8.  Each of the parties hereto agrees that the above terms are to be binding upon themselves , their assigns and licensees and are to be communicated to their Registered and Permitted Users, if any, and are to enure to the benefit of the other party's assigns, licensees and Registered and Permitted Users.

9.  Each of the parties hereto agrees that for all intents and purposes, this agreement supersedes the former Agreement made by the parties hereto and dated 6th March 1992 by OMEGA ENGINEERING INCORPORATED and 22nd April 1992 by OMEGA SA.

Signed at                           ) For and on behalf of
                                    ) OMEGA ENGINEERING iNCORPORATED
                                    )
                                    )
this 2ᵈ day of AᴜɢᴜsT              )
1994                                )  RALPH S. MICHEL
                                    )  VICE PRESIDENT
                                    )
                                    )
Signed at Bienne                    ) For and behalf of OMEGA SA
                                    )
this  3th  day of  May              )
1994                                )  Hans Kurth          Hanspeter Rentsch
                                    )  General Manager   General Counsel

2464 000289

EXHIBIT B

3/17/2004  Rupp, Christiane Sauser

```
 1                    *CONFIDENTIAL*
 2        UNITED STATES DISTRICT COURT
 3       FOR THE DISTRICT OF CONNECTICUT
 4      ----------------------------------x
        OMEGA, S.A.,
 5
                       Plaintiff,
 6
                vs.                      Civil No.
 7                                       3:01 CV 2:04(MRK)
        OMEGA ENGINEERING, INC.,
 8      OMEGA SCIENTIFIC, INC., and
        OMEGA PRESS, INC.,
 9
                       Defendants.
10
        OMEGA ENGINEERING, INC.,
11
                  Counterclaim-Plaintiff,
12
                vs.
13
        OMEGA S.A. and
14      THE SWATCH GROUP LTD.,
15            Counterclaim-Defendants.
        ----------------------------------x
16
17         CONTINUED DEPOSITION OF
18          CHRISTIANE SAUSER RUPP
19
20          New York, New York
21        Wednesday, March 17, 2004
22
23
24
        Reported by:
25      CARY N. BIGELOW, RPR
```

1

2

3

4

5

6

7                           March 17, 2004

8                           8:31 a.m.

9

10          Continued videotaped 30(b)(6)

11      deposition of Omega, S.A. and The Swatch

12      Group Ltd. by their representative,

13      CHRISTIANE SAUSER RUPP, and individual

14      deposition of CHRISTIANE SAUSER RUPP held

15      at the offices of Kaye Scholer LLP, 425

16      Park Avenue, New York, New York, pursuant

17      to notice, before Cary N. Bigelow, RPR, a

18      Notary Public of the State of New York.

19

20

21

22

23

24

25

3/17/2004  Rupp, Christiane Sauser

1                    Sauser Rupp - Confidential

2        to go ahead and file and demonstrate to the

3        examining attorney that you had prior rights, is

4        there?

5            A.      Thank you for the advice.

6            Q.      Is my statement correct?

7            A.      I don't know.

8                    MR. SMART:   Let's mark as Exhibit 78

9            the 1994 agreement between the parties.

10                   (Defendants' Exhibit 78, August 2,

11           1994 agreement between Omega Engineering and

12           Omega, S.A., marked for identification, as

13           of this date.)

14           Q.      Can you identify Exhibit 78 for the

15       record?

16           A.      This is the agreement concluded

17       between Omega Engineering and Omega, S.A. on the

18       2nd day of August 1994.

19           Q.      That is an agreement that was signed

20       by Hanspeter Rentsch and Hans Kurth on behalf of

21       Omega, S.A.; is that correct?

22           A.      Correct.

23           Q.      This agreement is still in force and

24       effect, correct?

25           A.      Correct.

1                    Sauser Rupp - Confidential

2          Q.      Now, you did not participate in

3    negotiating Exhibit 78, did you?

4          A.      No.   I was not yet in the company.

5          Q.      Have you spoken to either Mr. Rentsch

6    or Mr. Kurth -- I think you said -- is Mr. Kurth

7    still alive or not?

8          A.      Yes, Mr. Kurth is alive.   It is

9    Mr. Coutts who died.

10         Q.      I see.   Thank you.

11                 Have you spoken to either Mr. Kurth or

12   Mr. Rentsch to ascertain what discussions, if

13   any, they had with Mr. Drucker here regarding

14   what the term science and industry in this

15   agreement meant?

