# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMEGA S.A., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OMEGA ENGINEERING, INC., ) <br> OMEGA SCIENTIFIC, INC., and ) <br> OMEGA PRESS, INC., ) <br>   Defendants. ) <br> ) <br> OMEGA ENGINEERING, INC., ) <br> ) <br> Counterclaim-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OMEGA, S.A. and ) <br> THE SWATCH GROUP LTD., ) <br> ) <br> Counterclaim-Defendants. ) <br> ) | Civil Action No.: <br> 3:01 CV 2104 (SRU) |

## PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Omega S.A. ("OSA") and The Swatch Group Ltd. ("Swatch") (collectively "Plaintiffs"), by and through their undersigned attorneys hereby submit this Reply and Incorporated Memorandum of Law to Defendants' Opposition ("Opposition") to Plaintiff's Motion for Reconsideration ("Motion for Reconsideration").

On September 30, 2005, this Court entered its Order granting in part and denying in part the Parties' cross-motions for summary judgment. (Docket Entry #181, referred to as "Order on Summary Judgment"). On October 18, 2005, Plaintiffs filed their Motion for Reconsideration of the Court's, Order on Summary Judgment. On November 23, 2005, Defendants filed their Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration ("OEI Opposition").

I. **DISCUSSION**

A. **The Grounds for Reconsideration**

Plaintiffs' Motion for Reconsideration should be granted (1) the Court overlooked the controlling decision of *Savin Corp.* v. *The Savin Group*, 391 F. 3d 439 (2d Cir. 2004) in ruling on OSA's dilution claim; (2) the Court improperly elevated the likelihood of confusion analysis to be a determinative factor in determining whether OEI's conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA") and ignored other evidence in the Summary Judgment record that clearly reveals genuine issues of material fact as to whether OEI's conduct violated CUTPA; (3) the Court failed to consider whether OEI's conduct violated public policy which is itself a in violation of CUTPA; and (4) the Court failed to adhere to the standard of review on summary judgment motions, which requires the Court not the weigh the evidence and draw adverse interferences against Plaintiffs' to construe the facts in the light most

favorable to Plaintiffs and to resolve all ambiguities and draw all reasonable inferences against OEI.

Plaintiffs' Motion for Reconsideration does not, as OEI argues, ask the Court to simply re-decide the facts and arguments presented at summary judgment. All of these grounds are sustained by the one principle: that the Court did not apply or improperly applied controlling legal authority when analyzing Plaintiffs' claims of dilution, violation of CUTPA, and causes of action based upon the element of a likelihood of confusion. A central premise of Plaintiffs' Motion for Reconsideration is that the Court did not resolve all ambiguities and draw all inferences in favor of Plaintiffs, the nonmoving party but instead identifies evidence, weighed that evidence, and resolved interferences against Plaintiffs. "When ruling on a summary judgment motion, the Court must construe the facts in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences against the moving party." Order on Summary Judgment at 9.

For this reason, the Second Circuit has held that summary judgment is improper even where the claim is supported only by "meager" evidence. But the court has refused to let a jury hear this evidence and testimony because it already determined that it is not enough. Contrary to the Court's Order, even "meager" evidence defeats a motion for summary judgment. *Integrated Waste Servs. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 303 (2d Cir. 1997). In *Azko*, The 2nd Circuit reversed summary judgment against plaintiff real estate developers. There, plaintiff's only evidence was just two reports, which were not direct evidence, and had not even brought to the district court's attention by plaintiff.

2

Nonetheless, this was sufficient evidence to preclude summary judgment *Id*. In so holding, the *Akzo* Court stated:

"The record on this point was poorly developed by the plaintiffs, even for the stage in the proceedings at which judgment was rendered, and we can well understand the district court's reluctance to let the case go further. Nevertheless, we hold that what the Developers showed was sufficient to preclude summary judgment on the issue of surface damages. Though meager, it is enough to permit them to introduce more specific evidence at trial. We accordingly reverse and remand the decision of the court below with respect to this issue alone.

*Id*.

Thus, no matter how "negligible" the Court may view Pliantiffs' evidence on the disputed issues, it is sufficient to avoid the entry of summary judgment. The District Court erred in this case.

