UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OMEGA S.A.,
    Plaintiff,

v.

OMEGA ENGINEERING, INC., et al.,
    Defendants.

OMEGA ENGINEERING, INC.,
    Counterclaim Plaintiff,

v.

OMEGA S.A. and
THE SWATCH GROUP LTD.,
    Counterclaim Defendants.

CIVIL ACTION NO.
3:01cv2104 (SRU)

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Omega S.A. ("OSA"), a Swiss manufacturer of watches and timepieces, has sued American manufacturer of thermocouples, Omega Engineering, Inc. and its affiliates, Omega Scientific, Inc. and Omega Press, Inc. (collectively "OEI"). This case is the third in a series of lawsuits between these parties in the District of Connecticut. Principally, OSA alleges that OEI has engaged in trademark violations and unfair competition. OEI has asserted counterclaims against OSA and The Swatch Group Ltd. ("Swatch"), OSA's parent company, alleging trademark violations, unfair competition, and cybersquatting, and seeking cancellation of two OSA trademarks. The parties have filed cross-motions for partial summary judgment.

OEI has moved for summary judgment on all five of OSA's claims as well as on its counterclaim seeking cancellation of OSA trademarks due to abandonment and fraud. OSA has moved for summary judgment on its claims of unfair competition under the Lanham Act and the Connecticut Unfair Trade Practices Act (CUTPA), as well as on OEI's counterclaim of

cybersquatting.

First, because there are no genuine of issues of material fact concerning essential elements of OSA's trademark infringement, dilution, and unfair competition claims, I grant OEI's motion for summary judgment on those claims. Second, because there is no genuine issue of material fact concerning the required bad faith intent, I grant OSA's motion for summary judgment on OEI's claim of cybersquatting. Third, I deny OEI's motion for summary judgment on its trademark cancellation counterclaim; OEI has failed to produce evidence to support the required fraudulent intent for cancellation on grounds of fraud, and OSA has raised a genuine issue of material fact concerning the alleged abandonment of those marks.

## I.  Procedural Background

OEI and OSA have been involved in other, related litigation in this District. In 1998, OEI sued OSA, alleging that OSA failed to abide by the terms of a contractual agreement that settled various disputes regarding the parties' trademarks. During a court-sponsored settlement conference, the parties reached a settlement that was enforced by the District Court despite OSA's protest. *Omega Engineering, Inc. v. Omega S.A.*, 2004 WL 2191588 (D. Conn. Aug. 12, 2004) ("*Omega I*"). OSA has appealed the District Court's order enforcing the settlement, and that appeal remains pending before the Second Circuit.

In 2000, OSA sued OEI for cybersquatting based on OEI's registration and use of the web domain names: omegawatch.com and omegatime.com. The District Court ruled on the parties' cross-motions for summary judgment in *Omega S.A. v. Omega Engineering, Inc.*, 228 F. Supp. 2d 112 (D. Conn. 2002) ("*Omega II*"). Following that ruling, the parties settled and stipulated to a dismissal of *Omega II* with prejudice. As part of the *Omega II* settlement, OEI agreed to

-2-

transfer the two domain names to OSA. Pl. L. Rule 56(a)1 Statement (doc. # 118) ¶ 26; Def. L. Rule 56(a)2 Statement (doc. # 126) ¶ 26.

The present action has been dubbed *"Omega III."*

## II. Factual Background

Except where noted otherwise, the following facts are undisputed.

### A. Omega S.A.

Omega S.A., a Swiss company and subsidiary of Swatch, manufactures and sells watches and other horological products and timekeeping equipment, including equipment for timing athletic competitions. Pl. L. Rule 56(a)1 Statement ¶ 1 (doc. # 118); Def. L. Rule 56(a)1 Statement (doc. # 108) ¶ 44.

OSA products include watches that are upscale, luxury goods, and their prices correspond to that class of product. Emmons Tr. 61-62; Sauser Rupp Tr. 87. Omega Electronics, a licensee of OSA, sells Omega-branded sports timing devices in the United States. Rentsch Tr. 109, 111, 118-19; Sauser Rupp Tr. 163-64; Gibbons Tr. 37, 153.

