United States District Court
District of Connecticut
FILED AT BRIDGEPORT
3/30 2007
Kevin F. Rowe, Clerk
By [signature]
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OMEGA, S.A.,

Plaintiff,

v.

OMEGA ENGINEERING, INC., OMEGA SCIENTIFIC, INC., AND OMEGA PRESS, INC.,

Defendants.

Civil Action No. 01-CV-2104 (SRU)

**PLAINTIFF'S MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR IN THE ALTERNATIVE TO LIMIT THE PROSPECTIVE APPLICATION OF THE JUDGMENT**

Now comes the Plaintiff, Omega S.A., ("OSA") by and through its undersigned attorneys, and hereby respectfully moves to amend the judgment and opinion of this Court pursuant to Federal Rule of Civil Procedure 60(b) or to otherwise limit the prospective application of that judgment as set forth below.

## I. Preliminary Statement

The Court's opinions dated September 30, 2005 and December 6, 2005, and its subsequent judgment, contradict the terms of a binding settlement agreement entered between OSA and Omega Engineering, Inc. ("OEI"). The Second Circuit Court of Appeals has affirmed the enforceability of that agreement. *Omega Eng'r, Inc. v. Omega, S.A.*, 432 F.3d 437, 440 (2d Cir. 2005). OSA seeks to amend the judgment entered on October 3, 2006 or limit the prospective application of those parts of the Court's judgment and opinions, which are

**ORAL ARGUMENT REQUESTED**

inconsistent with the settlement agreement that is in full force and effect. As this Court did not intend to supplant the ruling of the Second Circuit, the judgment should be amended to express; that the Court's finding that OSA consented to OEI's use of the OMEGA mark on period timers is found on the basis of the parties' 2003 Settlement Agreement (the "2003 Agreement") exclusively and the Court's prior finding that OSA consented to OEI's use of the OMEGA mark by virtue of the parties' 1994 Agreement is vacated, as superseded by the 2003 Settlement Agreement.

Because the effective date of the superseding 2003 Agreement is well before this Court's orders and judgment in 2005 and 2006, the 1994 Agreement cannot provide any basis for OSA's consent to OEI's conduct in this case, conditioned or otherwise. Prospective application of any finding or judgment by this Court that the 1994 Agreement provides express unconditioned consent by OSA for OEI permitting use of the mark OMEGA on period timers in the United States, should be vacated or limited in light of the Second Circuit's affirmance, subsequent to the date of this Court's orders, of the 2003 Agreement.

Although this Court's judgment and orders found that OEI may use the trademark OMEGA on its period timers and industrial clocks without condition by virtue of a contract entered in 1994, the subsequent 2003 Agreement requires that use on such products is expressly conditioned by inclusion of certain marking requirements (including references to "Engineering, Inc.," and "Stamford, Conn.") At the time of summary judgment motions, OSA questioned the enforceability of the 2003 Agreement. The Court noted the appeal pending concerning the enforceability of the 2003 Agreement and, after denying OSA's motion to stay determination of the summary judgment motions in this case pending this appeal. The Court interpreted both agreements in its analysis of whether OEI could use the OMEGA mark on certain goods. The

Court offered alternative bases for its finding that OSA consented to OEI's use of the OMEGA mark on timing devices. The Second Circuit ultimately enforced the 2003 agreement and the marking requirements thereof. This Court's alternative holding under the earlier 1994 agreement is superseded. At the same time, OEI seems to be relying on this Court's orders regarding the 1994 Agreement in contravention of its obligations under the 2003 Agreement.

