IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

OMEGA, S.A.,

            Plaintiff,

v.

OMEGA ENGINEERING, INC.                      Civil Action No.:
OMEGA SCIENTIFIC, INC., AND              3:01 CV 2104 (SRU)
OMEGA PRESS, INC.,

            Defendants.

---

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR IN THE ALTERNATIVE TO LIMIT THE PROSPECTIVE APPLICATION OF THE JUDGMENT

Thomas A. Smart (CT 21462)
Paul C. Llewellyn (CT 25417)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Of counsel:
Michelle R. Tepper

*Attorneys for Defendants*

31451767.DOC

Defendants Omega Engineering, Inc., Omega Scientific, Inc. and Omega Press, Inc. (collectively, "OEI") submit this opposition to the motion of plaintiff Omega S.A. ("OSA") to amend the judgment, pursuant to Rule 60(b), Fed. R. Civ. P., or in the alternative to limit the prospective application of the judgment.

## PRELIMINARY STATEMENT

OSA's motion is based on the false premise that the Second Circuit's decision affirming the enforceability of the parties' settlement agreement in the *Omega I* litigation, *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F. 3d 437 (2d Cir. 2005) ("*Omega I*"),[1] somehow changes this Court's decision granting summary judgment to OEI. In fact, however, this Court had presumed in its summary judgment opinion that the 2003 Agreement entered into in *Omega I* was enforceable. *See Omega S.A. v. Omega Eng'g*, 396 F. Supp. 2d 166, 177 (D. Conn. 2005). Nonetheless, OSA uses this artifice in an effort to have this Court delete from its summary judgment opinion its ruling that OEI is permitted under the terms of the parties' 1994 Agreement[2] to sell period timers. In opposing summary judgment, OSA argued that OEI was not permitted to sell period timers under the 1994 Agreement and that because OSA purportedly had not agreed to the terms of the 2003 Agreement, it was not bound by it. Now, OSA reverses

---

[1] In *Omega I*, OEI alleged that OSA had breached the terms of an 1994 Agreement between the parties by filing opposition and cancellation proceedings at the United States Patent & Trademark Office against OEI's attempted registration of the OMEGA mark for period timers. During a court-sponsored settlement conference, the parties reached a settlement, a copy of which is attached as Exhibit B to OSA's Motion (hereinafter "2003 Agreement") that was enforced by the District Court and by the Second Circuit. *Omega Eng'g, Inc. v. Omega, S.A.*, 414 F. Supp. 2d 138 (D. Conn. 2004), *aff'd Omega I*, 432 F.3d at 437.

[2] The 1994 Agreement, a copy of which is attached as Exhibit A to OSA's Motion (hereinafter "1994 Agreement"), is a contractual agreement between the parties that settled various disputes regarding the parties' trademarks and addressed the parties' respective rights in OMEGA marks on a worldwide basis.

course and argues that the 2003 Agreement is binding on both parties, supersedes the 1994 Agreement and is inconsistent with it, and asks this Court to delete its rulings on the 1994 Agreement from its summary judgment opinion. Significantly, OSA sought leave in the Second Circuit to stay its appeal from this Court's summary judgment ruling in order to advance this Rule 60(b) motion here – a request that the Second Circuit denied after reading OSA's and OEI's briefs which advanced the same arguments the parties make here.[3]

OSA's motion should be denied for several reasons. First, it is untimely in the extreme, and its real purpose is to advance arguments that OSA could have made in opposing summary judgment or in seeking reconsideration by this Court of its summary judgment ruling, more than 16 months ago. There was nothing stopping OSA from arguing previously that, if the Court found the 2003 Agreement was enforceable, it superseded the 1994 Agreement, but OSA did not do so. By not making such an argument in a timely fashion, OSA has waived it, and OSA cannot use the device of a Rule 60(b) motion to make the argument for the first time now.

