UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2007 MAY -7 P 3: 20

DISTRICT COURT

---------------------------------------- x
OMEGA, S.A.,

           Plaintiff,

      v.

OMEGA ENGINEERING, INC., OMEGA SCIENTIFIC,
INC., AND OMEGA PRESS, INC.,

           Defendants.
---------------------------------------- x

Civil Action No.
01-CV-2104 (SRU)

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR IN THE ALTERNATIVE TO LIMIT THE PROSPECTIVE APPLICATION OF THE JUDGMENT

COLLEN *IP*
Matthew C. Wagner
Jess M. Collen
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
*Attorneys for Plaintiff Omega S.A.*

There is an error in the Court's ruling on summary judgment relative to its interpretation of the 1994 Agreement between the parties. As an <u>alternative</u> to its analysis of the 2003 Agreement (since enforcement of the 2003 Agreement at the time was pending on appeal), this Court interpreted the 1994 Agreement to support its conclusions. As shown in its original motion and below, this interpretation of the 1994 Agreement cannot be correct because the 2003 Agreement contains a merger clause which supersedes the parties' prior agreements. The Second Circuit upheld enforcement of the 2003 Agreement, and this Court's alternative analysis of the 1994 Agreement is therefore unnecessary and superseded. However, Omega Engineering, Inc., ("OEI") is relying on the 1994 Agreement to justify its abandonment of its obligations under the 2003 Agreement. Specifically, the Court rules that the 1994 Agreement (which contains no restrictions on the appearance of OEI's OMEGA mark) covers OEI's period timers, whereas the 2003 Agreement contains specific product marking requirements, which OEI is not performing.

OEI concedes that this error is present (it fails to contest the point in its opposition), and remarkably relies on this error in bad faith to justify its failure to adhere to the product marking requirements of the same agreement it claims provides it complete and unconditional releases. OSA cannot have it both ways – if the 2003 Agreement is enforceable then OEI must comply with its obligations. Since that agreement is enforceable, the 1994 Agreement is superseded through a merger clause, with respect to the subject matter of the 2003 Agreement, namely period timers, and OEI is subject to marking conditions. Yet, OEI would like to have it both ways, as it now argues in its opposition that the 2003 Agreement is enforceable and therefore it gains the benefit of the releases provided by OSA, but the marking requirements are unenforceable because OEI contends OSA has failed to perform by filing this motion to correct the error. And, OEI takes the far fetched position that it is somehow entitled to rely on that portion of the Court's judgment interpreting the 1994 Agreement –rendered in the alternative, only should the Second Circuit have reversed the District Court's enforcement of the 2003 Agreement. The Second Circuit did not reverse.

OSA has confirmed OEI's breach of the 2003 Agreement through private investigation. OEI has no credible explanation for its breaches. Instead, it claims these obligations are unenforceable. OSA seeks very

narrow relief in the form of a minor amendment (or an order limiting its prospective application) only to the erroneous portion of the judgment. The complicated procedural history of the parties' litigious relationship, the egregious inequitable conduct of OEI, the seeming inevitable future litigation between the parties, and the clear nature of the error in the judgment all combine to form exceptional circumstances justifying OSA's request for relief pursuant to Federal Rule of Civil Procedure 60(b).

I. **OSA has Presented Highly Convincing Evidence of an Error in the Court's Opinions: The 2003 Agreement is the Exclusive Contract that Governs OEI's Use of the OMEGA Mark on Period Timers**

The Second Circuit permits a judgment to be amended where: (1) evidence in support of the motion that is highly convincing, (2) good cause for failure to act sooner, and (3) no undue hardship be imposed on other parties as result of the motion. *Gordon v City of New York*, 228 F.R.D. 515 (S.D.N.Y. 2005) (*citing Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). As to the first factor, OSA has shown an undisputable error regarding the portion of the judgment it seeks to amend. OEI has failed to even address this in its opposition, thereby conceding this factor in favor of OSA.