16         A.      To my knowledge, Dr. Drucker only had

17   contacts, direct contacts with Mr. Coutts

18   regarding this agreement, and I am not even sure

19   that they had direct contact because --

20         Q.      That's my understanding as well.

21                 Now, if you would direct your

22   attention to paragraph 2 at the top, you see --

23   well, let's look at the bottom paragraph on page

24   1.  It says, "It is hereby agreed as follows:

25   Omega Engineering, Incorporated shall forthwith

EXHIBIT C

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
----------------------------------------x
OMEGA, S.A.,

                    Plaintiff,

         -against-                        300.CV
                                          1848 JBA
OMEGA ENGINEERING, INC., OMEGA PRESS,
INC., and OMEGA SCIENTIFIC, INC.,

                    Defendants.
----------------------------------------x

                         June 27, 2001
                         9:00 a.m.

30(b)(6) Deposition of CHRISTIANE SAUSER RUPP, taken

by Defendants, pursuant to notice, held at the

offices of Omega Engineering, One Omega Drive,

Stamford, Connecticut, before Nancy R. Sullivan, a

Shorthand Reporter and Notary Public within and for

the State of New York.

1                         SAUSER RUPP

2    agreement he was retired but still working as a

3    consultant for Omega, S.A.?

4          A.    So when the whole story began was

5    at the end of the Eighties because until the

6    parties got to the '92 agreement three or four

7    years had gone out; so Mr. Coutts, during that

8    period had passed from the status of employee to

9    consultant.  So let's say at the beginning he

10   was an employee and afterwards he was a

11   consultant, but he was always taking care of

12   everything which related to Omega Engineering.

13         Q.    Did he report to anyone at SMH or

14   Omega, S.A. regarding the, what led to the 1994

15   agreement?

16         A.    I have not found any notice to

17   anybody on the negotiations.

18         Q.    So you haven't found any documents?

19         A.    Exactly, I haven't found any

20   documents.  And while he was still living, I

21   never asked him the question, so I don't know.

22         Q.    Have you asked anyone at Omega,

23   S.A. or Swatch Group or SMH about their

24   involvement with Mr. Coutts in connection with

25   what became the 1994 agreement?


                DOYLE REPORTING INC. - 212-867-8220

SAUSER RUPP

1

2          A.    I think that Mr. Coutts did that on

3    his own.  Did that on his own.  But then just at

4    the end, because he had no signature power for

5    the company, he had to give the agreement to

6    some persons who could sign it because they were

7    empowered to sign on behalf of Omega, S.A.

8          Q.    I was just about to ask you that.

9                So on the last page of Plaintiff's

10   Exhibit 1 there is a signature of Hans Kurth and

11   Hans Peter Rentsch, correct?

12         A.    Exactly.

13         Q.    And do you know what involvement

14   they had other than signing the agreement in

15   connection with negotiating the '94 agreement?

16         A.    I think none.

17         Q.    Have you ever spoken with either

18   one of them about what their role was in the '94

19   agreement other than signing it?

20         A.    So I am sure that for Mr. Coutts

21   there was nothing else signing the agreement.

22               For Mr. Rentsch, he was also

23   working at SMH.  He was, he had the status as I

24   explained beforehand.  So, technically speaking,

25   Mr. Coutts, he was employee within the Legal

1                    SAUSER RUPP

2                    And it is the reason why, as I rose

3       in the department all the time, because I am

4       working 100 percent, that's the reason why I

5       started to have contact with Dr. Drucker and say

6       that Omega, S.A. considers that filing trademark

7       applications concerning timers was not

8       acceptable, because everything which relates to

9       timing is one of the activities of Omega, S.A.,

10      an activity which has started at the beginning

11      of the Century in 1909, there was already timing

12      by Omega, S.A. in England of balloon competition

13      or something else.  And during all these years,

14      all the Century, Omega has continued in that

15      field.

16                   So when Mr. Coutts found out that

17      there were timers, he thought that there was

18      something which was not correct, and that's the

19      reason why I wrote to Mr. -- to Dr. Drucker

20      saying that we consider that it was not covered

21      by the agreement and we asked them to withdraw

22      these products.