### B. Dilution

The Court should Reconsider its ruling as to Plaintiff's claim of dilution under the Lanham Act. The Court held that Plaintiff had failed to show any evidence of actual dilution, and, solely on this basis, granted Summary Judgment in OEI's Favor on this claim. However, the holder of a senior mark *that is identical* to a junior mark does not need to show actual dilution to succeed on a dilution claim under the Lanham Act. CITE SAVIN. *(emphasis added)*. Because the Court improperly applied controlling law in reaching its decision, the decision is properly subject to reconsideration. *See, e.g., Chambers v. Principi*, CV 656 (SRU), 2004 U.S. Dist. LEXIS 5562 (D. Conn. 2004); *See also, e.g., Santiago v. City of Hartford and Camacho*, Case No. 2386 (WIG) 2005 U.S. Dist. LEXIS 19898, *3 (D. Conn. 2005). The Court failed to follow controlling authority.

3

The fundamental instruction of *Savin* is very clear: commercial use of a mark identical to a senior famous mark is *circumstantial evidence* of actual dilution. *Savin 391 F.3d* at 452 (*emphasis added*). "We interpret *Moseley* to mean that where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual dilution element of the FTDA claim." *Id.* Correctly applied, in combination with the Court's finding that the marks in suit are identical and Plaintiffs Mark is famous and senior, the Court should have found that this circumstantial evidence of actual dilution defeated OEI's Summary Judgment on the dilution claim.

The Court also concluded that Plaintiffs' and Defendant's marks were, "in effect, identical and that order on Summary Judgment." Plaintiff's Mark is senir and famous. **CITE** Under authority, the Court have further held that such evidence constitutes *Savin* which is controlling, found circumstantial evidence of actual dilution and therefore denied Summary Judgment in favor of OEI. OEI's attempts to distinguish *Savin* are unvailing for the simple reason that consent is a defense; here, the court found Plaintiff's could not maintain their claim because no actual dilution evidence was prosecuted –this is wrong, as discussed above. Whether Defendant's will succeed on their defense of consent is another question that is not before the Court with regard to dilution.

The Court's Order on Summary Judgment only found consent to be a defense to Plaintiff's trademark infringement and false designation of origin claims.

The Court never considered consent as a defense to Plaintiffs' dilution claim–OEI never argued this point.

4

In their Opposition, now that OEI seeks to dismiss its own infringement claim (which had at issue the same marks) and solely to avoid the presumption (of circumstantial evidence of actual dilution) given by *Savin* to identical marks, OEI now claims that the marks are not identical. Not only is that argument contrary to the Court's findings, but OEI's opposition to Plaintiff's motion for summary judgment conceded that the Parties' word mark OMEGA was identical.[1] OEI's arguments concerning the various and minor juxtapositions of the parties' design marks in relation to their word marks (see OEI Opposition at Page 7) are just the type of minor variances that courts have found do not defeat a finding of identical marks. "[W]e emphasize, however, that it is the identity of the marks themselves that is germane in the dilution context, and the modifying of the mark—by adding one or more generic descriptors to the mark in a website address, for example—will not necessarily defeat a showing that the marks themselves are identical in specific contexts." *Savin* 391 F.3d at 454. The balance of OEI's arguments in this regard are simply without merit. The Court Should reconsider its ruling on Plaintiffs' dilution claim.

C. **Likelihood of Confusion - Trademark Infringement, False Designation of Origin and Unfair Competition under the Lanham Act**

To find trademark infringement, the Court correctly used the "Polaroid factors" to analyze whether there existed any genuine issues of material fact as to a likelihood of confusion : (1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendants' good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

---

[1] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment at 35.

*Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). The Court was required to "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all inferences against the moving party." Order on Summary Judgment at 9 (*citations omitted*.) The Court did not apply this standard in favor of Plaintiff, as demonstrated by the examples discussed below.