OSA uses word and design trademarks that incorporate the word "Omega" and the Greek letter "Ω". Pl. L. Rule 56(a)1 Statement ¶¶ 2, 33. Its United States trademark registrations include: Registration Nos. 708,731 and 1,290,661.

OSA uses the domain name www.omega.ch. Pl. L. Rule 56(a)1 Statement ¶ 1. On behalf of its subsidiary, Swatch completed an application for the domain name: www.omega.us. The so-called Sunrise application process permitted persons or entities, including foreign entities with a presence in the United States, to register for web domains with a .us top-level domain ("usTLD"), in advance of general registration. To participate in the Sunrise process, applicants

were required to hold a United States federal trademark registration or application on the Principal Register of the Patent and Trademark Office ("PTO"). Ex. E to doc. # 119-3.[1] Because multiple trademark owners might apply for the same .us domain name, a random selection process assigned domain names for which there were multiple qualified applicants. *Id.* The domain name, www.omega.us, was eventually assigned to Swatch.

  B.  <u>Omega Engineering, Inc.</u>

Omega Engineering, Inc. was founded in 1962 by Betty Ruth Hollander. M. Hollander Dec. ¶ 2. Its first products were thermocouples, devices used in factories and laboratories to measure temperatures. *Id.* The founder chose to name the company Omega Engineering because of an early user of the thermocouples, a company called Alpha Molykote. *Id.*

OEI has used a design mark consisting of juxtaposed Greek letters Omega ($\Omega$) and Epsilon (E), the so-called "Omega bug," for nearly forty years. *Id.* ¶ 4 and Ex. A.

In 1966, OEI first registered in the United States for an Omega trademark relating to industrial and scientific apparatus. Riggs Dec. ¶ 2 and Ex. A. OEI's Omega trademark registrations include: Registration No. 2,022,762 ("'762") ("OMEGA"), Registration No. 2,034,705 ("'705") ("$\Omega$E"), and Registration No. 2,236,657 ("'657") ("OMEGA"). Riggs Dec. ¶¶ 4-7 and Exs. D-F. According to OEI, Registrations '762 and '705 relate to "timers, namely period timers . . . industrially and/or scientifically e

---

[1] Although OSA did not refer to the process for registering a usTLD name in its original Local Rule 56(a)1 statement, it did discuss the process in its briefs. In its opposition, OEI did not dispute the mechanics of early registration for a usTLD name, although OEI has moved to strike as hearsay certain OSA exhibits relating to the Sunrise application process. Def. Motion to Preclude (doc. # 161) at ¶ D.14.

mployed" and "industrial and scientific clocks," and Registration '657 covers telecommunications. Riggs Dec. ¶¶ 4-6 and Exs. C-E. OSA appears to dispute the descriptions of these Registrations as set forth in OEI's Local Rule 56(a)1 statement. In its Local Rule 56(a)2 statement, OSA states simply: "Plaintiff denies the facts in [paragraphs 33-35]" and cites – without pinpoints – the voluminous file histories for Registrations '762, '705, and '675. Def. L. Rule 56(a)2 Statement ¶¶ 30-32.

OEI holds several pending trademark applications. These applications include: Serial No. 76/337,374 (an intent-to-use application under 15 U.S.C. § 1051(b) for the design mark Ω.com); Serial No. 76/337,450 (an intent-to-use application for a design mark consisting of "Ω"); and Serial No. 76/242,073 (an intent-to-use application for the design mark OM€GA). Riggs Dec. ¶¶ 7, 9 and Exs. F, G.