OSA originally intended to address these issues through its appeal to the Second Circuit. However, following the parties' pre-argument conference before the Second Circuit, and the consultations with counsel that ensued, OSA explored the alternative of seeking this form of relief. OSA explained its concerns to OEI and sought OEI's consent to this motion. OSA also invited OEI to demonstrate that its compliance with the marking requirements of the 2003 Agreement and sought to stay the appeal pending this motion, but OEI did not agree to demonstrate compliance. In papers filed before the Second Circuit, OEI made clear its intention to use this Court's opinions as a safe harbor for conduct expressly prohibited by the 2003 Agreement (See Exhibit D, which will be discussed below.). Independently, OSA has confirmed that OEI is currently violating the settlement agreement. As the Second Circuit declined to stay the appeal pending these proceedings, OSA voluntarily moved to dismiss the appeal in favor of seeking this narrow form of relief from this Court.

## II. The Specific Nature of OSA's Proposed Changes or Limitations to this Court's Prior Rulings

The parties have a history of disputes regarding their respective rights to the trademark OMEGA and Ω design, including several actions in the United States, as well as proceedings pending before foreign tribunals and administrative bodies. The parties appeared before this

Court in three U.S. lawsuits[1], commonly referred to as "*Omega I, II* and *III*". The present action is typically referred to as "*Omega III*".

In 1994, the parties entered into a world-wide coexistence agreement to govern certain rights to use the OMEGA mark on certain goods the (the "1994 Agreement," attached hereto as Exhibit A) Construction of the 1994 Agreement has been, and continues to be, the subject of much contention between the parties around the world. There has never been a trial on the merits regarding the meaning of the 1994 Agreement. However, this Court construed the 1994 Agreement as a matter of law in its rulings on summary judgment on September 30, 2005. The Court's interpretation of the 1994 Agreement includes a finding of unconditioned consent by OSA to OEI's use of the OMEGA mark on period timers and industrial clocks in science and industry. On September 30, 2005, this Court found in pertinent part:

> "Although OSA has argued that the so-called 'period timers' are not covered by the 1994 agreement, there is no evidence in the record supporting that contention, and both parties have acknowledged that the preceding description referred to 'timing apparatus'... Thus, with respect to timing apparatus industrially and/or scientifically employed, OSA has consented to OEI's use of trademarks consisting of 'Omega' or '[OMEGA],' and insofar as its claims of trademark infringement and false designation of origin relate to such conduct, they fail as a matter of law.

*Omega S.A. v. Omega Eng'g, Inc.*, 396 F. Supp. 2d 166, 176 (D. Conn. 2005). This language could allow absolutely any use of the OMEGA mark by OEI on period timers and industrial clocks in science and industry. The 2003 Agreement supersedes the 1994 Agreement in this regard.

---

[1] For a history of the parties disputes in the United States and abroad, please see *Omega S.A. v. Omega Eng'g, Inc.*, 228 F. Supp. 2d 112, 115-16 (D. Conn. 2002) ("*Omega II*") (recounting the history between the parties and granting in part Omega S.A. motion for summary judgment on its claim for trademark cybersquatting').

In *Omega I*, OEI claimed that OSA breached the 1994 Agreement by objecting to and opposing OEI's attempts to register the OMEGA mark for period timers and industrial clocks. In May 2003, on the eve of trial in *Omega I*, the parties negotiated terms, which, among other things, governed the manner in which OEI could use and register the OMEGA trademark and Ω design on period timers, including certain marking requirements on OEI's further uses of the OMEGA mark on such goods. The Second Circuit affirmed the enforcement of that settlement agreement the (the 2003 Agreement is attached hereto as Exhibit B) on December 21, 2005. *Omega Eng'r, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005). At the time this Court had already entered its ruling on summary judgment in this case approximately three months beforehand on September 30, 2005.