Second, the motion is utterly without merit since, as this Court has already found, OSA had unconditionally released in the 2003 Agreement all claims that it sought to advance in this litigation relating to period timers, and OSA is, thus, barred from continuing to litigate any issues with respect to period timers in this litigation. As for OSA's belated suggestion that OEI is not in compliance with the marking requirements for period timers under the 2003 Agreement, even if that were true (and as we show herein, it is not), that is irrelevant since the release was

---

[3] On February 23, 2007, eight days after the Second Circuit denied OSA's motion to stay its appeal and the day its brief on appeal was due, OSA voluntarily moved to dismiss its appeal without prejudice. On February 26, 2007, OEI responded by advising the Court of Appeals that it did not oppose the dismissal, but that the dismissal should be with prejudice, and further advised the Court of Appeals that OEI would be filing a motion for sanctions and costs, which OEI filed on March 16, 2007. OEI's motion in the Second Circuit for attorneys' fees and costs is *sub judice*.

unconditional. What is more, OSA utterly failed to argue in opposing OEI's summary judgment motion, or in support of its motion for reconsideration, that it was OEI's burden to demonstrate compliance with the 2003 Agreement in order to obtain the benefits of the release, and, thus, has waived this argument.

As for the 1994 Agreement, OSA ignores the fact that this case involved extensive allegations regarding trademark applications and filings by OEI to register the OMEGA mark for a variety of industrial and scientific goods in the United States and abroad, allegations that are barred by the 1994 Agreement but that are not the subject of the parties' 2003 Agreement in *Omega I*. Indeed, the parties have ongoing disputes worldwide regarding the registration and use of OMEGA marks for period timers and other industrial and scientific goods that OEI contends are permitted by the 1994 Agreement – which undoubtedly is one reason that OSA now wants so desperately to eliminate the 1994 Agreement from the Court's summary judgment decision. In all events, this Court ruled in the context of the controversy that it was presented with, in which OSA was arguing that neither the 1994 Agreement nor the 2003 Agreement permitted OEI to sell period timers under the Omega mark to science and industry. That this Court made alternative rulings against OSA's claims of infringement hardly provides a basis for finding an inconsistency that warrants further litigation or a revision of the Court's ruling.

The long and the short of it is that OSA is not seeking a clarification of the prior judgment by this Court. Rather, because it purports to have evidence of an alleged breach of the 2003 Agreement by OEI, it is seeking an advisory opinion from this Court that OEI cannot rely upon the 1994 Agreement in defending claims of breach of the 2003 Agreement which OSA is threatening to bring. It, thus, seeks an advisory ruling from this Court that the 2003 Agreement

supersedes the 1994 Agreement and a declaration from this Court that OEI cannot rely upon the 1994 Agreement as a defense should OSA sue it for alleged breach of the marking requirements of the 2003 Agreement. But these issues were never presented by the pleadings or cross-motions for summary judgment in this litigation, and Rule 60(b) cannot be used to obtain an advisory opinion. Rather, whether and to what extent OEI is in compliance with the 2003 Agreement, and whether OEI desires to and may assert a defense based on the 1994 Agreement in any breach of contract action that OSA might bring, should be determined by the facts and circumstances of such a litigation, which has never been brought and which certainly is not in front of this Court. To take but one example, if, as seems obvious, OSA is in material breach of the 2003 Agreement because it never complied with its obligations thereunder to release all claims with respect to period timers in this litigation and to amend the complaint to drop all such claims, then OSA is in no position to enforce the 2003 Agreement to begin with, and it would not be necessary for a Court to determine whether OEI may rely on the 1994 Agreement in defense of such a litigation. *See, e.g., Bernstein v. Nemeyer*, 213 Conn. 665, 672-73, 570 A.2d 164, 168 (1990) ("uncured material failure of performance" discharges other party to contract "from any further duty to render performances yet to be exchanged"). Such speculative stuff should not be the basis of a Rule 60(b) motion, and this Court should not be in the business of issuing advisory opinions with respect to claims that were not asserted in this litigation and which have yet to be made by OSA.