The 2003 Agreement between the parties contains a merger clause. By virtue of the merger clause, the 2003 Agreement supersedes all prior contracts pertaining to the subject matter of that agreement, including the parties' earlier 1994 Agreement. The merger clause of the 2003 Agreement "contains the entire agreement between the parties pertaining to the *subject matter* of this Agreement."[D.E. 217 at Ex. B ¶ 9 (emphasis added)]. When the merger clause and subject matter of the 2003 Agreement are compared to the Court's holdings regarding the 1994 Agreement, the error is clear:

2

> **A. Relevant "Subject Matter" of the 2003 Agreement**
>
> "OEI will include a reference to Omega Engineering, Inc., Stamford Conn., or Omega Engineering, Inc., and its location on the shipping boxes for all Omega Engineering timers. If OEI uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc., Stamford, Conn. or Omega Engineering, Inc., and its location. Any use of the word Omega in conjunction with other words and phrases provided in this paragraph shall not be used on the Omega Engineering timers in any larger or more prominent typestyle than that used for the words 'Engineering, Inc., Stamford, Conn.' or 'Engineering, Inc., and its location'… OEI will not in the future use the wording 'industrial and scientific clocks' to describe its products." [D.E. 217 EX B ¶ 2]

> **B. The Erroneous Holding of the Court regarding the 1994 Agreement**
>
> "Although OSA has argued that the so-called 'period timers' are not covered by the 1994 agreement, there is no evidence in the record supporting that contention, and both parties have acknowledged that the preceding description referred to 'timing apparatus'… Thus, with respect to timing apparatus industrially and/or scientifically employed, OSA has consented to OEI's use of trademarks consisting of 'Omega' or '[OMEGA],' and insofar as its claims of trademark infringement and false designation of origin relate to such conduct, they fail as a matter of law." *Omega S.A. v. Omega Eng'g, Inc.*, 396 F. Supp. 2d 166, 176 (D. Conn. 2005).

The holding (in Box B) regarding the 1994 Agreement cannot be reconciled with the merger clause of the 2003 Agreement. Specifically, since the relevant subject matter of the 2003 Agreement (outlined in Box A) includes how and to what extent OEI may use the OMEGA mark on period timers, and the merger clause of the 2003 Agreement confirms that the 2003 Agreement is the exclusive contract regarding its subject matter, then period timers cannot be "covered by the 1994 Agreement" as held in the ruling of the Court (in Box B). This part of the judgment is incorrect and should be amended (or limited in its prospective application). OSA has submitted highly convincing evidence—which OEI does not even contest—that there is an error in that portion of the judgment it seeks to amend, relating to the 1994 Agreement.

## II. OSA has Submitted Highly Convincing Evidence that an Amendment to the Judgment is Necessary

The error identified above is not harmless. The 2003 Agreement specifically restricts the manner in which OEI may use the OMEGA mark on period timers, including that OEI must include references to

3

"Engineering, Inc., Stamford Conn." whenever it uses the OMEGA mark on period timers. The 1994 Agreement does not contain such restrictions. Thus, if the 1994 Agreement governs OEI's use of the OMEGA mark on period timers (as held in the Court's ruling) then OEI could rely on the Court's error to justify its failure to comply with the marking requirements of the 2003 Agreement. This is precisely what OEI is doing. [See D.E. 217 at Ex. C. (Decl. Cole)].

OEI is breaching the 2003 Agreement. OSA purchased two timers from OEI in recent months. Neither of these products, nor their shipping boxes, includes the requisite references to "Engineering, Inc., Stamford Conn." While OEI's claims that these are isolated products part of some "preexisting supply" of inventory, the poor attempt at an alibi is proven false by the markings of the goods themselves.[1] The goods were ordered by Plaintiff's private investigator on or about February 26, 2007. The goods were shipped from a location in California. A sticker stamped onto one of the products reads "MFG 2/26/07: CAL" (*manufactured on February 26, 2007 in California*). How could any goods predating a 2003 Agreement bear a 2007 date? The shocking discovery of OEI's breaches were uncovered by OSA even after representations of OEI's counsel to OSA in the context of the appeal in this case that OEI was performing the marking requirements of the 2003 Agreement.