23            Q.     Didn't you testify previously,

24      though, that there was an issue over Omega

25      Engineering selling of a product that displayed

EXHIBIT D

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF CONNECTICUT

3    Civil Action Number:  300 CV 1848 JBA

4    - - - - - - - - - - - - - - - - - - - - - - - - -

5    OMEGA, S.A.,

6                           Plaintiff,

7                   vs.

8    OMEGA ENGINEERING, INC., OMEGA PRESS, INC.,

9    and OMEGA SCIENTIFIC, INC.,

10                           Defendants.

11    - - - - - - - - - - - - - - - - - - - - - - - - -

12              DEPOSITION OF HANSPETER RENTSCH

13                  November 6, 2001

14

15

16

17

18

19

20

21

22

23

24

25

1      Q.    Do you recall discussing this 1994

2   agreement with Mr. Coutts?

3      A.    Certainly.  I think before signing

4   I certainly would have it discussed, yup.

5      Q.    And did Mr. Coutts handle the

6   negotiations on behalf of Omega S.A. with

7   Omega Engineering's representative?

8      A.    Yes.

9      Q.    And as before, did you have the

10   ultimate authority on whether to approve the

11   Omega -- whether to approve this 1994

12   agreement on behalf of Omega S.A.?

13      A.    Yes.

14      Q.    Did you discuss this 1994 agreement

15   with Dr. Kurth before he signed it?

16      A.    Yes, certainly.

17      Q.    Do you recall what you discussed?

18      A.    No.  No details.

19      Q.    Now, did you discuss the course of

20   negotiations that led to this 1994 agreement

21   with Mr. Coutts as the negotiations were

22   progressing?

23      A.    Certainly he called me from time to

24   time, yes, during the negotiations.

25      Q.    And we had seen before a letter,

EXHIBIT E

```
     0001
1         IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF CONNECTICUT
2         -------------------------------------------X
          OMEGA S.A.,
3
                              Plaintiff,
4                                              NO.
              -against-                         3:01 CV 2104
5
          OMEGA ENGINEERING, INC., OMEGA
6         SCIENTIFIC, INC., AND OMEGA
          PRESS, INC.,
7
                              Defendants.
8         -------------------------------------------X
          OMEGA ENGINEERING, INC.,
9
                              Counterclaim-Plaintiff,
10
              -against-
11
          OMEGA, S.A. AND THE SWATCH GROUP LTD.,
12
                              Counterclaim-Defendants.
13        -------------------------------------------X
14                      388 Tarrytown Road
                        White Plains, NY
15                      September 2, 2004
                        9:20 a.m.
16
17             Videotaped examination before trial of
18        DR. WILLIAM DRUCKER, held pursuant to Notice and
19        Agreement, at the above time and place, before a
20        Notary Public of the State of New York.
21
22
23                      DOCUTRAN
                        388 Tarrytown Road
24             White Plains, New York 10607
                        (914)949-4545
25
```

1

1        A.    Yes.

2        Q.    Specifically, I think the question was;

3    have you been involved in some of the foreign, at

4    least some of the foreign applications, which are

5    the subject of past or current disputes between

6    Omega SA and Omega Engineering?

7        A.    Yes.

8        Q.    Could you please describe for me your

9    involvement?

10       A.    That's a very complicated question.  You

11   may recollect that in 1992 an employee of Omega SA

12   negotiated with me a settlement or world wide

13   agreement, which subsequently was canceled and

14   revised and replaced by another agreement in 1994.

15       Q.    You are referring, I take it, to

16   Mr. Couttz?

17       A.    Mr. William Couttz, that is right.  He

18   and I worked out between us the language of that

19   agreement, which was signed, as I recollect, by

20   Hans Peter Rentsch and Mr. Kurth on behalf of

21   Omega SA.

22            That agreement had a genesis in a

23   dispute in Hong Kong and a potential dispute in

24   Germany, which I was involved with.  This was

25   back, more than 20 years ago.

EXHIBIT F

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF CONNECTICUT

3    Civil Action Number:  300 CV 1848 JBA

4    - - - - - - - - - - - - - - - - - - - - - - - -

5    OMEGA S.A.,

6                        Plaintiff,

7              vs.