### 1. Strength of the Mark

The Court found Plaintiffs' mark had inherent and acquired distinctiveness (Order on Summary Judgment at 17) yet found only "minimal evidence" of the strength of the mark. The Court seems to have overlooked the Declaration of Peter Stierli, which clearly states between 1999 and 2003, OSA sold approximately $1.9 billion of goods bearing the OMEGA mark, and spent over $420 million on marketing and advertising the OMEGA brand. *See* Plaintiffs' Memorandum in Support of Motion for Reconsideration at 13)

### 2. Proximity of the Marks and Bridging the Gap

When considering proximity of the marks and bridge the gap, the Court misapplied the correct legal standard, on summary judgment, in its weighing of the evidence. (*See* standard set forth infra.) "When ruling on a summary judgment motion, the Court must construe the facts in the light most favorable to the nonmoving party," While the Court recites the rule that it failed to follow this standard. For example, the Court made no mention, (gave no weight or inference) to the Declaration of Brad Cole, which confirmed that OEI sold watch batteries from www.omega.com under an identical mark. Plaintiffs' further introduced advertisements of OEI period timers next to watches, from OEI's "Made in the USA" handbook. (*See* the excerpt Figure 2, Page z-123 to Exhibit A of the Declaration of Milton Hollander, filed on September 15, 2004). The

Court entirely dismissed any reasonable inferences that could be drawn in favor of Plaintiffs from this evidence and concluded that the evidence did not raise an issue of fact for the jury. Instead, the Court weighed the evidence, and resolved inference against Plaintiff, and completely discounted this evidence. Quite obviously, this evidence goes to proximity and is indicative of how close the Parties' goods really are best described by OEI executive Dr. Milton Hollander: "of course we put a watch next to the period timer, it tells time...."

### 3. Actual Confusion

As was observed by the Court, "[T]here is negligible evidence regarding any actual confusion among consumers." The Second Circuit has held that summary judgment is improper on a claim even though a material issue of fact is created by only "meager" evidence. *Integrated Waste Servs.* v. *Akzo Nobel Salt, Inc.*, 113 F.3d 296, 303 (2d Cir. 1997). Therefore, no matter how "negligible", minimal, poorly developed, or "meager", *Akzo supra* at 303, Plaintiffs' evidence may have been, the evidence raised a genuine issue of material fact.

The Court itself identified two examples of actual customer confusion presented by Plaintiffs. The first example was in 2000-2001, a former distributor for OSA in the United States (named Daktronics), received an order for an OEI product. The second example was in 2004, a German customer sent a quote request to an OSA subsidiary in Switzerland. (*See* Court Ruling at Page 23.) In each instance the customer sought quotes or OEI goods from OSA-classic actual confusion evidence.

Instead of drawing inferences in favor of Plaintiffs, the Court stated: "[u]nlike other cases in which evidence of actual confusion included not only misdirected

7

communications but also mistaken beliefs that products or services were associated with unaffiliated companies, OSA has produced no evidence that the confused customers were mistaken with respect to the source of goods rather than, for example, merely with respect to telephone or fax numbers." *Id.*

What the Court essentially did, therefore, was to draw an inference *in favor of movant OEI*. The Court inferred that the consumers were merely confused as to a phone of fax number and not to the source of the goods, when it should have drawn exactly the opposite inference *in favor of nonmovant OSA*. If anything, the Court should have inferred that the consumers were confused as to the source and not just mistaken as to the phone of fax number.

### D.     Connecticut Unfair Trade Practices Act ("CUTPA")

Plaintiff's CUTPA allegation is that OEI engaged in a systematic pattern and practice of blocking OSA from registering its trademarks. (*See* ¶ 56 of Plaintiffs' Third Amended Complaint.) In its summary judgment argument, OSA articulated the grounds of the CUTPA violation further, stating that OEI also violated CUTPA "for the reason that OEI's conduct, with respect to trademark domain names and applications and registrations, offended public policy and violated the law." (*See* OSA Memorandum of Law in Support of Summary Judgment at 16.)

After improperly concluding no likelihood of confusion, discussed above, the court placed undue emphasis on that finding and analysis. Further, the court found that "OSA has not pointed to any conduct that could be classified as 'immoral, unethical, oppressive, or unscrupulous'..." Plaintiff's summarize evidence in support thereof at 6-11 of their Motion for Reconsideration. Plaintiffs' Compliant states:

8

> "By registering these marks and domain names in which OEI has no bona fide intention to use or which OEI has registered for the sole purpose of obstructing OSA's rights to such marks or, alternatively, for the sole purpose of restricting OSA's ability to register its trademarks, or, alternatively, for the purpose of holding the domain names or trademarks for leverage in legal proceedings in this country or elsewhere, OEI has violated the Connecticut Unfair Trade Practices Act C.G.S. 42-110(a), in that said actions are immoral, oppressive and unscrupulous and cause substantial damage to the Plaintiff."