OEI markets and distributes, under its Omega marks, products that include scientific apparatus for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain, and flow. M. Hollander Dec. ¶ 5. Because the measurement of time is often critical to their applications, some of these apparatus contain a timing function. *Id.*

Since at least 1987, OEI has marketed and distributed time-related goods for science and industry under its Omega marks. *Id.* ¶ 6. Omega Press, an OEI affiliate, operates as a trade vehicle for OEI and sells scientific and technical books, computer software, and printed matter under OEI's Omega marks. *Id.* ¶ 11. Omega Scientific, also an OEI affiliate, uses Omega marks in connection with its sale of scientific and technical instruments. *Id.* ¶ 12 and Ex. G.

OEI does not offer or sell any goods or services under the Omega marks to markets or

fields other than industry and science.² M. Hollander Dec. ¶¶ 13, 15-16. OEI advertises its goods in specialized trade publications and journals and via direct mail. *Id.* ¶¶ 17-18 and Exs. I-L. OEI also advertises its products and services at scientific and industrial trade shows. M. Hollander Dec. ¶ 19 and Ex. M. OEI maintains the web domain www.omega.com, and its products are available for purchase there.

C.     <u>1994 Worldwide Agreement</u>

After many years of trademark disputes spanning several countries, in 1994 OEI and OSA attempted to resolve their trademark disputes in a worldwide agreement. M. Hollander Dec. ¶ 30 and Ex. T. The agreement stated that both parties desired:

> an agreement for the avoidance of future interference Worldwide between their respective fields of commercial operation under their Rights in respect of Trademarks consisting of or including the word OMEGA and/or the Greek letter Ω or containing elements colourably resembling either of thos[e] two elements.

M. Hollander Dec. ¶ 31 and Ex. T ¶ F.

In addition to settling particular contested trademark matters between the parties, the 1994 agreement provided:

> 4.     Henceforth from the signing of this Agreement and effective in all countries of the World:-
>
> a. OMEGA ENGINEERING INCORPORATED undertakes not to use, register or apply to register any trademark consisting of or containing the word OMEGA or the Greek letter Ω or any mark

---

² In its briefs and at oral argument, OSA attacked the use of the phrase "science and industry" and OEI's assertions that its products are limited to these markets or fields. In OSA's Local Rule 56(a)2 statement, however, the plaintiff admits OEI's assertion that "Defendants do not offer or sell any goods or services under OMEGA marks for use in markets or fields outside of industry and science." Def. L. Rule 56(a)1 Statement ¶ 13, Pl. L. Rule 56(a)2 Statement ¶ 13. Furthermore, both parties have used the phrase "science and industry" to describe OEI's market.

containing elements colourably resembling either of those two elements unless intended for science or industry.

***

c. OMEGA SA will not object to the use or registration by OMEGA ENGINEERING INCORPORATED of any trademark consisting of or containing the word OMEGA or the Greek letter Ω or any element colourably resembling either of those two elements in respect of apparatus industrially and/or scientifically employed for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow.

M. Hollander Dec. ¶ 31 and Ex. T.

Paragraph 4(a) of the 1994 Agreement, quoted above, refers to timing apparatus. M. Hollander Dec. ¶ 33 and Ex. T; Def. L. Rule 56(a)1 Statement ¶ 79; Pl. L. Rule 56(a)2 Statement ¶ 79. The parties have expressly agreed that OEI may use and register Omega and Omega-stylized marks with respect to those apparatus if intended for science and industry. M. Hollander Dec. ¶ 33 and Ex. T. Paragraph 4(c) of the 1994 Agreement, quoted above, sets forth that OSA will not object to certain use or registration by OEI of Omega or Omega-stylized marks. *Id.* OSA agreed not to object to the registration or use of the marks "in respect of apparatus industrially and/or scientifically employed for measuring or controlling variable parameters." *Id.* OEI's industrial and scientific period timers and clocks are used to measure and control variable parameters. *Id.*

D.   Omega I Litigation and 2003 Settlement

In December 1998, OEI filed suit against OSA, alleging that OSA had breached the 1994 Agreement by filing petitions to cancel OEI's '762 and '705 registrations as well as a notice of opposition to the application of what became OEI's '657 registration. Riggs. Dec. Ex. I, *Omega*

*I*, 3:98cv2464 (AVC), Complaint Prayer for Relief ¶ 4.