This Court had denied OSA's motion to stay the effect of the 2003 Agreement and stay decision on the merits of the summary judgment motions, pending the outcome of the appeal in *Omega I*. The Court therefore analyzed both the 1994 Agreement and the 2003 Agreement at summary judgment in this case. The Court did not have the benefit of the Second Circuit's decision and therefore offered alternative bases for why OEI is permitted to use the OMEGA mark on period timers. The 2003 Agreement supersedes the 1994 Agreement with respect to the use by OEI of the OMEGA mark on period timers and industrial clocks in the United States. As provided for in the agreement, "so long OEI is in compliance with the terms of *this Settlement Agreement*, OSA will not bring a lawsuit against OEI for use or registration of the Omega mark and/or Omega design on period timers." Exhibit B, ¶ 2 (emphasis added.) The contractual provisions in the 2003 Agreement which allow OEI to use the OMEGA mark on period timers subject to product marking conditions demonstrates that the 1994 Agreement did not expressly permit such uses in an absolute, unconditioned manner. The 2003 Agreement also governs how

and to what extent OEI can use the OMEGA mark on period timers in the United States. For example, the 2003 Agreement provides in pertinent part:

> "OEI will include a reference to Omega Engineering, Inc., Stamford Conn., or Omega Engineering, Inc., and its location on the shipping boxes for all Omega Engineering timers. If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc., Stamford, Conn. or Omega Engineering, Inc., and its location. Any use of the word Omega in conjunction with other words and phrases provided in this paragraph shall not be used on the Omega Engineering timers in any larger or more prominent typestyle than that used for the words 'Engineering, Inc., Stamford, Conn.' or 'Engineering, Inc., and its location'... OEI will not in the future use the wording 'industrial and scientific clocks' to describe its products."

Exhibit B ¶ 2. This Court found that the 1994 Agreement allows OEI to use the OMEGA mark on period timers and industrial clocks without any marking requirements. Since the 1994 Agreement is superseded by these terms of the 2003 Agreement, there are clear conditions and limitations on OEI's use of the OMEGA mark on period timers and industrial clocks. Indeed, OEI may no longer even describe their timing devices as "industrial clocks."

Confirming that the 1994 Agreement does not allow OEI to use of the OMEGA mark on its timers, the 2003 Agreement also includes a merger clause:

> "This Settlement Agreement is absolute and unconditional and, together, the Exhibit annexed hereto [the stipulation of dismissal] contains the entire agreement between the parties pertaining to the subject matter of this agreement."

¶ 9, 2003 Agreement, Exhibit B.

OEI admitted at summary judgment that it may not use the OMEGA mark on period timers in an unconditioned manner, "*OSA consented to OEI's use of the OMEGA marks on timers provided that OEI also includes on such devices (once existing inventory is sold off) a*

*reference to 'Omega Engineering, Inc., Stamford, Conn.'*" See OEI's L.R. 56(a)(1) Statement of Undisputed Facts ¶ 83 (emphasis added.)

In light of the specific provisions related to period timers and industrial clocks and the subsequent merger clause, it is clear that the 2003 Agreement contains the entire agreement between the parties regarding these issues. The prior 1994 Agreement cannot be controlling. This Court's interpretation of that agreement should be vacated or given limited prospective application.

At the time of summary judgment, OSA advocated the position that there was no meeting of the minds with regard to the 2003 Agreement. *Omega S.A. v. Omega Eng'g, Inc.*, 396 F. Supp. 2d at 177 ("OSA focused its arguments on disputing the validity of the agreement, but apparently, does not dispute that the agreement covers the principal products at issue in this litigation"), thus, the issue of the superseding affect of the 2003 Agreement was never before the Court. The Court's finding in this case that the 1994 Agreement allows OEI to use the OMEGA mark on period timers *and* industrial clocks without reference to these marking requirements is inconsistent[2] with the parties' agreement and the judgment in *Omega I*. In interpreting the 1994 Agreement, it is clear that this Court did not intend to supplant the rulings of Judge Covello or the Second Circuit, which held that the terms of the 2003 Agreement are enforceable. Any finding contrary to the 2003 Agreement would violate the contract duly enforced by the Second Circuit and Judge Covello and relied on by this Court in its summary judgment ruling, as well as the judgment in *Omega I*.

---

[2] OEI strongly opposed OSA's stay request in this case.