## ARGUMENT

### I. OSA'S RULE 60(b) MOTION IS UNTIMELY

OSA seeks to amend the judgment of this Court pursuant to Rule 60(b), Fed. R. Civ. P., in light of the Second Circuit's December 21, 2005 decision in *Omega I* affirming enforcement of the settlement agreement between OSA and OEI in that case. OSA argues (OSA Mot. at 5) that the judgment should somehow be amended because this Court did not have the

"benefit" of the Second Circuit's decision in *Omega I*. But that argument ignores the fact that because the District Court's decision in *Omega I* was not stayed, the parties and the Court were required as a matter of law to treat the settlement agreement in *Omega I* as enforceable, which this Court did in its summary judgment opinion. *Omega S.A,, supra,* 396 F. Supp. 2d at 177. Not having obtained a stay of the District Court judgment in *Omega I*, OSA was on ample notice that this Court would treat the 2003 Agreement as enforceable, which it did. *Id.* Thus, OSA was in the same position that it is now to argue that the 2003 Agreement superseded the 1994 Agreement. Likewise, if OSA believed it was OEI's burden to demonstrate its compliance with the 2003 Agreement to obtain the benefit of the releases contained therein (which, as discussed below, is flatly wrong), it could have made that argument at any time on the summary judgment motion or the motion to reconsider. Thus, wholly apart from the fact that OSA's Rule 60(b) motion is without merit (see Section II, *infra*), OSA's motion is untimely in the extreme and should be denied for this reason alone.

Rule 60(b), Fed. R. Civ. P., expressly provides that a motion under the rule "shall be made within a reasonable time." The Second Circuit has held that any motion under Rule 60(b) requires not only "highly convincing" supporting evidence, but also a showing of good cause for any delay in making the motion and no undue hardship to the opposing party. *Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). Courts within this Circuit and elsewhere have held further that the determination of whether a Rule 60(b)(5) motion has been made within a reasonable time must be made before reaching the merits of the claim. *See, e.g., Lightfoot v. Union Carbide Corp.*, 1997 U.S. Dist. LEXIS 19138, * 8 (S.D.N.Y. Dec. 1, 1997) (*citing Nucor Corp. v. Nebraska Pub. Power Dist.*, 999 F. 2d 372, 374-75 (8th Cir. 1993) (district court abused its discretion by reaching merits of untimely Rule 60(b)(5) motion).

A review of the relevant dates in this case and *Omega I* confirms that OSA has delayed significantly in making the instant motion, yet OSA has not made and can make no showing of good cause for this delay. Thus, the District Court entered judgment enforcing the parties' 2003 Agreement on August 12, 2004. (A copy of the August 12, 2004 Order is attached as Exhibit O to the declaration of B. Christine Riggs Esq. dated 9/14/04 [Docket # 109]). On September 13, 2004, OSA filed a Notice of Appeal from that judgment, and on October 7, 2004, it filed a motion in the District Court to stay the force and effect of the settlement agreement pending appeal. OSA also moved for a stay of this case pending the *Omega I* appeal on October 6, 2004 [*see* Docket #131]. This Court then heard oral argument on the parties' summary judgment motions on May 4, 2005. Judge Underhill also denied OSA's motion to stay this case in an oral ruling on May 4, 2005 [*see* Docket # 173]. Shortly thereafter, on May 18, 2005, Judge Covello denied OSA's motion in *Omega I* to stay the force and effect of the settlement agreement pending appeal. (*See* Exhibit 1 hereto). Over four months later, on September 30, 2005, this Court granted OEI's summary judgment motion in the proceedings below, a ruling to which it adhered on reconsideration on December 6, 2005. (*See Omega, S.A., supra,* 396 F. Supp. 2d 166; Ruling on Motion for Reconsideration dated December 6, 2005 [Docket # 205]). The Second Circuit affirmed the August 12, 2004 *Omega I* judgment enforcing the settlement agreement on December 21, 2005. *Omega Eng'g, Inc. v. Omega, S.A.*, No. 04-5084-CV, 432 F.3d 437 (2d Cir. 2005). Finally, judgment was entered in this case on October 3, 2006. (*See* Final Judgment [Docket # 210]).