Faced with the reality that it is indisputably breaching the 2003 Agreement, OEI presents two unbelievable positions. First, OEI claims that it need not perform the 2003 Agreement because the Court held that OEI's sales of period timers (without mention of the product marking requirements) is permitted by the 1994 Agreement. OEI should not be permitted to rely on this holding. OEI has not challenged OSA's analysis regarding the effect of the merger clause of the 2003 Agreement on the 1994 Agreement. Recognizing as it must that both the 1994 and 2003 Agreements cannot govern the sale of period timers, OEI characterizes the Court's interpretations of the 1994 and 2003 Agreements as "alternative" holdings

---

[1] Even assuming OEI's assertions were true, and the device was newly assembled, then OEI was still in breach for failure to comply with the marking requirements. No explanation was given at all for OEI's failure to include the marking reference on the shipping boxes.

4

under which OEI may actually sell period timers. Even if the Court interpreted both agreements in alternative fashion to permit the sale of period timers, OEI cannot turn a blind eye to the fact that the 2003 Agreement governs the limitations under which such sales by OEI may sell occur.

Where once OEI sought fastidiously to enforce the 2003 Agreement, it now denies its obligations under that agreement. So long as the Court's ruling remains unchanged, OEI will continue to breach the contract which obviously governs this issue, relying on the Court's "alternative" interpretation of the 1994 Agreement.

Second, and even more outrageous, OEI now claims that the product marking requirements of the 2003 Agreement are purely unenforceable. The doctrine of judicial estoppel prevents OEI from asserting a position in this proceeding that is contrary to a position that it successfully advanced in another proceeding. *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004); *Troll Co. v. Uneeda Doll Co.*, 2007 U.S. App. LEXIS 8611 (2d Cir. 2007) (A party invoking judicial estoppel must show that (1) another party advanced an inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner.)

There can be no question that OEI advanced the validity of the 2003 Agreement in this case and at the trial and appellate levels in *Omega I*. This Court, Judge Covello, and the Second Circuit each adopted OEI's advocacy of that agreement. OEI even advocates the operation of the releases in the 2003 Agreement in the same brief in which it claims that other terms of the agreement are unenforceable. With OEI's relentless campaign for enforcement of that agreement carries the reality that the merger clause means that the 2003 Agreement supersedes various aspects of the 1994 Agreement. OEI is bound by the marking requirements of the 2003 Agreement. OEI may not now contend that its own obligations under the 2003 Agreement are unenforceable, especially when it has repeatedly asserted the 2003 Agreement against OSA, and gained the benefit of OSA's performance under that agreement from various tribunals (as discussed).

OEI's selective enforcement of the 2003 Agreement in this case and in a prior litigation between the parties cannot and should not be condoned. *Omega Eng'r. Inc., v. Omega S.A.* 98-CV-2464 (D. Conn.) ("*Omega I*"). OEI obtained the benefits of the mutual releases contained in the 2003 Agreement: by dismissal of OSA's claims in this case; in the context of *Omega I* by avoiding a trial; and in the context of the proceedings pending before the United States Patent and Trademark Office by resolution of various administrative proceedings. Yet OEI ignores the incontrovertible effect of the agreement it aggressively advocated. While OEI claims in its opposition that OSA has not performed under the 2003 Agreement, OEI offers not a piece of evidence to support this.

OEI is estopped from relying on the 1994 Agreement and abandoning the 2003 Agreement. The fact remains that there is an error in the decision of this Court. OEI is transparently relying on this error to excuse its bad faith conduct. This conduct must stop. OSA respectfully requests that this Court remove the safe harbor that OEI found in the Court's prior rulings.

### III. The Error in this Court's Decision Would Not Have Occurred If It Had the Benefit of the Second Circuit's Ruling Regarding the Enforceability of the 2003 Agreement

This motion is not based on the "false premise" that the 2003 Agreement was not enforceable at the time of summary judgment in this case. The 2003 Agreement was only enforced by the District Court in *Omega I* on August 12, 2004, mere weeks before summary judgment was filed on September 15, 2004. OSA filed its Notice of Appeal on September 13, 2004. Thus, when the parties submitted summary judgment motions in this case, the possibility existed that the Second Circuit would reverse the District Court's enforcement of the 2003 Agreement. OEI misses the point that if this Court had the benefit of the Second Circuit's ruling at the time of summary judgment, it would not have offered its alternative ruling under the 1994 Agreement. The focus would have been on the only applicable contract—the 2003 Agreement.