8    OMEGA ENGINEERING, INC., OMEGA PRESS, INC.,

9    and OMEGA SCIENTIFIC, INC.,

10                       Defendants.

11   - - - - - - - - - - - - - - - - - - - - - - - -

12              DEPOSITION OF HANS KURTH

13                 November 5, 2001

14

15

16

17

18

19

20

21

22

23

24

25

1

11/5/2001 Kurth, Hans

1        Q.    Now, with respect to this 1994

2    agreement, who did you work with regarding

3    that document?

4                MR. COLLEN:  I object.  That

5    question assumes a fact not in evidence.  I

6    don't think the witness has specifically

7    testified that he worked with anybody with

8    regard to this document to date.

9                MR. PETERSON:  Well, let's

10    start with that.

11                MR. COLLEN:  Yes.

12    BY MR. PETERSON:

13        Q.    Dr. Kurth, did you work with anyone

14    concerning this 1994 agreement?

15        A.    No.

16        Q.    How did you come to sign this 1994

17    agreement?

18        A.    It -- I cosigned it together with

19    Dr. Rentsch.

20        Q.    And did you review the 1994

21    agreement before you cosigned it?

22        A.    No.

23        Q.    Did you talk to Dr. Rentsch about

24    the 1994 agreement before you cosigned it?

25        A.    No.

11/5/2001  Kurth, Hans

1       Q.    Okay.  Who presented you with the
2   1994 agreement for signature?
3       A.    I don't remember.
4       Q.    Do you remember -- do you recall
5   signing the 1994 agreement?
6       A.    No.
7       Q.    Do you recall an individual by the
8   name of Coutts?
9       A.    Yes.
10      Q.    Did you have any dealing with
11  Mr. Coutts?
12      A.    No.
13      Q.    What was your knowledge of
14  Mr. Coutts in the organization?
15      A.    He was handling Omega matters
16  within the Swatch Group legal department,
17  mainly trademark issues.
18      Q.    And what trademark issues did he
19  handle?
20      A.    Well, many, many, a whole lot.
21  Everything.  Protection of the Omega
22  trademark worldwide in our field of business.
23      Q.    Okay.  And this was in the early
24  1990s?
25      A.    I think so, yes.

EXHIBIT G

4/23/2004  Rentsch, Hanspeter

```
 1

 2      UNITED STATES DISTRICT COURT

        FOR THE DISTRICT OF CONNECTICUT

 3      ----------------------------x

        OMEGA, S.A.,                    )

 4                      Plaintiff,)

                vs.                     ) Civil No.

 5      OMEGA ENGINEERING, INC.,        ) 3:01 CV 2:04  (MRK)

        OMEGA SCIENTIFIC, INC., and  )

 6      OMEGA PRESS, INC.,              )

                      Defendants.)

 7      ----------------------------x

        OMEGA ENGINEERING, INC.,        )

 8         Counterclaim-Plaintiff,)

                vs.                     )

 9      OMEGA S.A. and THE SWATCH     )

        GROUP LTD.,                     )

10         Counterclaim-Defendants.)

11      ----------------------------x

12                      April 23, 2004

13                      9:48 a.m.

14

15          Deposition of HANSPETER RENTSCH, held at

16      the law offices of Kaye Scholer, LLP, 425 Park

17      Avenue, New York, New York, pursuant to notice,

18      before Donald R. DePew, an RPR, CRR and Notary

19      Public within and for the State of New York.

20

21

22

23

24

25
```

1

4/23/2004  Rentsch, Hanspeter

```
1                        Rentsch

2      been marked as Exhibit 78.

3                (Witness looks at document.)

4          Q.    Do you recognize Exhibit 78 as the

5      party's 1994 agreement?

6          A.    Yes.

7          Q.    Does Omega, S.A. acknowledge the

8      validity of this agreement?

9          A.    Yes.

10         Q.    Is it Omega, S.A.'s intention to live

11     up to the terms of Defendants' Exhibit 78?

12         A.    Can you repeat that.

13         Q.    Pardon?

14               MR. COLLEN:  Maybe you could rephrase

15         it.

16               MR. SMART:  Sure.

17         Q.    Has Omega, S.A. made any decision to

18     try to break or walk away or disavow or get rid of

19     Defendants' Exhibit 78?

20         A.    No.

21         Q.    Do you believe that Defendants'

22     Exhibit 78 remains a binding contract between

23     Omega Engineering and Omega, S.A.?

24         A.    I have no other information, yeah.

25         Q.    Okay.  And these RFIDs you mentioned
```