(¶ 56 of Plaintiffs' Third Amended Complaint.)

Clearly, Plaintiff's CUTPA claim is premised OEI's systematic business practice of registering domain names and trademarks marks with the singular intent of blocking OSA from registering domain names or its marks. As such, consideration solely of whether there is a likelihood of confusion is not determinative of whether Plaintiffs' CUTPA count should survive summary judgment.

Plaintiffs thoroughly recounted facts supporting their claim that OEI's conduct offended public policy. Plaintiffs listed all of the applications and registrations filed by OEI that were made to block OSA from registering trademarks in its business of sports and timing, the filing of false declarations that OEI pursued in its business with the USPTO, *id*. at 20-23; listing goods in U.S. trademark application upon which is lacked the statutorily required bona fide intent to use the mark on such goods in commerce; lack of good faith by OEI in its practices before foreign trademark tribunals.

Additionally, it remains undisputed that OEI knew of Plaintiffs' marks before it registered the domain name which formed the basis of Plaintiffs' CUTPA claim which domain name. (*See Omega SA v. Omega Engineering, Inc.*, 228 F.Supp.2d 112 (D.Conn. 2002). The Connecticut District Court has held "the registration of a single domain name with the knowledge that it incorporates a competitor's mark similarly informs an

9

inference of bad faith intent. *Prime Publishers, Inc.* v. *American-Republican*, 160 F. Supp.2d 266, 281; U.S. Dist. LEXIS 14361 *35 (August 7, 2001). The Court never gave Plaintiff's this inference, as it is required to do under controlling Second Circuit Caselaw.

The Court's reliance upon the likelihood of confusion question improperly lessened the weight of the other proofs that OSA made of the conduct described above. Because this conduct, standing alone, could surely amount to "immoral, unethical, oppressive, or unscrupulous" conduct that is prohibited by CUTPA, the Court should reconsider its CUTPA

For this very same reason, it is apparent that the Court did not appropriately consider whether OEI's conduct offended public policy, which is one of the "Cigarette Rule" factors that OEI concedes, should be weighed in the analysis. (OEI Memorandum at 10-11). Any of the Cigarette Rule factors, can provide the basis for a CUTPA claim even if applied alone. Plaintiff's presented clear evidence which supports at least one, if not more, of these factors. For example, the cyber squatting proof alone creates the inference of bad faith If properly considered, the Court should have denied OEI's motion for summary judgment on this count and allowed Plaintiffs CUTPA claim to proceed to trial on the merits.

### E. The Alternative Request for Relief

Plaintiffs also requested that if the Motion to Reconsider is denied, and the Court's finding of no likelihood of confusion remained applicable in this case, then the same finding should apply to OEI's trademark infringement and related claims. OEI argues that "[The] dismissal of certain OEI counterclaims renders moot OSA's alternate claim

10

for relief." Since OEI's argument assumes a dismissal of certain OEI counterclaims that has not happened, OEI's argument on this basis must fail.

## II.   CONCLUSION

For the reasons set forth above and in their Motion for Reconsideration, the Court should reconsider its finding that OEI is entitled to summary judgment on Plaintiffs' claim of dilution and CUTPA. The Court should also either reconsider its decision finding no likelihood of confusion or apply its ruling to reach Defendants' counterclaims pursuant to collateral and judicial estoppel and to avoid the possibility that a jury could reach results that are inconsistent with the Court's decision.

Respectfully Submitted for Plaintiff-
Counterclaim Defendant OMEGA, S.A. and
The Swatch Group Ltd.

By: _____
COLLEN IP
Jess M. Collen (CT20918)
Matthew C. Wagner (CT25926)
Philip J. Miolene (CT01377)
The Holyoke Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
914-941-5668
914-941-6091
(lead counsel)

Paul A. Fattibene
Fattibene and Fattibene
2480 Post Rd.
Southport, CT 06890
203-255-4400
Fax: 203-259-0033
(local counsel)

Dated: November 17, 2005

11