On May 19, 2003, during a court-sponsored settlement conference in the chambers of Magistrate Judge Thomas Smith, the parties negotiated a settlement agreement. Riggs Dec. ¶ 15 and Ex. L; *Omega I*, 2004 WL 2191588. The settlement agreement provided in pertinent part:

- OEI will file amendments to trademark registrations '762 and '705 to delete and amend certain language. ¶ B(1).

- OEI will include references to "Omega Engineering, Inc." and its location and will refrain from future use of the wording "industrial and scientific clocks." ¶ B(2).

- If OEI complied with the terms of the settlement agreement, OSA agreed not to "bring a lawsuit against OEI for use or registration of the Omega mark and/or Omega design on period timers." ¶ B(2).

- Except for a breach of the settlement agreement, both parties agreed to "release and forever discharge each other . . . from any and all claims, actions and causes of action in the U.S.A. relating to the application to register, registration or use of period timers for science and industry or industrial and scientific clocks under the Omega mark or Omega design . . . in the *Omega III* Litigation." ¶ B(3).

- OSA agreed to file a third amended complaint in *Omega III* – the instant lawsuit – dropping the allegations in paragraphs 31 and 32 and dropping references to trademark registrations '762 and '705 from the prayer for relief. ¶ B(4).

Despite OSA's attempts to contest the validity of the agreement, Judge Smith issued a recommended ruling enforcing it. Riggs Dec. ¶ 17 and Exs. N, O; *Omega I*, 2004 WL 2191588. Judge Covello later adopted and ratified Judge Smith's recommended ruling, and judgment was entered in *Omega I* on August 11, 2004. *Id.* Although OSA appealed the judgment to the Second Circuit Court of Appeals, OSA did not request a stay of the order in the District Court until nearly two months after judgment was entered. OSA's Motion to Stay (doc. # 164) *Omega I*, No. 3:98cv2464 (AVC). The District Court denied that motion on May 18, 2005. Ruling on Defendant's Motion to Stay Pending Appeal (doc. # 176) in *Omega I*, No. 3:98cv2464

(AVC).

## III. Discussion

Both OEI and OSA have moved for partial summary judgment. OEI seeks summary judgment on all of OSA's claims, as well as on its counterclaim seeking cancellation of OSA trademark registrations based on theories of fraud and abandonment. OSA seeks summary judgment on its claims of unfair competition under the Lanham Act and CUTPA, as well as on OEI's counterclaim of cybersquatting.

### A. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). If reasonable minds could differ in the interpretation of evidence that is potentially determinative under substantive law, summary judgment is not appropriate. *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1995).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255. When faced with cross-motions for summary judgment, the court must consider the evidence differently depending on which motion is being addressed. Summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute." *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

B.  Trademark Infringement and False Designation of Origin

OEI has moved for summary judgment on counts one and five of OSA's complaint. In those counts, OSA alleges trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114, and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Based on facts that are not genuinely in dispute, OEI is entitled to judgment as a matter law on both of those claims.

Section 32 of the Lanham Act provides civil liability for trademark infringement:

> Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1).

Section 43(a) of the Lanham Act provides civil liability for false designation of origin:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device . . . which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action . . . .

15 U.S.C. § 1125(a)(1).

To support its claims of infringement and false designation of origin, OSA points to the following evidence: OEI's filing of trademark applications for registration in the United States and abroad; OEI's use of trademarks that are "identical" to OSA's marks, Exs. 1, 17, 18 to doc. # 119-1; OEI's use of the word "timer" in names or descriptions of products sold through OEI's

website, Ex. K to Reilly Dec.;[3] an apparent excerpt from a page of OEI's website on which OEI advertised a function of one of its products as "day or time clock;" testimony that OEI's so-called "period timers" measure time; images from "promotional materials" that illustrate OEI and OSA products with digital displays; the sale of "watch batteries;"[4] and images from the parties' websites that show two products (OSA's "PowerTime," advertised as a "lightweight, handheld, battery-operated timing computer" and OEI's "HH550," advertised as a "graphic recorder/datalogger/data printer").