Under the 2003 Agreement, OSA's consent and OEI's right to use the OMEGA mark on period timers in the United States is expressly conditioned on certain marking requirements. No such evidence is presented in the factual record in this case. OEI has represented to OSA that it is complying with the marking requirements of the 2003 Agreement, but OSA could not find any proof, evidence, or declarations in support of this representation in the record of this case, or in the market. In January 2007, OSA requested OEI to demonstrate compliance with the 2003 Agreement. Despite OEI's counsel's representations to OSA and the Second Circuit (during the pre-argument conference) that OEI is complying with the marking requirements under the 2003 Agreement, it has declined OSA's invitation to provide proof thereof. Consent under the 1994 Agreement cannot form the basis of this consent since the 2003 Agreement clearly supersedes the 1994 Agreement in this regard, as discussed above.

OSA's independent investigation of this issue has revealed that OEI's period timers and shipping boxes do not comply with the marking requirements of the 2003 Agreement. Below are two photos which depicts the front and bottom of a PCT -1A timer recently purchased from OEI:

 

See Declaration of Bradford Cole attached hereto as Exhibit C at attachments 3 and 4. The picture on the left fails to reference "Engineering, Inc., Stamford, Conn." The picture on the right references "Engineering, Inc. Stamford, Conn.," but does so in a smaller and less prominent font than the OMEGA mark. Decl. Cole ¶¶ 7, 8. The shipping box for this device also failed to comply with similar marking requirements because it does not include the requisite references to "Engineering, Inc., Stamford, Conn." *Id.*

A second period timer purchased from OEI (shown below) likewise fails to comply with the marking requirements of the 2003 Agreement insofar as it does not include any reference to "Engineering, Inc." or "Stamford, Conn." on the face of the goods whatsoever, despite clearly using the OMEGA mark[3].

[3] OEI used an earlier produced example of this precise model period timer as an exhibit during summary judgment and depositions in this case. See Ex. V. to Decl Riggs, filed October 4, 2004. The model depicted above was purchased by OSA in February 2007. See Decl. Cole ¶ 4.

Ex. C Decl. Cole ¶ 5, attachment 1.

The Court's prior interpretation of the 1994 Agreement would prevent OSA from seeking rectification of this breach of the 2003 Agreement.

## III. Discussion of the Law

Federal Rule of Civil Procedure 60(b) sets forth the mechanism for amendments to judgments and court orders. The rule provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) *the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application*; or (6) *any other reason justifying relief from the operation of the judgment*. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Fed. R. Civ. Pr. 60(b) (emphasis added). Rule 60(b) motions must be made within a reasonable time, and in only certain circumstances no later than one year after the judgment. OSA brings

this motion under subparts (5) and (6) of this rule, which is timely because less than six months have past since entry of the judgment, and OSA recently discovered OEI's non-compliance with the 2003 Agreement.

This case presents a highly unusual procedural posture which warrants an amendment to the orders and judgment. These exceptional circumstances meet the requirements of an amended judgment imposed by the Second Circuit: (1) evidence in support of the motion that is highly convincing, (2) good cause for failure to act sooner, and (3) no undue hardship be imposed on other parties as result of the motion. *Gordon v City of New York*, 228 FR.D. 515 (S.D.N.Y. 2005).

### A. <u>The 2003 Agreement Supersedes the 1994 Agreement an Important Portion of the Judgment Is Not Correct</u>

There can be no dispute that the 2003 Agreement governs the manner in which OEI may use the OMEGA mark on period timers and industrial clocks in the United States. The merger clause of the 2003 Agreement prevents any finding that the 1994 Agreement controls this issue. A simple comparison of the two contracts is determinative of this fact.

OEI readily acknowledged its obligations under the 2003 Agreement at summary judgment ("*OSA consented to OEI's use of the OMEGA marks on timers provided that OEI also includes on such devices (once existing inventory is sold off) a reference to "Omega Engineering, Inc., Stamford, Conn.*," see OEI's L.R. 56(a)(1) Statement of Undisputed Facts ¶ 83 (emphasis added.)) This Court's ruling on summary judgment finding unconditioned consent by

OSA (under the 1994 Agreement) is in conflict with this marking requirement, a requirement with which OEI is not currently complying[4].