It is evident from this timeline that OSA had ample opportunity during the briefing on summary judgment, on the motion for reconsideration, and for the almost year that then elapsed before this Court entered final judgment on October 3, 2006, to raise the arguments

31451767.DOC                                                6

that it is belatedly making now. Thus, it cannot be disputed that at the time the motion for summary judgment was being briefed, no stay was in place with respect to Judge Covello's decision enforcing the settlement agreement in *Omega I*, and the law was clear that Judge Covello's decision would be treated as binding on this Court, as this Court found in its summary judgment ruling. *Omega S.A., supra*, 396 F. Supp. 2d at 177. What is more, OSA sought and lost a motion to stay the force and effect of the 2003 Agreement four months before this Court ruled against OSA on summary judgment, once again putting OSA on notice that the 2003 Agreement would be viewed as in full force and effect and giving OSA ample opportunity to argue that the 2003 Agreement superseded the 1994 Agreement and that it was OEI's burden to demonstrate compliance with the marking provisions of the 2003 Agreement in order to obtain the benefits of the release of period timer claims contained therein. Likewise, OSA moved to reconsider this Court's summary judgment ruling and certainly knew at that point that this Court had found that OSA's claims with respect to period timers were barred by both the 1994 and 2003 Agreements. Yet, it failed to make the arguments that it is making now. In addition, once the Second Circuit ruled in *Omega I* and affirmed the enforceability of the 2003 Agreement, an additional ten months elapsed before this Court entered final judgment in this case. Plainly, if OSA believed that the Second Circuit's decision would somehow have altered this Court's summary judgment ruling, it should have moved during those ten months for reconsideration of the ruling, rather than filing an appeal to the Second Circuit, then unsuccessfully seeking to stay the appeal so it could file this motion, and then finally raising the issue some 16 months after the Second Circuit ruled. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147-48 (2d Cir. 1994) (Rule 60(b) relief cannot be used to remedy the movant's failure to raise an issue during the litigation).

OSA provides no basis for failing to raise the arguments it makes now in its Rule 60(b) motion earlier. It asserts (OSA Mot. at 7) that it took the position during summary judgment briefing that the 2003 Agreement was not enforceable because there was "no meeting of the minds" and that the issue of superseding effect was not before the Court. But the issue of superseding effect was not before the Court *because OSA chose not to raise it*. As shown above, OSA knew then that, because Judge Covello's decision enforcing the 2003 Agreement had not been stayed, this Court would treat the agreement as enforceable. Thus, nothing has changed and if, as OSA now asserts, the issue of whether the 2003 Agreement superseded the 1994 Agreement mattered, it could certainly have argued that point.

In addition, it cannot be gainsaid that the Second Circuit's decision enforcing the 2003 Agreement was decided on December 21, 2005, some 16 months ago, at a time when final judgment had yet to be entered in this case. Indeed, final judgment was not entered in this case until some ten months later, on October 3, 2006. Yet, OSA makes no attempt to explain why it did not raise the issues it seeks to raise now after the Second Circuit ruled and prior to entry of final judgment here. As for OSA's assertion that its motion is timely because it was made within six months of entry of judgment in this case (OSA Mot. at 11), that ignores the tremendous lapse of time and ample opportunities that OSA had from the time of summary judgment briefing onward to raise the arguments it belatedly makes now.