OEI's repetitive observations that the 2003 Agreement was binding on the parties and enforceable since August 2004 are not without consequence. But this, too, is to the exclusion of the application of the

6

1994 Agreement to the same subject matter, namely period timers, due to the merger clause. OEI knew of its obligations under that agreement for several years, and notwithstanding knowledge of the validity of the agreement, OEI has failed to comply, instead relying on the portion of this Court's ruling that is not applicable to the parties' conduct. It defies any rational, good faith interpretation of the Court's judgment to say, as OEI does, that OEI is not bound by the marking requirements of the 2003 Agreement yet gains the benefit of the releases.

Predictably, OEI has tried to refocus OSA's motion as one for an "advisory opinion", and further speculation as to the effect of such a judgment on a new lawsuit for breach of contract. Very much to the contrary, OSA is seeking correction of the judgment in order to correct the resolution of *Omega III* and avoid further litigation which will arise if OEI's assertion that the 2003 Agreement does not obligate it to mark goods in the prescribed manner. When a judgment, leads to an erroneous resolution, the Court should economically remedy the situation by curing the judgment under Rule 60(b). An advisory opinion would be a ruling on "what if, " whereas OSA is requesting that the Court resolve an issue raised by the form of the judgment already issued. The fact that OEI may or may not be satisfied with that clarity is beside the point. And it is not harmless because OEI has made it clear that it is relying on that part of the judgment.

### IV. The Circumstances in this Case are Exceptional and this Motion is Brought within a Reasonable Time

The highly complex and unusual procedural posture of this case as well as OEI's bad faith conduct present exceptional circumstances sufficient to grant this motion. In the first instance, the multiple, simultaneous, procedures precipitated the error and rulings that OSA seeks to correct. The parties' past and present litigious history gives context to the timing of this motion.

This is the third lawsuit between the parties in this District. In *Omega I*, OEI claimed that OSA breached the 1994 Agreement by objecting to and opposing OEI's attempts to register the OMEGA mark for period timers and industrial clocks. In May 2003, the parties negotiated the 2003 Agreement. The parties disputed the enforceability of the 2003 Agreement at the trial court level until August 2004, when

Judge Covello entered judgment in accordance with the terms of that contract. OSA appealed this judgment. The Second Circuit affirmed the enforcement of that settlement agreement on December 21, 2005. *Omega Eng'r, Inc. v. Omega, S.A.*, 432 F.3d 437, 440 (2d Cir. 2005).

In the meantime, the parties litigated this case. Cross motions for summary judgment were filed on September 15, 2004, two days after of OSA's notice of appeal in *Omega I*. OSA asked this Court and the Court in *Omega I* to stay the force and effect of the 2003 Agreement while the appeal was pending. These motions were denied. Thus, at the time of summary judgment in this case, the merger clause of the 2003 Agreement was enforceable, but subject to an appeal. The Court entered its rulings on summary judgment on September 30, 2005 and December 6, 2005—before the Second Circuit affirmed that the 2003 Agreement is enforceable. Thus, the alternative ruling of this Court regarding the 1994 Agreement should be vacated or amended, or given limited prospective application, since now the 2003 Agreement has been sustained by the Second Circuit and controls the parties' respective rights and obligations with respect to the relevant subject matter, namely period timers (in light of the merger clause and relevant provisions). This Court clearly put forth an alternative analysis under the 1994 Agreement to support its ruling, in the event the Second Circuit was to reverse the District Court's enforcement of the 2003 Agreement, and the 2003 Agreement did not apply. As the Second Circuit has since affirmed enforcement of the 2003 Agreement, the alternative ruling should be vacated, or amended, since it is erroneous. The Court entered final judgment in October 2006.