First, with respect to conduct relating to OEI's pending trademark applications, there is no evidence that OEI has used the allegedly infringing marks in commerce. Accordingly, there is no triable issue of material fact with respect to that required element, *i.e.*, use in commerce.

Second, with respect to OEI's use of existing trademarks, OSA has consented to certain uses of Omega marks by OEI and is thereby precluded from asserting Lanham Act claims based on such use.

Finally, the evidence in support of a finding of a likelihood of confusion between OEI's products and OSA's products is insufficient to raise a genuine issue of material fact concerning

---

[3] OSA purports to rely on Reilly Dec. Ex. K, a print-out from OEI's web page, as evidence showing that: (1) OEI advertised a function of one of its products as a "day or time clock," (2) OEI's "period timers" measure time, and (3) OEI's promotional materials show products with digital displays. These allegations do not appear supported by Reilly Dec. Ex. K, although I will accept them as true for purposes of this summary judgment motion.

[4] OSA discusses the "watch batteries" in its memorandum in support of its motion for summary judgment on the Lanham Act unfair competition claim, but does not mention their sale in connection with its trademark infringement and false designation of origin claims. Because the trademark infringement, false designation of origin, and unfair competition claims are guided by the same inquiry regarding the likelihood of confusion, I will consider the evidence regarding the "watch batteries" here.

the probability of consumer confusion, the crucial inquiry in Lanham Act cases of trademark infringement and false designation of origin.

1. *Use in Commerce*

In order to succeed in a claim of trademark infringement or false designation of origin, OSA must show that OEI "use[s] in commerce" the allegedly infringing mark. 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a). Neither the application for a trademark registration nor the existence of a pending trademark application give rise to a claim of trademark infringement or false designation of origin. *See* 15 U.S.C. § 1127 (defining the term "use in commerce" to mean "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark"). *See also Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 539 (D. Vt. 2001) ("Unless and until [the defendant] uses the mark in the course of trade, to identify actual goods for sale or transport, it cannot be subject to suit for trademark infringement under section 1125(a)."); *Cognotec Services, Ltd. v. Morgan Guar. Trust Co. of New York*, 862 F. Supp. 45, 51 (S.D.N.Y. 1994) (despite bank's internal distribution of allegedly infringing materials, absent dissemination "in commerce," plaintiff failed to state a claim for a violation of section 43(a) of the Lanham Act).

OSA has presented no evidence that OEI has used in commerce the marks associated with Serial No. 76/337,374 (Ω.com), Serial No. 76/242,073 (OM€GA) and Serial No. 76/337,450 (Ω). Accordingly, insofar as OSA's claims of trademark infringement and false designation of origin relate to those applications, OSA has failed to raise a genuine issue of material fact with respect to the required element of use in commerce.

2.  *Consent*

In addition to the pending trademark applications, OSA argues that OEI's use of other marks that are confusingly similar to its own constitute violations of 15 U.S.C. §§ 1114(1)(a) and 1125(a). In its brief in opposition to summary judgment, OSA points to the use of the word mark "OMEGA" and the design mark "Ω." Pl. Memo. Opp. Summ. J. (doc. # 145) at 7.[5] OEI counters that OSA consented to the former's use of trademarks incorporating both the word "Omega" and the letter "Ω."

OSA has consented to certain use by OEI of marks that "consist[] of or includ[e] the word OMEGA and/or the Greek letter Ω or contain[] elements colourably resembling either of tho[e]se two elements." *Omega I* Settlement Agreement, Riggs Dec. Ex. T. at ¶ F. The evidence presented to the court supports OEI's contention that in the *Omega I* settlement agreement, OSA released OEI from liability relating to the conduct now in dispute. OSA has not presented evidence that would permit a reasonable fact-finder to conclude that OSA did not consent to OEI's use of Omega marks in conjunction with apparatus designed to measure variable parameters in science and industry.