Pursuant to Rule 60(b)(5), the judgment should be amended to avoid the inequitable results of its prospective application with respect to consent under the 1994 Agreement. It will be extremely inequitable for this Court's interpretation of the 1994 Agreement to have prospective application, giving OEI a safe harbor to depart from the conflicting obligations of the 2003 Agreement. According to its own motion for summary judgment, "the only time-related devices that defendants have offered to sell or sold are period timers or scientific or industrial clocks and similar apparatus..." Decl. Milton B. Hollander, filed September 15, 2004 ¶ 15; OEI's Rule 56(a)(1) Statement of Undisputed Facts ¶ 15. The 2003 Agreement specifically prevents OEI from using the wording "scientific and industrial clocks" to describe its goods and directly governs its ability to use the mark on period timers. There are no other timing devices sold by OEI. It is clear that OEI is not abiding the 2003 Agreement—it is continuing the same, pre-suit unconditioned use of the OMEGA mark on period timers that caused the prior litigation in the first instance. This is a highly inequitable result.

The core terms of the 2003 Agreement include (1) amendments to OEI's trademark registrations; (2) OEI's compliance with the marking requirements on its timers; (3) OEI's prohibition from using the wording "scientific or industrial clocks" to describe its goods, and (4) OSA's releases in this case and in *Omega I* regarding claims arising out of OEI's use of the OMEGA mark on its timers. OEI argued the provisions of the release against OSA having never

[4] Not only is OEI violating these marking requirements now, it never demonstrated compliance with the marking requirements in this case.

demonstrated it performed the marking requirements. OEI is not now, nor has it ever been, in compliance with this obligation.

As the Court is intimately aware, the parties have a long history of disputes regarding their respective rights to the OMEGA trademark. The Court's interpretation of the 1994 Agreement, which provides for the unconditioned use of the OMEGA mark on period timers and industrials clocks is in conflict with the 2003 Agreement, and should be corrected.

**B. The Present Motion was Brought within a Reasonable Time**

The Court entered summary judgment on September 30, 2005 and affirmed its ruling on December 6, 2005. Final judgment was entered on October 3, 2006. OSA filed a timely notice of appeal, and disclosed these issues to counsel for OEI and an official from the Second Circuit during the pre-argument conference on December 21, 2006. The judicial officer urged OSA to consider alternatives to the appeal including this motion, which OSA considered in good faith, ultimately leading to these proceedings and motion to voluntarily dismiss the appeal.

OSA was not persuaded of the need to undertake a private investigation of OEI's activities until early February 2007 when OEI declined OSA's invitation to demonstrate compliance with the 2003 Agreement. Although OEI has represented to OSA and the Second Circuit that it was complying with the 2003 Agreement, OEI's noncompliance with the 2003 Settlement was demonstrated in the contemporaneously subsequent investigation of Bradford L. Cole. See Decl. Cole attached hereto as Exhibit C.

These are not matters which could have easily been argued at an earlier time by OSA. First, the marking requirements of the 2003 Agreement apply only after exhaustion of OEI's then-current inventory of period timers. The 2003 Agreement permitted a sell-off term, however,

this provision can no longer excuse non-compliance at this late date. A label attached to the PCT-41 timer indicates that it was manufactured on February 26, 2007. See Ex C., Decl. Cole ¶ 4, 6. Second, as this Court noted in its opinion at summary judgment, OSA contested the validity of the 2003 Agreement, and any proposed interpretation thereof would have irrelevant. OSA's prior inability to argue the relationship between the 1994 and 2003 Agreements does not change the fact that the 2003 Agreement places affirmative obligations on OEI.