In apparent recognition of the fact that this motion is untimely in the extreme, OSA seeks to excuse its delay by arguing (OSA Mot. at 13) that it did not investigate whether OEI was in compliance with the marking requirements of the 2003 Agreement until early February, 2007, when OEI "declined OSA's invitation to demonstrate compliance with the 2003 Agreement." To begin with, OEI certainly knows of no obligation on its part to provide such

assurances to OSA. But more importantly, whether OEI was or was not in compliance with the 2003 Agreement in February, 2007 has nothing to do with whether OSA could have argued earlier that the 2003 Agreement superseded the 1994 Agreement, and OSA makes no attempt whatsoever to explain how one has anything to do with the other.[4]

## II.  OSA'S RULE 60(b) MOTION IS MERITLESS.

Even had OSA's Rule 60(b) motion been timely filed, it should still should be denied because it is utterly lacking in merit. OSA's motion does not meet this Circuit's high threshold of "exceptional circumstances" that are required for the "extraordinary judicial relief" of an amendment under Rule 60(b). *Nemaizer v. Baker*, 793 F. 2d 58, 61 (2d Cir. 1986). At bottom, OSA's motion proceeds on the erroneous assumption that the Second Circuit's decision affirming the 2003 Agreement somehow altered the landscape of this Court's ruling when, in fact, it merely affirmed what this Court had already presumed, which is that the 2003 Agreement was enforceable. OSA seeks to alter the Court's ruling in a blatant attempt to obtain an advisory opinion that it believes will be helpful should it sue OEI for purported breach of the 2003 Agreement. But a Rule 60(b) motion is not designed to provide clarification with respect to hypothetical arguments that might or might not be advanced by OEI in a future lawsuit that OSA has not brought, and which – because OSA is in utter breach of the 2003 Agreement and always has been – it should never bring.

---

[4] OSA also argues (OSA Mot. at 13) that the judicial officer presiding over the Second Circuit pre-argument conference "urged OSA to consider alternatives to the appeal, including this motion." Neither of the lawyers who represented OEI at the pre-argument conference has any such recollection of a Rule 60(b) motion being discussed or considered by anyone during the pre-argument settlement conference, let alone that the judicial officer urged OSA to consider filing such a motion.

    A.    **The *Omega I* Agreement Was Enforceable and Was Applied By The Court Even Before The Second Circuit's December 21, 2005 Affirmance in *Omega I*, and OSA Should Have Raised its New Arguments at the Summary Judgment Stage or in Its Motion for Reconsideration.**

OSA's new-found argument that it seeks to make in the instant motion could have and should have been made during summary judgment briefing or in OSA's motion for reconsideration. Thus, OSA misleadingly asserts that this Court "did not have benefit of the Second Circuit's decision" affirming the 2003 Agreement (OSA Mot. at 5). In fact, the *Omega I* agreement was in "full force and effect" even before the Second Circuit's decision affirming its enforcement, and was regarded as binding and was applied by this Court in the prior proceedings. *Omega S.A., supra*, 396 F. Supp. 2d at 177. Thus, in the September 30, 2005 Ruling on Cross-Motions for Summary Judgment, this Court applied the 2003 Agreement, correctly holding that the "decision is on appeal to the Second Circuit Court of Appeals, but because the District Court's ruling was never stayed, it is in force and precludes OSA's claims of trademark infringement and false designation insofar as they are based on conduct covered by the *Omega I* settlement agreement." *Id.* That holding is consistent with the decisions of other courts that have held that absent a stay, a judgment is enforceable even when an appeal is pending. *See, e.g., Am. Town Center v. Hall 83 Assoc.*, 912 F.2d 104, 110-11 (6th Cir. 1990) (appeal does not deprive federal court of jurisdiction to enforce judgment); *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983) ("It is fundamental that the mere pendency of an appeal does not, in itself, disturb the finality of a judgment.").