After final judgment in this case, OSA filed a notice of appeal to address its disagreements with the Court's rulings on summary judgment (namely the error in the judgment it now seeks to be vacated, amended, or given limited prospective application, among other issues). OSA discussed the errors regarding the agreements with OEI during the pre-argument conference in the appeal in December 2006. Counsel for OEI represented that it was complying with the terms of the 2003 Agreement, but then declined to demonstrate such compliance in February 2007. OSA thereafter undertook its own investigation and discovered that OEI was in fact not complying with the 2003 Agreement. OEI would not cooperate

8

with efforts to correct the Court's error – because, we now know from its opposition to this motion, it seeks to rely on the ruling of this Court regarding the 1994 Agreement, and use this as the basis for walking away from its obligations under the 2003 Agreement.

Following eight years of litigation between the parties, OSA was faced with several new difficult issues that could easily spark another round of litigation. Most importantly, OSA needed to preserve the deadline for filing the appeal of this case to protect OSA's opportunity to address any of the numerous issues litigated and decided in this case. Second, new trademark applications filed by OEI in the United States require OSA to take a very close look at the parties' agreements and determine whether or not opposition proceedings should be commenced in compliance with the 1994 Agreement and the 2003 Agreement notwithstanding the Court's error.

Now, OEI claims that it has no intention to perform under the 2003 Agreement which it advocated repeatedly. OEI is not marking its period timers or shipping boxes with the requisite reference to "Engineering, Inc., Stamford Conn." As OEI maintained in its brief to this Court and the Second Circuit, it believes that it need not perform these marking requirements because of this Court's interpretation of the 1994 Agreement – the alternative ruling (which OSA contends is erroneous) rendered by this Court in the event the Second Circuit refused to enforce the 2003 Agreement.

Amidst this background, OSA filed its motion to amend within weeks of discovering that OEI is indeed violating the 2003 Agreement, and within six months of final judgment in this case. OSA also preserved its only statutory deadline and filed a timely notice of appeal. OSA voluntarily moved to dismiss its appeal in favor of seeking this more narrow form of relief. OSA's motion is timely and reasonable. OSA is proactively seeking narrow resolution of an issue before the same Court and Judge which rendered the decision in the first place. It is beyond implausible for OEI to advocate enforcement of the 2003 Agreement at every turn, gain the benefit of OSA's performance under that Agreement in no less than three tribunals (*Omega I*, *Omega III*, and the USPTO), and various matters, yet claim that under the Court's

9

ruling under the 1994 Agreement it is not bound to follow the 2003 Agreement, (unilaterally declaring those provisions unenforceable). OEI cannot have it both ways. This Court should clarify its rulings on summary judgment and vacate, amend or otherwise limit the prospective application of that part of its orders and judgment concerning the 1994 Agreement, as specified in its original motion.

### V. Conclusion

OEI has not disputed that there is an error in the Court's ruling regarding the Court's alternative analysis under the 1994 Agreement. The Court's application of the 1994 Agreement must be corrected because OEI is relying on it in bad faith to justify reneging on its performance obligations under the 2003 Agreement (now unilaterally declaring its own performance obligations unenforceable). Indeed, OEI advances nothing but implausible alibis to explain its breach of contract. OSA has timely demonstrated exceptional circumstances sufficient to obtain the narrow relief requested. OEI will not be prejudiced by such an amendment or limitation on the prospective application of the orders and judgment in this case because the amendments will only correct an error the existence of which OEI concedes, and clarify that the only Agreement governing the parties rights and obligations concerning period timers in the United States is the 2003 Agreement repeatedly advocated and asserted against OSA. OEI cannot now avoid this agreement at its whim. OSA respectfully requests that the Court GRANT this motion.

Respectfully submitted,

*[signature]*

COLLEN *IP*
Matthew C. Wagner
Jess M. Collen
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
(914) 941-5668
*Attorneys for Plaintiff
Omega S.A.*

Dated: May 7, 2007

10

## CERTFICATE OF SERVICE

I Brendan J. Reilly hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR IN THE ALTERNATIVE TO LIMIT THE PROSPECTIVE APPLICATION OF THE JUDGMENT** to be served on opposing counsel via facsimile and first class mail at the following address:

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
ATTN: Thomas A. Smart
Paul C. Llewellyn

Brendan J. Reilly

11