Consent by the registrant is a defense to a claim of trademark infringement. 15 U.S.C. § 1114(1) ("any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark . . . shall be liable in a civil action by the registrant). Section 1125(a) provides broader protection to trademark owners and others: statutory remedies are available whether or not the plaintiff's mark was

---

[5] The evidence OSA cites does not show use of a design mark consisting of "Ω." In fact, there appears to be no evidence that OEI has used the "Ω" design mark, in contrast with its use of the "Omega bug" or "ΩE" design mark.

-13-

federally registered, remedies are available for false advertising and product disparagement, and claims may be brought by "any person who believes that he or she is or is likely to be damaged" by the conduct. 15 U.S.C. § 1125(a). Nevertheless, the analysis under both sections is often identical. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047, n.8 (9th Cir. 1999). Thus, consent is also a defense to a claim of false designation of origin when that claim is brought by the registrant or senior user. Because OSA consented to OEI's use in certain contexts, its claims of trademark infringement and false designation of origin based on that use fail as a matter of law.

    a.  Effect of 1994 Worldwide Agreement

In the 1994 Worldwide Agreement, OSA agreed that it would not object to OEI's registration or use of "Omega" or "Ω" trademarks "in respect of apparatus industrially and/or scientifically employed for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow." M. Hollander Dec. ¶ 31 and Ex. T. Although OSA has argued that the so-called "period timers" are not covered by the 1994 agreement, there is no evidence in the record supporting that contention, and both parties have acknowledged that the preceding description referred to "timing apparatus." Def. 56(a)1 Statement ¶ 79; Pl. 56(a)2 Statement ¶ 79.

Thus, with respect to timing apparatus industrially and/or scientifically employed, OSA has consented to OEI's use of trademarks consisting of "Omega" or "Ω," and insofar as its claims of trademark infringement and false designation of origin relate to such conduct, they fail as a matter of law.

b.  Effect of *Omega I* Settlement Agreement

In addition to the 1994 Agreement, OSA and OEI reached an agreement relating to the parties' use of trademarks in *Omega I*. As discussed above, in that case, the District Court enforced the settlement agreement that the parties had reached. The settlement agreement provided:

> OSA will not make claims or assertions in *Omega III* relating to the application to register, registration or use by OEI of the Omega mark or Omega design on period timers or industrial and scientific clocks.

Riggs Dec. ¶ 15 and Ex. L ¶ B(4).

Additionally, both parties agreed to "release and forever discharge each other" from:

> any and all claims, actions and causes of action in the U.S.A. relating to the application to register, registration or use of period timers for science and industry or industrial and scientific clocks under the Omega mark or Omega design, in the *Omega I* Litigation, *Omega III* Litigation or the Cancellation Proceedings.

Riggs Dec. ¶ 15 and Ex. L ¶ B(3).

OSA points to OEI's use of Omega trademarks on products that contain a timing feature as infringing conduct. Pl. Memo. Opp. Summ. J. at 10-11. OSA argues that the OEI products are not advertised as "period timers;" rather they are marketed simply as "timers." *Id.* In the settlement agreement, however, OSA specifically agreed that it would not make any claims in this case relating to OEI's "application to register, registration or use by OEI of the Omega mark or Omega design on period timers or industrial and scientific clocks." Settlement Agreement ¶ B.4. Although OSA challenges the accuracy of the term "period timers" in its briefs, OSA points to no evidence raising a triable issue of material fact concerning whether those products associated with OEI's Omega trademarks are not "period timers" or "industrial and scientific

-15-

clocks." In other words, the settlement agreement's references to "period timers or industrial and scientific clocks" are – based on the evidence before the court, such as the deposition testimony of M. Hollander – descriptions of the products challenged by OSA. There is no evidence to support a finding that the products that contain a timing function and cited by OSA as infringing or falsely designated are not covered by the settlement agreement. OSA focused its arguments on disputing the validity of the agreement, but apparently, does not dispute that the agreement covers the principal products at issue in this litigation.