OEI has argued to the Second Circuit that this Court's interpretation of the 1994 Agreement is not superseded because it permits OEI to use the OMEGA mark on the broader category of timing devices that are scientifically or industrially employed, see Exhibit D. Since However, OEI swore to this Court that the only timing devices it ever sold are period timers, industrial clocks, and similar apparatus, ("the only time-related devices that defendants have offered to sell or sold are period timers or scientific or industrial clocks and similar apparatus…" Decl. Milton B. Hollander, filed September 15, 2004 ¶ 15; OEI's Rule 56(a)(1)). Regardless of the scope of goods that OEI's claims it may sell, OEI cannot rely on this Court's rulings on summary judgment provide safe harbor for violations of the 2003 Agreement. Given this stated position and arguments to the Second Circuit, the reasonable time to address this issue is *now*- prior to the commencement of future litigation between the parties (namely for what appears to be breach of the marking requirements by OEI under the 2003 Agreement). This motion is brought in good faith to avoid future litigation between the parties – to clarify the Court's orders and judgment in this case and the parties' respective rights and obligations moving forward.

In any case, the judgment's conflict with the 2003 Agreement is made clear by the Second Circuit's affirmance and enforcement of that agreement. This judgment needs to be modified to resolve that conflict.

### C. There is no Prejudice to OEI by Virtue of The Requested Amendment

The present amendment merely confirms the incontrovertible relationship between the 2003 and 1994 Agreements. The amendment would not affect the ultimate adjudication of the claims and counterclaims in this case, but rather clarify the parties' obligations as they move forward. Nor should it re-open discovery or litigation in this case. Instead, it will make clear that this Court did not intend to supplant the 2003 Agreement or the eventual decision of the Second Circuit in *Omega I.*

### D. The Judgment Should Also Be Amended Pursuant to Rule 60(b)(6)

Rule 60(b) provides that the district court may relieve a party or a party's legal representative from a final judgment, order, or proceeding in five enumerated circumstances and, according to the sixth subpart, for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). The Second Circuit has held that subpart (6) is "properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994.)

This case presents highly unusual circumstances in which the Court's analysis is superseded by a settlement agreement in a separate action, the enforceability of which was subsequently affirmed on appeal. The operation and the affect of the 2003 Agreement must be taken in the context of the totality of the circumstances of this case—OEI aggressively advocated enforcement of the 2003 Agreement, over OSA's objection. That issue was contentiously litigated in *Omega I* and the appeal to the Second Circuit. OEI may not now be permitted to benefit from this Court's interpretation of the 1994 Agreement and sidestep its application.

## IV. CONCLUSION

Given the extraordinary circumstances of this case, the Court's Orders dated September 30, 2005 and December 6, 2005, and judgment entered on October 3, 2006 should be amended or expressly limited in prospective application to make clear that "the Court's finding that OSA consented to OEI's use of the OMEGA mark on period timers is premised exclusively on the basis of the 2003 Settlement Agreement, and the Court's prior finding that OSA consented to OEI's use of the OMEGA mark by virtue of the parties' 1994 Agreement is vacated as superseded by the 2003 Settlement Agreement". As the 2003 Agreement clearly governs the parties' respective rights and obligations with respect to the use of the OMEGA mark by OEI on period timers in the United States (as confirmed by the Second Circuit,) the 2003 Agreement was controlling at the time of the Court's orders and judgment in this case. OEI will therefore not be prejudiced by such amendment or limitation on the prospective application of the orders and judgment in this case.

Respectfully submitted,

[signature: Matthew C. Wagner]

COLLEN *IP*
Matthew C. Wagner
Jess M. Collen
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
*Attorneys for Plaintift*
*Omega S.A.*

Dated: March 27, 2007

**CERTFICATE OF SERVICE**

I Brendan J. Reilly hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR IN THE ALTERNATIVE TO LIMIT THE PROSPECTIVE APPLICATION OF THE JUDGMENT** to be served on opposing counsel via facsimile and federal express at the following address on March 29, 2007:

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
ATTN: Thomas A. Smart
Paul C. Llewellyn

Brendan J. Reilly