Moreover, OSA was aware at the time of summary judgment that the Court regarded the settlement agreement as binding and enforceable despite the pendency of the *Omega I* appeal. Indeed, as noted above, OSA had moved in this Court for a stay of enforcement of the 2003 Agreement – presumably because it understood that absent such a stay, the

settlement was enforceable during the pendency of the *Omega I* appeal. That motion for a stay was denied before the Court ruled on summary judgment in this case. However, OSA failed to assert, either at summary judgment or in its motion for reconsideration, the arguments that it now seeks to make in its Rule 60(b) motion. (And, as explained in Section II.B below, the Second Circuit's *Omega I* decision did not provide any new basis for OSA's proposed argument.) Having failed to raise the argument when it was previously available, OSA cannot now use Rule 60(b) to do so. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147-48 (2d Cir. 1994) (Rule 60(b) relief cannot be used to remedy the movant's failure to raise an issue in the litigation).

    **B.**    **The Ruling in this Matter Is Not Inconsistent With Or Superseded By The Agreement or The Second Circuit's Affirmance in *Omega I*.**

Even if OSA could properly raise in a Rule 60(b) motion an argument that it failed to make previously in conjunction with summary judgment or in a motion for reconsideration, the purported ground for its proposed motion is wholly without merit. OSA suggests that the summary judgment decision is "inconsistent" with the Second Circuit's determination that the 2003 Agreement is enforceable, (OSA Mot. at 7), because the 2003 Agreement purportedly lists the "conditions and limitations on OEI's use of the OMEGA mark on period timers and industrial clocks." (*Id.* at 6). OSA argues that the Court's finding that the 1994 Agreement provides "unconditioned consent by OSA to OEI's use of the OMEGA mark on period timers and industrial clocks" is "inconsistent" with the Second Circuit's determination that the 2003 Agreement is enforceable. (*Id.* at 4, 7). OSA states that it seeks to amend the judgment or limit prospective application of those parts of the Court's judgment and opinions which are "inconsistent with the settlement agreement that is in full force and effect" in order to correct the record that the "2003 Agreement . . . governs how and to what extent OEI can use the

OMEGA mark on period timers in the United States." (*Id.* at 2, 4-5). As shown below, however, the summary judgment ruling is fully consistent with the 2003 Agreement and the Second Circuit's affirmance in *Omega I*.

Despite OSA's suggestion that "conditions" in the *Omega I* Agreement are somehow relevant to the summary judgment ruling below, a review of that ruling demonstrates that the Court correctly applied the *Omega I* agreement. Thus, the Court held that the *Omega I* agreement expressly barred OSA's claims in *Omega III* with regard to period timers and industrial and scientific clocks:

> Effect of *Omega I* Settlement Agreement
>
> In addition to the 1994 Agreement, OSA and OEI reached an agreement relating to the parties' use of trademarks in *Omega I*. As discussed above, in that case, the District Court enforced the settlement agreement that the parties had reached. The settlement agreement provided:
>
>> OSA will not make claims or assertions in *Omega III* [that is, *this case*] relating to the application to register, registration or use by OEI of the Omega mark or Omega design on period timers or industrial and scientific clocks. . . .
>
> Additionally, both parties agreed to "release and forever discharge each other" from:
>
>> any and all claims, actions and causes of action in the U.S.A. relating to the application to register, registration or use of period timers for science and industry or industrial and scientific clocks under the Omega mark or Omega design, in the *Omega I* Litigation, *Omega III* Litigation [that is, *this case*] or the Cancellation Proceedings. . . .

*Omega S.A., supra*, 396 F. Supp. 2d at 176; OSA Mot. Ex. B ¶¶ B(3), B(4). The language barring OSA's claims in the instant case is clear and equivocal, and does not turn on any purported "conditions." Indeed, OSA never argued in this Court that the applicability of the foregoing settlement provisions turned on any "conditions," either in summary judgment briefing

or on reconsideration. Nor does OSA point to anything in the Second Circuit's *Omega I* affirmance that would alter the holding of this Court.