The Court enforced the settlement in *Omega I* despite OSA's claims that counsel and the company representative did not have authority to agree to it. *Omega I*, 2004 WL 2191588. That decision is on appeal to the Second Circuit Court of Appeals, but because the District Court's ruling was never stayed, it is in force and precludes OSA's claims of trademark infringement and false designation insofar as they are based on conduct covered by the *Omega I* settlement agreement.

### 3.  *Likelihood of Confusion*

Even if the Second Circuit vacates Judge Covello's order enforcing the settlement agreement in *Omega I* or otherwise holds that OSA did not consent to OEI's use of Omega trademarks in the fields of science and industry, the plaintiff has failed to raise a triable issue of material fact concerning the central question of its trademark infringement and false designation of origin claims: the likelihood of confusion. Likewise, with respect to OEI products that might not be covered by the agreement, *e.g.*, the watch batteries, OEI has failed to raise a genuine issue of material fact concerning the likelihood of confusion.

Claims of trademark infringement and false designation of origin are guided by the same

inquiry: "whether there exists a 'likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question.'" *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir. 1985), *citing Mushroom Makers, Inc. v. R.G. Barry Corp.*, 560 F.2d 44, 47 (2d Cir. 1978). "To support a finding of infringement, there must be a probability of confusion, not a mere possibility." *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004) (internal quotation marks and citation omitted).

When determining whether there is a likelihood of confusion, courts in the Second Circuit are guided by the so-called *Polaroid* factors, a non-exhaustive list that includes: (1) the strength of the mark, (2) the degree of similarity between the marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the defendant's good faith in adopting its own mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). "Where the predicate facts are beyond dispute, the proper balancing of these factors is considered a question of law." *Playtex Products*, 390 F.3d at 162. District courts generally should not treat any one factor as dispositive; nor should the courts use a mechanical process by which the party with the greater number of factors prevails. *Id.* Instead, courts should focus on the ultimate inquiry of consumer confusion. *Id.*

Although some of the *Polaroid* factors do favor OSA, the overall analysis and ultimate inquiry lead to the conclusion that a reasonable fact-finder could not find that OSA has

established a probability of consumer confusion.[6] Because OSA has failed to raise a genuine issue of material fact concerning consumer confusion, summary judgment is properly granted to OEI on those claims even if OSA has not consented to OEI's use of the Omega marks.

      a.      Strength of the Mark

The strength of OSA's marks (encompassing both the word "Omega" and the Greek letter) is indisputable, and they enjoy both inherent and acquired distinctiveness. "Omega" is not a generic or descriptive mark, but an inherently distinctive mark best qualified as "arbitrary or fanciful in relation to the products (or services) on which [it] is used." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003); *see Omega II*, 228 F. Supp. 2d at 123 (holding that for purposes of anti-cybersquatting act, OSA's Omega marks used in connection with manufacture and sale of watches, clocks, and electronic timing equipment are inherently distinctive). Additionally, OSA's Omega marks have acquired distinctiveness. Although OSA produced minimal evidence on this point, "Omega" is widely recognized among consumers as a mark associated with OSA's timekeeping products. *See Virgin*, 335 F.3d at 148.

The first *Polaroid* factor favors OSA.

      b.      Degree of Similarity Between the Marks

OEI's existing marks are: '705 (ΩE, the "Omega bug"), '762 (OMEGA) (covering industrial and scientific products, including so-called period timers), and '657 (OMEGA) (covering telecommunications and computer transmissions). The Omega bug differs from

---

[6] As discussed above, applying to register a trademark cannot give rise to a claim of trademark infringement or a claim of false designation of origin; accordingly, pending applications '374 (Ω.com), '450 (Ω), and '073 (OM€GA) need not be considered in the *Polaroid* analysis.

-18-