Accordingly, OSA's assertion that the ruling of the Court with respect to the parties' 1994 Agreement is "inconsistent" with the *Omega I* agreement is without merit. Both Agreements, as applied to this case, bar OSA's claims with respect to period timers and industrial clocks. *Omega S.A., supra*, 396 F. Supp. 2d at 171-72. The 1994 Agreement grants OEI the right to use and register its OMEGA mark for "apparatus industrially and/or scientifically employed for measuring or controlling variable parameters." *Omega S.A., supra*, 396 F. Supp. 2d at 176; OSA Mot. Ex. A ¶4(c). As the Court noted in its summary judgment opinion, OSA *conceded* in its Local Rule 56(a)(2) Statement, in response to OEI's Statement of Undisputed Facts, that OEI's timing devices are such apparatus within the meaning of the 1994 Agreement. *Omega S.A., supra*, 396 F. Supp. 2d at 176; PL. 56(a)(2) Statement ¶ 79 [Docket # 136]. Thus, OSA's claims were barred by the 1994 Agreement, as well as by the release contained in the 2003 Agreement.

Furthermore, it cannot be disputed that this case involved extensive allegations by OSA regarding the registration and use of OMEGA marks on various goods in science and industry. Those claims were barred by the 1994 Agreement, while the 2003 Agreement's marking requirements only apply to period timers in the United States. OSA Mot. Exs. A, B. And, in fact, the parties continue to dispute the right of OEI to register and use OMEGA marks abroad on various goods in science and industry, in ongoing foreign proceedings – which is undoubtedly one reason that OSA now seeks a revision of the Court's holding with respect to the 1994 Agreement.

Finally, it should be noted that this Court was presented by OSA with the arguments that neither the 1994 Agreement nor the 2003 Agreement barred it from pursuing trademark infringement claims against OEI with respect to registering and using the OMEGA mark for period timers. In the context of that argument, it plainly was appropriate for this Court to make alternative rulings that OSA's claims were barred under both agreements, just as it ruled that, absent the agreements, OSA's claims with respect to period timers were barred because OEI's use of the OMEGA mark on period timers did not constitute trademark infringement. *Omega S.A.*, *supra*, 396 F. Supp. 2d at 182. In short, it is plain that OSA never argued in this lawsuit that OEI should be enjoined from using the OMEGA mark on period timers because OEI was not in compliance with the marking requirements of the 2003 Agreement, and it is nonsensical to argue that, because this is now an issue that OSA wants to pursue, this Court should amend its ruling to say that the 2003 Agreement supersedes the 1994 Agreement.

      **C.**    **OSA's Argument that this Court Misapplied the Parties' Prior Agreements Because OEI is not in Compliance with the Marking Provisions in Paragraph B(2) of the 2003 Agreement is Meritless, And Constitutes an Impermissible Attempt to Obtain an Advisory Opinion Regarding Future Litigation**

OSA's argument that this Court somehow misapplied the parties' prior agreements because, according to OSA, OEI is not in compliance with the marking provisions of Paragraph B(2) of the 2003 Agreement, is meritless for a number of reasons. First, as set forth above, Paragraphs B(3) and B(4) of the 2003 Agreement contain express, unconditional releases and covenants not to pursue claims regarding period timers in this *Omega III* litigation. OSA does not even address these provisions, much less explain how they are in any way conditioned on the marking provisions of Paragraph B(2), which address future claims and future conduct. OEI's compliance or purported non-compliance with the marking provisions of Paragraph B(2)

of the Settlement Agreement have no bearing on the enforceability of the unconditional releases and covenants in Paragraphs B(3) and B(4).[5]

Second, even if the marking provisions of Paragraph B(2) were somehow relevant to the enforceability of the releases and covenants in Paragraphs B(3) and B(4), it is undisputed that OSA never raised this argument below, either on summary judgment or on reconsideration. The argument has been waived and is, as we already showed (Section I, *supra*) untimely in the extreme.

Third, OSA itself is in material breach of the 2003 Agreement, and, therefore, is not entitled to enforce its provisions. *See, e.g., Bernstein v. Nemeyer*, 213 Conn. 665, 672-73, 570 A.2d 164, 168 (1990) ("uncured material failure of performance" discharges other party to contract "from any further duty to render performances yet to be exchanged"). By pursuing the *Omega III* litigation over period timers in the District Court and in this Court, OSA has breached its covenants and promises to release, amend the complaint to drop, and not pursue such claims in *Omega III*. Moreover, such breaches are material, because, *inter alia*, they deprive OEI of the benefit it reasonably expected, OEI cannot be wholly compensated for being forced to litigate for nearly four years claims that were released in the 2003 Agreement, OSA's breaches cannot be cured at this late date, and OSA's conduct does not comport with standards of good faith and fair dealing. *See Bernstein, supra* (applying factors to determine materiality of breach).

---

[5] While OSA's arguments regarding marking of period timers are irrelevant and without merit, it also bears noting that they are also factually incorrect. OEI's marking obligations under Paragraph B(2) of the 2003 Agreement "commence upon exhaustion of existing inventory" of period timers. The period timers sold by OEI are not a high volume item, and OEI has not yet exhausted its inventory of period timer components. As for the assertion by OSA that a sticker on one period timer purchased this year indicates that it was "manufactured" on February 26, 2007, the sticker – which is illegible in OSA's exhibit – indicates the date of final assembly of the unit from existing inventory of components (and, in fact, February 26, 2007 is the date that OSA's investigator claims to have ordered the timer).

Fourth, OSA's remedy for OEI's purported failure to comply with the marking provisions of Paragraph B(2) is not a Rule 60(b) amendment of the judgment, but a claim for breach of the 2003 Agreement. By raising the marking issue in the instant Rule 60(b) motion, OSA effectively seeks an advisory opinion with respect to a possible future claim regarding the marking provisions. OSA admits in its Rule 60(b) motion that it is essentially seeking an advisory opinion when it states that "the reasonable time to address this issue is *now*- prior to the commencement of future litigation between the parties (namely for what appears to be breach of the marking requirements by OEI under the 2003 Agreement)." (OSA Mot. at 14) (emphasis in original). OSA is asking this Court to anticipate the arguments that might be made by the parties in a future lawsuit regarding an alleged breach of the 2003 Agreement and adjust its rulings to take account those anticipated arguments. But that is plainly not the purpose of a Rule 60(b) motion, and it is well established that courts should only rule on issues presented by the pleadings in front of it. The issue of whether OEI has breached the 2003 Agreement, and whether OSA, by dint of its own failure ever to comply with its obligations under that agreement, may seek to enforce it, is not in front of this Court and never has been. Indeed, if OEI is correct that OSA's claims for breach would be barred by its own breach of the 2003 Agreement, then it would not be necessary in any future litigation for the Court to consider whether the 2003 Agreement superseded the 1994 Agreement or whether the 1994 Agreement provided a defense to OEI. This is the stuff of speculative advisory opinion writing, and not of correcting an error in judgment, which is the proper purpose of a Rule 60(b) motion.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion to amend the judgment pursuant to Federal Rule 60(b) or in the alternative to limit the prospective application of the judgment should be denied.

Dated: April 20, 2007
       New York, New York

                                          Respectfully submitted,

                                          */s/ Paul C. Llewellyn*
                                          Thomas A. Smart  (CT 21462)
                                          Paul C. Llewellyn  (CT 25417)
                                          KAYE SCHOLER LLP
                                          425 Park Avenue
                                          New York, NY 10022
                                          (212) 836-8000

                                          Of counsel:
                                          Michelle R. Tepper

                                          *Attorneys for Defendants*